## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ITEM DEVELOPMENT AB, ASTELLAS US LLC, and ASTELLAS PHARMA US, INC. )<br><br>Plaintiffs, )<br><br>v. )<br><br>SICOR INC. and SICOR PHARMACEUTICALS, INC., )<br><br>Defendants. ) | Civil Action No. 05-336 SLR |

)
)
)
)
)
)
)
)
)
)
)
)
)

## SICOR'S OPENING CLAIM CONSTRUCTION BRIEF

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
kkeller@ycst.com

Of Counsel:
David M. Hashmall, P.C. (admitted *pro hac vice*)
Annemarie Hassett (admitted *pro hac vice*)
GOODWIN PROCTER LLP
599 Lexington Avenue
New York, NY 10022
(212) 813-8800

*Attorneys for Defendants Sicor Inc. and Sicor Pharmaceuticals, Inc.*

Dated: August 23, 2006

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

I.      INTRODUCTION ............................................................................... 1

II.     BACKGROUND OF THE TECHNOLOGY ........................................ 3

III.    THE RELEVANT CASE LAW ........................................................... 4

        A.      Basic Principles Of Claim Construction ............................. 4

        B.      Each Element Of A Claim Is Material ................................ 8

IV.     ARGUMENT ...................................................................................... 9

        A.      The Claims To Be Construed ............................................. 9

        B.      The Plain And Ordinary Meaning Of The Disputed Claim Terms To
                A Person Of Skill Is Set Forth In The Specification ...................... 10

                1.      Claims 1, 3, and 7 ............................................... 10

                        (a)     "Selectively Vasodilating The Arteries" And "Without
                                Inducing Significant Venous Dilation" Are Separate
                                Claim Terms ......................................................... 10

                        (b)     Selectively Vasodilating The Arteries ...................... 11

                        (c)     Without Inducing Significant Venous Dilation .......... 13

                2.      Claim 9 ................................................................ 15

                        (a)     "Inducing a Reduced Afterload" And "Without
                                Reducing the Preload" Are Separate Claim Terms ...... 15

                        (b)     Inducing A Reduced Afterload .............................. 16

                        (c)     Without Reducing The Preload .............................. 17

        C.      Plaintiffs Are Not Entitled To Proffer Claim Construction .......... 18

V.      CONCLUSION ................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

*Cephalon, Inc. v. Barr Labs., Inc.*, 389 F. Supp. 2d 602 (D. Del. 2005) ................................... 5

*Ciba Specialty Chems. Corp. v. Hercules, Inc.*, No. 04-293-KAJ, 2006 WL 1731192
(D. Del. June 20, 2006)................................................................................................ 5, 6

*DiscoVision Assocs. v. Disc Mfg., Inc.*, 25 F. Supp. 2d 301 (D. Del. 1998) ........................ 5, 6

*Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350 (Fed. Cir. 2005) ............................ 8

*Lemelson v. U.S.*, 752 F.2d 1538 (Fed. Cir. 1985).................................................................... 9

*Litton Sys., Inc. v. Honeywell*, 140 F.3d 1449 (Fed. Cir. 1998).................................................. 8

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995)........................... passim

*Microstrategy Inc. v. Bus. Objects Ams.*, 410 F. Supp. 2d 348 (D. Del. 2006) .................... 5, 19

*Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473 (Fed. Cir. 1998).................... 6, 13

*Nomos Corp. v. Brainlab, Inc.,* 239 F. Supp. 2d 430 (D. Del. 2003)........................................ 9

*Nystrom v. Trex Co., Inc.*, 374 F.3d 1105 (Fed. Cir. 2004)....................................................... 8

*Nystrom v. Trex Co., Inc.*, 424 F.3d 1136 (Fed. Cir. 2005).................................................... 7, 8

*Perkin-Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528 (Fed. Cir. 1987) ................. 8

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) .................................................. passim

*Rohm and Haas Co. v. Brotech Corp.*, 127 F.3d 1089 (Fed. Cir. 1997) .................................... 9

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337 (Fed. Cir.
2001) ....................................................................................................................... 6, 10

*Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361 (Fed. Cir. 2005)................................. 4, 19

*Southwall Techs., Inc. v. Cardinal IG Co.,* 54 F.3d 1570 (Fed Cir. 1995)................................ 7

*Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313 (Fed. Cir. 2002) ........................... passim

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ............................. 5, 6, 7

*Warner Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17 (1997) ........................ 8, 11

## STATUTES

35 U.S.C. § 112 ................................................................................................................. 5

## I.    INTRODUCTION

This case was filed pursuant to the Hatch-Waxman Act to block defendants Sicor Inc. and Sicor Pharmaceuticals, Inc. (collectively "Sicor") from obtaining approval from the U.S. Food and Drug Administration ("FDA") for Sicor's Abbreviated New Drug Application ("ANDA") for a generic version of an injectable adenosine product sold under the trade name Adenoscan®.  Plaintiffs Item Development AB, Astellas US LLC, and Astellas Pharma US, Inc. (collectively "plaintiffs") have sued Sicor for infringement of claims 1, 3, 7, and 9 of U.S. Patent 5,731,296 ("the '296 patent," attached hereto as Exhibit A),[1] one of two patents listed in the FDA Orange Book as purporting to cover plaintiffs' Adenoscan® product.  The asserted claims of the '296 patent are directed to selective vasodilation in humans by continuous infusion of adenosine.

