IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ITEM DEVELOPMENT AB,<br>ASTELLAS US LLC, and<br>ASTELLAS PHARMA US, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>SICOR INC. and<br>SICOR PHARMACEUTICALS, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.: 05-0336-SLR<br>)<br>)<br>)<br>)<br>)<br>) |

## **PLAINTIFFS' OPPOSITION BRIEF ON CLAIM CONSTRUCTION**

Richard K. Herrmann #405
MORRIS JAMES HITCHENS & WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801
(302) 888-6800
rherrmann@morrisjames.com

Charles E. Lipsey
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190-5675
(571) 203-2700

Susan H. Griffen
David P. Frazier
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
901 New York Avenue
Washington, D.C. 20001-4413
(202) 408-4000

*Attorneys for Plaintiffs
Astellas US LLC and
Astellas Pharma US, Inc.*

Paul M Lukoff #96
David E. Brand #201
PRICKETT JONES & ELLIOTT, P.A.
1310 King Street
Wilmington, DE 19801
(302) 888-6520
pmlukoff@prickett.com
debrand@prickett.com

John Scheibeler
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY  10036
(212) 819-8200

*Attorneys for Plaintiff
Item Development AB*

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT........................................................................................................................2

      A.      Sicor's Proposed Constructions Would Improperly Render Parts of the Patent Claims Superfluous................................................................................2

      B.      Sicor's Proposed Constructions Improperly Ignore the Context of the Disputed Terms..................................................................................................4

      C.      Sicor Improperly Relies on the Declaration of Dr. Binkley to Contradict Intrinsic Evidence of the Ordinary Meaning of the Terms in the '296 Patent ...................................................................................................7

      D.      Dictionary Definitions of Common Words In the Patent Claims Provide Objective Evidence that the Plaintiffs' Ordinary Meaning Claim Construction Is Correct .............................................................................11

      E.      Sicor Cannot Rightly Claim Prejudice Based on a Scheduling Order to Which It Agreed by Stipulation ...........................................................................13

III. CONCLUSION.................................................................................................................15

## TABLE OF AUTHORITIES

## FEDERAL CASES

*Asyst Techs., Inc. v. Emtrak, Inc.*,
  402 F.3d 1188 (Fed. Cir. 2005).....................................................................................2

*Atofina v. Great Lakes Chemical Corp.*,
  441 F.3d 991 (Fed. Cir. 2006)....................................................................................12

*Biagro W. Sales, Inc. v. Grow More, Inc.*,
  423 F.3d 1296 (Fed. Cir. 2005).................................................................................7, 8

*Bicon, Inc. v. The Straumann Co.*,
  441 F.3d 945 (Fed. Cir. 2006).....................................................................................3

*Gen. Am. Transp. Corp. v. Cryo-Trans, Inc.*,
  93 F.3d 766 (Fed. Cir. 1996).......................................................................................3

*K-2 Corp. v. Salomon S.A.*,
  191 F.3d 1356 (Fed. Cir 1999)....................................................................................6

*Network Commerce, Inc. v. Microsoft Corp.*,
  422 F.3d 1353 (Fed. Cir. 2005).................................................................................7, 8

*Nystrom v. TREX, Co.*,
  424 F.3d 1136 (Fed. Cir. 2005)..................................................................................12

*Ormco Corp. v. Align Tech., Inc.*,
  No. 05-1426, 2006 WL 2493245 (Fed. Cir. 2006) ...................................................12

*Pfizer, Inc. v. Teva Pharms. USA, Inc.*,
  429 F.3d 1364 (Fed. Cir. 2005)..................................................................................12

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005), *cert. denied*, 126 S. Ct. 1332 (2006)................8, 11

*Union Carbide Chem. & Plastics Tech. Corp. v. Shell Oil Co.*,
  308 F.3d 1167 (Fed. Cir. 2002).................................................................................5, 6

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996)...................................................................................12

*Warner-Jenkinson, Co. v. Hilton Davis Chem. Co.*,
  520 U.S. 17 (1997)......................................................................................................2

