IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ITEM DEVELOPMENT AB, ASTELLAS US LLC, and ASTELLAS PHARMA US, INC.<br><br>Plaintiffs,<br><br>v.<br><br>SICOR INC. and SICOR PHARMACEUTICALS, INC.,<br><br>Defendants. | Civil Action No. 05-336 SLR |

### SICOR'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

YOUNG CONAWAY STARGATT &
  TAYLOR, LLP
Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
kkeller@ycst.com

Of Counsel:

GOODWIN PROCTER LLP
David M. Hashmall, P.C. (admitted *pro hac vice*)
Annemarie Hassett (admitted *pro hac vice*)
599 Lexington Avenue
New York, NY 10022
(212) 813-8800

*Attorneys for Defendants Sicor Inc. and Sicor Pharmaceuticals, Inc.*

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT........................................................................................................................4

    A. The Claim Elements To Be Construed ................................................................4

    B. Sicor's Constructions Rely On The Intrinsic Evidence And The Understanding Of A Person of Skill In the Art....................................................5

        1. Selectively Vasodilating The Arteries .......................................................6

        2. Without Inducing Significant Venous Dilation .........................................8

        3. Inducing A Reduced Afterload ..................................................................9

        4. Without Reducing the Preload ................................................................10

    C. Plaintiffs Are Not Entitled To Proffer Claim Construction..................................11

III. CONCLUSION..................................................................................................................12

# TABLE OF AUTHORITIES

Page

*Nystrom v. TREX Co.*,
   424 F.3d 1136 (Fed. Cir. 2005) ................................................................................ 8

*Old Town Canoe Co. v. Confluence Holding Corp.*,
   448 F.3d 1309 (Fed. Cir. 2006) ................................................................... 2, 4, 6, 8

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ........................................................ 1, 4, 5, 6, 8, 11

*Warner Jenkinson Co. v. Hilton Davis Chemical Co.*,
   520 U.S. 17 (1997) .................................................................................................. 6

I.  **INTRODUCTION**

As set forth in Sicor's Opening Brief on Claim Construction, four claim elements from the asserted claims require construction: "selectively vasodilating the arteries," "without inducing significant venous dilation," "inducing a reduced afterload," and "without reducing the preload."

In Plaintiffs' Opening Brief on Claim Construction ("Plaintiffs' Br.") Plaintiffs acknowledge, as they must, that patent claims "'must be read in view of the specification, of which they are part' and that the specification remains 'the single best guide to the meaning of a disputed term.'" Plaintiffs' Br. (D.I. 99) at 22 (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005)). While paying lip service to this basic tenet of claim construction jurisprudence, Plaintiffs proceed to ignore it in favor of proposed constructions derived from general purpose dictionaries that fly in the face of the intrinsic evidence. *See* Plaintiffs' Br. (D.I. 99) at 17-18. By contrast, Sicor does more than merely acknowledge the controlling claim construction principles, Sicor applies them to arrive at claim constructions that are consistent with the specification and the other intrinsic evidence.

The significant portion of the patent specification is not in dispute. The specification of the '296 patent states that adenosine "has selective vasodilation activity, in that its effect is limited to a cardiac after-load effect. That is, its activity is limited to dilation of arteries and it has little or no effect on cardiac pre-load, i.e., as a dilator of veins." '296 patent, col. 2, lines 39-42. Plaintiffs appear to agree with Sicor that this portion of the specification is significant. *See* Plaintiffs' Br. (D.I. 99) at 4.

