Item and Astellas v. Sicor
Civil Action No.:  05-0336-SLR

# Exhibit 23

to PLAINTIFFS' OPENING BRIEF ON CLAIM CONSTRUCTION





# Webster's Third New International Dictionary

## OF THE ENGLISH LANGUAGE
## UNABRIDGED

*A Merriam-Webster*

REG. U.S. PAT. OFF.

## VOLUME III

## S to Z

### and Britannica World Language Dictionary



ENCYCLOPÆDIA BRITANNICA, INC.

*Chicago*

*Auckland, Geneva, London, Manila, Paris, Rome*
*Seoul, Sydney, Tokyo, Toronto*

COPYRIGHT © 1981 BY MERRIAM-WEBSTER INC.

PHILIPPINES COPYRIGHT 1981 BY MERRIAM-WEBSTER INC.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY
PRINCIPAL COPYRIGHT 1961

Library of Congress Cataloging in Publication Data
Main entry under title:

Webster's third new international dictionary of
the English language, unabridged.

Includes index.
1. English language—Dictionaries. I. Gove,
Philip Babcock, 1902–1972. II. G. & C. Merriam Company.
PE1625.W36      1981      423      81-16878
ISBN 0-87779-201-1 (blue Sturdite)
ISBN 0-87779-206-2 (imperial buckram)      AACR2

All rights reserved. No part of this work covered by the copyrights hereon may be
reproduced or copied in any form or by any means—graphic, electronic, or mechan-
ical, including photocopying, recording, taping, or information storage and retrieval
systems—without written permission of the publisher.

MADE IN THE UNITED STATES OF AMERICA
3738KP8584

Item and Astellas v. Sicor
Civil Action No.:  05-0336-SLR

# Exhibit 24

to PLAINTIFFS' OPENING BRIEF ON CLAIM CONSTRUCTION

signalize
2116
silence



# Webster's Third
# New International
# Dictionary

## OF THE ENGLISH LANGUAGE
## UNABRIDGED

*A Merriam-Webster*
REG. U.S. PAT. OFF.

## VOLUME III

# S to Z

### and Britannica World Language Dictionary



ENCYCLOPÆDIA BRITANNICA, INC.

*Chicago*
*Auckland, Geneva, London, Manila, Paris, Rome*
*Seoul, Sydney, Tokyo, Toronto*

COPYRIGHT © 1981 BY MERRIAM-WEBSTER INC.

PHILIPPINES COPYRIGHT 1981 BY MERRIAM-WEBSTER INC.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY
PRINCIPAL COPYRIGHT 1961

Library of Congress Cataloging in Publication Data
Main entry under title:

Webster's third new international dictionary of
the English language, unabridged.

Includes index.
1. English language—Dictionaries. I. Gove,
Philip Babcock, 1902–1972. II. G. & C. Merriam Company.
PE1625.W36      1981      423      81-16878
ISBN 0-87779-201-1 (blue Sturdite)
ISBN 0-87779-206-2 (imperial buckram)      AACR2

*All rights reserved. No part of this work covered by the copyrights hereon may be
reproduced or copied in any form or by any means—graphic, electronic, or mechan-
ical, including photocopying, recording, taping, or information storage and retrieval
systems—without written permission of the publisher.*

MADE IN THE UNITED STATES OF AMERICA

3738KP8584

Item and Astellas v. Sicor
Civil Action No.:  05-0336-SLR

# Exhibit 25

to PLAINTIFFS' OPENING BRIEF ON CLAIM CONSTRUCTION

1

1          IN THE UNITED STATES DISTRICT COURT

2          IN AND FOR THE DISTRICT OF DELAWARE

3                      - - -

4    ITEM DEVELOPMENT AB, ASTELLAS  :    CIVIL ACTION
     US LLC, and ASTELLAS PHARMA    :
5    US, INC.,                      :
               Plaintiff           :
6                                   :
                                    :
7          vs.                      :
                                    :
8    SICOR INC., SICOR              :
     PHARMACEUTICALS, INC., TEVA    :
9    PHARMACEUTICALS USA, INC.      :
     and TEVE PHARMACEUTICAL        :
10   INDUSTIRES, LTD.,              :
               Defendants          :    NO. 05-336 (SLR)
     --------------------------------:
11   KING PHARMACEUTICALS RESEARCH  :    CIVIL ACTION
     AND DEVELOPMENT, INC., ASTELLAS :
12   US LLC, and ASTELLAS PHARMA US, :
     INC.,                          :
13             Plaintiffs          :
                                    :
14         v.                       :
                                    :
15   SICOR INC., SICOR              :
     PHARMACEUTICALS, INC., TEVA    :
16   PHARMACEUTICALS USA, INC.      :
     and TEVA PHARMACEUTICAL        :
17   INDUSTRIES, LTD.,              :
               Defendants          :    NO. 05-337 (SLR)

18                     - - -

19
                            Wilmington, Delaware
20                          Thursday, December 8, 2005
                            4:30 o'clock, p.m.
21
                            - - -
22
     BEFORE:  HONORABLE SUE L. ROBINSON, Chief Judge
23
                            - - -
24
                            Valerie J. Gunning
25                          Official Court Reporter