Pursuant to this Court's Scheduling Order,[2] on March 27, 2006, Sicor identified four claim terms in the asserted claims that Sicor believes require construction by this Court. Specifically, Sicor identified and proposed constructions for each of the following four terms: (1) selectively vasodilating the arteries; (2) without inducing significant venous dilation; (3) inducing a reduced afterload; and (4) without reducing the preload.  Sicor's proposed construction for each term follows well-established principles of claim construction.  Sicor relies on the intrinsic evidence, in particular the '296 patent specification, which the Federal Circuit deems "the single best guide to the meaning of a disputed term."  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (*en banc*) (citation omitted).

---

[1]    Plaintiffs Astellas and King Pharmaceuticals Research and Development ("King") have also filed a lawsuit against Sicor for infringement of U.S. Patent No. 5,070,877 ("the '877 patent"), again on the basis that Sicor's ANDA product infringed one or more patent claims.  This case is presently pending before the Court and has been assigned Civil Action No. 05-337 (SLR).

[2]    The October 12, 2005 Scheduling Order stated that "that parties shall exchange lists of those claim terms that they believe need construction and their proposed claim construction of those terms" on March 17, 2006.  The parties subsequently agreed to exchange lists of identified claim terms and the corresponding constructions of those terms on March 27, 2006.

In particular, the '296 specification states that adenosine "has selective vasodilation activity, in that its effect is limited to a cardiac after-load effect.  That is, its activity is limited to dilation of arteries and it has little or no effect on cardiac pre-load, i.e., as a dilator of veins."  *See* col. 2, lines 39-42.  In these few lines, the specification explicitly addresses the meaning of each of the disputed claim terms.  As described below, the constructions proposed by Sicor are based on the intrinsic evidence and incorporate the understanding that a person of skill in the art at the relevant time would have based upon her reading of the claims in the context of the entire patent.

By contrast, plaintiffs have contended for months that no term in the asserted claims required construction by the Court.  Indeed, on March 27, 2006, plaintiffs declined to identify any terms to be construed or to propose constructions, and instead expressly stated to Sicor that claim construction was not required for the asserted claims of the '296 patent.  *See* Plaintiffs' Joint Statement Regarding Claim Terms Requiring Construction ("3/27/06 Pl. Stmt.," attached hereto as Exhibit B).  In the more than four months between plaintiffs' assertion that no construction was required and the deadline for submission of a joint claim construction chart to the Court, plaintiffs neither questioned Sicor's proposed constructions nor proffered any alternative constructions.

Instead, plaintiffs waited until after the exchange of opening expert reports on patent infringement and validity before identifying any proposed constructions.  Virtually on the eve of the submission of the parties' August 11, 2006 Joint Claim Construction Statement ("Joint Stmt.," attached hereto as Exhibit C), plaintiffs proposed claim constructions for the first time.  Sicor has been prejudiced by plaintiffs' undue delay, as Sicor has been deprived of the opportunity for its experts to take into account the constructions in plaintiffs' expert analyses and reports.  As the time for plaintiffs to propose claim constructions has long since passed, and

plaintiffs' undue delay has prejudiced Sicor, on this basis alone the Court should not consider plaintiffs' proposed constructions.

This Court should reject plaintiffs' proposed constructions as a matter of substance as well. As explained more fully below, plaintiffs' proposed constructions are inconsistent with the fundamental principles of claim construction as established by the Federal Circuit. Instead of relying on the intrinsic evidence, plaintiffs' last-minute claim constructions ignore express language in the '296 patent specification in favor of vague general usage dictionary definitions. In so doing, plaintiffs disregard the hallmarks of a proper *Markman* analysis: a claim term is given the meaning it would have to a person of ordinary skill in the art in question at the time of the invention, reading the claims in the context of the entire patent, including the specification. *See Phillips*, 415 F.3d at 1313, 1315.

In Sicor's view, and as the law provides, the Court need look no further than the intrinsic evidence – the language in the patent itself – to construe these four terms properly. *See id.* at 1313-17. Based upon this intrinsic evidence, the Court should adopt the constructions proposed by Sicor for the four disputed claim terms.

## II.    <u>BACKGROUND OF THE TECHNOLOGY</u>

The '296 patent is generally directed to the administration of a continuous infusion of intravenous adenosine to humans at a specified rate to effect certain physiological changes for various purposes, including radionucleotide scintigraphy (*see* col. 21, lines 22-61). Radionucleotide scintigraphy is a technique used to diagnose coronary artery disease.