I.   **INTRODUCTION**

Like mythological Janus, Sicor's Opening Claim Construction brief has two faces--one that intones unassailable principles of claim construction law and one that urges the Court to adopt a construction that would ignore those principles. Sicor cites the fundamental principle that "each element of a claim is material to defining a claim's scope," yet proposes constructions that would render certain claim terms utterly superfluous. Sicor quotes the Federal Circuit's mandate that claims must be read "in the context of the entire patent," but urges the Court to construe two parts of the same phrase separately, rather than as a single coherent term. Moreover, Sicor recites the black-letter principle that extrinsic evidence "cannot undermine the claim construction that is compelled by the 'intrinsic evidence,'" but asks the Court to adopt constructions based on unsupported "expert" opinion offered by declaration. Apparently recognizing that its proposed claim constructions are contrary to law, Sicor also offers a specious procedural argument that the Court should ignore the ordinary meaning of the relevant terms as set forth by Item and Astellas in the Joint Claim Construction Statement and instead adopt Sicor's constructions regardless of their legal merit.

This Court should decline Sicor's invitation to ignore the law in construing the patent claims. As set forth in Item and Astellas' Opening Brief, the relevant terms in U.S. Patent No. 5,731,296 (filed Sep. 24, 1985) (hereinafter "the '296 Patent") can be construed according to their ordinary meaning, based on the intrinsic record and the words and context of the claim terms themselves without rendering any terms superfluous.

Sicor would have the Court construe the asserted claims of the '296 Patent to require *only* arterial dilation without inducing any venous dilation whatsoever. It is apparently Sicor's attempt to avoid a finding of infringement by forcing plaintiffs to show that absolutely no venous dilation occurs when adenosine is administered. This is peculiar because not one expert for

Sicor has alleged noninfringement on the ground that administration of Sicor's product would cause some venous dilation nor has Sicor offered expert opinions on invalidity that depend on its extreme claim construction. It is even more peculiar because the disputed term in claims 1, 3, and 7 explicitly recites selective dilation of arteries without inducing "***significant***" venous dilation and by its own words recognizes that some venous dilation may occur. Moreover, even Sicor acknowledges that the term "without reducing preload" in claim 9 refers to having "***little*** or no effect as a dilator of veins."

Accordingly, this Court should reject Sicor's proposed claim constructions and adopt the ordinary meaning of the disputed terms set forth by Item and Astellas in the Joint Claim Construction Statement.

## II.   ARGUMENT

### A.   Sicor's Proposed Constructions Would Improperly Render Parts of the Patent Claims Superfluous

Sicor's constructions of the two disputed claim terms, "*selectively vasodilating the arteries . . . without inducing significant venous dilation*" and "*inducing a reduced afterload . . . without reducing the preload*" should be rejected because they would render words in the patent claims superfluous. Sicor acknowledges the principle that each element of a claim is material to that claim's scope.[1] *See* Sicor's Opening Brief (D.I. 101) at 8-9. Yet its construction violates this principle and renders part of each claim superfluous. The Federal Circuit has explained that

---

[1]   Although Sicor properly refers to the fundamental premise, acknowledged by the Supreme Court in *Warner-Jenkinson, Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17 (1997) that each element of a claim is considered material, Sicor's further references to the "all elements rule" (*See, e.g.,* Sicor's Opening Brief (D.I. 101) at 8, 11, 16) are inapposite and reflect a fundamental misunderstanding of the separate legal doctrines of claim construction and infringement under the doctrine of equivalents. *See, e.g., Asyst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005) ("[T]he 'all elements rule' provides that the doctrine of equivalents does not apply if applying the doctrine would vitiate an entire claim limitation.").

2

such a claim construction cannot be correct. *Bicon, Inc. v. The Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) ("[C]laims are interpreted with an eye toward giving effect to all terms in the claim."); *see also Gen. Am. Transp. Corp. v. Cryo-Trans, Inc.*, 93 F.3d 766, 770 (Fed. Cir. 1996) ("We therefore reject the district court's claim construction, which was inconsistent with the specification and drawings and rendered superfluous the claim requirement for openings adjacent to the end walls.").