Where the parties differ on claim construction is whether this key portion of the specification is a guide to the meaning of the disputed claim terms, as in the case of Sicor's proposed constructions, or merely a departure point from which proposed constructions are

cherry-picked. For example, Plaintiffs' proposed constructions ignore the phrase "limited to," even though the specification explicitly states that adenosine's effect is "**limited to** a cardiac after-load effect," that is, it is "**limited to** dilation of arteries" (emphasis added). *See* Plaintiffs' Br. (D.I. 99) at 3, 5. This omission is telling, because in the context of the specification and the claims, the phrase "limited to" indicates that the vasodilator action of adenosine falls on one end of a spectrum of vasodilators: it dilates only arteries, and not both arteries and veins, or only veins. Plaintiffs' method of incorporating the convenient language from the specification and discarding the rest leads to proposed constructions that contradict the plain meaning supported by the intrinsic evidence and are incorrect as a matter of Federal Circuit law. *See Old Town Canoe Co. v. Confluence Holding Corp.*, 448 F.3d 1309, 1316 (Fed. Cir. 2006) (court may look to various sources in claim construction "as long as those sources are not used to contradict claim meaning that is unambiguous in light of the intrinsic evidence.").

Plaintiffs assert that the prosecution history supports their proposed claim constructions. Sicor agrees that under Federal Circuit authority the prosecution history is a relevant source that can be used in claim construction to understand how the patentee and the Patent Examiner understood the invention. *See Phillips*, 415 F.3d at 1317 ("prosecution history can often inform the meaning of the claim language by demonstrating how an inventor understood the invention . . .") (citations omitted). The problem for Plaintiffs is that the prosecution history actually supports Sicor's proposed constructions, not Plaintiffs'. For example, in a response after rejection of claims during prosecution, the patentee stated to the United States Patent and Trademark Office ("PTO") that, in the instance of arterial dilation:

> since the veins are not dilated, the preload is unaffected. The
> arteries are dilated, which represents a reduced afterload. Since
> preload is unaffected and afterload is reduced, cardiac output is

> increased. *This mechanism represents how adenosine works in man when infused according to the invention.*

*See* November 18, 1996 First Submission After Final Rejection, Plaintiffs' Ex. 17 (D.I. 100) at 10-11 (emphasis in original). This statement shows that the patentee, like persons of skill in the art and like Sicor in its proposed constructions, regarded venous dilation and arterial dilation as two separate effects of vasodilators, and thus that in the case of adenosine each effect had to be described separately. Consistent with Sicor's proposed constructions, the patentee stated that, when adenosine is infused according to the invention, "veins are not dilated" and "arteries are dilated." *See id.*

The state of knowledge in the art at the time with respect to the effect of other known vasodilators such as nitroglycerine, sodium nitroprusside, and hydralizine is yet another point of agreement between the parties. As Dr. Binkley pointed out, and as Plaintiffs agree, certain vasodilators are arterial dilators, others are venous dilators, and still others have mixed effects. *See* Declaration of Philip F. Binkley, M.D., M.P.H. ("Binkley Decl.") (D.I. 101, Ex. D) at ¶ 16; Plaintiffs' Br. (D.I. 99) at 8-10. Once again, this fact supports Sicor's proposed constructions, not Plaintiffs'. Because vasodilators were known to differ in their effects on arteries and veins, it is not sufficient merely to state that a particular vasodilator has an effect on one type of vessel, such as veins. Knowing the possibilities, persons of skill in the art must be told more, i.e., whether the vasodilator also has an effect on arteries, and the extent of the effect on each type of blood vessel. Plaintiffs simply fail to draw the obvious conclusion from these facts – that arterial dilation and venous dilation are two different effects of the class of vasodilators and, in the context of the claims at issue, are two separate claim terms.

As set forth in more detail below and in Sicor's Opening Claim Construction Brief, because the intrinsic evidence supports Sicor's proposed construction, and because Plaintiffs'

proposed constructions are based on extrinsic evidence that contradicts the intrinsic record, this Court should adopt the constructions proposed by Sicor.