2

APPEARANCES:

1

2          PRICKETT, JONES & ELLIOTT, P.A.
           BY:   PAUL M. LUKOFF, ESQ.
3

4                        -and-

5

6          WHITE & CASE
           BY:   JOHN SCHEIBELER, ESQ.
                 (New York, New York)
7

8                Counsel for Plaintiff
                 Item Development AB

9

10         CONNOLLY, BOVE, LODGE & HUTZ LLP
           BY:   PAUL E. CRAWFORD, ESQ.

11

12                       -and-

13         JONES DAY
           BY:   GASPER J. LaROSA, ESQ.
14               (New York, New York)

15               Counsel for Plaintiff
                 King Pharmaceuticals Research and
16               Development, Inc.,

17

18         MORRIS, JAMES, HITCHENS & WILLIAMS LLP
           BY:   RICHARD K. HERRMANN, ESQ. and
                 MARY B. MATTERER, ESQ.
19

20                       -and-

21

22         FINNEGAN HENDERSON FARABOW GARRETT & DUNNER LLP
           BY:   SUSAN HABERMAN GRIFFEN, ESQ. and
                 DAVID P. FRAZIER, ESQ.
23               (New York, New York)

24               Counsel for Plaintiff
                 Astellas US LLC and Atellas Pharma US, Inc.

25

3

```
1   APPEARANCES (Continued):

2           YOUNG, CONAWAY, STARGATT & TAYLOR LLP
            BY: JOHN W. SHAW, ESQ. and
3               KAREN KELLER, ESQ.

4
                        -and-
5
            GOODWIN PROCTER
6           BY:  ANNE HASSETT, ESQ. and
                 ANASTASIA FERNANDS, ESQ.
7
            Counsel for Defendants
8           Sicor, Inc. and Sicor Pharmaceuticals, Inc.

9                       - - -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

4

1

2                          P R O C E E D I N G S

3

4              (Proceedings commenced in the courtroom,

5    beginning at 4:30 p.m.)

6

7              THE COURT:  Good afternoon.

8              MR. LUKOFF:  Good afternoon, your Honor.  Paul

9    Lukoff, on behalf of Item Development.

10             I would like to introduce John Scheibeler from

11   White & Case in New York, the gentleman over there to the

12   left, who also represents Item Development.

13             THE COURT:  Thank you.

14             MR. CRAWFORD:  Good afternoon.  Your Honor.  I'd

15   like to introduce Gaspar LaRosa from the Jones Day firm, and

16   he will be representing King Pharmaceuticals Research &

17   Development.

18             THE COURT:  All right.  Thank you.

19             MR. HERRMANN:  Good afternoon, your Honor.

20             THE COURT:  Good afternoon.

21             MR. HERRMANN:  On behalf Astellas, you know

22   Mary Matterer from our office, and I'd like to introduce to

23   you Susan Griffen and David Frazier from the office of

24   Finnegan Henderson.

25             MS. GRIFFEN:   Good afternoon, your Honor.

1    MR. FRAZIER:  Good afternoon, your Honor.

2    THE COURT:  How are you?

3    Mr. Shaw?

4    MR. SHAW:  Good afternoon, your Honor.  I'd like

5 to introduce Anne Hassett and Anastasia Fernands from Goodwin

6 Procter, and Karen Heller from my office.

7    THE COURT:  Good afternoon.

8    I take it you have issues.  I generally start

9 with plaintiffs' counsel, unless you come up with a better

10 plan.  So we'll start with whatever issues plaintiff might

11 have and then go on.

12    MS. GRIFFEN:  Thank you, your Honor.  We have a

13 few issues today that we believe are ripe to ask you to come

14 to decisions on.

15    The first relates to preliminary contentions

16 regarding infringement and noninfringement.

17    We submit, your Honor, that Sicor is, without

18 permission of this Court, ignoring the provisions in your

19 October 6th scheduling order.

20    By way of background, in that scheduling order,

21 at Paragraph 2B-3, you ordered the parties to exchange

22 contentions without interrogatories with plaintiffs

23 proceeding first with their preliminary infringement

24 contentions and defendants following.

25    On October 28th, plaintiffs did produce their

1    preliminary infringement contentions limiting the number of

2    claims at issue with respect to each patent and including

3    claim charts within the aggregate span about 25 pages setting

4    forth their contentions.

5              Defendants in their answer have denied charges of

6    infringement in both counts of the complaint and for both

7    patents.  However, in the paper that defendants provided on

8    the dates set forth in the scheduling order for preliminary

9    noninfringement contentions, defendants merely stated at this

10   time, Sicor takes no position with respect to noninfringement

11   in this case.  And then they reserve the right to supplement,

12   amend or modify the statement later.

13             Your Honor, we submit that this filing is not in

14   keeping with what was intended with your order.  While we, of

15   course, do not dispute that they have the right to modify it

16   later, we believe that they should have taken a position at

17   this time and request that they be required to provide a

18   preliminary noninfringement position, adding dates set,

19   preferably some time next week, or in the alternative that

20   they be deemed to have admitted infringement of the claim

21   specified in plaintiffs' preliminary contentions.

22             THE COURT:  All right.  Thank you.

23             Let's take one issue at a time.  Let's hear from

24   counsel for Sicor.

25             MS. HASSETT:   Good afternoon, your Honor.  I am

1   Anne Hassett, speaking on behalf of Sicor.

2          Defendants believe that they have complied with

3   the Court's order in this respect.  The Court's order

4   provided, required that defendants disclose their