The '296 patent is assigned on its face to Item Development AB ("Item"), who subsequently licensed its rights to Astellas US LLC and Astellas Pharma US, Inc. (collectively "Astellas"). Astellas markets an injectable form of adenosine under the brand name Adenoscan®

(adenosine injection), which is indicated for use as an adjunct to thallium-201 myocardial perfusion scintigraphy, a diagnostic technique used with patients unable to exercise adequately. Astellas has listed the '296 patent with the FDA in the Approved Drug Products with Therapeutic Equivalence Evaluations ("the Orange Book") as purporting to cover its Adenoscan® product.

As stated in the Declaration of Dr. Philip Binkley, M.D., M.P.H. ("Binkley Decl.," attached hereto as Exhibit D), adenosine has been known to be an arterial vasodilator for nearly 80 years (Binkley Decl. at ¶ 17). Vasodilators are compounds that dilate blood vessels (*e.g.*, veins and arteries). Different types of vasodilators may dilate either veins or arteries, or both. For example, oral nitrate compounds (*e.g.*, isosorbide mononitrate or dinitrate) principally dilate veins, while hydralazine dilates mainly arteries and arterioles. In contrast, nitroprusside dilates both arteries and veins. In addition, some vasodilators, including calcium channel blockers, may dilate primarily arteries but also give rise to measurable venous dilation (*id.* at ¶ 16).

## III.    THE RELEVANT CASE LAW

### A.    Basic Principles Of Claim Construction

Claim construction is necessary to "determine the meaning and scope of the patent claims asserted to be infringed" and represents the first step in an infringement analysis. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). The second step of an infringement analysis involves a comparison of the claims, as properly construed by the court, to the allegedly infringing product. *Id.* Moreover, claim construction is also relevant to an invalidity analysis. *See Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1381 (Fed. Cir. 2005) (vacating district court's denial of defendant's motion for judgment as a matter of law on anticipation after concluding the district court's claim constructions was erroneous); *Teleflex,*

4

*Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1333-34 (Fed. Cir. 2002) (observing that the first step in an invalidity analysis "involves the proper interpretation of the claims" and considering its "correction" of the district court's claim construction in its review of defendant's obviousness contention); *Microstrategy Inc. v. Bus. Objects Ams.*, 410 F. Supp. 2d 348, 363-365 (D. Del. 2006) (claim construction rulings applied to analysis of invalidity as well as infringement). As both infringement and validity are at issue here, the disputed terms in the asserted claims must be construed by the Court.

The Federal Circuit has emphasized that the specification is the most important tool for claim construction. *See Phillips*, 415 F.3d at 1315; *Ciba Specialty Chems. Corp. v. Hercules, Inc.*, No. 04-293-KAJ, 2006 WL 1731192, at *2 (D. Del. June 20, 2006) (attached hereto as Exhibit E). The importance of the specification in claim construction derives from its statutory role because it must "describe the claimed invention in 'full, clear, concise, and exact terms.'" *See Phillips*, 415 F.3d at 1316 (quoting 35 U.S.C. § 112). While the patent claim terms are given the "meaning that [they] would have to a person of ordinary skill in the art in question at the time of the invention . . . ," the Federal Circuit has stressed that persons of ordinary skill do not read claims in a vacuum, but rather "in the context of the entire patent, including the specification." *Id*. at 1313-14; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *see also Microstrategy*, 410 F. Supp. 2d at 353; *Ciba*, 2006 WL 1731192, at *2; *Cephalon, Inc. v. Barr Labs., Inc.*, 389 F. Supp. 2d 602, 604 (D. Del. 2005); *DiscoVision Assocs. v. Disc Mfg., Inc.*, 25 F. Supp. 2d 301, 337 (D. Del. 1998). The process of discerning how a person of ordinary skill would read particular terms therefore begins "by reviewing the same resources as would that person, viz., the patent specification and the prosecution history." *See Phillips*, 415

F.3d at 1317 (quoting *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998)).

Similarly, in the context of the specification, the inventor may define claim terms to have a specific meaning, even if this definition would differ from the meaning that this term would otherwise possess. The Federal Circuit "recognizes[s] that the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d. at 1316; *see also Markman*, 52 F.3d at 980 ("a patentee is free to be his own lexicographer"); *Teleflex*, 299 F.3d at 1325 (patentee may limit scope of claim language with a clear definition in the specification or the prosecution history); *Vitronics*, 90 F.3d at 1582; *Ciba*, 2006 WL 1731192, at *3; *DiscoVision*, 25 F. Supp. 2d at 337. The Federal Circuit has further held that the intention of the inventor to define the claim terms in the specification should be regarded as "dispositive." *See id*. at 1316; *see also SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001).