Sicor asserts that "selectively vasodilating the arteries" means "dilating only arteries and not veins" (D.I. 101 at 12), yet it also asserts that "without inducing significant venous dilation" should be construed to mean "veins are not dilated to any extent that is detectable by conventional means." *Id.* at 14. Clearly, if in the context of claims 1, 3, and 7, the mere reference to "selectively vasodilating the arteries" was meant to describe both the qualitative preference for arteries over veins and the quantitative *degree* of selectivity for one versus the other, there would be no need for the phrase "without inducing significant venous dilation." Yet both phrases are included in the claim term and neither may be construed as "merely superfluous." Thus, the proper construction of claims 1, 3, and 7 must acknowledge that "without inducing significant venous dilation" describes the degree of the preferential or "selective" vasodilation.

Similarly, Sicor's construction of "inducing a reduced afterload" must be rejected on grounds that it renders the phrase "without reducing the preload" superfluous. According to Sicor "inducing a reduced afterload" means "limited to dilation of arteries" and "without reducing the preload" means having "little or no effect as a dilator of veins." *Id.* at 17-18. Yet there would be no need to further define the method as having "*little* or no effect as a dilator of veins" if "inducing a reduced afterload" itself meant "*no effect* as a dilator of veins."

3

### B. Sicor's Proposed Constructions Improperly Ignore the Context of the Disputed Terms

A major point of dispute between the parties is Sicor's insistence that the two disputed terms be broken in half and each half construed without reference to the other. *See* D.I. 101 at 10-11, 15-16. Thus, Sicor urges that the phrase *"selectively vasodilating the arteries of a human patient without inducing significant venous dilation"* in claims 1, 3, and 7 should be construed so that the meaning of "selectively vasodilating the arteries" is determined independently from the meaning of "without inducing significant venous dilation." Sicor further argues that the phrase *"inducing a reduced afterload in the vascular system of a human without reducing the preload"* in claim 9 should be construed so that "inducing a reduced afterload" is addressed separately from "without reducing the preload."

Sicor's constructions improperly ignore the context of the relevant claim terms and would lead to absurd results. Moreover, even Sicor's Opening Brief acknowledges that Federal Circuit law mandates that claims should be construed in context. *See id.* at 5 ("[T]he Federal Circuit has stressed that persons of ordinary skill do not read claims in a vacuum, but rather 'in the context of the entire patent, including the specification.'"). The context of the disputed term in claims 1, 3, and 7 clearly shows that "without inducing significant venous dilation" is meant to modify and explain "selectively vasodilating the arteries." Likewise, "without reducing the preload" is meant to modify and explain the term "inducing a reduced afterload." In both cases, it would defy logic to pretend that the two terms were not part of a single phrase.

Indeed, in addition to rendering terms superfluous, as discussed above, Sicor's proposed constructions are internally inconsistent, suggesting that the first part of the disputed term, "selectively vasodilating the arteries," means "dilating only arteries," but that the second part of the term, "without inducing significant venous dilation," means "the veins are not dilated to any

4

extent that is detectable by conventional means." *See* Joint Claim Construction Statement (D.I. 96) at 1. It makes no sense to suggest that the first part of a phrase demands vasodilation of only arteries and not veins, but that the second part of the same phrase allows dilation of veins, provided such dilation is not detectable. The same inconsistency exists in Sicor's construction of claim 9, where Sicor urges that "inducing a reduced afterload" means the "activity of adenosine is limited to dilation of arteries" as opposed to veins, but the second part of the same phrase, "without reducing the preload," means "adenosine has little or no effect as a dilator of veins." It defies logic to suggest that the same claim requires both *no* venous dilation and *little* or no venous dilation. Clearly, what is meant in the patent is that the method of claim 9 involves vasodilation of the arteries with *little* or no effect as a dilator of veins.

      The Federal Circuit upheld this Court's unified construction of a similar two-part phrase concerning the use of a catalyst containing "an efficiency-enhancing amount . . . of a mixture of [salts]." *See Union Carbide Chem. & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1179-80 (Fed. Cir. 2002). In *Union Carbide,* the patentee argued that the phrase "an efficiency-enhancing amount" referred only to the catalyst itself not the salt mixture. *Id.* at 1179. However, the Federal Circuit held that "the district court properly construed the claim term 'an efficiency-enhancing amount . . . of a mixture of [salts]' to mean that the salts themselves must enhance the efficiency of the catalyst." *Id.* at 1180. The court went on to explain that "where the claim language is unambiguous on its face, as it is here, 'our consideration of the rest of the intrinsic evidence is restricted to determining if a deviation from the clear language of the claims is specified.'" *Id.*