## II. ARGUMENT

### A. The Claim Elements To Be Construed

Claim construction analysis begins "with the words of the claim, which are generally given their ordinary and customary meaning." *See Old Town Canoe*, 448 F.3d at 1315 (citing *Phillips*, 415 F.3d at 1312-13). Moreover, as Plaintiffs acknowledge, "the claims themselves provide substantial guidance as to the meaning of particular claim terms" and "the context in which a term is used in the asserted claim can be highly instructive." *See* Plaintiffs' Br. (D.I. 99) at 16 (citing *Phillips*, 415 F.3d at 1314). Accordingly, the disputed terms should be considered in the context of the claims in which they appear:

### Claim 1

A method of **selectively vasodilating the arteries** of a human patient **without inducing significant venous dilation** and without pretreatment with dipyridamole, comprising continuously administering into the blood stream of said patient adenosine at a rate of administration of 0.35 milligrams of adenosine per kilogram body weight per minute, or less.[1]

### Claim 9

A method for **inducing a reduced afterload** in the vascular system of a human **without reducing the preload** and without pretreatment with dipyridamole, the method comprising continuously administering into the blood stream of said patient adenosine at a rate of administration of 0.35 milligrams of adenosine per kilogram body weight per minute, or less.

---

[1] Claims 3 and 7 also contain the highlighted language of claim 1.

When the claim language is considered in its entirety, as in Sicor's analysis, rather than merely as excerpted phrases with ellipses, as in Plaintiffs' analysis, it is clear that each of the highlighted portions is a separate element. It is further clear from the intrinsic evidence that those elements should be interpreted as proposed by Sicor.

### B. Sicor's Constructions Rely On The Intrinsic Evidence And The Understanding Of A Person of Skill In the Art

As reaffirmed by the Federal Circuit in *Phillips*, a patent specification is "the primary basis for construing the claims." *Phillips*, 415 F.3d at 1315 (citation omitted). In addition, "the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention during the course of prosecution . . . ." *Id.* at 1317. A court may also look to extrinsic evidence when construing claims, bearing in mind that "while extrinsic evidence 'can shed useful light on the relevant art,' . . . it is 'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Id.* (citations omitted).

Plaintiffs assert that the Court **must** also look at sources that include extrinsic evidence concerning the meaning of technical terms. *See* Plaintiffs' Br. (D.I. 99) at 15-16 (emphasis added). Plaintiffs are wrong. The portion of the *Phillips* decision on which Plaintiffs rely identifies sources that are available to assist with claim construction. In that same paragraph of the *Phillips* decision, the Federal Circuit states that "general purpose dictionaries **may** be helpful" in certain circumstances. 415 F.3d at 1314 (emphasis added). Therefore, while *Phillips* permits consideration of dictionary definitions, nothing in *Phillips* requires that the Court resort to dictionaries, particularly general usage dictionaries. By contrast, since *Phillips*, the Federal Circuit has taken care to warn that although courts may look to extrinsic evidence, they cannot

use it, as Plaintiffs ask this Court, "to contradict claim meaning that is unambiguous in light of the intrinsic evidence." *Old Town Canoe*, 448 F.3d at 1316.

### 1.   Selectively Vasodilating The Arteries

Plaintiffs assert that the combined elements "selectively vasodilating the arteries . . . without inducing significant venous dilation" refer "to a method of causing vasodilation characterized by selective action on arteries without inducing 'significant' (i.e., an 'important, weighty, or notable') vasodilation of veins." Plaintiffs' Br. (D.I. 99) at 3. This proposed construction is wrong for several reasons.