5   noninfringement contentions with respect to the asserted

6   claims.  The first time that the plaintiffs identified the

7   asserted claims was October 28th, and at that point, it was

8   the first time that defendants -- that defendants were sure

9   which claims were being asserted in the case and which were

10  not.

11          In our Paragraph 4 statement, in our detailed

12  statement provided to plaintiffs well before this case began,

13  we did identify noninfringement positions with respect to

14  some of the claims in the patents, but not all.  As it turns

15  out, the ones asserted against us were the claims for which

16  we had not identified noninfringement positions in the

17  Paragraph 4 statement or the detailed statement.

18          Plaintiffs, once plaintiffs identified which

19  claims they were asserting, defendants had been seriously

20  looking at and assessing the development of a noninfringement

21  position, but doing that requires some scientific analysis.

22  We are in the process of doing that analysis and assessment

23  and we will disclose a noninfringement position in the event

24  that it matures and as soon as it matures, and we are sure

25  that that will be substantially before the end of fact

1  discovery, well before the final infringement contention is

2  due on April 28th.

3          But we would just point out to the Court that we

4  began assessing the noninfringement position with respect to

5  the asserted claims as soon as we could.  It is a matter of

6  scientific analysis that takes some time.  And if in the

7  event we are able to develop it into a full-fledged position,

8  we may disclose it.

9          THE COURT:  All right.  Well, I've got two

10 questions.

11         Number one, you all came up with these dates and

12 this process, I didn't, and a contention is not a fully

13 developed position in my view.  I thought a contention was at

14 the time you're answering, what is your position.  Now, if a

15 contention is something other than that, then I would agree,

16 it's not like -- well, to me, what you are describing is

17 a request for admission or something.  A contention is

18 simply -- what is it that you believe now.

19         So the fact that you all came up with this by

20 agreement leads me to believe that it's inappropriate for you

21 to wait until April to come up with your contention as to

22 noninfringement of this claim.  I don't know what an

23 appropriate date is, but certainly well before April, and I

24 presume it should be some time before the -- you know, you

25 are going to expect the plaintiffs to respond to your

9

1  invalidity contentions.

2  So we will talk about dates at the end, but

3  you will have to produce something in the next month or two.

4  All right?

5  MS. HASSETT:  That's fine.  We think that's

6  reasonable, your Honor.

7  THE COURT:  All right.  Thank you.

8  And I usually wait to the end to come up with my

9  date certain to address everything so that I don't have 15

10  different dates floating around.

11  All right.  That's issue one.

12  MS. GRIFFEN:  Thank you, your Honor.

13  The second issue we would like to raise deals

14  with willfulness discovery.

15  Your Honor, again, we submit that Sicor is

16  disregarding your scheduling order.  Sicor has taken the

17  position with regard to willfulness discovery that the fact

18  that they have filed a motion asking the Court to rule that

19  willfulness is not a part of this case means that they can

20  object to producing any documents related to a willfulness

21  issue, including nonprivileged documents.

22  We submit, your Honor, that, again, this is just

23  an attempt to unilaterally grant themselves a stay of

24  discovery as they tried to do when we were bringing the

25  scheduling order to your Honor's attention.

1           So --

2           THE COURT:  Is there a date for willfulness

3    discovery?

4           MS. GRIFFEN:  There is no date supplied for

5    willfulness discovery, your Honor.  There's a date by which

6    Sicor needs to decide whether or not to waive its opinions of

7    counsel.

8           THE COURT:  And when is that?  I mean, I usually

9    don't --

10          MS. HASSETT:  It's January 21st, 2006, your

11   Honor.

12          THE COURT:  I don't usually make parties do

13   that.

14          It seems to me as though until that happens, that

15   there shouldn't be willfulness discovery.  I mean, I thought

16   that was the whole point of it, not to --

17          MS. GRIFFEN:  Your Honor, we are not specifically

18   addressing the opinions here.  What we're addressing are

19   Requests 12, 21, 22 and 23, which we have been talking to

20   Sicor's counsel about.  And those go to items such as their

21   first awareness of the patent, things that would not be the

22   opinion-of-counsel type of issue.  And for those, they have

23   objected based on a pending motion.

24          THE COURT:  All right.  All right.  Let's

25   hear from Ms. Hassett, if you are going to address this

1  again.

2          And while you are walking up here, let me say

3  that with 50 or 60 patent cases, however many we have pending

4  on each of our dockets, it is difficult to address motions

5  that are not grouped.  In other words, it's hard to get

6  my attention to this case, so you've got a motion pending,

7  but I can't promise you when I'm going to get to it.  And

8  unless there is -- since this is not addressing privileged

9  information, I guess I am curious as to why you should

10  not be addressing the discovery on willfulness at this

11  point.

12          MS. HASSETT:  Well, your Honor, the two reasons