The Federal Circuit has made clear that extrinsic evidence (*e.g.*, expert opinions and inventor testimony, dictionaries, and treatises) cannot undermine the claim construction that is compelled by the "intrinsic evidence" (*i.e.*, claims, specification, and prosecution history). *See Phillips*, 415 F.3d at 1318. In *Phillips*, the Federal Circuit cites a number of compelling grounds in support of its finding that extrinsic evidence is a "less reliable" source for claim construction:

> First, extrinsic evidence by definition is not part of the patent and does not have the specification's virtue of being created at the time of patent prosecution for the purpose of explaining the patent scope and meaning. Second, . . . extrinsic publications may not be written by or for skilled artisans and therefore may not reflect the understanding of a skilled artisan in the field of the patent. Third, extrinsic evidence consisting of expert reports and testimony is generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence. . . . Fourth, there is a virtually unbounded universe

6

> of potential extrinsic evidence of some marginal relevance that could be brought
> to bear on any claim construction in question.  In the course of litigation, each
> party will naturally choose the pieces of extrinsic evidence most favorable to its
> cause, leaving the court with the considerable task of filtering the useful evidence
> from the fluff . . . .

*Id.*  The Federal Circuit also directed particularly strong criticism at the use of dictionaries during

claim construction and cautioned against "focus[ing] the inquiry on the abstract meaning of

words rather than on the meaning of claim terms within the context of the patent," especially

given that the dictionary editor's objective is to "aggregate[e] all possible definitions for

particular words."  *Id.* at 1321.  "Judges are free to consult dictionaries . . . in order to better

understand the underlying technology and may also rely on dictionary definitions when

construing claim terms, ***so long as the dictionary definition does not contradict any definition***

***found in or ascertained by a reading of the patent documents***."  *Id.* at 1322-23 (quoting

*Vitronics*, 90 F.3d at 1582 n.6 (Fed. Cir. 1996)) (emphasis added).

Furthermore, the Federal Circuit noted that the authors of dictionaries have an audience

that consists of the general public, for whom they "may simplify ideas to communicate them

most effectively" and "thus choose a meaning that is not pertinent to the understanding of

particular claim language." *Id.* at 1322; *see also Southwall Techs., Inc. v. Cardinal IG Co.,* 54

F.3d 1570, 1578 (Fed Cir. 1995) ("A patentee may not proffer an interpretation for the purposes

of litigation that would alter the indisputable public record consisting of the claims, the

specification and the prosecution history, and treat the claims as a 'nose of wax.'") (internal

citation omitted).

Following *Phillips*, the Federal Circuit has focused even more closely on the context

provided by the disclosure in the specification when construing claims.  For example, in *Nystrom*

*v. Trex Co., Inc.*, 424 F.3d 1136 (Fed. Cir. 2005) (*en banc*), the Court considered whether, in a

patent directed towards materials used to construct outdoor decks, the claim term "board" was

limited only to wooden boards cut from a log.  Before the *en banc* decision in *Phillips* was

issued, the panel concluded that the term was not limited to wooden boards, relying in part on

dictionary definitions.  *See Nystrom v. Trex Co., Inc.*, 374 F.3d 1105, 1111-13 (Fed. Cir. 2004)

(withdrawn).  After *Phillips*, however, the Federal Circuit granted a petition for panel rehearing

and reconsidered their prior determination.  *See Nystrom*, 424 F.3d at 1138.  Based upon the

context of the entire disclosure in the patent specification, the court changed the construction of

board, limiting it to only wood cut from a log.  In so doing, the Federal Circuit noted that:

> What *Phillips* now counsels is that in the absence of something in
> the written description and/or prosecution history to provide
> explicit or implicit notice to the public – i.e., those of ordinary skill
> in the art – that the inventor intended a disputed term to cover
> more than the ordinary and customary meaning revealed by the
> context of the intrinsic record, it is improper to read the term to
> encompass a broader definition simply because it may be found in
> a dictionary, treatise, or other extrinsic source.

*Id.* at 1144-45.  *Phillips* provides that this Court must begin its construction of the '296 patent

with the intrinsic evidence, not general usage dictionary definitions.

   **B.    Each Element Of A Claim Is Material**

       The Supreme Court has held that each element of a claim is material to defining a claim's

scope, and the Federal Circuit has faithfully followed this mandate.  *See, e.g., Warner Jenkinson

Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 29 (1997); *see also Freedman Seating Co. v. Am.

Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005); *Litton Sys., Inc. v. Honeywell*, 140 F.3d 1449,

1454 (Fed. Cir. 1998); *Perkin-Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1533

(Fed. Cir. 1987).  This principle, as articulated by the Supreme Court, is commonly understood

as the "all elements rule."  "[I]t is also well settled that each element of a claim is material and

essential, and that in order for a court to find infringement, the plaintiff must show the presence

of every element or its substantial equivalent in the accused device."  *See, e.g., Lemelson v. U.S.*,

752 F.2d 1538, 1551 (Fed. Cir. 1985); *see also Rohm and Haas Co. v. Brotech Corp.*, 127 F.3d

1089, 1092 (Fed. Cir. 1997); *Nomos Corp. v. Brainlab, Inc.,* 239 F. Supp. 2d 430, 434 (D. Del.

2003).