      In the case of the '296 Patent, the claim language is clear that the methods of claims 1, 3, and 7 involve selectively vasodilating the arteries while avoiding inducing significant venous

5

dilation. To read the two terms without reference to one another, as Sicor urges, would contravene Federal Circuit precedent. *See id.*; *see also K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1363 (Fed. Cir 1999) (adopting the "more natural" claim construction that recognized the complementary nature of the terms in a disputed clause).[2] Likewise, the method of claim 9 clearly and unambiguously requires "inducing a reduced afterload . . . without reducing the preload" and to read and interpret only half the phrase would be error.

Relying on the declaration of its expert, Dr. Phillip Binkley, Sicor argues that the terms "selectively vasodilating the arteries" and "without inducing significant venous dilation" should be treated separately because the terms "represent two distinct physiological responses to vasodilators." *See* D.I. 101 at 11. Sicor makes an identical argument with respect to "inducing a reduced afterload" and "without reducing the preload." *Id.* at 15-16. But Sicor's arguments miss the point. The relevant question is not whether dilating arteries and dilating veins are different physiological effects; nor is it relevant whether, as Sicor asserts, "a person of ordinary skill would not consider the terms 'inducing a reduced afterload' and 'without reducing the preload' to refer to a single event." *Id.* at 16. The relevant question is how these terms are used in the patent claims and specification to characterize the claimed methods of treating patients. In that context, as discussed above, it is clear that the second of each pair of terms is meant to modify and explain the first. Such contextual meaning cannot be ignored in construing the proper scope of the claim. *Union Carbide Chem.*, 308 F.3d at 1179-80.

Although it admits that the term "selectively," taken alone, "does not indicate the nature or degree of preferential vasodilation," Sicor refuses to acknowledge that the phrase "without significant venous dilation" provides precisely that missing information. Instead, it cites

---

[2] Plaintiffs discussed *K-2 v. Salomon* in more detail in their opening brief. *See* Plaintiffs' Opening Brief (D.I. 99) at 17.

6

Dr. Binkley's unsupported opinion that one would understand that "selectively vasodilating arteries" means that adenosine dilates *only arteries,* not veins. See D.I. 101 at 12. Under such circumstances, the Court must credit the context and language of the claims themselves, not contradictory extrinsic expert testimony. See *Biagro W. Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296, 1303-04 (Fed. Cir. 2005) (rejecting claim construction relying heavily on expert declarations that did not conform to the patent and the claim language); *Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1361 (Fed. Cir. 2005) ("[E]xpert testimony at odds with the intrinsic evidence must be disregarded.").

### C. Sicor Improperly Relies on the Declaration of Dr. Binkley to Contradict Intrinsic Evidence of the Ordinary Meaning of the Terms in the '296 Patent

Sicor asserts that "[t]he specification of the '296 Patent explicitly defines each and every disputed claim term" (D.I. 101 at 10) and that "the Court need look no further than the intrinsic evidence--the language in the patent itself--to construe these four terms properly" (*Id.* at 3). Yet Sicor's claim constructions are based on opinions provided in the declaration of Dr. Binkley, not the intrinsic record. Sicor's only nod to intrinsic evidence is to cite, using a series of creatively edited quotations, from a few lines in column 2 of the '296 Patent. While the discussion in column 2, when read together with the patent claims, the remainder of the specification, and the prosecution history may be useful in understanding the meaning of the disputed terms, Sicor offers only the bare opinions of Dr. Binkley to interpret and reinterpret the same few lines of the patent specification, without regard to the substantial contrary evidence in the intrinsic record.

The Federal Circuit has warned that, although expert testimony can be useful for various purposes, "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court," and the Court should "discount any expert testimony 'that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and

7

the prosecution history." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) (*en banc*) (quoting *Key Pharms v. Hercon Lab Corp.*, 161 F.3d 709 (1998)), *cert. denied*, 126 S. Ct. 1332 (2006); *accord Biagro W. Sales, Inc.*, 423 F.3d at 1303-04; *Network Commerce, Inc.*, 422 F.3d at 1361 ("[E]xpert testimony at odds with the intrinsic evidence must be disregarded."). Dr. Binkley's declaration offers numerous unsupported conclusory opinions purporting to describe how one of ordinary skill would understand the disputed terms in the '296 Patent claims. Yet those opinions squarely contradict the use of the terms in the patent specification and claims, as well as the file history.