To begin, "selectively vasodilating the arteries" and "without inducing significant venous dilation" should be construed as two separate elements, each of which is material to defining the claim's scope. *See Warner Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 29 (1997). Tellingly, Plaintiffs' own description of the relevant technical background supports Sicor's position in this regard. As Plaintiffs acknowledge, vasodilators fall into different categories – those that are predominantly arterial vasodilators, those that are predominantly venodilators, and those that have mixed effects. Plaintiffs' Br. (D.I. 99) at 8. This point comports with Dr. Binkley's explanation of the effects of various vasodilators. *See* Binkley Decl. (D.I. 101, Ex. D) at ¶ 16. The point of contention between Plaintiffs and Sicor is the conclusion to be drawn from this state of knowledge in the art. The correct conclusion is, as Sicor maintains, that a person of ordinary skill in the art in 1985 would not consider the terms "selectively vasodilating the arteries" and "without inducing significant venous dilation" to be a single concept, and instead would view these terms as referring to two different actions of vasodilators. *See* Binkley Decl. (D.I. 101, Ex. D) at ¶ 23. Accordingly, the first element to be construed is "selectively vasodilating the arteries."

The proper construction of "selectively vasodilating the arteries", as it is used in claims 1, 3 and 7 of the '296 patent, reflects this state of knowledge in the art and focuses on one aspect of vasodilator action: "dilating only arteries and not veins." Sicor's construction is consistent with the specification's statement that adenosine "has selective vasodilation activity, in that its effect is limited to cardiac after-load effect. That is, its activity is limited to dilation of arteries . . . ." '296 patent, col. 2, lines 39-42.

Sicor's construction is also consistent with statements made by applicant during the prosecution of the '296 patent. In arguing for patentability, applicant asserted that none of the references cited during examination "show selective arterial dilation by adenosine." Plaintiffs' Ex. 17 at 8. Applicant then provided "a detailed discussion of the fundamental aspects of the invention and how the invention differs from the prior art." *Id.* Included in that "detailed discussion" is an explanation of venous dilation, venous and arterial dilation, and arterial dilation. *Id.* at 9-11. Under the heading "arterial dilation," applicant stated "in this instance, since veins are not dilated, the preload is unaffected. The arteries are dilated, which represents a reduced afterload." *Id.* at 10. Applicant further stated that "[t]his mechanism represents how adenosine works in man when infused according to the invention." *Id.* at 11. The same prosecution history document also expressly stated applicant's understanding of the claims of the '296 patent: "applicant is claiming a method for dilating the arteries and not the veins." *Id.* at 12.

Essentially ignoring the intrinsic evidence, Plaintiffs argue that construction of "selectively vasodilating the arteries" should be informed by a general purpose dictionary definition, and that, in light of that dictionary, the words "selective or "selectively" do not indicate an exclusive choice. Plaintiffs' Br. (D.I. 99) at 18. Plaintiffs have missed the point of

*Phillips* and its progeny with regard to the use of extrinsic evidence. Whether a general purpose dictionary defines "selectively" as "exclusively" is irrelevant to claim construction where the '296 patent specification states that the "selective vasodilation activity" of adenosine is "**limited to dilation of arteries,**" and where the other intrinsic evidence is consistent with that usage. *See* '296 patent, col. 2, lines 39-42 (emphasis added); *see also* Plaintiffs' Ex. 17. Plaintiffs' broader construction, based on dictionary definitions divorced from the specification, must be rejected. *See Old Town Canoe,* 448 F.3d at 1318; *see also Nystrom v. TREX Co.,* 424 F.3d 1136, 1145 (Fed. Cir. 2005).

### 2. Without Inducing Significant Venous Dilation

As discussed above, Plaintiffs argue that this limitation should be construed as part of the same limitation that includes "selectively vasodilating the arteries." Plaintiffs further contend that Sicor is reading one of the elements out of the claims by construing the two elements separately. In fact, the opposite is true. It is Plaintiffs' construction that effectively reads an element out of the claims by attempting to construe as one element two discrete claim elements that address two different physiological effects – arterial and venous dilation.

Sicor proposes that the element "without inducing significant venous dilation" should be construed as "veins are not dilated to any extent that is detectable by conventional means." This is the plain and ordinary meaning that would be accorded the phrase by a person of ordinary skill in the art, reading the claims in the context of the entire patent specification (*see* Binkley Decl. at ¶ 31), and it is consistent with the intrinsic evidence. As noted above, the '296 specification states that adenosine has little or no effect as a dilator of veins. '296 patent, col. 2, lines 39-42. In addition, during prosecution, applicant attempted to distinguish prior art by arguing that information and data in the prior art did not "teach or suggest that adenosine dilates the arteries and not the veins." Plaintiffs' Ex. 17 (D.I. 100) at 11.