13  that we -- one is the one that Ms. Griffen indicated to you,

14  which is our view is that it's inappropriate for there to be

15  willfulness discovery in this case because this is an ANDA

16  case.  It is about hypothetical infringement.  Neverthelesss,

17  I understand that we're not addressing the motion today and I

18  don't mean to be asking the Court to do that.

19          The second reason is that we understood the

20  Court's scheduling order setting February 21, 2006 as the

21  date to indicate whether we were relying on advice of counsel

22  to be essentially the date to decide whether there was going

23  to be a willfulness defense or a defense that would

24  address -- that would raise issues of willfulness in this

25  case.

1          And for that reason, we didn't think it was

2    appropriate for there to be discovery on any of these issues

3    before that date, and I would note that February 21, 2006 is

4    two months before the close of fact discovery, leaving

5    defendants in very good -- plaintiffs in a very good position

6    to take advantage of the willfulness discovery in the event

7    that it is, in fact, made relevant by the virtue of

8    defendants saying if the count claiming willfulness is

9    still in the case by defendants saying they're relying on

10   advice-of-counsel defense.

11          I don't think the question of when we were first

12   aware of the patent matters unless, in fact, we are relying

13   on advice of counsel.

14          THE COURT:  All right.  You have jogged my memory

15   about your motion, and it seems to me that that is an issue

16   that I should address.  I will try to move it to the top of

17   my pile.

18          So let me think about whether willfulness

19   discovery should wait.  If I decide that it should, however,

20   let me say that if willfulness discovery is going to go

21   forward by virtue of my either not deciding the motion by the

22   February date or by my deciding the motion adverse to you,

23   that on that date, whatever it is, February 21, that any

24   documents -- that you don't have 30 days after that to

25   respond to the discovery.

13

1              MS. HASSETT:  Yes.

2              THE COURT:  Your discovery would be due on that

3    date.

4              MS. HASSETT:  I think that is very reasonable,

5    your Honor.

6              THE COUR:  All right.

7              MS. HASSETT:  We're prepared to do that if the

8    Court's ruling makes that appropriate.

9              THE COURT:  All right.  Let's hear Issue 3.

10             MS. GRIFFEN:  Yes.  Thank you, your Honor.

11             We have a few other issues about scope of

12   discovery.

13             This case is about methods for using a

14   pharmaceutical agent called adenosine in connection with

15   myocardial perfusion imaging, which is looking at pictures of

16   the heart.

17             We are looking for discovery from Sicor for the

18   full extent to which Sicor is infringing or inducing

19   infringement of the asserted method claims of the '877

20   and '296 patents.

21             Sicor is resisting the scope of discovery

22   that we're looking for to the extent it goes beyond the

23   product mentioned in the specific ANDA 77425 that they

24   have filed.

25             In the case, your Honor, in the complaint,

1   we have two counts.  The first is a traditional hatch wax man

2   count to the infringement by filing the ANDA.

3               The second, your Honor, is a declaratory judgment

4   count for infringement.  It goes beyond that.

5               And we would submit that we are entitled to this

6   discovery at least under the second count in the case.

7               THE COURT:  All right.  Let's hear from counsel

8   again.

9               MS. HASSETT:  Your Honor, Sicor's response is

10  that this is an ANDA case about the product in ANDA 77425,

11  and we are prepared to provide discovery with respect to that

12  product, which is, in fact, not on the market.  It can't be

13  on the market until this case is resolved.

14              I think that what Ms. Griffen is referring to is

15  something that has been stated orally in conversations

16  concerning the discovery disputes but which does not appear

17  in the complaint.

18              I think she's referring to a concern that

19  Astellas has that a different product of Sicor's, which is

20  called Adenocard, which is not at issue in this litigation,

21  is not in the ANDA, that there is off-label use of that

22  product.

23              If and when plaintiffs bring that claim in the

24  complaint, Sicor is prepared to respond.  They have not

25  brought that claim.  That is not what the declaratory

1  judgment count is about.  It does not say anything about

2  Adenocard or off-label use.

3            So we don't think that the claim that Ms. Griffen

4  is referring to is in this case and therefore we don't think

5  it's appropriate for us to provide discovery about that.

6            THE COURT:  All right.  Thank you.

7            Ms. Griffen, would you please respond to that.

8            MS. GRIFFEN:  Yes, your Honor.  Ms. Hassett is

9  right in that the active ingredient adenosine is the same in

10 two products called Adenocard and Adenoscan by Astellas and

11 Adenocrd, which is a therapeutic product for treating heart

12 arrhythmias, went generic about a year and a half ago.  The

13 patents on that expired.  There are currently four generics

14 in that market.

15            And the patents at issue here, your Honor, are

16 not product patents; they are method patents.  And there are