## IV.    ARGUMENT

### A.    The Claims To Be Construed

Plaintiffs have asserted that Sicor's generic injectable adenosine product will infringe

four independent claims of the '296 patent.  The claims are reproduced below, with the terms

that Sicor contends are in need of construction by this Court in bold font:

> **Claim 1**
> A method of **selectively vasodilating the arteries** of a human patient **without inducing significant venous dilation** and without pretreatment with dipyridamole, comprising continuously administering into the blood stream of said patient adenosine at a rate of administration of 0.35 milligrams of adenosine per kilogram body weight per minute, or less.
>
> **Claim 3**
> A method of **selectively vasodilating the arteries** of a human patient **without inducing significant venous dilation** and without pretreatment with dipyridamole, comprising continuously administering into the blood stream of said patient by intravenous administration about 0.05 milligrams to about 0.30 milligrams of adenosine per kilogram body weight per minute.
>
> **Claim 7**
> A method of **selectively vasodilating the arteries** of a human patient **without inducing significant venous dilation** and without pretreatment with dipyridamole, comprising continuously administering into the blood stream of said patient by intravenous administration about 0.01 milligrams to about 0.15 milligrams of adenosine per kilogram body weight per minute.
>
> **Claim 9**
> A method for **inducing a reduced afterload** in the vascular system of a human **without reducing the preload** and without pretreatment with dipyridamole, the method comprising continuously administering into the blood stream of said patient adenosine at a rate of administration of 0.35 milligrams of adenosine per kilogram body weight per minute, or less.

**B.** **The Plain And Ordinary Meaning Of The Disputed Claim Terms To A Person Of Skill Is Set Forth In The Specification**

Following the applicable precedent, the Court should construe the four disputed claim terms as a person of ordinary skill would understand them within the context of the entire patent, including the specification – not in a vacuum. The specification of the '296 patent explicitly defines each and every disputed claim term at issue here. As explained in the Declaration of Dr. Binkley, a person of ordinary skill in the art would understand these terms in the context of the patent to have the meaning described in the specification, which are the constructions proposed by Sicor.

The Court should also recognize the right of a patentee to act as his own lexicographer, just as Dr. Sollevi did with respect to several terms at issue here. *See Markman*, 52 F.3d at 980; *Teleflex*, 299 F.3d at 1325. Dr. Sollevi has provided his own definitions for the terms "cardiac pre-load" and "cardiac after-load" that differ from the meanings that persons of skill would otherwise understand for those terms. As the Federal Circuit has held, Dr. Sollevi's lexicography should govern. *See Phillips* at 1316; *SciMed*, 242 F.3d at 1343-44.

**1.** **Claims 1, 3, and 7**

**(a)** **"Selectively Vasodilating The Arteries" And "Without Inducing Significant Venous Dilation" Are Separate Claim Terms**

As a preliminary matter, the phrases "selectively vasodilating the arteries" and "without inducing significant venous dilation" are properly construed as two separate claim terms – not a single claim term, as urged by the plaintiffs. The patent, the asserted claims, and the specification itself treat these two claim terms as separate claim elements with distinct definitions (*see* col. 2, lines 39-42) for good reason, as explained below. To date, plaintiffs have

not identified any reason in the context of the patent for construing two claim terms as one. In fact, there is none.

First, the phrases "selectively vasodilating the arteries" and "without inducing significant venous dilation" are properly treated as separate claim terms because these terms represent two distinct physiological responses to vasodilators. As discussed above, vasodilators are a class of compounds that dilate blood vessels (*e.g.*, veins and arteries), and different types of vasodilators may dilate either veins or arteries, or both (Binkley Decl. at ¶ 16). Therefore, and on a factual level, these two terms refer to separate phenomena.

Second, a person of ordinary skill in the art in 1985 would understand that vasodilators may differ in their effects on arteries and veins, and would further understand that the effects on arteries and veins are considered separately. Conversely, persons of skill in the art would not understand the claim terms "selectively vasodilating the arteries" and "without inducing significant venous dilation" to refer to a single event, and instead would view these claim terms as representing independent effects of vasodilators (*id.* at ¶ 25).

Finally, as discussed in more detail below, the inventor included specific language in the '296 patent specification that describes the vasodilatory effect of adenosine on arteries as distinct from its effect on veins. Therefore, to preserve the clarity of its claim construction analysis, as well as to follow the "all elements rule" set forth by the Supreme Court in *Warner Jenkinson,* 520 U.S. at 29, the Court should construe these two claim elements separately and not combine them, as plaintiffs urge.

> **(b)     Selectively Vasodilating The Arteries**

The first claim term at issue is "selectively vasodilating the arteries," which is recited in asserted claims 1, 3, and 7. The specification of the '296 patent states as follows:

> [A]denosine has been found to have the following characteristics . . . .

> It has selective vasodilation activity . . . . That is, its activity is limited to dilation of arteries . . .

*See* col. 2, lines 37-41. The specification thus defines the phrase "selectively vasodilating the arteries" to mean "dilating only arteries and not veins," given that the physiological effects of adenosine are "limited to dilation of arteries."