For example, Dr. Binkley opines, with respect to claims 1, 3, and 7, that "a person of ordinary skill would understand that the specification of the '296 Patent had defined the phrase 'selectively vasodilating the arteries' to mean that adenosine dilates only arteries, and does not dilate veins." D.I. 101, Exh. 4 at ¶ 27. But the patent specification contains no such definition. To the contrary, the patent claims, which are part of the specification, explicitly refer to a "method of selectively vasodilating the arteries of a human patient **without inducing *significant venous dilation***." Col. 22, claims 1, 3, and 7 (emphasis added). Thus, Dr. Binkley's opinion that "selectively vasodilating the arteries" means that adenosine dilates *only* arteries is flatly contradicted by the claims themselves.

Furthermore, the portion of the specification that Dr. Binkley cites in support of his opinion, in fact, contradicts it.[3] While Dr. Binkley quotes column 2 of the '296 Patent specification to read that adenosine "has selective vasodilation activity . . . That is, its activity is

---

[3] Dr. Binkley and Sicor edit the same few lines in column 2 of the '296 Patent no less than four different ways in an attempt to twist the words of the patent into a form that supports their strained construction. *See* D.I. 101 at 11-12, 13, 16, and 17; *see also* D.I. 101, Exh. 4 at ¶¶ 27, 29, 35, and 40.

limited to dilation of arteries," (D.I. 101, Exh. 4 at ¶ 27), the relevant portion of the patent specification actually reads:

> It has selective vasodilation activity, in that its effect is limited to a cardiac after-load effect. That is, its activity is limited to dilation of arteries **and it has little or no effect on cardiac pre-load, i.e. as a dilator of veins**.

'296 Patent, col.2 l.39-42 (emphasis added). Thus, even the portion of the patent specification relied on by Dr. Binkley explicitly acknowledges the possibility of some venous dilation and in no way suggests that the phrase "selectively vasodilating the arteries" means, as Dr. Binkley opines, "that adenosine therefore *does not* also dilate veins." *See* D.I. 101, Exh. 4 at ¶ 27 (emphasis added).

Dr. Binkley's other opinions on the disputed claim terms are similarly flawed. While Dr. Binkley opines that "[i]n the context of the patent specification . . . a person of ordinary skill in the art in 1985 would understand the term 'significant' to mean 'detectable,' given that the term 'significant' is used to compare a measurable effect on arterial dilation to the lack of an effect on venous dilation" (*Id.* at ¶31), his opinion ignores and contradicts the other uses of the word "significant" in the patent specification. *See, e.g.,* D.I. 99 at 19. In particular, Dr. Binkley ignores that the patent specification refers to infusion of adenosine "at rates which do not induce significant hypotension" ('296 Patent col.11 l.26-28) when describing infusion at a dose of adenosine that induces a detectable decrease in mean arterial blood pressure of "approximately 10%." *Id.* col.11 l.65 to col.12 l.1. Thus, the patent specification does not use the term "significant" only to distinguish detectable from undetectable effects. Instead, the term is used

9

according to its common everyday meaning and Dr. Binkley's opinion conflicts with the intrinsic record.[4]

Dr. Binkley also opines that, in claim 9 of the '296 Patent, "the phrase 'inducing a reduced afterload' would be understood by a person of ordinary skill the art [sic] in the context of the '296 Patent to mean 'limited to dilation of arteries.'" D.I. 101, Exh. 4 at ¶ 38  Yet that opinion is also directly contradicted by the specification, which explains that some vasodilators, such as sodium nitroprusside, reduce *both* afterload and preload (i.e., significantly dilate both arteries and veins).[5]  *See* '296 Patent col.12 l.54-56.  Thus, merely noting that a vasodilator induces a reduced afterload (because it dilates arteries) does not provide sufficient information to know whether that vasodilator's activity is "limited to dilation of arteries."  Such a vasodilator might also dilate veins (either significantly or insignificantly).