As explained by Dr. Binkley, a person of skill in the art at the time would have understood "significant" in this context to mean "detectable," given that the term "significant" is used to compare a measurable effect on arterial dilation to the lack of an effect on venous dilation. *See* Binkley Decl. (D.I. 101, Ex. D) at ¶ 31. Sicor's proposed construction, that "veins are not dilated to any extent that is detectable by conventional means," expressly allows for the possibility of some undetectable amount of venous dilation, as appears to be contemplated by the specification, while remaining entirely consistent with the specification as a whole and the representations made by applicant to the PTO during prosecution.

Once again, and in contrast with Sicor's proposed construction, Plaintiffs propose a construction based on general purpose dictionary definitions divorced from any context. In doing so, Plaintiffs suggest that "significant" should be construed as "important, weighty, or notable." (*see* Plaintiffs' Br. (D.I. 99) at 3, 18-19), terms that have no meaning in the context of the patent or for that matter the relevant art, vasodilator action or cardiology. Plaintiffs then purport to explain how their construction of "significant" is consistent with use of the word in the specification. Plaintiffs' attempt fails because none of Plaintiffs' examples address the specifications' discussion of the level, if any, of venous dilation that results from adenosine infusion as described in the claims. Nor do any of Plaintiffs' examples shed any light on the proper construction of "significant" in the context of the patent claims. *See id.* at 19. Again, Plaintiffs' broader construction should be rejected because it relies on general purpose dictionary definitions that are contrary to the intrinsic evidence.

### 3. Inducing A Reduced Afterload

With respect to the disputed elements of claim 9, Plaintiffs again propose a construction of combined elements, this time combining "inducing a reduced afterload" with "without reducing the preload." *See* Plaintiffs' Br. (D.I. 99) at 4. And again, the claims, the specification,

and the file history reveal that these two phrases refer to discrete vasodilator actions and are separate claim elements with different definitions. *See, e.g.,* '296 patent col. 2, lines 39-42; Plaintiffs' Ex. 17 (D.I. 100). The intrinsic evidence is consistent with the way persons of skill in the art would view the terms afterload and preload: as two discrete physiological concepts. Binkley Decl. (D.I. 101, Ex. D) at ¶ 33.

Plaintiffs contend that the terms, as combined by Plaintiffs, should be construed as referring to a "method of causing vasodilation of the arteries with little or no effect as a dilator of veins." *See id.* This proposed construction ignores the language of the very portion of the specification on which Plaintiffs purport to rely. By contrast, Sicor's proposed construction of "inducing a reduced afterload" – that the activity of adenosine is limited to dilation of arteries – is entirely consistent with the specification, which states that adenosine

> has selective vasodilation activity, in that its effect is **limited to** a cardiac after-load effect. That is, **its activity is limited to dilation of arteries** and it has little or no effect on cardiac pre-load, i.e. as a dilator of veins.

'296 patent, col., 2, lines 39-42 (emphasis added). As discussed in Sicor's Opening Brief, this definitional portion of the specification is particularly important for construing the claim language concerning afterload because "afterload" does not have a universal definition among persons of skill in the art. *See* Sicor's Opening Brief (D.I. 101) at 16; Binkley Decl. (D.I. 101, Ex. D) at ¶ 34. It does, however, have a clear and unambiguous definition within the context of the '296 patent, and that definition must control construction of the defined term. *See Phillips*, 415 F.3d at 1316.