17 entities out there, pharmacies, hospitals, doctors, clinics,

18 who are infringing these patents, and Astellas has been

19 proceeding against some of them.

20            In at least one instance we know that one of

21 those entities is using the Sicor product in a way that

22 infringes the patents.

23            This is an odd situation in that it's the same

24 active ingredient, and we believe that we are entitled to

25 know under our declaratory judgment count whether or not,

1    entitled -- I'm sorry.  We believe that we should be allowed
2    discovery in order to find out the scope of infringement that
3    could be occurring under these method claims.  This is not a
4    claim to a composition, but to a method, and we know that
5    Sicor has one act of infringement for the method from filing
6    their ANDA.
7            In addition to that, we received a letter from a
8    related company to Sicor that indicated that they were
9    bringing adenosine or contemplating importing adenosine into
10   the U.S., and they referenced the Adenoscan product, not the
11   Adenocard product, which leads us to believe that there could
12   be preparations that could be a substantial preparation
13   leading towards infringement with adenosine that Sicor could
14   be contemplating, and that letter is referenced in our
15   complaint.
16           THE COURT:  So I guess I need to hear what the
17   exact scope of your proposed discovery requests are so I can
18   figure out whether you're simply fishing around without a
19   good basis or whether what you seek truly is within the
20   reasonable scope of discovery.  As you all know, I'm a fairly
21   conservative judge when it comes to this, so I don't allow
22   fishing expeditions, generally.
23           MS. GRIFFEN:  We understand that, your Honor.
24   The '877 patent, your Honor, has claims that relate to the
25   use of adenosine in myocardial perfusion imaging, and the

1    requests we have asked are for activities at Sicor regarding

2    the use of adenosine in myocardial perfusion imaging.  And

3    we've asked for instances where they have marketed or

4    promoted adenosine for the use in myocardial perfusion

5    imaging.

6              The language in the '296 patent is slightly

7    different, and I believe that our requests subtract that

8    language.

9              THE COURT:  Do you put any limits on this

10   at all?  I mean, the limits that you put on it are

11   simply --

12             MS. GRIFFEN:  The language out of the claims

13   that we're asserting out of the patents, your Honor.

14             THE COUR:  Right.  But are you putting any

15   time limits?  I mean any other limits on what you're

16   seeking?

17             MS. GRIFFEN:  We would be glad to put time

18   limits on it, your Honor.  For the last three years would be

19   sufficient for us.

20             THE COURT:  And your good-faith basis for going

21   beyond what specifically mentioned is a letter that indicates

22   to you that Sicor might be contemplating something in the

23   future?

24             MS. GRIFFEN:  Two things, your Honor.  First, the

25   letter that they sent us asking if there were any process

1    patents of which they should be aware because they were

2    intending to import adenosine for the same use as scanned,

3    the product that is the subject of this lawsuit.

4              And, secondly --

5              THE COURT:  And your response to that letter was

6    what?

7              MS. GRIFFEN:  It was included as a part of the

8    complaint in this lawsuit, your Honor.  It's referenced in

9    the complaint.

10             Shortly after we received this letter, within, I

11   believe it was two weeks or so, a few weeks, the Paragraph 4

12   certification came in, so the response was this lawsuit.

13             THE COURT:  All right.

14             MS. GRIFFEN:  I do not believe, your Honor, there

15   was an additional correspondence before that.

16             THE COURT:  And is that the basis?

17             MS. GRIFFEN:  That, your Honor, and the knowledge

18   that there is use of Sicor's product out in the field in ways

19   that infringe.

20             THE COURT:  But your discovery request is

21   general.  It's not focused on the knowledge you have at this

22   point?  In other words, it does not go to the ways -- your

23   discovery doesn't go to the specific ways in the field that

24   you believe there is infringement yet.  It's just a general

25   question.

1          Tell us how you infringe basically is what you

2    are asking.

3          MS. GRIFFEN:  It was asking for the -- for

4    example, for the marketing materials, any documents

5    evidencing marketing discussions that are used in the field

6    with the adenosine product.

7          As to Sicor, your Honor, this would be an

8    inducement case, inducing infringement under the method

9    claims.

10          THE COURT:  All right.  Let me hear one more time

11    from Ms. Hassett.

12          MS. HASSETT:  Your Honor, I'd like to read to

13    you -- our position is that Count 2 for declaratory judgment

14    does not relate to the Adenocard product.  It does not make

15    any of the allegations that Ms. Griffen has made orally in

16    conversations with us on the discovery.

17          Count 2 reads as follows: "Paragraph 33. Upon

18    information and belief, defendants have acted in concert and

19    made substantial preparations for Sicor Pharma to sell

20    adenosine injection U.S.P., labeled for the same indications

21    and the same dosage and method of use as the Adenoscan

22    product sold by Astellas."

23          That is referring to the product that is the ANDA