This definition makes sense in the context of the '296 patent. As noted above, a person of ordinary skill would understand that there are different types of vasodilators. Some vasodilators dilate arteries, some dilate veins, and some dilate both arteries and veins to the same extent. Still other vasodilators may dilate both arteries and veins substantially, but to a different degree. By the use of term "***selectively*** vasodilating the arteries," the inventor is indicating a preferential vasodilation. Taken alone, however, the term "selectively" does not indicate the nature or degree of preferential vasodilation, but that additional information is provided in the specification of the '296 patent. In the context of the patent, a person of ordinary skill would understand that adenosine dilates ***only arteries*** (Binkley Decl. at ¶ 27). The support for this construction is evident from the inventor's inclusion of the term "limited to" in the specification to define the nature and scope of the preferential vasodilatory effect of adenosine (*id.*). Accordingly, the term "selectively vasodilating the arteries" should be construed by the Court to mean, in accordance with the '296 patent specification, "dilates arteries, not veins."

Ignoring the express language in the '296 patent specification, plaintiffs base their proffered construction on general dictionary definitions. In their proposed claim construction for the term "selective," plaintiffs cite Webster's Third New International Dictionary of the English Language (1961) ("Webster's dictionary"), a general usage dictionary that was published over twenty years before the filing of the first application in the '296 patent chain. This dictionary does not define "selective" in the context of medicine or pharmaceuticals, let alone in the context

of vasodilators. Rather, Webster's dictionary simply sets forth examples that consist of arbitrary quotations. For example, plaintiffs cite sentences in which the term "selective" is used to describe the habits of retail buyers, the action of dyes, and the severity of monetary controls (*see* Joint Stmt. at 1-2).

The dictionary definition proffered by plaintiffs is inapposite extrinsic evidence that cannot be used to undermine the plain language of the '296 patent specification cited by Sicor. As discussed above, the Federal Circuit permits use of extrinsic evidence only when a Court has exhausted all the preferred means of construing claims. In this case, the specification has plainly defined each of the terms in dispute in the context of his alleged invention, and the plaintiffs' citation of general dictionary definitions is a disingenuous attempt to muddy the waters. The Federal Circuit's view is quite clear: "[w]hen the specification explains and defines a term used in the claims, without ambiguity or incompleteness, there is no need to search further for the meaning of the term." *Multiform Desiccants*, 133 F.3d at 1478 (exhorting courts to "exercise caution lest dictionary definitions . . . be converted into technical terms of art having legal, not linguistic, significance").

### (c)    <u>Without Inducing Significant Venous Dilation</u>

The phrase "without inducing significant venous dilation" is recited in asserted claims 1, 3, and 7. The specification states as follows:

> [A]denosine has been found to have the following characteristics . . . .
>
> That is, its activity is limited to dilation of arteries and it has little or no effect . . . as a dilator of veins.

*See* col. 2, lines 37-42. The phrase "has little or no effect on veins" is preceded in the specification by the phrase "[Adenosine's] activity is **limited to dilation of arteries** . . . " (*see id.*)

(emphasis added). Thus, the specification plainly states not only that the activity of adenosine is limited to dilation of arteries, but also that this activity does not include dilation of veins.

A person of ordinary skill would understand the term "significant" in the context of its use in the phrase "without inducing significant venous dilation" – not in a vacuum. As noted by Dr. Binkley, the term "significant" can have various meanings within the field of cardiology, including clinical significance, physiological significance, and statistical significance (Binkley Decl. at ¶ 30). However, in the context of the '296 patent specification, a person of ordinary skill in the art would understand the term "significant" to mean detectable. As used in the phrase "without significant venous dilation," the term "significant" is used to compare, in a living human patient, a detectable effect on arterial dilation to a lack of effect on venous dilation (*id.* at ¶ 31).

The phrase "without inducing significant venous dilation" should be thus construed to mean that "veins are not dilated to any extent that is detectable by conventional means." This construction is the plain and ordinary meaning that would be accorded to this phrase by a person of ordinary skill in the art in the context of the specification. Persons of skill in the art would understand that the occurrence of venous dilation would be determined inferentially by observing a change in right atrial pressure following adenosine administration, which would indicate that a decrease in venous resistance and an associated decrease in venous pressure had occurred (*id.* at ¶¶ 19, 31). As Dr. Binkley confirms, a person of ordinary skill in the art in 1985 would have understood that any venous dilation is not significant if it could not be detected by the pressure measurements that were used to detect venous dilation (*id.* at ¶ 31).

Plaintiffs cite the same 1961 Webster's dictionary in support of its proffered construction of the term "significant" – and once again ignore the clear directive of the Federal Circuit against

the use of general usage dictionary definitions as a primary tool for claim construction.  This time, plaintiffs cite a dictionary quote from former President Franklin D. Roosevelt in which the term "significant" is used in a manner that is wholly irrelevant to the art to which the claims are directed.  President Roosevelt cannot be considered a person of ordinary skill in the art in this case, and his use of the term "significant" is immaterial at best.