This concept was also explained in the prosecution history, in which the applicant noted that when both the veins and the arteries are dilated, both preload and afterload are reduced.  *See* D.I. 100, Exh. 17 at 10.  Thus, the intrinsic record contradicts Dr. Binkley's opinion that the phrase "inducing a reduced afterload," by itself, means dilation is limited to the arteries.

Dr. Binkley's opinion concerning the phrase "without reducing the preload," in claim 9, is also contrary to the intrinsic record.  Referring again to column 2 of the '296 Patent, Dr.

---

[4]     Although Sicor criticizes Item and Astellas for citing a general purpose dictionary as an objective source for the common meaning of "significant" (*See, e.g.,* D.I. 101 at 15), Dr. Binkley offers no objective evidence for his litigation-driven definition of the term.  The objectivity of Dr. Binkley's opinions is particularly suspect in view of contradictions in his declaration.  For example, the Technical Background portion of Dr. Binkley's declaration refers to the prior art vasodilator, hydralazine, as dilating "mainly" arteries and arterioles (*See* D.I. 101, Exh. 4 at ¶ 16), but in the context of interpreting the patent claims, the declaration states that "other vasodilators (e.g., hydralazine) dilate *only* arteries, with no detectable venous dilation" (*See id.* at ¶ 25, emphasis added).

[5]     Dr. Binkley's own declaration also acknowledges that "nitroprusside dilates both arteries and veins."  *Id.* at ¶ 16.

10

Binkley acknowledges that the phrase is explained by the statement that adenosine's "activity is limited to dilation of arteries and it has little or no effect on cardiac preload, *i.e.,* as a dilator of veins." D.I. 101, Exh. 4 at ¶ 40. Dr. Binkley then ignores that explanation in the specification and reaches the bald conclusion that one of ordinary skill in the art would understand the phrase to mean "that adenosine does not dilate veins in a manner that can be detected or inferred by conventional means." *Id*. at ¶ 42. Nothing in the cited portion of column 2 or elsewhere in the patent itself suggests that "little or no effect on cardiac preload" should be interpreted as not causing "detectable" dilation of veins. Indeed, Dr. Binkley's opinion even differs from Sicor's own proposed construction of the term to mean "little or no effect as a dilator of veins." *See* D.I. 101 at 18. Dr. Binkley's insertion of "detectability" as the standard for judging the magnitude of a preload effect is simply a bare conclusory opinion of the type that the Federal Circuit has singled out as particularly unhelpful in the claim construction process. *See Phillips*, 415 F.3d at 1318. Furthermore, as discussed above, Dr. Binkley's opinions lead to claim constructions that render some terms superfluous and that are internally inconsistent.

What is most remarkable about Sicor's advocating for the Court to adopt claim constructions based on Dr. Binkley's opinions is that Sicor's own brief quotes Federal Circuit precedent mandating that the Court must not. In particular, Sicor quotes from *Phillips* to note that "extrinsic evidence consisting of expert reports and testimony is generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence." D.I. 101 at 6 (quoting *Phillips*, 415 F.3d at 1318).

### D. Dictionary Definitions of Common Words In the Patent Claims Provide Objective Evidence that the Plaintiffs' Ordinary Meaning Claim Construction Is Correct

Sicor directs heavy criticism against Item and Astellas for referring to general purpose dictionary definitions as an objective source for the ordinary meaning of the terms "selective"

11

and "significant." *See* D.I. 101 at 12-13, 14-15. Despite this criticism, however, Sicor also acknowledges that "Judges are free to consult dictionaries . . . in order to better understand the underlying technology and may rely on dictionary definitions when construing claim terms, *so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents.*" *Id.* at 7 (emphasis in original)[6] (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 n.6 (Fed. Cir. 1996). Furthermore, the Federal Circuit continues to acknowledge the useful role of general purpose and technical dictionaries in claim construction in its post-*Phillips* decisions. For example, relying on its statement in *Phillips* that general purpose dictionaries may be helpful "where the meaning of a claim term is readily apparent" and "claim construction involves 'little more than the application of the widely accepted meaning of commonly understood words,'" the Federal Circuit recently relied on a general dictionary definition of the word "geometry" to construe a claim in which that term was used in connection with dental appliances. *Ormco Corp. v. Align Tech., Inc.*, No. 05-1426, 2006 WL 2493245, 5 n.5 (Fed. Cir. 2006) (Exhibit 30); *see also Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1375 (Fed. Cir. 2005) ("Contrary to Ranbaxy's assertions, the district court did not err by referencing dictionary definitions of 'saccharides.'"); *see also Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991, 996 (Fed. Cir. 2006) (approving of this Court's reliance on scientific and technical dictionaries to construe the ordinary meaning of the term "catalyst.")