4. **Without Reducing the Preload**

The "without reducing the preload" element of claim 9 should be construed as having "little or no effect as a dilator of veins." Once again, Sicor's proposed construction is consistent

with the specification. In addition, as with the term "afterload," the term "preload" does not have a universal definition in the art. *See* Binkley Decl. (D.I. 101, Ex. D) at 39. Accordingly, the definition set forth in the specification, which is found in the statement that adenosine "has little or no effect on cardiac pre-load, *i.e.* as dilator of veins," should control.

Plaintiffs argue that Sicor's proposed construction of this element is inconsistent with Sicor's proposed construction of the element "inducing a reduced afterload." Plaintiffs are wrong. The two constructions are consistent because a person of skill in the art would understand that afterload and preload are two discrete physiological concepts, and would expect them to be addressed separately. Moreover, and more importantly for purposes of claim construction, Sicor's proposed constructions are taken directly from the portion of the specification that defines these two terms. *See* '296 patent, col. 2, lines 39-42. Where, as here, the patentee has acted as his own lexicographer, the patentee's lexicography governs. *See Phillips*, 415 F.3d at 1316.

### C. Plaintiffs Are Not Entitled To Proffer Claim Construction

In its Opening Brief Sicor asked this Court to disregard Plaintiffs' proposed constructions because, under the guise of relying on "ordinary meaning," Plaintiffs withheld their proposed constructions until the last minute. *See* Sicor's Opening Claim Construction Brief (D.I. 101) at 18-19. Sicor has been prejudiced by Plaintiffs' lack of timely disclosure, which deprived Sicor of the opportunity to have its experts take them into account when preparing their expert reports on invalidity and assessing and discussing the prior art.

Plaintiffs' Opening Brief confirms that Plaintiffs' proposed constructions are anything but "ordinary meaning" under Federal Circuit claim construction law. Instead, Plaintiffs have proposed "design around" constructions that undoubtedly were devised to implement Plaintiffs' litigation strategy, rather than to explicate the meaning of disputed claim terms in the context of

the '296 patent. Plaintiffs should not be allowed to use the cover of "ordinary meaning" to keep Sicor in the dark about the actual constructions that Plaintiffs would propose months after the deadline for exchanging proposed constructions. Plaintiffs' proposed constructions can and should be rejected on the merits. Plaintiffs' failure to act openly and engage fairly in the Court-ordered process for disclosure of proposed claim constructions, and its prejudice to Sicor, are further reasons to disregard Plaintiffs' proposed constructions.

## III. CONCLUSION

For the foregoing reasons, and for the reasons set forth in Sicor's Opening Claim Construction Brief, Sicor respectfully requests that the Court adopt its proposed construction of the relevant terms of the '296 patent.

Respectfully submitted,

Dated: September 8, 2006

*/s/ Karen E. Keller*
Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT &
  TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
kkeller@ycst.com

Of Counsel:
David M. Hashmall, P.C. (admitted *pro hac vice*)
Annemarie Hassett (admitted *pro hac vice*)
GOODWIN PROCTER LLP
599 Lexington Avenue
New York, NY 10022
(212) 813-8800

*Attorneys for Defendants Sicor Inc. and Sicor Pharmaceuticals, Inc.*

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on September 8, 2006, I caused a true and correct copy of the foregoing document to be served by hand on the following counsel of record:

Paul M. Lukoff, Esquire
David E. Brand, Esquire
Prickett Jones & Elliot, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE 19899

Richard K. Herrmann, Esquire
Morris James Hitchens & Williams
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE 19899-2306

I further certify that on September 8, 2006, I caused copies of the foregoing document to be on the following in the manner indicated:

### BY E-MAIL

Charles E. Lipsey, Esquire
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190-5675

John Scheibeler, Esquire
WHITE & CASE, LLP
1155 Avenue of the Americas
New York, NY 10036

Susan H. Griffen, Esquire
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
901 New York Avenue, N.W.
Washington, DC 20001-4413

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Karen E. Keller

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
kkeller@ycst.com

*Attorneys for Defendants*