24    product.  The Adenocard product is not labeled for the same

25    indications and dosage and method of use as the Adenoscan

1    product.  It is for a different use.  It is a PSVT use.  It

2    is used to control cardiac arrhythmias where the heart is

3    beating too fast.

4              Adenoscan is for a different use.  It is for the

5    use of adenosine as a vasodilator in connection with

6    myocardial perfusion imaging, a completely different

7    product.

8              We don't agree that Count 2 makes -- supports any

9    of the allegations that Ms. Griffen has now said orally, and

10   that is why we don't believe the discovery requests relating

11   to Adenocard, a different product, not the subject of ANDA

12   77425, is at issue here.

13             Paragraph 34, continuing on in Count 2, says that

14   upon further information and belief, defendants further

15   intend that Sicor Pharma will commence the sale of adenosine

16   injection U.S.P. immediately upon receiving approval from the

17   FDA.

18             That can't relate to Adenocard.  We already have

19   approval to sell the Adenocard and we are.  It has nothing to

20   do with the ANDA that is the subject of this case.

21             THE COURT:  All right.  So let me make sure I

22   understand the problem.

23             Is the problem according to Sicor that the

24   complaint isn't sufficiently broad to justify the scope of

25   discovery so that if plaintiffs amended the complaint, that

1   would satisfy the situation you find yourself in?  I mean, is

2   that what we're talking about?

3              MS. HASSETT:  I think, your Honor, if we

4   see a complaint that makes the allegations that Ms. Griffen

5   says are the ones her client has, if it's done by Amended

6   Complaint, then we'll respond to those at that point.

7   We just don't think it's in this complaint.

8              THE COURT:  All right.  Anything further,

9   Ms. Griffen, on that point?

10              MS. GRIFFEN:  On that point, your Honor, we would

11   just like to add that our position and the position we would

12   like to discover, the fear that my client has is that Sicor

13   is trying to prime the pump to create a market for its

14   product once it comes on the market using this incredibly

15   similar product, and that that would be yet an act that we

16   should be able to discover.  It could be relevant to the

17   commercial success that they think they may achieve.  It

18   could be relevant to the commercial success of our product by

19   looking at the market they think they're achieving.  It could

20   be relevant to infringement.

21              There are some issues that we think, your Honor,

22   that we could use, but predominantly that they're trying to

23   prime the pump to create a market for their product when they

24   do get approval that they should not be allowed to do right

25   now.

1          THE COURT:  Before we go on --

2          MS. GRIFFEN:  Yes?

3          THE COURT:  -- there's a part of me that feels

4   like we're talking about two different things.  Ms. Hassett

5   was talking about a product that is already on the market.

6   You seem to be talking about marketing activities that don't

7   really have to do with this other product.  Priming the

8   pump?  I mean, I guess --

9          MS. GRIFFEN:  Let me try and explain again, your

10  Honor.  I, undoubtedly, was not clear.

11          The active ingredient of the two is the same.

12          THE COURT:  Right.

13          MS. GRIFFEN:  Adenocard is sold in a small bottle

14  and Adenoscan is sold in a larger bottle.  Because for cards,

15  you use a smaller amount, and for Adenoscan you use larger.

16          THE COURT:  One product is already on the

17  market?

18          MS. GRIFFEN:  Adenocard is already on the market,

19  yes.

20          THE COURT:  And you knew that when you filed suit

21  and you did not include that in your suit.  I mean, this is

22  public knowledge.  It wasn't hidden.  It's not like a product

23  under development.

24          So I guess the question is:  If you really think

25  this is an issue and it is publicly out there, then shouldn't

1   you just go ahead and file suit?  I mean, shouldn't you just

2   go ahead and make this part of your complaint?

3           MS. GRIFFEN:  We are proceeding, your Honor,

4   against those that are directly infringing on that product

5   and in at least one instance where we have contacted people

6   and asked them to cease, it has been the Sicor product that

7   we know, that we've found out they're using.

8           So what we did not know at the time we filed the

9   complaint, your Honor, what we did not have that we could put

10  in our complaint at the time was any nexus for Sicor inducing

11  that infringement that was occurring.

12          THE COURT:  So you've got that now and you

13  could have made your complaint and this issue would go

14  away.

15          MS. GRIFFEN:  We would have to look at that, your

16  Honor.

17          THE COURT:  All right.  Well, why don't you look

18  at it and we'll discuss it's at our next meeting.

19          MS. GRIFFEN:  Okay.

20          THE COUR:  All right.  Ms. Griffen, we've used

21  about half an hour on your issues.

22          MS. GRIFFEN:  Okay.

23          THE COURT:  If you've got one more important

24  issue, I will address it, but we need to get on to others if

25  there are important issues.

1    MS. GRIFFEN:  I have one, what is a very quick

2    issue.

3    Sicor has refused to produce documents relating

4    to any attempts to design around the patents in suit.  We