Nothing could be more different than the constructions of the word "significant" proffered by the two parties.  In their proposed constructions, Sicor relies upon the patent specification, while plaintiffs can only cite to Webster's dictionary.  Among their many proffered definitions for "significant," the plaintiffs have proposed that this term be construed to mean "weighty" or "notable" (*see* Joint Stmt. at 2).  However, these constructions are not consistent with the specification, the claims, or the understanding of a person of ordinary skill in the art.  For example, if the term "without inducing significant venous dilation" were construed to mean "without inducing weighty venous dilation," this construction would be in direct conflict with the use of "without inducing significant venous dilation" in the '296 patent specification as referring to "little or no" venous dilation (col. 2, lines 40-42).  Venous dilation that is not "weighty" may still be quite substantial, which is very different from "little or no" venous dilation.  The clear language of the specification does not allow for plaintiffs' construction, and the Court cannot permit a general dictionary meaning to trump the '296 patent specification.  Therefore, the Court should adopt Sicor's proposed claim construction.

2. **Claim 9**

(a) **"Inducing a Reduced Afterload" And "Without Reducing the Preload" Are Separate Claim Terms**

The phrases "inducing a reduced afterload" and "without reducing the preload" should be also construed as two separate phrases, in spite of plaintiffs' suggestions to the contrary.  Again,

the patent, the claims, and the specification treat these two phrases as separate claim elements with different definitions (*see* col. 2, lines 39-42).  Moreover, while a person of ordinary skill would understand that the concepts of afterload and preload are interrelated, such person would view afterload and preload as two independent physiological concepts (Binkley Decl. at ¶ 33).  Accordingly, a person of ordinary skill would not consider the terms "inducing a reduced afterload" and "without reducing the preload" to refer to a single event, but instead would view them as describing two separate occurrences (*id.*).  Accordingly, the Court should construe these two claim elements separately and in accordance with the "all elements rule" set forth by the Supreme Court.

**(b)    Inducing A Reduced Afterload**

The phrase "inducing a reduced afterload" is recited in asserted claim 9.  The specification of the '296 patent states as follows:

> [A]denosine has been found to have the following characteristics . . . .
>
> It has selective vasodilation activity, in that its effect is limited to cardiac after-load effect.  That is, its activity is limited to dilation of arteries . . .

*See* col. 2, lines 37-41.  Notably, through the use of the limiting phrase "in that its," the specification equates "afterload effect" with "selective vasodilation activity."  And as discussed above, "selective vasodilation activity" is properly construed in view of the specification to mean that the activity of adenosine is limited to dilation of arteries.

In this instance, the inventor has acted as his own lexicographer.  A person of ordinary skill in the art would have no choice but to look to the specification for the meaning of the term "afterload," because even today the term "afterload" is a concept that does not have a universal definition among persons of skill in the art (Binkley Decl. at ¶ 34).  As discussed by Dr. Binkley, the term "afterload" is generally considered to be a somewhat subjective term that is a product of

16

various hemodynamic parameters (*id.*).  For example, determination of afterload is a complex process that may be estimated by measuring systemic arterial resistance and related hemodynamic parameters, or calculated somewhat more accurately by measuring the aortic input impedance spectrum and characteristic impedance of the aorta (*id.*).

However, for purposes of the '296 patent, Dr. Sollevi defined the phrase "inducing a reduced afterload" to be limited in scope to selective arterial dilation.  As the patentee, Dr. Sollevi may act as his own lexicographer and define a claim term in a manner that differs from the meaning it would otherwise possess, so long as he does so clearly and unambiguously.  *See Phillips*, 415 F.3d at 1316; *see also Markman*, 52 F.3d at 980; *Teleflex*, 299 F.3d at 1325.  Dr. Sollevi has done so, and thus the definition used by Dr. Sollevi should govern here.  Therefore, the Court should construe the phrase "inducing a reduced afterload" to mean "limited to dilation of arteries," as the inventor did in the '296 specification.

### (c)    Without Reducing The Preload

The phrase "without reducing the preload" is also recited in asserted claim 9.  The specification states as follows:

> [A]denosine has been found to have the following characteristics . . . .
>
> That is, its activity is limited to dilation of arteries and it has little or no effect on cardiac preload, *i.e.*, as a dilator of veins.

*See* col. 2, lines 37-42.  This sentence includes the phase "*i.e.*," an abbreviation for the Latin phrase *id est*, which is translated to "that is" in English.  The inclusion of this limiting phrase in the specification means that the specification has defined the phrase "without reducing the preload" as limited to a lack of effect as a dilator of veins.  In fact, a person of ordinary skill in the art would be forced to look to the specification for the meaning of the term "preload," given that the term "preload" has been and still is regarded by persons of ordinary skill in the art as a

17

concept that does not have a universal definition (Binkley Decl. at ¶ 39).[3]  As discussed by Dr.

Binkley, the term "preload" is generally considered to be a somewhat subjective term that can

have several accepted definitions in the scientific community (*id.*).