Dictionary definitions are a useful resource where, as here, those definitions provide an objective statement of the ordinary meaning of a common term fully consistent with its use in the intrinsic record. Sicor cites *Nystrom v. TREX, Co.*, 424 F.3d 1136, 1144-45 (Fed. Cir. 2005), for the proposition that a court may not use a dictionary definition to enlarge the scope of the claim

---

[6] The quotation in Sicor's brief omits certain words from the original text. However, Item and Astellas agree with the premise of Sicor's excerpt.

12

beyond the meaning revealed by the intrinsic evidence. *See* D.I. 101 at 8. But apart from an unsupported opinion by Dr. Binkley on the meaning of "significant," Sicor offers no evidence that either term, "significant" or "selectively," has a meaning in the patent claims that would be "enlarged" by the cited dictionary definitions. Indeed, Sicor's discussion of the term "selectively" acknowledges that it refers to preferential vasodilation, but that, taken alone, it does not indicate the nature or degree of that preference. *See id.* at 12. Item and Astellas drew a similar conclusion based on the dictionary definition of "selective," which reads "of, relating to, or characterized by selection: selecting or tending to select." *See Webster's Third New International Dictionary of the English Language Unabridged*, Volume III, S to Z, 2058 (Encyclopedia Britannica, Inc. 1981). As set forth in the Plaintiffs' Opening Brief, that definition "confirms that the ordinary meaning of the word [selective] connotes a preference or tendency rather than an all or nothing choice." D.I. 99 at 18. Similarly, Plaintiffs' Opening Brief made clear that the dictionary definition of "significant" is completely consistent with meaning of the term based on its numerous uses in the patent specification. *Id.* at 19. Thus, the Court is free to rely on the dictionary definitions of "selective" and "significant" as further objective evidence--along with the claims, the patent specification, and the prosecution history--of the ordinary meaning of the disputed claim terms in the '296 Patent.

### E. Sicor Cannot Rightly Claim Prejudice Based on a Scheduling Order to Which It Agreed by Stipulation

Having agreed and stipulated to the timing of events set forth in the Court's Scheduling Order, Sicor's argument that it has been prejudiced by the way those events unfolded is disingenuous at best. Sicor asserts that "[u]ntil August 8, 2006, plaintiffs failed to identify to Sicor any terms in any of the claims of the '296 Patent that should be construed, let alone proffer constructions of those terms." D.I. 101 at 18. Yet Sicor must acknowledge that, pursuant to the

13

Scheduling Order, prior to the preparation of the Joint Claim Construction Statement, the parties were only required to "exchange lists of those claim terms that they believe[d] need[ed] construction and their proposed claim construction of those terms." D.I. 27 at ¶5. Since only Sicor believed that the terms now at issue needed construction, only Sicor listed those terms and proposed constructions. Notably, Sicor itself has not sought construction of any other terms in the '296 Patent. Sicor cannot reasonably have thought that merely because it believed certain terms required construction and the Plaintiffs did not, that the Court would adopt Sicor's proposed constructions without further input or argument from the Plaintiffs.

At the crux of their argument, Sicor seems to be complaining of the length of time that elapsed between the initial identification of terms for construction and the preparation of the Joint Claim Construction Statement. Yet Sicor and the Plaintiffs jointly developed the schedule that determined the time between those events and Sicor agreed to it by stipulation. It would be unfair and highly prejudicial to Item and Astellas to allow Sicor to rewrite that stipulation now by reading-in obligations that were not part of the parties' agreement or the original Order. Moreover, Sicor never approached Astellas or Item about preparing the Joint Claim Construction Statement at an earlier date when any purported "prejudice" could have been avoided, nor did Sicor ask either Astellas or Item to amplify on their understanding of the ordinary meaning of the disputed terms prior to the preparation of the Joint Claim Construction Statement.