5    believe that those would be relevant to an infringement

6    inquiry.  For example, attempts to design around and failures

7    certainly could be included somehow in an admission of

8    infringement, and we would ask that the Court require Sicor

9    to produce those documents.

10    Beyond that, your Honor, we have some other

11    issues, but they are really mirror issues to issues that

12    Sicor is pursuing, and we are willing to let them go if your

13    Honor is not going to require us to produce those documents.

14    If we're required to produce the documents -- if Sicor

15    chooses to raise them and we're required to produce the

16    documents, we'd like to reraise them.  But otherwise, we

17    would be willing to let them go if we are not being required

18    to do it.

19    THE COURT:  I understand.

20    MS. GRIFFEN:  Thank you.

21    THE COURT:  Thank you.

22    All right.  Ms. Hassett, quickly on these

23    design-around documents.

24    MS. HASSETT:  Your Honor, defendants' position is

25    that the design-around documents are covered really by the

1    prior category of willfulness discovery.  Design around is
2    really essentially a question of kind of categorical
3    willfulness, knowledge, copying of patents, and we believe
4    that this is covered by the prior requests, and we would be
5    perfectly happy to respond to design around in any event that
6    there is any information to provide pursuant to the Court's
7    indication on February 21st, 2006.
8                   THE COURT:  All right.  I'm satisfied with that.
9                   All right.  Any other plaintiffs?
10                  MS. GRIFFEN:  No, your Honor.
11                  THE COURT:  Any other issues by anyone other than
12   Sicor?
13                  MR. SCHEIBELER:  No, your Honor.
14                  THE COUR:  All right.  Ms. Hassett?
15                  MS. HASSETT:  Your Honor, I think I may be able
16   to make life easy for the rest of us.  There are some -- let
17   me back up.
18                  When this conference was included in the
19   schedule, it was because the parties were beginning to work
20   out electronic discovery issues.  We anticipated that it was
21   going to be difficult and we wanted guidance from the Court,
22   so we asked for an early conference.
23                  We have spent quite a bit of time working
24   them out.  In fact, we've resolved them and so we don't
25   need to ask for guidance from the Court at this point on

1   that.

2          Along the way we have, as you can see from the

3   discussion today, encountered other areas of dispute.  The

4   ones that remain are ones that concern really objections to

5   document requests.  We are in position where there has been

6   no discovery, in fact, exchanged.  The parties have just

7   exchanged requests and objections and there have been a

8   series of disputes about the objections.

9          I would say that I think the process of preparing

10  for the conference today has been successful in getting the

11  parties to work hard to resolve many of them.  There are some

12  that continue.

13         My view is that we can continue to work on those,

14  and to the extent that we cannot resolve them at this point,

15  my projection is that once real paper is exchanged, some of

16  those disputes will sharpen and some of them will fall

17  aside.  And I would agree with Ms. Griffen's recommendation

18  that we don't ask the Court to resolve disputes today about

19  objections, but we wait until the next conference, to see if

20  any of these disputes continue.

21         THE COURT:  Everyone else's response to that

22  suggests?

23         MS. GRIFFEN:  We're agreeable to that, your

24  Honor.  The parties have worked, the attorneys for the

25  parties have worked very diligently.

1         Ms. Hassett is right, her team has worked very

2  hard to try and come to resolution and we would be glad to

3  continue working so that we don't burden the Court.

4         THE COURT:  All right.  Well, according to your

5  discovery schedule, the next conference is February 14, and I

6  guess the question is, is that an appropriate date or is

7  something sooner than that more helpful?

8         MS. GRIFFEN:  I believe the document production

9  is due January 27th, 28th?

10        MS. HASSETT:  Yes.

11        MS. GRIFFEN:  Yes.  Some time late January.  If

12  your plan is you'd like to see the documents first, you would

13  have everything by then.

14        MS. HASSETT:  That's right.

15        MS. GRIFFEN:  So I think that would be fine, your

16  Honor.

17        MS. HASSETT:  We agree.  We think that date is

18  actually well positioned to let us be able to sort through

19  and bring home to the Court only the most serious objections

20  that cannot be resolved once the document has been produced

21  and reviewed.

22        THE COURT:  All right.  Then I think the only

23  thing I owe you is a date certain for Sicor to answer the

24  infringement or noninfringement contentions.  And I'm not

25  going to wait until the February 21st date, although I hate

1    to give multiple dates out, because I think that's late.

2    That's after the invalidity.  So we will do something in

3    January.  And I am looking at January 17th for

4    noninfringement contentions, February 21 for willfulness

5    discovery.  And I will, now that you have my attention, I

6    will try to address that motion so that your efforts aren't

7    wasted, either way on that discovery.

8              Is there anything else that we should address

9    this afternoon?