Howver, Dr. Sollevi has chosen to define the phrase "without reducing the preload" to be

limited in nature and scope to a lack of venous dilation.  As the patentee, Dr. Sollevi may act as

his own lexicographer, even when he chooses to define a claim term in a manner that differs

from the meaning it would otherwise possess.  The definition used by Dr. Sollevi should govern

here, and the Court should construe the phrase "without reducing the preload" to mean "little or

no effect as a dilator of veins."

## C.     Plaintiffs Are Not Entitled To Proffer Claim Construction

Until August 8, 2006, plaintiffs failed to identify to Sicor any terms in any of the asserted

claims of the '296 patent that should be construed, let alone proffer constructions of those terms.

However, during a recent meet-and-confer between the parties, Sicor was advised that plaintiffs

would propose constructions in the Parties' Joint Statement for claim terms that Sicor previously

identified as requiring construction.

Plaintiffs' time to proffer proposed constructions of any terms in the '296 patent –

including those terms previously identified by Sicor – has come and gone.  Pursuant to the

Scheduling Order issued by the Court, the parties were required to "exchange list of those terms

that they believe need construction and their proposed construction of those terms" by March 17,

---

[3]     *See also* Jeffrey D. Hosenpud & Barry H. Greenberg, <u>Congestive Heart Failure</u>, 69 (2d ed., 2000)
("Hosenpud," attached to the Binkley Decl. at Tab 5).  Hosenpud states (emphasis added):

The term *preload* is intimately linked to the Frank-Starling concept, although no exact definition of preload is
universally accepted.  Most authorities define preload as the actual sarcomere stretch that exists at the end of
diastole.  However, others define preload as the force that causes this sarcomere stretch. ***The difference in
definition can lead to real discrepancies in the concept of preload.***

2006 (*see* 10/12/05 Scheduling Order, ¶ 5).[4]  However, in their statement served on Sicor pursuant to this order, plaintiffs stated that they "d[id] not believe that any claim construction was required for the asserted claims of the '296 patent" (*see* 3/27/06 Pl. Stmt. at 1).

Sicor will be unfairly prejudiced if plaintiffs are permitted now to propose their own construction of the disputed terms.  As the Court knows, claim construction is a prelude to the Court's assessment of patent infringement as well as patent validity.  *See Markman*, 52 F.3d at 976; *Seachange*, 413 F.3d at 1381; *Teleflex*, 299 F.3d at 1333-34; *Microstrategy*, 410 F. Supp. 2d at 363-365.  The parties have already exchanged two rounds of expert reports addressing infringement and validity, and plaintiffs have had the benefit of considering Sicor's proposed constructions in connection with each round.  In contrast, Sicor has not ever had the option of addressing any construction proffered by the plaintiffs, given that plaintiffs failed to supplement their claim construction statements.  If this Court were to adopt the constructions proffered by plaintiffs, Sicor's previously served expert reports might not address all relevant issues raised by those last-minute constructions.

Plaintiffs' attempt to introduce an eleventh-hour claim construction cannot stand, and the Court should not consider plaintiffs' proffered construction as part of its *Markman* analysis.

## V.    **CONCLUSION**

For the foregoing reasons, Sicor respectfully requests that the Court adopt its proposed construction of the relevant terms of the '296 patent.

---

[4]    The parties subsequently agreed to exchange lists of identified claim terms and the corresponding constructions of those terms on March 27, 2006.

Respectfully submitted,


Dated: August 23, 2006         */s/ Karen E. Keller*             
Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT & TAYLOR
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
kkeller@ycst.com

Of Counsel:
David M. Hashmall, P.C. (admitted *pro hac vice*)
Annemarie Hassett (admitted *pro hac vice*)
GOODWIN PROCTER LLP
599 Lexington Avenue
New York, NY 10022
(212) 813-8800

*Attorneys for Defendants Sicor Inc. and Sicor Pharmaceuticals, Inc.*

20

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on August 23, 2006, I

caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the

Court using CM/ECF, which will send notification that such filing is available for viewing and downloading

to the following counsel of record:

Paul M. Lukoff, Esquire       Richard K. Herrmann, Esquire
David E. Brand, Esquire       Morris James Hitchens & Williams
Prickett Jones & Elliot, P.A.       222 Delaware Avenue, 10th Floor
1310 King Street       P.O. Box 2306
P.O. Box 1328       Wilmington, DE 19899-2306
Wilmington, DE 19899

I further certify that on August 23, 2006, I caused copies of the foregoing document to be

served by hand delivery on the above-listed counsel and on the following in the manner indicated:

**BY E-MAIL ON AUGUST 23, 2006 AND**
**FEDERAL EXPRESS ON AUGUST 24, 2006**

Charles E. Lipsey, Esquire
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA  20190-5675

John Scheibeler, Esquire
WHITE & CASE, LLP
1155 Avenue of the Americas
New York, NY 10036

Susan H. Griffen, Esquire
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
901 New York Avenue, N.W.
Washington,  DC 20001-4413

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Karen E. Keller
Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801
(302) 571-6600
kkeller@ycst.com

*Attorneys for Defendants*