Sicor also argues that it will be prejudiced because it prepared its expert reports prior to having the benefit of Item and Astellas's understanding of the ordinary meaning of the disputed claim terms. Again, Sicor stipulated to the Scheduling Order, which places the timing of the preparation of the Joint Claim Construction Statement after the initial exchange of expert reports. In addition, Sicor fails to mention that Item and Astellas served detailed contentions and an

14

expert report on the issue of infringement, both of which made clear that Item and Astellas were not acquiescing in Sicor's strained constructions.  *See* Plaintiffs' Final Infringement Contentions Regarding U.S. Patent No. 5,731,296 (Exhibit 31) at 14-16; Expert Statement of Barry L. Zaret, M.D. (D.I. 100, Exh. 2) at 20-23, 26-31.  Sicor never responded to Plaintiffs' expert's report on infringement.  Indeed, Sicor's claims of prejudice ring hollow given that it did not even provide expert testimony that depended on *its own* claim construction for either noninfringement or invalidity issues.  In addition, Sicor neglects to mention that, by stipulation of the parties, Sicor was allowed to submit rebuttal reports on issues of secondary indicia of non-obviousness well after the submission of the Joint Claim Construction Statement and service of the parties' opening briefs on claim construction.

Sicor's complaints of prejudice should be rejected as nothing more than a strategic effort to prevent Item and Astellas from disputing Sicor's claim constructions, which are not defensible under Federal Circuit law.

## III.  CONCLUSION

For the reasons set forth above, the Court should adopt the constructions set forth by Item and Astellas in the Joint Claim Construction Statement.

| | |
|---|---|
| /s/ Richard K. Herrmann | /s/ Paul M. Lukoff |
| Richard K. Herrmann #405 | Paul M Lukoff #96 |
| MORRIS JAMES HITCHENS & WILLIAMS LLP | David E. Brand #201 |
| 222 Delaware Avenue, 10th Floor | PRICKETT JONES & ELLIOTT, P.A. |
| Wilmington, DE 19801 | 1310 King Street |
| (302) 888-6800 | Wilmington, DE 19801 |
| rherrmann@morrisjames.com | (302) 888-6520 |
| | pmlukoff@prickett.com |
| Charles E. Lipsey | debrand@prickett.com |
| FINNEGAN, HENDERSON, FARABOW, | |
|   GARRETT & DUNNER, LLP | John Scheibeler |
| Two Freedom Square | WHITE & CASE LLP |
| 11955 Freedom Drive | 1155 Avenue of the Americas |
| Reston, VA 20190-5675 | New York, NY 10036 |
| (571) 203-2700 | (212) 819-8200 |
| | |
| Susan H. Griffen | *Attorneys for Plaintiff* |
| David P. Frazier | *Item Development AB* |
| FINNEGAN, HENDERSON, FARABOW, | |
|   GARRETT & DUNNER, LLP | |
| 901 New York Avenue | |
| Washington, D.C. 20001-4413 | |
| (202) 408-4000 | |
| | |
| *Attorneys for Plaintiffs* | |
| *Astellas US LLC and* | |
| *Astellas Pharma US, Inc.* | |

Dated: September 8, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of September, 2006, I electronically filed the foregoing document, **PLAINTIFFS' OPPOSITION BRIEF ON CLAIM CONSTRUCTION**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Paul M. Lukoff
David E. Brand
Prickett, Jones & Elliott, P.A.
1310 King Street
Wilmington, DE  19801

Josy W. Ingersoll
John W. Shaw
Karen E. Keller
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

Additionally, I hereby certify that on the 8th day of September, 2006, the foregoing document was served via email and hand delivery on the above counsel and via email and federal express on the following non-registered participants:

John Scheibeler
White & Case, LLP
1155 Avenue of the Americas
New York, NY  10036
212.819.8830
jscheibeler@whitecase.com

Annemarie Hassett
Goodwin Procter LLP
599 Lexington Avenue
New York, NY 10022
212.813.8800
ahassett@goodwinprocter.com

/s/ Richard K. Herrmann
Richard K. Herrmann #405
MORRIS JAMES HITCHENS & WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801
(302) 888-6800
rherrmann@morrisjames.com

17