10              MS. HASSETT:  Not for defendants, your Honor.

11              THE COUR:  All right.

12              MS. GRIFFEN:  No.  Not from plaintiffs, your

13   Honor.

14              THE COURT:  All right.  Thank you very much,

15   counsel.  It will take me a minute to get out of my computer,

16   so don't wait.  You may leave.

17              (Court recessed at 5:06 p.m.)

18                        - - -

19

20

21

22

23

24

25

Item and Astellas v. Sicor
Civil Action No.: 05-0336-SLR

# Exhibit 26

to PLAINTIFFS' OPENING BRIEF ON CLAIM CONSTRUCTION

# EXHIBIT  REDACTED
# IN  ITS  ENTIRETY

Item and Astellas v. Sicor
Civil Action No.:  05-0336-SLR

# Exhibit 27

to PLAINTIFFS' OPENING BRIEF ON CLAIM CONSTRUCTION

# EXHIBIT  REDACTED
# IN  ITS  ENTIRETY

Item and Astellas v. Sicor
Civil Action No.:  05-0336-SLR

# Exhibit 28

to PLAINTIFFS' OPENING BRIEF ON CLAIM CONSTRUCTION

## Monreal, Joseph

| | |
|---|---|
| **From:** | Hassett, Annemarie [AHassett@goodwinprocter.com] |
| **Sent:** | Thursday, July 20, 2006 6:09 PM |
| **To:** | Frazier, David |
| **Cc:** | Griffen, Susan |
| **Subject:** | Adenosine/Item case |

Dear David,

I write to advise plaintiffs that defendants will not submit an expert report concerning noninfringement of the '296 patent.

Regards,

Anne Hassett
Goodwin Procter LLP
599 Lexington Avenue
New York, N.Y. 10022
(212) 459-7466

---

*********************************************************************

**IRS CIRCULAR 230 DISCLOSURE:**
**To ensure compliance with requirements imposed by the IRS, we inform**
**you that any U.S. tax advice contained in this communication**
**(including any attachments) is not intended or written to be used, and**
**cannot be used, for the purpose of (i) avoiding penalties under the**
**Internal Revenue Code or (ii) promoting, marketing or recommending to**
**another party any transaction or matter addressed herein.**

*********************************************************************

*********************************************************************
**This message is intended only for the designated recipient(s). It may**
**contain confidential or proprietary information and may be subject to**
**the attorney-client privilege or other confidentiality protections.**
**If you are not a designated recipient, you may not review, copy or**
**distribute this message. If you receive this in error, please notify**

the sender by reply e-mail and delete this message. Thank you.
*******************************************************************

Item and Astellas v. Sicor
Civil Action No.:  05-0336-SLR

# Exhibit 29

to PLAINTIFFS' OPENING BRIEF ON CLAIM CONSTRUCTION

GOODWIN PROCTER

Melanie R. Rupert
212.459.7395
mrupert@
goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
599 Lexington Avenue
New York, NY 10022
T: 212.813.8800
F: 212.355.3333

August 3, 2006

**Via E-mail**

Susan Griffen, Esq.
Finnegan Henderson Farabow Garrett & Dunner LLP
901 New York Avenue, NW
Washington, DC 20001-4413

Re: _Item Development AB v. Sicor Inc., et al.,_ Civil Action No. 05-336 SLR

Dear Susan:

I write in response to your August 1, 2006 letter to Ms. Hassett, which concerned various issues related to the '296 patent.

First, Sicor will not stipulate to infringement of the '296 patent at this time.

Second, and as set forth in its March 27, 2006 Proposed Construction of Claim Terms, Sicor contends that the following claim terms should be construed by the Court:

- "Selective arterial dilation," as recited in claims 1, 3, and 7
- "Without inducing significant venous dilation," as recited in claims 1, 3, and 7
- "Inducing a reduced afterload," as recited in claim 9
- "Without reducing the preload," as recited in claim 9

Given that the parties' Joint Claim Construction Statement must be filed with the Court on Friday, August 11th, we propose that the parties hold a brief teleconference on Monday, August 7th, to discuss the terms to be construed by the Court. Please let us know whether all plaintiffs would be available for a teleconference then.

GOODWIN PROCTER

Susan Griffen, Esq.
August 3, 2006
Page 2

We look forward to hearing from you.

Sincerely,

Melanie R. Rupert

cc:    Annemarie Hassett, Esq.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 12th day of September, 2006, I electronically filed the foregoing document, **PUBLIC VERSION OF APPENDIX TO PLAINTIFFS' OPENING BRIEF ON CLAIM CONSTRUCTION**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Paul M. Lukoff                          Josy W. Ingersoll
David E. Brand                          John W. Shaw
Prickett, Jones & Elliott, P.A.         Karen E. Keller
1310 King Street                        Young Conaway Stargatt & Taylor, LLP
Wilmington, DE  19801                   The Brandywine Building
                                        1000 West Street, 17th Floor
                                        Wilmington, DE  19801


Additionally, I hereby certify that on the 12th  day of September, 2006, the foregoing document was served via email and hand delivery on the above counsel and via email and federal express  on the following non-registered participants:

John Scheibeler                         Annemarie Hassett
White & Case, LLP                       Goodwin Procter LLP
1155 Avenue of the Americas             599 Lexington Avenue
New York, NY  10036                     New York, NY  10022
212.819.8830                            212.813.8800
jscheibeler@whitecase.com               ahassett@goodwinprocter.com


_____*/s/ Richard K. Herrmann*_____
Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
MORRIS, JAMES, HITCHENS & WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com

Attorneys for Plaintiffs
ASTELLAS US LLC and
ASTELLAS PHARMA US, INC.