IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ITEM DEVELOPMENT AB,              )
ASTELLAS US LLC, and             )
ASTELLAS PHARMA US, INC.          )
                                 )
             Plaintiffs,          )
                                 )
        v.                        )        Civil Action No. 05-336-SLR
                                 )
SICOR INC. and SICOR PHARMACEUTICALS, INC.   )
                                 )
             Defendants.          )
_____)

## PROPOSED PRETRIAL ORDER

On January 31, 2007, counsel for Plaintiffs Astellas US LLC and Astellas Pharma US,

Inc. (collectively "Astellas") and Item Development AB ("Item"), and Defendants Sicor Inc. and

Sicor Pharmaceuticals, Inc. (collectively "Sicor") attended a pre-trial conference before this

Court.  The Court hereby orders the following matters as to the trial scheduled to begin on

February 12, 2007.

## I.    NATURE OF THE ACTION AND PLEADINGS (D. DEL. L.R. 16.4(D)(1))

1.    This is an action by Item and Astellas against Sicor for infringement of U.S.

Patent No. 5,731,296 ("the '296 patent") under 35 U.S.C. § 271(e)(2), also known as the

Hatch-Waxman Act.

2.    On December 6, 2004, Sicor filed an Abbreviated New Drug Application

("ANDA") seeking permission from the FDA to market an injectable adenosine product for use

as an adjunct to thallium-201 myocardial perfusion scintigraphy in patients unable to exercise

adequately.  The ANDA was later amended on April 16, 2005 to include a Paragraph IV certification.

3.    On May 26, 2005, Astellas and Item filed a Complaint for infringement of the '296 patent against Sicor, Teva Pharmaceuticals USA, Inc., and Teva Pharmaceutical Industries Ltd. (Civil Action No. 05-336-SLR) (D.I. 1).

4.    On August 8, 2005, Sicor filed an Answer and Affirmative Defense and a Motion to Dismiss Count 3 of the Complaint (D.I. 6; D.I. 8).  On the same day, the parties filed a Stipulation of Dismissal of Complaint as to Teva Pharmaceuticals, USA, Inc. and Teva Pharmaceutical Industries Ltd., in which the Teva entities agreed to be bound by the judgment in this matter (D.I. 10).  On August 9, 2005, the Court entered the order approving this stipulation.

5.    The Court granted in part and denied in part Sicor's Motion to Dismiss Count III on March 31, 2006 (D.I. 71).

6.    On June 29, 2006, the Court denied Sicor's Motion to amend the pleadings. (D.I. 94).

7.    On August 11, 2006, the parties filed their Joint Claim Construction Statement (D.I. 96).  The parties filed their respective opening briefs on claim construction on August 23, 2006 (D.I. 99; D.I. 101).  On September 8, 2006, the parties filed their respective answering briefs (D.I. 104; D.I. 106).  On October 25, 2006, the Court held a hearing on claim construction.

## II.    BASIS FOR FEDERAL JURISDICTION (D. DEL. L.R. 16.4(D)(2))

8.    This is an action by Plaintiffs Item and Astellas against Sicor for infringement of the '296 patent.

9.      This action arises under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. § 271(b), (c), and (e)(2).  The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

10.     Venue is proper in this judicial district under one or more of 28 U.S.C. §§ 1391(b), (c), and (d), and 1400(b).

## III.    STATEMENT OF FACTS WHICH ARE ADMITTED AND REQUIRE NO PROOF (D. DEL. L.R. 16.4(D)(3))

11.     The parties admit the facts stated in Exhibit 1.

## IV.    ISSUES OF FACT THAT REMAIN TO BE LITIGATED AND EXPECTED PROOFS (D. DEL. L.R. 16.4(D)(4))

12.     Plaintiffs' Statement of Issues of Fact That Remain to be Litigated is attached as Exhibit 2.

13.     Defendants' Statement of Issues of Fact That Remain to be Litigated is attached as Exhibit 3.

## V.     ISSUES OF LAW THAT REMAIN TO BE LITIGATED (D. DEL. L.R. 16(D)(5))

14.     Plaintiffs' Statement of Issues of Law That Remain to be Litigated is attached as Exhibit 4.

15.     Defendants' Statement of Issues of Law That Remain to be Litigated is attached as Exhibit 5.

## VI.    EXHIBIT LISTS (D. DEL. L.R. 16.4(D)(6))

16.     The exhibits that Plaintiffs may introduce into evidence in C.A. 05-336-SLR are included on the list attached hereto as Exhibit 6.

17.     The exhibits that Defendants may introduce into evidence in C.A. 05-336-SLR are included on the list attached hereto as Exhibit 7.

18.     The parties' respective exhibit lists will identify all the exhibits they may introduce into evidence in C.A. 05-336-SLR and the companion case C.A. 05-337-SLR.

19.     Plaintiffs' objections to Defendants' trial exhibits and Defendants' identification of FRE in support of admission are listed on Exhibit 7.  Defendants' objections to Plaintiffs' trial exhibits and Plaintiffs' identification of FRE in support of admission are listed on Exhibit 6. Plaintiffs provided additional bases of objections to Defendants' exhibits on January 25, 2006, to which Defendants agree to respond by January 29, 2006.

20.     The parties reserve the right to supplement these exhibit lists during the period prior to the commencement of trial.  Except for exhibits which are to be used solely for impeachment, only the exhibits that have been identified on the parties' exhibit lists and provided to the opposing party by 6 p.m. on February 7, 2007 may be introduced at trial. Summaries under Rule 1006 must be provided by January 29, 2007.

21.     The parties will offer at trial one or more of the exhibits set forth in their respective lists.  These lists include the exhibit numbers to be used at trial and a description sufficient to identify the exhibits.  These exhibit lists may include exhibits that may not necessarily be offered or introduced into evidence.

22.     Each party may use an exhibit that is listed on the other side's exhibit list, to the same effect as though it were listed on its own exhibit list, subject to evidentiary objections and provided that the party has complied with the notice provisions of paragraph 25.  Any exhibit, once admitted, may be used equally by each party for any proper purpose and subject to the rules of evidence.

23.     The listing of a document on a party's exhibit list is not an admission that such document is relevant or admissible when offered by the opposing side for the purpose that the

opposing side wishes to admit the document. The parties shall produce any and all exhibits to be used at trial, labeled with the exhibit number.

24.     Each party reserves the right to object to the relevancy of any exhibit offered by the other party, at the time such exhibit is offered, in view of the specific context in which such exhibit is offered.

25.     Plaintiffs and Defendants disagree on the notice to be provided of exhibits that may be offered on redirect.

**Defendant's Proposed Language:**

[The parties will exchange all demonstratives and exhibits to be used on examination of a witness to be called by that party and the identity of the witness with whom they will be used, by 7 p.m. two calendar days before the anticipated use. The party calling the witness may not use any other exhibits in the examination of that witness, except by agreement of the parties or leave of Court with respect to exhibits the need for which was not reasonably foreseeable to the party calling the witness.]

**Plaintiffs' Proposed Language:**

[The parties will exchange all demonstratives and exhibits to be used on direct examination of a witness and the identity of the witness with whom they will be used by 7:00 p.m. two calendar days before the anticipated use.]

For demonstratives, the parties will exchange on 8.5 x 11 paper black and white representations of these demonstrative exhibits, or color representations if color is necessary to interpret the exhibit. The notice provisions of this paragraph shall not apply to demonstrative exhibits created in the courtroom during testimony at trial or the enlargement, simple highlighting, ballooning, or excerption of trial exhibits or testimony. The opposing party shall, by 7 p.m. one (1) calendar

day before the expected use, notify the other side of any objections it intends to maintain to the exhibits or pose to the demonstratives. These objections will be taken up with the Court prior to the witness's testimony, as directed by the Court. Exhibits to which no objection has been made shall be admitted if offered.

26. The parties have agreed that a copyright page will not be necessary to authenticate a journal article that is used as a trial exhibit, as long as the article sets forth the date of its publication elsewhere on its face.

27. The parties have agreed that the Defendants will treat color versions of Plaintiffs' documents as equivalent to the originally marked black and white exhibits. In addition, the parties have agreed to replace any truly illegible exhibits with better versions that will be treated as equivalent to the originally marked exhibits.

28. The parties have agreed that the Defendants will not object to Plaintiffs' reliance on the certified translations accompanying exhibits TX085, TX274, TX293, and TX412. Defendants reserve and expressly do not waive all other objections to exhibits TX085, TX274, TX293 and TX412.

## VII. WITNESS LISTS (D. DEL. L.R. 16.4(D)(7))

29. Plaintiffs' list of witnesses to be called live or by deposition is attached as Exhibit 8A.

30. Defendants' list of witnesses to be called live or by deposition is attached as Exhibit 9A.

31. Plaintiffs' rebuttal list of witnesses to be called live or by deposition is attached as Exhibit 8B.

32.     Defendants' rebuttal list of witnesses to be called live or by deposition is attached as Exhibit 9B.

33.     Plaintiffs' description of its experts' qualifications is attached as Exhibit 8C.

34.     Defendants' description of its experts' qualifications is attached as Exhibit 9C.

35.     The parties have agreed that the party going first at trial shall identify the witnesses it intends to call to testify, whether live or by deposition, for the first day of trial or its first (3) witnesses, whichever number is greater, by 7 p.m. on Friday, February 9, 2007 or by 7 p.m. three (3) calendar days prior to the commencement of trial, in the event that the start of trial is moved.  A party intending to call as a witness an employee of an opposing party shall provide notice of its intent to do so four (4) calendar days before the witness is called.  Other than for the first day of testimony in each party's case, a party will identify the witnesses it intends to call by 7 p.m. two (2) calendar days prior to the expected testimony.

36.     Each party will give 48 hours notice of when it intends to complete the presentation of its evidence.  Not more than twelve (12) hours after receiving such notice, the opposing party shall identify the witnesses it intends to call on the first day of its case in chief or rebuttal.

37.     The parties shall exchange designation of the deposition testimony that they intend to offer at trial on Friday, February 2, 2007.  The opposing side shall provide objections and counter-designations on Monday, February 5, 2007.  Any objections to the counter-designations and further designations in response to counter-designations shall be exchanged on Thursday, February 8, 2007.  Except by agreement of the parties or by leave of Court, no other deposition designations may be introduced at trial.

38.    With respect to deposition designations and counter-designations, each side shall be charged only with the time needed to read, or play by videotape, its own designations or counter-designations, and will not be charged with the time necessary to read, or play by videotape, the other side's designations or counter-designations.

39.    The listing of a witness on a party's witness list does not require that party to call that witness to testify, either in person or by deposition.

40.    Each party must identify by 7 p.m. on Monday, January 29, 2007 the witnesses that it intends to call live at trial.

## VIII.    BRIEF STATEMENT OF INTENDED PROOF (D. DEL. L.R. 16.4(D)(8)-(10))

41.    Plaintiffs' list of intended proofs is attached as Exhibit 10.

42.    Defendants' list of intended proofs is attached as Exhibit 11.

## IX.    GOOD FAITH SETTLEMENT EFFORTS (D. DEL. L.R. 16.4(D)(12))

43.    Two-way communications have occurred between persons having authority in a good faith effort to explore the resolution of the controversy by settlement.  The parties have not reached any agreement that would resolve this matter.

## X.    OTHER MATTERS WHICH THE PARTIES DEEM APPROPRIATE (D. DEL. L.R. 6.4(D)(13))

44.    The parties agree that each side will be allowed a one hour opening statement.

45.    A list and brief discussion of miscellaneous issues that Plaintiffs deem appropriate to discuss at the pretrial conference is set forth in Exhibit 12.

46.    A list and brief discussion of miscellaneous issues that Defendants deem appropriate to discuss at the pretrial conference is set forth in Exhibit 13.

47.     The parties request that the Court grant access to the Courtroom on the day before trial for the purposes of setting up electronic and computer devices.

48.     Once the parties have arrived in Delaware for the trial, service of documents and exhibits shall occur by hand delivery and email on lead trial counsel and copies by email to local counsel and each party's designee for email service.  This agreement ends when trial is concluded.

## XI.     PRETRIAL ORDER TO CONTROL FUTURE PROCEEDINGS (D. DEL. L.R. 16(D)(14))

49.     This Order shall control the subsequent course of trial, unless modified by the Court to prevent manifest injustice.


SO ORDERED:

Dated: __        ___, 2007        _____
                                 UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| /s/ Richard K. Herrmann | /s/ Karen E. Keller |
| Richard K. Herrmann #405 | Josy W. Ingersoll #1088 |
| Mary B. Matterer # 2696 | Karen E. Keller #4489 |
| MORRIS JAMES LLP | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
| 500 Delaware Avenue, Suite 1500 | The Brandywine Building |
| Wilmington, DE 19801-1494 | 1000 West Street |
| (302) 888-6800 | Wilmington, DE 19801 |
| rherrmann@morrisjames.com | (302) 571-6672 |
| mmatterer@morrisjames.com | jingersoll@ycst.com |
| *Attorneys for Plaintiffs* | kkeller@ycst.com |
| *Astellas US LLC and* | *Attorneys for Defendants* |
| *Astellas Pharma US, Inc.* | *Sicor Inc. and Sicor Pharmaceuticals, Inc.* |

/s/ David E. Brand

Paul M Lukoff #96
David E. Brand #201
PRICKETT JONES & ELLIOTT, P.A.
1310 King Street
Wilmington, DE 19801
(302) 888-6520
debrand@prickett.com
*Attorneys for Plaintiff*
*Item Development AB*

# EXHIBIT   1

**EXHIBIT 1**

**STATEMENT OF ADMITTED FACTS**

**I.    THE PARTIES**

1.    Plaintiffs Astellas US LLC and Astellas Pharma US, Inc. (collectively, "Astellas") are both corporations organized and existing under the laws of the State of Delaware, with their principal places of business at Three Parkway North, Deerfield, Illinois 60015-2548.

2.    Plaintiff Item Development AB ("Item") is a Swedish corporation having an office and principal place of business at Svanholmsvagen 2A, Stocksund, 18207, Sweden.

3.    Defendant Sicor Pharmaceuticals Inc. is a corporation organized and existing under the laws of the State of Delaware having a principal place of business at 19 Hughes, Irvine, California 92618.

4.    Defendant Sicor Inc. is a corporation organized and existing under the laws of the State of Delaware having a principal place of business at 19 Hughes, Irvine, California 92618.

5.    Sicor Pharmaceuticals Inc. is a wholly owned subsidiary of Sicor Inc. (collectively "Sicor").

**II.    THE '296 PATENT**

6.    The United States Patent and Trademark Office ("PTO") issued U.S. Patent No. 5,731,296 ("the '296 patent") on March 24, 1998, from Application No. 08/031,666 ("the '666 application") filed March 15, 1993.  The patent is entitled "Selective Vasodilation By Continuous Adenosine Infusion."  The face of the patent lists Alf Sollevi as the inventor.

7.    The face of the '296 patent lists Item as the assignee.

### III.    THE PROSECUTION OF THE PATENT

8.      The '666 application is a division of Application No. 07/821,395, filed January 14, 1992, which is a continuation of Application No. 07/630,413, filed December 19, 1990, which is a continuation of Application No. 07/138,306 ("the '306 CIP application"), filed December 28, 1987, which is a continuation-in-part of Application No. 07/030,245, filed March 24, 1987, which is a continuation-in-part of Application No. 06/779,516, filed September 24, 1985 (the "original Sollevi application").

9.      The '296 patent is assigned to Item.

### IV.    ADENOSCAN®

10.      Astellas is the exclusive licensee of certain rights under the '296 patent.

11.      Astellas manufactures Adenoscan® (Adenosine Injection, USP) pursuant to NDA No. 20-059.

12.      Astellas sells Adenoscan® (Adenosine Injection, USP), an adenosine-based product for use as an adjunct to thallium-201 myocardial perfusion scintigraphy in patients unable to exercise adequately.

13.      Pursuant to 21 U.S.C. §355(b)(1) and the FDA regulations promulgated pursuant thereto, the '296 patent is listed with respect to Adenoscan® in "Approved Drug Products with Therapeutic Equivalence Evaluations" ("the Orange Book"), 24th Edition, published by the United States Food and Drug Administration ("the FDA").

### V.    SICOR'S ANDA

14.      On December 6, 2004, Sicor filed Abbreviated New Drug Application No. 77-425 ("ANDA No. 77-425") with the FDA, addressed to a proposed product identified as adenosine (Adenosine Injection, USP).

15.     The proposed labeling and/or proposed package insert submitted with ANDA No. 77-425 states that it is indicated as an adjunct to thallium-201 myocardial perfusion scintigraphy in patients unable to exercise adequately.

16.     Sicor asserts that making, using, offering to sell, importing, or selling its Adenosine Injection, USP product does not infringe claims 1, 3, and 7 of the '296 patent because, when used according to the proposed labeling and proposed package insert, its product will not meet the claim terms, "selectively vasodilating the arteries" and "without inducing significant venous dilation," as those claim terms are properly construed, but Sicor does not dispute that such use will meet the remaining terms in each of claims 1, 3, and 7.

17.     Sicor asserts that making, using, offering to sell, importing, or selling its Adenosine Injection, USP product does not infringe claim 9 of the '296 patent, because, when used according to the proposed labeling and proposed package insert, its product will not meet the claim terms "inducing a reduced afterload" and "without reducing the preload," as those claim terms are properly construed,  but Sicor does not dispute that such use will meet the remaining terms in claim 9.

# EXHIBIT  2

**EXHIBIT 2**

**PLAINTIFFS' STATEMENT OF ISSUES OF**
**FACT THAT REMAIN TO BE LITIGATED**

To the extent that Plaintiffs' Statement of Issues of Law That Remain to be Litigated

contain issues of fact, those issues are incorporated herein by reference.  Should the Court

determine that any issue identified in this list as an issue of fact is more properly considered an

issue of law, Plaintiffs incorporate such issues by reference into its Statement of Issues of Law

That Remain to be Litigated.  Plaintiffs have stated the issues of fact to be litigated more

generally than Defendants, but intend to litigate, as required, the numerous sub-issues set forth

by Defendants.

## I.    INFRINGEMENT

The parties will litigate whether:

1.       Claims 1, 3, 7, and 9 of U.S. Patent No. 5,731,296 ("the asserted claims of the

'296 patent") are literally infringed by the use of Sicor's Adenosine Injection USP as the terms

of those claims are interpreted by the Court;

2.       Sicor induces others to infringe the asserted claims of the '296 patent with regard

to Sicor's Adenosine Injection USP;

3.       Sicor contributes to the infringement of the asserted claims of the '296 patent with

regard to Sicor's Adenosine Injection USP; and whether

4.       Sicor should be precluded from contesting Plaintiffs' proof of infringement and

the findings of the study published by Nussbacher *et al.*, *Mechanism of Adenosine - Induced*

*Elevation of Capillary Wedge Pressure in Humans*, Circulation 92(3):371-379 (1995)

("Nussbacher") where Sicor did not disclose its bases for contesting those findings in its

contentions or expert reports.

## II.     VALIDITY

The parties will litigate whether Sicor has presented clear and convincing evidence that:

5.     The asserted claims of the '296 patent are anticipated under 35 U.S.C. § 102 by Sollevi et al., *Cardiovascular Effects of Adenosine During Controlled Hypotension in Cerebral Aneurysm Surgery*, 59 Anesthesiology (Circulation II) A9 (1983) ("Sollevi I");

6.     The asserted claims of the '296 patent are anticipated under 35 U.S.C. § 102 by Sollevi et al., *Cardiovascular Effects of Adenosine in Man*, 120 Acta Physiologica Scandinavica 11A (1984) ("Sollevi II");

7.     The asserted claims of the '296 patent are anticipated under 35 U.S.C. § 102  by Fukunaga et al., *ATP-Induced Hypotensive Anesthesia During Surgery*, 57 Anesthesiology A65 (1982)  ("Fukunaga");

8.     The subject matter of the asserted claims of the '296 patent would have been obvious under 35 U.S.C. § 103 to one of ordinary skill in the relevant art at the time the invention was made over Sollevi I in combination with Sollevi II;

9.     The subject matter of the asserted claims of the '296 patent would have been obvious under 35 U.S.C. § 103 to one of ordinary skill in the relevant art at the time the invention was made over Fukunaga in combination with Biaggioni et al., *Humoral and Hemodynamic Effects of Adenosine Infusion in Man*, 33 Clinical Research 280A (1985);

10.     Sicor should be precluded from offering proof in support of its contentions that the asserted claims are rendered obvious by the combination of Sollevi I and Biaggioni or the combination of Sollevi II and Biaggioni because neither combination was asserted or discussed in its contention or expert reports; and whether

11.     Sicor should be precluded from offering proof in support of its undisclosed "additional obviousness positions" referred to in Exhibit 3, section IV.E.

## III.    EXCEPTIONAL CASE

The parties will litigate whether:

12.    Unless severed for separate trial, the parties will litigate whether the present case is an exceptional case and Plaintiffs are entitled to reasonable attorneys fees under 35 U.S.C. § 285.

# EXHIBIT   3

**EXHIBIT 3**

**Defendants' Statement of Issues of Fact
that Remain to be Litigated**

To the extent that Defendants' Statement of Issues of Law that Remain to Be Litigated contain issues of fact, those issues are incorporated herein by reference. Should the Court determine that any issue identified in this list as an issue of fact is more properly construed as an issue of law, Defendants incorporate such issues by reference into its Statement of Issues of Law that Remain to be Litigated.

The parties will litigate at trial whether the following are true statements of fact:

**I.    Adenosine**

1.    Adenosine is a naturally-occurring compound that contributes to a variety of physiological processes in nearly every cell of the human body. For example, endogenous adenosine has an important auto-regulatory function and behaves as a vasodilator, dilating coronary arteries in response to circumstances that require increased levels of oxygen in the body (*e.g.*, physical exertion).

2.    Adenosine's potent vasodilator effects were recognized in the art as early as 1929 and well documented in the art by at least 1980.

3.    Dipyridamole has long been used as a vasodilator, and its mechanism of action has been understood since at least the 1970s. Dipyridamole prevents the metabolism of adenosine – and thus increases the concentration of adenosine in the blood – by inhibiting adenosine deaminase. Thus, the administration of dipyridamole and the administration of adenosine result in the same net effect: an increase in the concentration of adenosine in the blood.

4.      Dipyridamole has a half life that is significantly longer than the half life of adenosine, so its effects are relatively longer in duration.

5.      In addition to its effects as a vasodilator, the administration of adenosine may result in the interruption of atrio-ventricular conduction in the heart ("AV block"). This property of adenosine was known in the art and led to the use of adenosine as a bolus injection for the treatment of arrhythmia.

6.      AV block has also been considered to be a possible side effect of adenosine administration, which typically usually would resolve in less than a minute after cessation of adenosine administration.

### A.      The '296 Patent

7.      Claims 1, 3, and 7 of the asserted '296 patent are generally directed to a method of selectively vasodilating the arteries of a human patient without inducing significant venous dilation and without pretreatment with dipyridamole, comprising continuously administering adenosine into the blood stream of the patient at various recited rates.  Claim 9 recites "a method for inducing a reduced afterload in the vascular system of a human without reducing the preload and without pretreatment with dipyridamole," comprising continuously administering adenosine at a rate of 350 µg/kg/min or less into the blood stream of the patient.

### B.      Claim Construction

8.      The parties have identified four terms in the asserted claims of the '296 patent to be construed by the Court:  "selectively vasodilating the arteries" (claims 1, 3, and 7); "without inducing significant venous dilation" (claims 1, 3, and 7); "inducing a reduced afterload" (claim 9); and "without reducing the preload" (claim 9).

9.     In the event that the Court adopts the constructions of the terms "selectively vasodilating the arteries" and "without inducing significant venous dilation" that have been proposed by Plaintiffs, Sicor will stipulate to infringement of the asserted claims of the '296 patent, subject to its right of appeal.  However, Sicor's positions concerning the invalidity of the '296 patent will not be affected by the Court's claim construction.

## II.    <u>Non-Infringement</u>

10.    Claims 1, 3, 7, and 9 of the '296 patent, which have been asserted by Plaintiffs in this action, are not infringed by the adenosine injectable product that is the subject of Defendants' ANDA No. 77-425, either literally or under the doctrine of equivalents.

11.    Plaintiffs have not cited to any specific publications or data that establish that intravenous administration of adenosine will not "induce significant venous dilation."

12.    Plaintiffs rely primarily on a single publication, published a decade after the priority date of the '296 patent, in support their infringement claim:

> Nussbacher *et al.*, "Mechanism of Adenosine-Induced Elevation of Pulmonary Capillary Wedge Pressure in Humans," Circulation 92(3): 371-379 (Aug. 1995) ("Nussbacher").

13.    Nussbacher provides only speculation about the effects of adenosine upon veins.  Specifically, in its discussion section, Nussbacher sets forth a ***hypothesis*** concerning the basis for certain physiological effects that were observed following an increase in adenosine.

14.    The Nussbacher hypothesis is not proof that the elements of claims 1, 3, 7, and 9 of the '296 patent are met by Sicor's adenosine product when adenosine is infused

intravenously at a rate of 140 µg/kg/min.  In addition, other statements within the Nussbacher article belie Plaintiffs' assertions concerning the state of knowledge regarding the effects of adenosine on venous dilation.

15.    Sicor's adenosine product does not infringe the asserted claims of the '296 patent based on the statement in Sicor's proposed package insert that "[a]denosine is a potent vasodilator in most vascular beds."

16.    A person of ordinary skill in the art[1] would understand the term "vascular beds" to include both veins and arteries.  The term "vasodilator" refers generally to the dilation of blood vessels, which include both arteries and veins.  The statement in Sicor's proposed package insert thus concerns only systemic – not selective – vasodilation, and is not evidence of infringement.

17.    Plaintiffs have failed to proffer any evidence that Sicor's adenosine product selectively dilates arteries without inducing significant venous dilation, as required by each of the asserted claims of the '296 patent.

## III.    Anticipation

18.    The relevant time for '296 patent prior art is on or before September 24, 1985.

19.    Sicor contends that claims 1, 3, 7, and 9 of the '296 patent are invalid as anticipated in view of each of the following references:

> A. Sollevi *et al.*, *Cardiovascular effects of adenosine during controlled hypotension in cerebral artery aneurysm surgery*, Anesthesiology (Circulation II) 59(3): A9 (Sept. 1983) ("Sollevi I");

---

[1]    Sicor has defined the person of ordinary skill in the art to which the '296 patent pertains as a cardiologist with a residency in internal medicine and two years of a cardiology fellowship, whose experience could also include nuclear cardiology imaging.

A. Sollevi *et al.*, *Cardiovascular effects of adenosine in man*, Acta Physiol. Scan. 120(2): 11A (Feb. 1984) ("Sollevi II"); and

A.F. Fukunaga *et al.*, *ATP-induced hypotensive anesthesia during surgery*, Anesth. & Anesthesiology, 57(3): A65 (1982) ("Fukunaga").

**A.**     **Sollevi I**

20.     Sollevi I teaches the administration of a continuous intravenous infusion of adenosine at a mean dose of 140 µg/kg/min, following pretreatment with dipyridamole, to induce controlled hypotension in nine anesthetized patients undergoing surgery for cerebral aneurysms.  As explained in Sollevi I, dipyridamole was administered 10 to 30 minutes prior to the administration of adenosine "to inhibit adenosine cellular uptake" and to reduce the total required dose of adenosine.

21.     Sollevi I reported a mean reduction in mean arterial blood pressure ("MABP") following adenosine administration of 43%, a mean increase in heart rate of 9 beats/min, and a mean decrease in systemic vascular resistance ("SVR") of 61%.  Sollevi I also reported that peripheral vascular resistance ("PVR") and central venous pressure "remained unchanged" and that cardiac output was increased.

22.     Sollevi I concludes with the following statements: "ADO in low molar concentrations rapidly induced a remarkably stable and easy reversible CH in man (see Fig 1),[2] by a profound reduction in SVR concomitant with increased CO . . . It is concluded that the hemodynamic and  metabolic properties of adenosine make it an suitable agent for CH in man."  There is no reference to the need for a dipyridamole pretreatment in this conclusion.

23.     Sollevi I would teach a person of ordinary skill in the art at the relevant time that the intravenous administration of 140 µg/kg/min of adenosine alone would

selectively dilate the arteries of a human patient without inducing significant venous dilation, based upon the disclosed changes in various hemodynamic parameters.

24.     A person of ordinary skill in the art at the relevant time would understand that the controlled hypotension observed in Sollevi I following the administration of adenosine was a well-understood and natural consequence of arterial vasodilation, and that arterial dilation had necessarily occurred because controlled hypotension had been achieved.

25.     Furthermore, a person of ordinary skill at the relevant time would understand, based on the conclusion set forth Sollevi I, that adenosine could be administered *without* dipyridamole to cause selective dilation of the arteries of a human patient without inducing significant venous dilation.

## B.     Sollevi II

26.     Sollevi II discloses, in part, the same results from the same clinical study reported in Sollevi I, and further includes data from a tenth patient and information on the observed levels of certain adenosine metabolites.

27.     Sollevi II teaches the administration of a continuous intravenous infusion of adenosine at a molar dose that is equivalent to 140 µg/kg/min, following pretreatment with dipyridamole, to induce controlled hypotension in nine anesthetized patients undergoing surgery for cerebral aneurysms.  As explained in Sollevi II, the "adenosine uptake inhibitor" dipyridamole was administered prior to the administration of adenosine.

---

[2]     Notably, Sollevi I defines "ADO" as adenosine and "CH" as controlled hypotension.

28.    Sollevi II reported a mean reduction in MABP following adenosine administration of 43%, a mean increase in heart rate of 9 beats/min, and a mean decrease in SVR of 61%.  Sollevi II also reported that PVR was unaltered and that cardiac output was increased by 40%.

29.    Sollevi II concludes with the following statement:  "These results indicate that adenosine may be used to achieve controlled hypotension in man since it acts as a rather pure arteriolar vasodilator with rapid onset, sustained action and rapid elimination."  There is no reference to the need for a dipyridamole pretreatment in this conclusion.

30.    Sollevi II would teach a person of ordinary skill in the art at the relevant time that the intravenous administration of 140 µg/kg/min of adenosine alone would selectively dilate the arteries of a human patient without inducing significant venous dilation, based upon the disclosed changes in various hemodynamic parameters.

31.    A person of ordinary skill in the art at the relevant time would understand that the controlled hypotension observed in Sollevi II following the administration of adenosine was a well-understood and natural consequence of arterial vasodilation, and that arterial dilation had necessarily occurred because controlled hypotension had been achieved.

32.    Furthermore, a person of ordinary skill in the 1980s would understand, based on the conclusion set forth Sollevi II, that adenosine could be administered *without* dipyridamole to cause selective dilation of the arteries of a human patient without inducing significant venous dilation.

C.    **Fukunaga Abstract**

33.    The Fukunaga Abstract discloses the administration of adenosine triphosphate ("ATP") to twenty-six patients at a dose of 200 to 600 µg/kg/min, without pretreatment with dipyridamole.

34.    A person of ordinary skill in the art at the relevant time would have understood that ATP rapidly degrades in the body to adenosine, and that adenosine is responsible for the arterial vasodilation effects associated with ATP.

35.    A person of ordinary skill would have understood that 200 to 600 µg/kg/min of ATP is equivalent to doses of between 97 and 290 µg/kg/min of adenosine, based upon a standard calculation and the known molecular weights of those molecules. This range overlaps each of the ranges recited in the asserted claims of the '296 patent.

36.    The Fukunaga Abstract teaches that MABP and SVR decreased significantly, while cardiac output was "well maintained," which would lead a person of ordinary skill to conclude that selective arterial dilation without significant venous dilation had occurred, as could be expected based upon the known vasodilatory effect of adenosine.

37.    The Fukunaga Abstract also does not report the occurrence of any serious side effects following administration of ATP.

38.    A person of ordinary skill in the art at the relevant time would conclude that Fukunaga inherently discloses all elements of the asserted claims of the '296 patent. Specifically, Fukunaga discloses selective arteriole dilation without significant venous dilation following intravenous administration of ATP – which rapidly degrades to adenosine, as discussed *supra* – within the claimed dosage ranges and without pretreatment with dipyridamole. Moreover, Fukunaga observes responses indicative of

selective arterial dilation without significant venous dilation, including a decrease in

MABP and SVR, coupled with a "well maintained" cardiac output.  Fukunaga also

concludes that "ATP should potentially be considered for use among the vasoactive

hypotensive drugs" which would have also indicated to a person of ordinary skill that

adenosine should be considered for use as a vasodilator.

**IV.     Obviousness**

39.     Claims 1, 3, 7, and 9 of the '296 patent are invalid as obvious in view of

the following references and at least the following combinations of these references:

> A. Sollevi *et al.*, *Cardiovascular effects of adenosine during controlled hypotension in cerebral artery aneurysm surgery*, Anesthesiology (Circulation II) 59(3): A9 (Sept. 1983) ("Sollevi I");
>
> A. Sollevi *et al.*, *Cardiovascular effects of adenosine in man*, Acta Physiol. Scan. 120(2): 11A (Feb. 1984) ("Sollevi II");
>
> A.F. Fukunaga *et al.*, *ATP-induced hypotensive anesthesia during surgery*, Anesth. & Anesthesiology, 57(3): A65 (1982) ("Fukunaga Abstract"); and
>
> I.O. Biaggioni *et al.*, *Humoral and Hemodynamic Effects of Adenosine Infusion In Man*, Clinical Res., 33(2): 280A (April 1985) ("Biaggioni Abstract").

**A.     Biaggioni Abstract**

40.     The Biaggioni Abstract teaches the administration of continuous

intravenous infusions of adenosine without dipyridamole pretreatment to five conscious

volunteers at a rate of 10 µg/kg/min to 140 µg/kg/min, with no serious side effects

reported.

41.     The Biaggioni Abstract would teach a person of ordinary skill in the art at

the relevant time that adenosine could be administered intravenously to humans at the

claimed dose of 140 µg/kg/min without dipyridamole pretreatment and without the

occurrence of serious side effects.  The observed "symptoms" reported by Biaggioni at

this dose did not include AV block, were not serious, and some of them (*e.g.*, flushing) are symptoms that skilled persons would recognize as evidence that arterial vasodilation may have occurred as a result of adenosine administration.

### B.    Sollevi I in Combination with the Biaggioni Abstract

42.    Sollevi I in combination with the Biaggioni Abstract would render obvious each and every limitation of the asserted claims of the '296 patent.

43.    A person of ordinary skill in the art in the relevant time period would be motivated to combine Sollevi I with the Biaggioni Abstract.  The conclusions set forth in Sollevi I suggest the use of adenosine alone (without dipyridamole pretreatment) in patients to cause selective arterial dilation without inducing significant venous dilation, and the Biaggioni Abstract showed that intravenous administration of adenosine alone at a dose 140 µg/kg/min without dipyridamole pretreatment was safe.

### C.    Sollevi II in Combination with the Biaggioni Abstract

44.    Sollevi II in combination with the Biaggioni Abstract would render obvious each and every limitation of the asserted claims of the '296 patent.

45.    A person of ordinary skill in the art in the relevant time period would be motivated to combine Sollevi II with Biaggioni Abstract.  The conclusions set forth in Sollevi II suggest the use of adenosine alone (without dipyridamole pretreatment) in patients to cause selective arterial dilation without inducing significant venous dilation, and the Biaggioni Abstract showed that intravenous administration of adenosine alone at a dose 140 µg/kg/min without dipyridamole pretreatment was safe.

### D.    Fukunaga Abstract in Combination with the Biaggioni Abstract

46.    The Fukunaga Abstract in combination with the Biaggioni Abstract would render obvious each and every limitation of the asserted claims of the '296 patent.

47.    A person of ordinary skill in the art in the relevant time period would be motivated to combine the Fukunaga Abstract with the Biaggioni Abstract.  The Fukunaga Abstract inherently showed the use of adenosine alone in patients to cause selective arterial dilation without significant venous dilation, and the Biaggioni Abstract showed that intravenous administration of adenosine alone at a dose 140 µg/kg/min without dipyridamole pretreatment was safe.

### E.    Additional Obviousness Combinations

48.    Additional obviousness positions based upon combinations of Sollevi I, Sollevi II, the Fukunaga Abstract, and the Biaggioni Abstract render the '296 patent obvious.

### F.    State of the Art

49.    A person of ordinary skill in the art in the relevant time person would believe that it is better, in general, to administer one drug rather than two, at least in order to reduce the possible risk of unfavorable or dangerous drug interactions.

50.    Dose titration of adenosine would have been a matter of routine experimentation to a person of ordinary skill in the art in the relevant time period, and the short half life of adenosine would enable a person of ordinary skill to titrate the dose of adenosine to be administered to a patient individually with routine medical monitoring.

## V.    Secondary Considerations of Non-Obviousness

51.    Throughout this case, Plaintiffs have consistently relied upon three secondary considerations in an attempt to rebut Defendants' *prima facie* obviousness case:  commercial success, skepticism of experts, and unexpected results.

52.     In their Statement of Issues of Law that Remain to Be Litigated, however, Plaintiffs refer to at least four additional secondary considerations:  long-felt need, teaching away, failure of others, and acclaim in the field.

53.     As set forth in Defendants' Statement of Issues of Law that Remain to be Litigated, determining whether or not certain secondary considerations exist in a case is a factual inquiry.  Plaintiffs have not yet offered any factual proof with respect to the secondary considerations of long-felt need, teaching away, failure of others, and acclaim in the field, and none of these factors was addressed in Plaintiffs' expert reports.

54.     Due to this failure of proof, Plaintiffs cannot be permitted to rely upon the secondary considerations of long-felt need, teaching away, failure of others, and acclaim in the field at trial.

### A.     <u>Commercial Success</u>

55.     Plaintiffs have failed to demonstrate nexus between the '296 patent claimed invention and the alleged commercial success of their Adenoscan[®] product.

56.     The sales levels achieved by Adenoscan[®] provide no evidence of any superiority of this drug, as these sales levels have no demonstrated nexus to the subject matter of the asserted claims of the '296 patent.

57.     The commercial sales of Adenoscan[®] are a result of extensive marketing and promotional campaigns; an increase in demand for myocardial perfusion imaging employing pharmacological stress agents that occurred for reasons unrelated to the asserted inventions; and the absence of marketing and promotion by the manufacturers of drugs that are competitive alternatives to Adenoscan[®].

B.     **Skepticism of Experts**

58.     There is no evidence of skepticism of experts that demonstrates the nonobviousness of the asserted '296 patent claims.  Plaintiffs' proffered correspondence between the inventor and other scientists in the field is not evidence of skepticism that demonstrates nonobviousness.  The authors' personal disbelief that adenosine could be administered intravenously in the relevant ranges without encountering certain adverse events, including AV block, runs counter to evidence in the prior art at the time.  Further, this correspondence was not publicly available would not have discouraged persons of skill in the art.

59.     AV block was not associated with the use of adenosine by the continuous intravenous infusion method used by Dr. Sollevi in Sollevi I and II, as well as others in the prior art.  Instead, AV block had been observed with bolus injection, a very different method of administration, and at higher doses than used in the '296 prior art..

60.     Neither Sollevi I nor Sollevi II discloses any evidence of AV block resulting from intravenous administration of adenosine, even though the administration of adenosine and dipyridamole together would result in a higher adenosine administration than if adenosine were administered alone.

61.     AV block, uric acid build-up, and excessive fluid load would not have discouraged a person of ordinary skill in the art from administering adenosine at the recited dosages, as in the prior art none of these side effects resulted from an intravenous infusion of adenosine to humans.

62.     A person of ordinary skill in the art would understand that such risks would be greatly reduced – if not eliminated – by steady administration of adenosine as a

continuous intravenous infusion, instead of administration of the total adenosine dose as a single bolus injection.

### C.    **Unexpected Results**

63.    Plaintiffs have not demonstrated any unexpected results for the methods in the asserted claims.

64.    The lack of occurrence of AV block, uric acid build up, and excessive fluid load arising from the methods in the asserted claims were not unexpected based on the prior art.

## VI.    **Exceptional Case**

65.    Plaintiffs have identified exceptional case under 35 U.S.C. § 285 as an issue to be litigated.  Defendants maintain that it is improper, and a waste of the parties' and Court's time and resources, to address issues of exceptional case at this time, and that all such issues should be bifurcated until the Court has rendered a decision on the merits and determined that there is a "prevailing party" as required by 35 U.S.C. § 285.

# EXHIBIT   4

# EXHIBIT 4

## PLAINTIFFS' STATEMENT OF ISSUES OF LAW
## THAT REMAIN TO BE LITIGATED

Plaintiffs reserve the right to modify, supplement, or change this Statement of Issues of Law That Remain to be Litigated (the "Statement") to reflect the Court's ruling on Claim Construction. Plaintiffs also reserve the right to modify, supplement, or change this Statement to the extent necessary to fairly respond to any issues that Defendants raise or drop in its Statement of Issues of Law That Remain to be Litigated.

If any statement included herein as an issue of law should properly be considered an issue of fact, then it should be so considered. Similarly, if any statement included as an issue of fact should properly be considered an issue of law, then it is incorporated herein by reference.

## I.    CLAIM CONSTRUCTION

1.    Issues of claim construction have already been briefed and heard by the Court. "[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). The words of patent claim should be given their ordinary and customary meaning as understood by a person of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc).

## II.    INFRINGEMENT

2.    The parties will litigate whether the Defendants' marketing and sale of its generic version of Adenoscan will infringe the methods claimed in the '296 patent. The patentee has the burden of proving infringement by a preponderance of the evidence. *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1285 (Fed. Cir. 2002).

3.      A party who actively and knowingly aids and abets in the direct infringement of a

patent is liable for inducing patent infringement under 35 U.S.C. § 271(b).  *Water Techs. Corp.*

*v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988).  Contributory infringement, defined in 35

U.S.C. § 271(c), encompasses selling a product knowing the same to be "especially made or

especially adapted for use in an infringement" and not a staple good "suitable for substantial

noninfringing use," and typically involves selling a material part of a patented product or

process.  Herbert F. Schwartz, *Patent Law and Practice* 135 (3d ed. 2001); 35 U.S.C. § 271(c);

*Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 485 (1964).  Thus, contributory

infringement arises when (1) the accused infringer knows that the product is being made or

adapted for a particular patented use, (2) the accused infringer knows of the patent which

proscribes that use, and (3) the product is not a staple article suitable for substantial non-

infringing use.  *Id.* at 487-88.

4.      In actions brought under the Hatch-Waxman Act, 35 U.S.C. § 271(e)(2), the

proper inquiry is "whether, if a particular drug *were* put on the market, it *would* infringe the

relevant patent."  *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1365-66 (Fed. Cir.

2003).  Thus, the inquiry considers the proposed generic product, as described in the Abbreviated

New Drug Application ("ANDA").  The Federal Circuit has upheld representative testing of

products similar to the accused product as sufficient to support an expert's opinion of

infringement.  *Union Carbide Chem. & Plastics Tech. Corp. v. Shell Oil Co.*, 425 F.3d 1366,

1376-77 (Fed. Cir. 2005).


III.    **PATENT VALIDITY**

5.      The parties will litigate whether the Defendants have proven invalidity of the '296

patent by a showing of clear and convincing evidence.  A patent is presumed valid.  35 U.S.C.

§ 282.  In order to overcome the presumption of validity, the challenger bears the burden of proving invalidity by clear and convincing evidence.  *TP Labs., Inc. v. Prof'l Positioners, Inc.*, 724 F.2d 965, 971 (Fed. Cir. 1984).  That burden is "constant and remains throughout the suit on the challenger" and "does not shift at any time to the patent owner."  *Id.*

6.      The challenger's "burden is especially difficult when the prior art was before the PTO examiner during prosecution of the application."  *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323 (Fed. Cir. 1999) (quoting *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1467 (Fed. Cir. 1990)).  In other words, the challenger has the "added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job."  *Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1367 (Fed. Cir. 2000) (quoting *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984)).

## A.    Anticipation

7.      The Federal Circuit "requires that a party seeking to invalidate a patent under § 102 show that the allegedly invalidating prior art contains each and every element of [the] claimed invention."  *Union Oil Co. of California v. Atlantic Richfield Co.*, 208 F.3d 989, 994-95 (Fed. Cir. 2000) (internal citations omitted); *In re Dillon*, 919 F.2d 688, 715 (Fed. Cir. 1990) ("Section 102 describes prior art as what is published or otherwise known, including subject matter in public use or on sale.  Not included is what is unknown, or knowledge that became known to the inventor through the inventor's own research.").

8.      Thus, the parties will litigate whether Sicor, as the patent challenger, has proven by clear and convincing evidence that every limitation of the asserted claims of the '296 patent are contained, in a single prior art reference.  *See Union Carbide Chemicals & Plastics Technology Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1188 (Fed. Cir. 2002).

### B.    Obviousness

9.    The parties will litigate whether Sicor, as the patent challenger, has proven by clear and convincing evidence that the asserted claims of the '296 patent would have been obvious to one of ordinary skill in the art at the time of the invention. *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966); *National Steel Car, Ltd. v. Canadian Pacific Railway, Ltd.*, 357 F.3d 1319, 1334 (Fed. Cir. 2004) ("It is elementary in patent law that, in determining whether a patent is valid . . . the first step is to determine the meaning and scope of each claim in suit. After construing the claims, a court must compare the prior art to claims as one of ordinary skill of art at the time of the invention would have done.") (internal citations omitted).

10.    Obviousness is a conclusion of law based on the factual inquiries, as set forth in *Graham*, which include consideration of (1) the scope and content of the prior art, (2) the differences between the prior art and the claimed subject matter as a whole, (3) the level of skill in the art, and (4) objective evidence of nonobviousness. *Yamanouchi Pharm. Co., Ltd. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1343 (Fed. Cir. 2000).

11.    The scope and content of the prior art must be considered as a whole. *In re Wesslau*, 353 F.2d 238, 241 (C.C.P.A. 1965) ("It is impermissible . . . to pick and choose from any one reference only so much of it as will support a given position, to the exclusion of other parts necessary to the full appreciation of what such reference fairly suggests to one of ordinary skill in the art.").

12.    The Federal Circuit has instructed that the prior art, not hindsight knowledge of a patentee's success, must motivate a person of ordinary skill in the art to do what the patentee has done. *Eli Lilly & Co. v. Zenith Goldline Pharm., Inc.*, 2006 WL 3792689, *7 (Fed. Cir. 2006) (instructing that "mere identification in the prior art of each component of a composition does not show that the combination as a whole lacks the necessary attributes for patentability");

*Yamanouchi*, 231 F.3d at 1343; *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 840 F.2d 902, 907 (Fed. Cir. 1988) ("Care must be taken to avoid hindsight reconstruction by using 'the patent in suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit.'") (citing *Orthopedic Equip. Co. v. United States*, 702 F.2d 1005, 1012 (Fed. Cir. 1983)); *C. & A. Potts & Co. v. Creager*, 155 U.S. 597, 608 (1895) ("The apparent simplicity of a new device often leads an inexperienced person to think that it would have occurred to any one familiar with the subject; but the decisive answer is that, with dozens and perhaps hundreds of others laboring in the same field, it had never occurred to any one before.").

13.     Proceeding contrary to the accepted wisdom is strong evidence of nonobviousness. *W.L. Gore & Assoc., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1552 (Fed. Cir. 1983). The Federal Circuit has recognized that a reference may "teach away" when "a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant." *Tec Air, Inc. v. Denso Mfg. Michigan Inc.*, 192 F.3d 1353, 1360 (Fed. Cir. 1999).

14.     Further, the prior art must provide a reasonable expectation of success. *In re Dow Chem. Co.*, 837 F.2d 469, 473 (Fed. Cir. 1988). Arguments that the claimed invention would have been "obvious to try" are not sufficient. *Gillette Co. v. S.C. Johnson & Son, Inc.*, 919 F.2d 720 (Fed. Cir. 1990) (commenting that "we have consistently held that 'obvious-to-try' is not to be equated with obviousness").

### C.     Issues of Law Specific to the '296 Patent

15.     The parties will litigate whether or not it is appropriate to consider an inventor's own mental impressions regarding obviousness in a validity analysis. Similar to the prohibition of using hindsight in an obviousness inquiry, an inventor's explanation or mental impressions

regarding the invention should not provide a basis for finding obviousness. *Application of Ruff*, 256 F.2d 590, 598 (C.C.P.A. 1958) ("To rely on an equivalence known only to the applicant to establish obviousness is to assume that his disclosure is a part of the prior art. The mere statement of this proposition reveals its fallaciousness."); *Stewart-Warner Corp. v. City of Pontiac, Michigan*, 767 F.2d 1563, 1570 (Fed. Cir. 1985) ("[S]ection 103 is not concerned with the actual skill of the inventors -- whose skill may be extraordinary -- but rather with the level of ordinary skill in the art. . . ."); *In re Glaug*, 283 F.3d 1335, 1341 (Fed. Cir. 2002) ("An inventor's explanation of how the invention works does not render obvious that which is otherwise unobvious.").

### D.      Objective Evidence of Nonobviousness

16.      The parties will litigate whether objective indicia of nonobviousness demonstrate the patentability of the methods claimed in the '296 patent. *Graham*, 383 U.S. at 17-18; *Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1573 (Fed. Cir. 1996) ("It is the secondary considerations that are often the most probative and determinative of the ultimate conclusion of obviousness or nonobviousness."); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 667 (Fed. Cir. 2000) (stating that "secondary considerations, when present, must be considered in determining obviousness").

17.      The Federal Circuit has emphasized the need for evaluating objective evidence of nonobviousness. *Id.* This evaluation must be made during a court's consideration of whether the claimed invention is obvious, not after such a determination is complete. *Lindemann Maschinfabrik GMBH v. American Hoist and Derrick Co.*, 730 F.2d 1452, 1461 (Fed. Cir. 1984).

### 1.      Unexpected Results

18.      Evidence of unexpected results, in the eyes of a person of ordinary skill in the art, can rebut a prima facie case of obviousness. *See In re Papesch*, 315 F.2d 381 (C.C.P.A. 1963)

(reversing a finding of obviousness where the claimed chemical compound contained minor structural changes at three locations that transformed the un-modified compound from an inactive anti-inflammatory agent to an active anti-inflammatory compound).  This is particularly true in fields such as chemistry or medicine, where even slight changes in a product may "yield substantially different results."  *In re Soni*, 54 F.3d 746, 750 (Fed. Cir. 1995).

## 2.    Commercial Success

19.    The commercial success of an invention, generally demonstrated by a showing of significant sales in the relevant market, is evidence of nonobviousness.  *Goodyear Tire & Rubber Co.*, 321 U.S. at 279; *Pro-Mold*, 75 F.3d at 1573-74; *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387 (Fed. Cir. 1988); *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1382 (Fed. Cir. 1986) ("[The] record shows that advertising makes those in the industry-- hospitals, doctors, and clinical laboratories-- aware of the diagnostic kits but does not make these potential users buy them; the products have to work, and there is no evidence that that is not the case here or that the success was not due to the merits of the claimed [invention]-- clearly contrary to the district court's finding.") (emphasis added).

## 3.    Teaching Away and Skepticism In the Field

20.    Where the prior art "teaches away" from the claimed invention rather than motivating a person of ordinary skill in the art to do what the patentee has done, the claimed invention is nonobvious.  *In re Hedges*, 783 F.2d 1038, 1041 (Fed. Cir. 1986).

21.    Evidence of initial skepticism, surprise, or incomprehension upon learning of the invention and thereafter praising its value is strong evidence of nonobviousness.  *United States v. Adams*, 383 U.S. 39, 52 (1966); *Evtl. Designs, Ltd. v. Union Oil Co. of Cal.*, 713 F.2d 693, 697-98 (Fed. Cir. 1983); *Ruiz*, 234 F.3d at 668 ("Proceeding contrary to the accepted wisdom . . . is

7

strong evidence of unobviousness.") (internal citations omitted).  This is particularly true where "the skepticism is expressed at the time of the invention, in a nonadversarial setting."  *Burlington Industries, Inc. v. Quigg*, 229 U.S.P.Q. 916, 919 (D.D.C. 1986), aff'd, 822 F.2d 1581 (Fed. Cir. 1987).

### E.    Exceptional Case

22.    The parties will litigate whether this is an exceptional case and whether Plaintiffs are entitled to reasonable attorney fees.  In ANDA-induced infringement actions, attorney fees for an "exceptional case" are specifically authorized under 35 U.S.C. § 271(e)(4) (in accordance with 35 U.S.C. § 285).  For example, a baseless Paragraph IV certification, when combined with litigation misconduct, is sufficient to support a claim for an "exceptional case."  *See Yamanouchi*, 231 F.3d at 1347.

# EXHIBIT  5

**EXHIBIT 5**

**Defendants' Statement of Issues of Law
That Remain to be Litigated**

## I.    Non-Infringement

1.    Whether Sicor has infringed asserted claims 1, 3, 7, and 9 of the '296 patent, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(e)(2)(a), by submitting to the FDA its ANDA for its injectable adenosine product.

2.    Whether Sicor has induced or contributed to infringement of asserted claims 1, 3, 7, and 9 of the '296 patent.

## II.    Anticipation

3.    Whether the alleged inventions in asserted claims 1, 3, 7, and 9 of the '296 patent are invalid under 35 U.S.C. § 102.

## III.    Obviousness

4.    Whether the alleged inventions in asserted claims 1, 3, 7, and 9 of the '296 patent are invalid under 35 U.S.C. § 103.

5.    Whether there is a nexus between any alleged commercial success of Adenoscan® and the alleged invention in asserted claims 1, 3, 7, and 9.

## IV.    Exceptional Case

6.    Plaintiffs have identified exceptional case under 35 U.S.C. § 285 as an issue to be litigated.  Defendants maintain that it is improper, and a waste of the parties' and Court's time and resources, to address issues of exceptional case at this time, and that all such issues should be bifurcated until the Court has rendered a decision on the merits and determined that there is a "prevailing party" as required by 35 U.S.C. § 285.

**V.    Additional Issues**

7.    Plaintiffs' Statement of Issues of Law That Remain to be Litigated (Exhibit 4) includes under the heading "objective evidence of nonobviousness" topics relating to alleged secondary factors, which Defendants believe raise issues of fact, not law.  *See Para-Ordnance Mfg., Inc. v. SGS Importers Int'l, Inc.*, 73 F.3d 1085, 1091 (Fed. Cir. 1995)  Defendants address these topics concerning alleged secondary factors in their Statement of Issues of Fact That Remain to be Litigated (Exhibit 3).  To the extent that any issue identified by Defendants as an issue of fact should properly be considered as an issue of law, Defendants incorporate it herein by reference.  Similarly, to the extent that any issue identified herein as an issue of law should properly be considered an issue of fact, it should be so considered.

8.    Plaintiffs' Statement of Issues of Law That Remain To Be Litigated includes argument and characterizations of legal authority which Defendants dispute.  Defendants will respond where necessary and appropriate, as the issues arise at trial and/or in post-trial briefing, or as otherwise directed by the Court.

# EXHIBIT 6

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX001 | U.S. Patent No. 5,731,296 (filed on Mar. 15, 1993, issued on Mar. 29,1998). | PDX001 PDX043 PDX125 PDX148 PDX167 Klabunde03 DDX047 | | | No objection | | | Item/King |
| TX002 | U.S. Patent No. 5,070,877 (filed Mar. 29, 1989, issued on Dec. 10, 1991). | PDX002 DDX003 PDX044 PDX124 PDX146 | | | No objection | | | King |
| TX003 | Adenoscan product description. | PDX003 PDX046 | SIC005325 | SIC005331 | **Item:** 402 403 (cumulative) **King:** 402 403 (cumulative) | **Item:** 402 403, no basis for exclusion **King:** 402 403, no basis for exclusion | | Item/King |
| TX004 | Excerpt from Sicor's ANDA for Adenosine Injection, USP, dated 12/06/2004. | PDX004 PDX045 | SIC004124 | SIC004184 | **Item:** 402 403 (cumulative) **King:** 402 403 (cumulative) | **Item:** 402 403, no basis for exclusion **King:** 402 403, no basis for exclusion | | Item/King |
| TX005 | Letter from R. Blevins to D. Hilleman, copying S. Mohiuddin, dated 08/02/1989. | DDX039 | K06996 | K06997 | 402 403 (cumulative) 801(c) and 802 Lack of foundation | 402 403, no basis for exclusion 803(6) 901(a), 902(11) | | King |
| TX006 | Teva Press Release announcing approval of adenosine injection, dated 06/16/2004. | PDX048 | | | **Item:** 402 **King:** 402 | **Item:** 402 **King:** 402 | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX007 | Amendment to application to market adenosine injection for thallium myocardial imaging submitted by Sicor to FDA, dated 4/16/2005. | PDX050 | SIC005356 | SIC005362 | **Item:** 402 **King:** 402 | **Item:** 402 **King:** 402 | | Item/King |
| TX008 | Sicor's ANDA for Adenosine Injection, USP, dated 12/06/2004. | PDX054 PDX053 | SIC004124 | SIC005324 | **Item:** 402 403 (cumulative) 1006 (voluminous document) **King:** 402 403 (cumulative) 1006 (voluminous document) | **Item:** 402 403, no basis for exclusion 1006, no basis for exclusion **King:** 402 403, no basis for exclusion 1006, no basis for exclusion | | Item/King |
| TX009 | Fujisawa Product Development Report for Adenoscan IV, dated 11/30/1993. | PDX057 | AST0075387 | AST0075467 | **Item:** 402 **King:** 402 | **Item:** 402 **King:** 402 | | Item/King |
| TX010 | Teva Press Release announcing tentative approval of adenosine injection, dated 02/13/2006. | PDX058 | | | **Item:** 402 **King:** 402 | **Item:** 402 **King:** 402 | | Item/King |
| TX011 | Email from R. Lowe to J. Pastore, W. Bondinell, and K. Feldtmose, copying S. Hernandez, dated 11/16/2004. | PDX059 | SIC011505 | SIC011505 | **Item:** 402 403 (waste of time) 801(c) and 802 **King:** 402 403 (waste of time) 801(c) and 802 | **Item:** 402 403, no basis for exclusion non-hearsay use (801); 803(6); 801(d)(2)(D) **King:** 402 403, no basis for exclusion non-hearsay use (801); 803(6); 801(d)(2)(D) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX012 | Letter from Sicor to Item, Fujisawa, and Astellas, dated 04/16/2005. | PDX060A | AST0086511 | AST0086524 | **Item:**<br>402<br>403 (waste of time)<br><br>**King:**<br>402<br>403 (waste of time) | **Item:**<br>402<br>403, no basis for exclusion<br><br>**King:**<br>402<br>403, no basis for exclusion | | Item/King |
| TX013 | Letter from Sicor to King, Fujisawa, and Astellas, dated 04/16/2005. | PDX061A | AST0086525 | AST0086545 | **Item:**<br>402<br>403 (waste of time)<br><br>**King:**<br>402<br>403 (waste of time) | **Item:**<br>402<br>403, no basis for exclusion<br><br>**King:**<br>402<br>403, no basis for exclusion | | Item/King |
| TX014 | Letter from K. Loberg to Fujisawa Healthcare Inc., dated 04/07/2005. | PDX111 | AST0213252 | AST0213253 | **Item:**<br>402<br>403 (waste of time)<br><br>**King:**<br>402<br>403 (waste of time) | **Item:**<br>402<br>403, no basis for exclusion<br><br>**King:**<br>402<br>403, no basis for exclusion | | Item/King |
| TX015 | Expert Report of K. Leffler, dated 06/09/2006. | PDX120 | | | **Item:**<br>403 (cumulative)<br>801(c) and 802<br><br>**King:**<br>403 (cumulative)<br>801(c) and 802<br>Further objections reserved pending Court's consolidation of issue for trial | **Item:**<br>403, no basis for exclusion<br>non-hearsay use (801); 801(d)(2)<br><br>**King:**<br>403, no basis for exclusion<br>non-hearsay use (801); 801(d)(2)<br>Further bases reserved pending Court's consolidation of issue for trial | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX016 | Rebuttal Expert Report of K. Leffler, dated 09/01/2006. | PDX121 Hay 11 | | | **Item:** 403 (cumulative) 801(c) and 802<br><br>**King:** 403 (cumulative) 801(c) and 802 Further objections reserved pending Court's consolidation of issue for trial | **Item:** 403, no basis for exclusion non-hearsay use (801); 801(d)(2)<br><br>**King:** 403, no basis for exclusion non-hearsay use (801); 801(d)(2) Further bases reserved pending Court's consolidation of issue for trial | | Item/King |
| TX017 | Expert Report of K. Leffler, dated 06/09/2006. | PDX122 | | | **Item:** 403 (cumulative) 801(c) and 802<br><br>Further objections reserved pending Court's consolidation of issue for trial **King:** 403 (cumulative) 801(c) and 802 | **Item:** 403, no basis for exclusion non-hearsay use (801); 801(d)(2)<br><br>Further bases reserved pending Court's consolidation of issue for trial **King:** 403, no basis for exclusion non-hearsay use (801); 801(d)(2) | | Item/King |
| TX018 | Rebuttal Expert Report of K. Leffler, dated 09/01/2006. | PDX123 | | | **Item:** 403 (cumulative) 801(c) and 802 Further objections reserved pending Court's consolidation of issue for trial<br><br>**King:** 403 (cumulative) 801(c) and 802 | **Item:** 403, no basis for exclusion non-hearsay use (801); 801(d)(2) Further bases reserved pending Court's consolidation of issue for trial<br><br>**King:** 403, no basis for exclusion non-hearsay use (801); 801(d)(2) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX019 | Adenoscan Sales Charts listing sales and costs for Adenoscan 1990-2005. | PDX126 DDX193 | AST0185475 | AST0185476 | **Item:** 801(c) and 802 Improper compilation <br><br> **King:** 801(c) and 802 Improper compilation | **Item:** 803(6) 1006, no basis for exclusion <br><br> **King:** 803(6) 1006, no basis for exclusion | | Item/King |
| TX020 | General Method of Data Collection, www.ims-global.com/insight/world_in_brief/0010/data_values.htm (last visited 09/24/2006). | PDX129 | | | **Item:** 402 403 (cumulative and waste of time) 801(c) and 802 <br><br> **King:** 402 403 (cumulative and waste of time) 801(c) and 802 | **Item:** 402 403, no basis for exclusion <br><br> non-hearsay use (801) 106 <br> **King:** 402 403, no basis for exclusion <br><br> non-hearsay use (801) 106 | | Item/King |
| TX021 | Chart abstracted from The Myocardial Perfusion Study Monthly Monitor, produced by AMR. | PDX130 | AST0185477 | AST0185482 | **Item:** 106 (incomplete) 403 (cumulative) 801(c) and 802 Illegible (at least in part) Improper compilation Lack of foundation <br><br> **King:** 106 (incomplete) 403 (cumulative) 801(c) and 802 Illegible (at least in part) Improper compilation Lack of foundation | **Item:** 106, no basis for exclusion 403, no basis for exclusion non-hearsay use (801); 803(17) <br><br> 1006, no basis for exclusion 901(a) <br><br> **King:** 106, no basis for exclusion 403, no basis for exclusion non-hearsay use (801); 803(17) <br><br> 1006, no basis for exclusion 901(a) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX022 | Excel spreadsheet from Dr. Hay's economic analysis, containing graph titled "Scans." | PDX131 | | | **Item:**<br>403 (confusion)<br>801(c) and 802<br><br>Improper compilation<br>Lack of foundation<br><br>**King:**<br>403 (confusion)<br>801(c) and 802<br><br>Improper compilation<br>Lack of foundation | **Item:**<br>403, no basis for exclusion<br>non-hearsay use (801); 801(d)(2);<br><br>1006, no basis for exclusion<br>901(a)<br><br><br>**King:**<br>403, no basis for exclusion<br>non-hearsay use (801); 801(d)(2);<br><br>1006, no basis for exclusion<br>901(a) | | Item/King |
| TX023 | DePuey, Updated Imaging Guidelines for Nuclear Cardiology Procedures, 8 J. Nuclear Caridology (2001). | PDX132 | | | **Item:**<br>402<br>403 (waste of time)<br>801(c) and 802<br><br>**King:**<br>402<br>403 (waste of time)<br>801(c) and 802 | **Item:**<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(18)<br><br>**King:**<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(18) | | Item/King |
| TX024 | Leffler, Persuasion or Information? The Economics of Prescription Drug Advertising, 24 J. Law and Econ. 45 (1981). | PDX134 | SIC011827 | SIC011857 | **Item:**<br>801(c) and 802<br><br>**King:**<br>801(c) and 802 | **Item:**<br>non-hearsay use (801); 803(18); 803(16)<br>**King:**<br>non-hearsay use (801); 803(18); 803(16) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX025 | Gonul et al., Promotion of Prescription Drugs and Its Impact on Physicians' Choice Behavior, 65 J. of Marketing 79 (2001). | PDX137 | SIC011765 | SIC011776 | **Item:** 801(c) and 802 Illegible (at least in part) **King:** 801(c) and 802 Illegible (at least in part) | **Item:** non-hearsay use (801); 803(18) **King:** 801(c) and 802; 803(18) | | Item/King |
| TX026 | Expert Report of P. Binkley, dated 06/09/2006. | PDX158 | | | **Item:** 403 (cumulative) 801(c) and 802 **King:** 402 801(c) and 802 Rule 26 | **Item:** 403, no basis for exclusion non-hearsay use (801); 801(d)(2) **King:** 402 non-hearsay use (801); 801(d)(2) | | Item/King |
| TX027 | Sullivan et al., Pharmacologic Intervention of Deconditioning in Humans, 33 Clinical Research 523A (1985). | PDX159 | | | 402 801(c) and 802 Hearsay as to handwriting Not previously produced | 402 non-hearsay use (801); 803(18); 803(16) | | Item |
| TX028 | Sullivan et al., Prevention of Bedrest-induced Physical Deconditioning by Daily Dobutamine Infusions, 76 J. Clinical Invest. 1632 (1985). | PDX160 | | | 402 801(c) and 802 | 402 non-hearsay use (801); 803(18); 803(16) | | Item |
| TX029 | Starling et al., Biochemical Analysis of Human Myocardium in Cardiac Transplant Recipients, 36 Clinical Research 829A (1988). | PDX161 | | | 402 801(c) and 802 | 402 non-hearsay use (801); 803(18) | | Item |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX030 | Leier et al., Disparity between improvement in left ventricular function and changes in clinical status and exercise capacity during chronic enoximone therapy, 117 Am. Heart J. 1092 (1989). | PDX162 | | | 402<br>801(c) and 802 | 402<br>non-hearsay use (801); 803(18) | | Item |
| TX031 | Tice et al., Clinical pharmacology of nicorandil in patients with congestive heart failure, 52 Clinical Pharmacology & Therapeutics 496 (1992). | PDX164 | | | 402<br>801(c) and 802 | 402<br>non-hearsay use (801); 803(18) | | Item |
| TX032 | Tice et al., Hemodynamic Effects of Oral Nicorandil in Congestive Heart Failure, 65 Am J. of Cardiol. 1361 (1990). | PDX165 | | | 402<br>801(c) and 802 | 402<br>non-hearsay use (801); 803(18) | | Item |
| TX033 | Declaration of P. Binkley, dated 08/23/2006. | PDX166 | | | 402<br>403 (cumulative)<br>801(c) and 802 | 402<br>403, no basis for exclusion<br>non-hearsay use (801); 801(d)(2) | | Item |
| TX034 | Binkley et al., Chapter 26: Non-ACE Inhibitor Vasodilators, in Congestive Heart Failure (2d ed.) (2000). | PDX168 | | | 402<br>801(c) and 802 | 402<br>non-hearsay use (801); 803(18) | | Item |
| TX035 | Drury and Szent-Gyorgyi., The Physiological Activity of Adenine Compounds With Especial Reference to Their Action Upon The Mammalian Heart, 68 J. Physiol. 213 (1929). | PDX169 | | | Item:<br>801(c) and 802<br><br>King:<br>801(c) and 802 | Item:<br>non-hearsay use (801); 803(18); 803(16)<br><br>King:<br>non-hearsay use (801); 803(18); 803(16) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX036 | DiMarco et al., Adenosine: electrophysiologic effects and therapeutic use for terminating paroxysmal supraventricular tachycardia, 68 Circulation 1254 (1983). | PDX171 | | | **Item:** 801(c) and 802 **King:** 402 801(c) and 802 | **Item:** non-hearsay use (801); 803(18); 803(16) **King:** 402 non-hearsay use (801); 803(18); 803(16) | | Item/King |
| TX037 | Sollevi et al., Cardiovascular effects of adenosine in man, 120 Acta Physiologica Scandinavica 11A (1984). | PDX173 DDX055 | | | **Item:** 801(c) and 802 **King:** 801(c) and 802 | **Item:** non-hearsay use (801); 803(18); 803(16) **King:** non-hearsay use (801); 803(18); 803(16) | | Item/King |
| TX038 | Gould et al., Noninvasive Assessment of Coronary Stenoses by Myocardial Imaging During Pharmacologic Coronary Vasodilatation. II. Clinical Methodology and Feasibility, 41 Am. J. Cardiol. 279 (1978). | PDX174 DDX254 PDX154 | | | **Item:** 801(c) and 802 **King:** 801(c) and 802 | **Item:** non-hearsay use (801); 803(18); 803(16) **King:** non-hearsay use (801); 803(18); 803(16) | | Item/King |
| TX039 | Needleman et al., excerpt from Chapter 33: Drugs Used for the Treatment of Angina: Organic Nitrates, Calcium Channel Blockers and B-Adrenergic Antagonists, in Goodman and Gilman's The Pharmacological Basis of Therapeutics (7th ed.) (1985). | PDX175 | SIC011640 | SIC011645 | **Item:** 801(c) and 802 **King:** 801(c) and 802 | **Item:** non-hearsay use (801); 803(18); 803(16) **King:** non-hearsay use (801); 803(18); 803(16) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX040 | Kassell et al., Cerebral and Systemic circulatory effects of arterial hypotension induced by adenosine, 58 J. Neurosurg. 69 (1983). | PDX176 | | | 801(c) and 802 Illegible (at least in part) | non-hearsay use (801); 803(18); 803(16) | | Item |
| TX041 | 1985 The Year Book of Anesthesia 115-16 (Ronald D. Miller et al. eds., Year Book Medical Publishers, Inc. 1985). | PDX178 | AST0056211 | AST0056214 | 801(c) and 802 | non-hearsay use (801); 803(18); 803(16) | | Item |
| TX042 | Fukunaga et al., ATP-Induced Hypotensive Anethesia During Surgery, 57 Anesthesiology A65 (1982). | PDX179 DDX134 | | | 801(c) and 802 | non-hearsay use (801); 803(18); 803(16) | | Item |
| TX043 | Rebuttal Expert Report P. Binkley, dated 09/01/2006. | PDX182 | | | 403 (cumulative) 801(c) and 802 | 403, no basis for exclusion non-hearsay use (801); 801(d)(2) | | Item |
| TX044 | Klabunde and Althouse, Adenosine Metabolism in Dog Whole Blood: Effects of Dipyridamole, 28 Life Sciences 2631 (1981). | PDX183 | | | Item: 801(c) and 802  King: 801(c) and 802 | Item: non-hearsay use (801); 803(18); 803(16)  King: non-hearsay use (801); 803(18); 803(16) | | Item/King |
| TX045 | DiMarco et al., Diagnostic and Therapeutic Use of Adenosine in Patients With Supraventricular Tachyarrhythmias, 6 J. Am. Coll. Cardiol. 417 (1985). | PDX186 | | | Item: 801(c) and 802  King: 801(c) and 802 | Item: non-hearsay use (801); 803(18); 803(16)  King: non-hearsay use (801); 803(16) | | Item/King |
| TX046 | Wilson et al., Effects of Adenosine on Human Coronary Arterial Circulation, 82 Circulation 1595 (1990). | PDX187 | | | Item: 801(c) and 802  King: 801(c) and 802 | Item: non-hearsay use (801); 803(18)  King: non-hearsay use (801); 803(18) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX047 | Pantely and Bristow, Adenosine: Renewed Interest in an Old Drug, 82 Circulation 1854 (1990). | PDX188 | | | **Item:**<br>402<br>801(c) and 802<br><br>**King:**<br>402<br>801(c) and 802 | **Item:**<br>402<br>non-hearsay use (801); 803(18)<br><br>**King:**<br>402<br>non-hearsay use (801); 803(18) | | Item/King |
| TX048 | Biaggioni et al., Cardiovascular Effects of Adenosine Infusion in Man and Their Modulation by Dipyridamole, 39 Life Sciences 2229 (1986). | PDX189<br>PDX150<br>Wackers420 | | | **Item:**<br>402<br>801(c) and 802<br><br>**King:**<br>801(c) and 802 | **Item:**<br>402<br>non-hearsay use (801); 803(18); 803(16)<br>**King:**<br>non-hearsay use (801); 803(18); 803(16) | | Item/King |
| TX049 | Letter from R. Berne to A. Sollevi, dated 02/08/1985. | PDX190 | ID0002234 | ID0002234 | 106 (incomplete)<br>801(c) and 802<br>901(a) | 106, no basis for exclusion<br>803(16); non-hearsay use (801); 803(3);<br>901(a); 901(b)(8) | | Item |
| TX050 | Letter from F. Robicsek to A. Henze, dated 10/21/1985; translated letter from A. Henze to A. Sollevi, dated 11/22/1985; letter from A. Sollevi to F. Robicsek, dated 12/11/1985; letter from F. Robicsek to A. Sollevi, dated 01/02/1986. | PDX191 | ID0000594 | ID0000598 | 402<br>106 (incomplete)<br>801(c) and 802<br><br>901(a)<br>Hearsay as to handwriting<br>Improper compilation<br>Lack of foundation<br>Uncertified translation | 402<br>106, no basis for exclusion<br>803(16); non-hearsay use (801); 803(6); 803(3);<br>901(a); 901(b)(8)<br><br>1006, no basis for exclusion<br>901(a); 901(b)(8) | | Item |
| TX051 | Fukunaga et al., Dipyridamole Potentiates the Hypotensive Effect of ATP, 61 Anesthesiology A39  (1984). | PDX192 | | | 801(c) and 802 | non-hearsay use (801); 803(16); 803(18) | | Item |
| TX052 | Adenoscan Original IND, Vol. 1 of 1, 12/09/1987. | PDX401 | AST0009416 | AST0009603 | 801(c) and 802 | non-hearsay use (801); 803(6) | | King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX053 | Letter from C. White to G. Salzberg, dated 12/31/1987. | PDX402 | AST0063594 | AST0063594 | 402<br>106 (incomplete)<br>801(c) and 802<br>Lack of foundation | 402<br>106, no basis for exclusion<br>non-hearsay use (801); 803(6)<br>901(a) | | King |
| TX054 | Telephone interview summary with FDA, dated 01/26/1988. | PDX403 | AST0102443 | AST0102443 | 402<br>801(c) and 802<br>Lack of foundation | 402<br>non-hearsay use; 803(1); 803(6)<br>901(a) | | King |
| TX055 | Letter from G. Salzberg to R. Lipicky, dated 05/19/1988. | PDX404 | AST0009611 | AST0009621 | 402<br>106 (incomplete)<br>801(c) and 802 | 402<br>106, no basis for exclusion<br>non-hearsay use (801); 803(6) | | King |
| TX056 | Curriculum Vitae for S. Mohiuddin. | DDX002 | K02217 | K02237 | 402<br>403 (waste of time)<br>801(c) and 802 | 402<br>403, no basis for exclusion<br>803(6); 803(5) | | King |
| TX057 | Mohiuddin et al., Clinical Utility of Adenosine in Radionuclide Mycardial Imaging. | DDX004 | AST0001042 | AST0001052 | 801(c) and 802 | non-hearsay use (801); 803(6) | | King |
| TX058 | Study C-1: Clinical Utility of Adenosine in Radionuclide Myocardial Imaging. | DDX005 | AST0001036 | AST0001205 | 801(c) and 802<br>Lack of foundation | non-hearsay use (801); 803(6)<br>901(a) | | King |
| TX059 | U.S. Patent Application Serial No. 231,217 (filed 08/11/1988). | DDX006 | AST0055432 | AST0055455 | 403 (duplicative (TX304))<br>801(c) and 802<br>901(a) | 403, no basis for exclusion<br>803(8)<br>901(a); 901(b)(7) | | King |
| TX060 | Letter from M. Lawler to S. Mehr, dated 10/22/87. | DDX007 | K 05446 | K 05446 | 106 (incomplete)<br>801(c) and 802<br>Lack of foundation | 106, not basis for exclusion<br>non-hearsay use (801); 803(6)<br>901(a) | | King |
| TX061 | Letter from W. Govier to FDA, dated 12/09/1987. | DDX008 | AST0009417 | AST0009504 | 801(c) and 802 | non-hearsay use (801); 803(6) | | King |
| TX062 | Assignment by D. Hilleman and S. Mohiuddin to Medco Research, Inc., signed on 07/15/1988. | DDX013 | K 01870 | K 01871 | No objection | | | King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX063 | Assignment by D. Hilleman and S. Mohiuddin to Medco Research, Inc., signed on 04/07/1989. | DDX014 | AST0068043 | AST0068044 | No objection | | | King |
| TX064 | Patent Application and Transmittal Letter by D. Hilleman and S. Mohiuddin for "Novel Method of Myocardial Imaging," dated 03/29/1989. | DDX016 | AST0056734 | AST0056757 | 403 (cumulative) 801(c) and 802<br><br>901(a) | 403, no basis for exclusion non-hearsay use (801);803(6); 803(8) 901(a); 901(b)(7) | | King |
| TX065 | Letter from J. Mueth to PTO enclosing Declaration and Power of Attorney, dated 05/01/1989. | DDX017 | AST0056767 | AST0056769 | No objection | | | King |
| TX066 | Expert Report of M. Cerqueira, with attachments. | DDX02-C | | | 403 (cumulative) 801(c) and 802 | 403, no basis for exclusion non-hearsay use (801) | | King |
| TX067 | Siffring et al., Myocardial Uptake and Clearance of TI-201 in Healthy Subjects Comparison of Adenosine-induced Hyperemia and Exercise Stress, 173 Radiology 769 (1989). | DDX024 | AST0046551 | AST0046556 | 402 403 (cumulative) 801(c) and 802 | 402 403, no basis for exclusion non-hearsay use (801); 803(18) | | King |
| TX068 | Gupta et al., Comparison of Adenosine and Exercise Thallium-201 Single Photon Emission Computed Tomography (SPECT) Myocardial Perfusion Imaging, 19 J. Am. Coll. Cardiol. 248 (1992). | DDX025 | AST0005668 | AST0005678 | 402 403 (cumulative) 801(c) and 802 | 402 403, no basis for exclusion non-hearsay use (801); 803(18) | | King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX069 | Hilleman et al., Cost-Minimization Analysis of Intravenous Adenosine and Dipyridamole in Thallous Chloride TI 201 SPECT Myocardial Perfusion Imaging, 31 Annals of Pharmacotherapy 974 (1997). | DDX028 | AST0081167 | AST0081172 | 801(c) and 802 | non-hearsay use (801); 803(18) | | King |
| TX070 | Rebuttal Expert Report of H.W. Strauss. | DDX03-C PDX202 Wackers423 | | | Item:<br>402<br>801(c) and 802<br>Rule 26<br><br>King:<br>403 (cumulative)<br>801(c) and 802 | Item:<br>402<br>non-hearsay use (801); 801(d)(2)<br><br>King:<br>403, no basis for exclusion<br>non-hearsay use (801); 801(d)(2) | | Item/King |
| TX071 | Letter from D. Hilleman to G. Salzberg, dated 09/15/1987. | DDX033 | K05445 | K05445 | 801(c) and 802 | non-hearsay use (801); 803(6) | | King |
| TX072 | Item 11: Case Report Tabulations for Study C-1. | DDX035 | AST0004318 | AST0004366 | 402<br>403 (cumulative)<br>801(c) and 802<br>Lack of foundation | 402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br>901(a) | | King |
| TX073 | Declaration and Power of Attorney, signed by S. Mohiuddin and D. Hilleman on 04/07/1989. | DDX036 | AST0056768 | AST0056769 | No objection | | | King |
| TX074 | Letter from D. Hilleman to R. Blevins, dated 11/25/1988. | DDX037 | K07053 | K07053 | 402<br>801(c) and 802 | 402<br>non-hearsay use (801); 803(6) | | King |
| TX075 | Adenoscan Package Insert. | DDX03A-Cerq.<br>Klabunde04<br>Zaret06 | | | No objection | | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX076 | Mohiuddin et al., Thallium-201 Myocardial Imaging in Patients with Coronary Artery Disease: Comparison of Intravenous Adenosine and Oral Dipyridamole, 26 Annals of Pharmacotherapy 1352 (1992). | DDX040 | AST0038631 | AST0038636 | 402<br>403 (cumulative)<br>801(c) and 802 | 402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(18) | | King |
| TX077 | Mohiuddin et al., Safety of Different Dosages of Intravenous Adenosine Used in Conjunction With Diagnostic Myocardial Imaging Techniques, 13 Pharmacotherapy 476 (1993). | DDX041 | AST0096788 | AST0096792 | 402<br>403 (cumulative)<br>801(c) and 802<br>Illegible (at least in part) | 402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(18) | | King |
| TX078 | Mohiuddin et al., The Comparative Safety and Diagnostic Accuracy of Adenosine Myocardial Perfusion Imaging in Women versus Men, 16 Pharmacotherapy 646 (1996). | DDX042 | ID0014238 | ID0014244 | 402<br>801(c) and 802 | 402<br>non-hearsay use (801); 803(18) | | King |
| TX079 | Declaration and Power of Attorney signed by D. Hilleman on 08/10/1988, signed by S. Mohiuddin on 08/23/1988. | DDX046 | AST0055460 | AST0055463 | No objection | | | King |
| TX080 | Letter from M. Shah to A. Sollevi, dated 01/16/1991. | DDX049 | ID0019461 | ID0019461 | 402<br>801(c) and 802 | 402<br>non-hearsay use (801); 803(6) | | Item |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX081 | Notes from meeting of A. Sollevi, G. Nyberg, K. Moe and P. Thurell on 01/22/1991. | DDX051 | ID0005568 | ID0005569 | 402<br>801(c) and 802<br><br>901(a)<br>Lack of foundation<br>Illegible (at least in part) | 402<br>non-hearsay use (801); 803(1); 803(6)<br>901(a); 901(b)(1)<br>901(a); 901(b)(1) | | Item |
| TX082 | Sollevi et al., Cardiovascular Effects of Adenosine During Controlled Hypotension in Cerebral Aneurysm Surgery, 59 Anesthesiology A9 (1983). | DDX054<br>PDX172 | | | **Item:**<br>801(c) and 802<br><br>**King:**<br>801(c) and 802 | **Item:**<br>non-hearsay use (801); 803(16); 803(18)<br>**King:**<br>non-hearsay use (801); 803(16); 803(18) | | Item/King |
| TX083 | Lagerkranser et al., Adenosine Induced Hypotension in Man: Effects on Cerebral Circulation and Metabolism, 63 Anesthesiology A45 (1985). | DDX056 | | | 402<br>801(c) and 802 | 402<br>non-hearsay use (801); 803(16); 803(18) | | Item |
| TX084 | Letter from A. Sollevi to M. Shah, dated 02/05/1991. | DDX057 | ID0019462 | ID0019462 | 402<br>403 (confusion and waste of time)<br>801(c) and 802 | 402<br>403, no basis for exclusion<br><br>non-hearsay use (801); 803(6) | | Item |
| TX085 | Approval of Ethics Committee request, dated 12/21/1983, for project titled "Treatment of supraventricular tachyarrhythmias with intravenous adenosine" (with Certified Translation). | DDX098 | ID0002389 | ID0002398 | 402<br>801(c) and 802<br><br>901(a) | 402<br>non-hearsay use (801); 803(6); 803(16)<br>901(a); 901(b)(8) | | Item |
| TX086 | U.S. Patent Application Serial No. 138,306 (12/28/1987 CIP). | DDX129 | | | | | | Item |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX087 | Fukunaga et al., Hypotensive Effects of Adenosine and Adenosine Triphosphate Compared with Sodium Nitroprusside, 61 Anesthesia and Analgesia 273 (1982). | DDX133 | | | 801(c) and 802 | non-hearsay use (801); 803(18); 803(16) | | Item |
| TX088 | Sollevi et al., Relationship between arterial and venous adenosine levels and vasodilation during ATP-and adenosine-infusion in dogs, 120 Acta Physiol. Scand. 171 (1984). | DDX135 | | | 801(c) and 802 | non-hearsay use (801); 803(16); 803(18) | | Item |
| TX089 | Assignment to Sollmedco Aktiebolag from Aktiebolaget Hassle, dated 02/19/1992. | DDX136 | ID0000373 | ID0000375 | No objection | | | Item |
| TX090 | Assignment from Sollmedco Aktiebolag to Item Development Aktiebolag, dated 12/01/1992. | DDX137 | ID0001514 | ID0001516 | No objection | | | Item |
| TX091 | Letter from R. Berne to P. Thurell, dated 05/31/1994. | DDX163 | ID0004644 | ID0004644 | 402<br>106 (incomplete)<br>801(c) and 802<br>Hearsay as to handwriting<br>Lack of foundation | 402<br>106, not basis for exclusion<br>non-hearsay use (801); 803(6)<br><br>901(a) | | Item |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX092 | Fascimile to American Society of Nuclear Cardiology from Fujisawa USA, Inc. from Fujisawa USA, Inc., dated 01/09/1998. | DDX205 | AST0194740 | AST0194741 | Item:<br>106 (incomplete)<br>801(c) and 802<br>Illegible (at least in part)<br><br>King:<br>106 (incomplete)<br>801(c) and 802<br>Illegible (at least in part) | Item:<br>106, not basis of exclusion<br>803(6)<br><br>King:<br>106, not basis of exclusion<br>803(6) | | Item/King |
| TX093 | Albro et al., Noninvasive Assessment of Coronary Stenoses by Myocardial Imaging During Pharmacologic Coronary Vasodilatation: III. Clinical Trial, 42 Am. J. Cardiol. 751 (1978). | PDX155<br>DDX255 | | | Item:<br>402<br>801(c) and 802<br><br>King:<br>801(c) and 802 | Item:<br>402<br>non-hearsay use (801); 803(18); 803(16)<br>King:<br>non-hearsay use (801); 803(18); 803(16) | | Item/King |
| TX094 | Brown et al., Intravenous Dipyridamole Combined With Isometric Handgrip for Near Maximal Acute Increase in Coronary Flow in Patients With Coronary Artery Disease, 48 Am. J. Cardiol. 1077 (1981). | DDX256<br>PDX181<br>PDX208 | | | Item:<br>801(c) and 802<br><br>King:<br>801(c) and 802 | Item:<br>non-hearsay use (801); 803(18); 803(16)<br><br>King:<br>non-hearsay use (801); 803(18); 803(16) | | Item/King |
| TX095 | Josephson et al., Noninvasive detection and localization of corornary stenoses in patients: Comparison of resting dypridamole and excersise thallium-201 myocardial perfusion imaging, 103 Am. Heart J. 1008 (1982). | DDX257<br>PDX203 | SIC011660 | SIC011670 | Item:<br>402<br>801(c) and 802<br><br>King:<br>801(c) and 802 | Item:<br>402<br>non-hearsay use (801); 803(18); 803(16)<br><br>King:<br>non-hearsay use (801); 803(18); 803(16) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX096 | U.S. Department of Commerce Patent Office Deposit Account Order Form, dated 4/14/1989. | DDX258 | K01851 | K02085 | No objection | | | King |
| TX098 | Nishimura et al., Quantitative Thallium-201 Single-Photon Emission Computed Tomography During Maximal Pharmacologic Coronary Vasodilation With Adenosine for Assessing Coronary Artery Disease, 18 J. Am. Coll. Cardiol. 6 (1991). | DDX304 | AST0084300 | AST0084310 | **Item:** 402 801(c) and 802 Hearsay as to handwriting Illegible (at least in part)<br><br>**King:** 402 801(c) and 802 Hearsay as to handwriting Illegible (at least in part) | **Item:** 402 non-hearsay use (801); 803(18)<br><br>**King:** 402 non-hearsay use (801); 803(18) | | Item/King |
| TX099 | Adenoscan References, Revised 12/21/1993. | DDX305 | AST0088001 | AST0088001 | **Item:** 402 106 (incomplete) 801(c) and 802 Lack of foundation<br><br>**King:** 402 106 (incomplete) 801(c) and 802 Lack of foundation | **Item:** 402 106, no basis for exclusion non-hearsay use (801); 803(6) 901(a)<br><br>**King:** 402 106, no basis for exclusion non-hearsay use (801); 803(6) 901(a) | | Item/King |
| TX100 | Rossen et al., Coronary Dilation With Standard Dose Dipyridamole and Dipyridamole Combined With Handgrip, 79 Circulation 566 (1989). | DDX307 | AST0064843 | AST0064849 | **Item:** 402 801(c) and 802<br><br>**King:** 402 801(c) and 802 | **Item:** 402 non-hearsay use (801); 803(18)<br><br>**King:** 402 non-hearsay use (801); 803(18) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX101 | Klabunde, Dipyridamole Inhibition of Adenosine Metabolism in Human Blood, 92 Eur. J. Pharmacol. 21 (1983). | DDX308 PDX184 | AST0084721 | AST0084726 | **Item:** 801(c) and 802 **King:** 402 801(c) and 802 | **Item:** non-hearsay use (801); 803(18); 803(16) **King:** 402 non-hearsay use (801); 803(18); 803(16) | | Item/King |
| TX102 | Nishimura et al., Equivalence Between Adenosine and Exercise Thallium-201 Myocardial Tomography: A Multicenter, Prospective, Crossover Trial, 20 J. Am. Coll. Cardiol. 265 (1992). | DDX309 | AST0084288 | AST0084298 | **Item:** 402 801(c) and 802 **King:** 402 801(c) and 802 | **Item:** 402 non-hearsay use (801); 803(18) **King:** 402 non-hearsay use (801); 803(18) | | Item/King |
| TX103 | Cerqueira et al., Safety Profile of Adenosine Stress Perfusion Imaging: Results From the Adenoscan Multicenter Trial Registry, 23 J. Am. Coll. Cardiol. 384 (1994). | DDX311 | AST0084169 | AST0084174 | **Item:** 402 801(c) and 802 **King:** 801(c) and 802 | **Item:** 402 non-hearsay use (801); 803(18) **King:** non-hearsay use (801); 803(18) | | Item/King |
| TX104 | Pharmacologic Stress in Myocardial Perfusion Imaging:  Product Monograph (1995). | DDX312 | AST0093111 | AST0093130 | **Item:** 403 (cumulative) 801(c) and 802 **King:** 403 (cumulative) 801(c) and 802 | **Item:** 403, no basis for exclusion non-hearsay use (801); 803(6) **King:** 403, no basis for exclusion non-hearsay use (801); 803(6) | | Item/King |
| TX107 | License Agreement between Fujisawa and Item Development, dated 03/27/1998. | DDX337 | AST0065102 | AST0065129 | **Item:** 403 (cumulative) 801(c) and 802 **King:** 403 (cumulative) 801(c) and 802 | **Item:** 403, no basis for exclusion non-hearsay use (801); 803(6) **King:** 403, no basis for exclusion non-hearsay use (801); 803(6) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX109 | AMR data for 1995, second quarter through 2002, second quarter. | DDX359 | AST0131843 | AST0131847 | **Item:**<br>403 (cumulative)<br>801(c) and 802<br>Lack of foundation<br><br>**King:**<br>403 (cumulative)<br>801(c) and 802<br>Lack of foundation | **Item:**<br>403, no basis for exclusion<br>803(6); 803(17)<br>901(a)<br><br>**King:**<br>403, no basis for exclusion<br>803(6); 803(17)<br>901(a) | | Item/King |
| TX110 | Biaggioni et al., Humoral and Hemodynamic Effects of Adenosine Infusion In Man, 33 Clinical Research 280A (1985). | DDX376<br>PDX180 | | | **Item:**<br>801(c) and 802<br><br>**King:**<br>801(c) and 802 | **Item:**<br>non-hearsay use (801); 803(16); 803(18)<br>**King:**<br>non-hearsay use (801); 803(16); 803(18) | | Item/King |
| TX111 | Fuller et al., Circulatory and respiratory effects of infused adenosine in conscious man, 24 British J. Clinical Pharmacol. 309 (1987). | DDX377 | | | 801(c) and 802 | non-hearsay use (801); 803(18) | | King |
| TX112 | Sollevi et al., Controlled Hypotension with Adenosine in Cerebral Aneurysm Surgery, 61 Anesthesiology 400 (1984). | DDX378<br>PDX177<br>PDX145 | | | **Item:**<br>801(c) and 802<br><br>**King:**<br>801(c) and 802 | **Item:**<br>non-hearsay use (801); 803(16); 803(18)<br>**King:**<br>non-hearsay use (801); 803(16); 803(18) | | Item/King |
| TX113 | Berne, Cardiac nucleotides in hypoxia: possible role in regulation of coronary blood flow, 204 Am. J. Physiol. 317 (1963). | DDX381 | | | **Item:**<br>801(c) and 802<br><br>**King:**<br>801(c) and 802 | **Item:**<br>non-hearsay use (801); 803(16); 803(18)<br>**King:**<br>non-hearsay use (801); 803(16); 803(18) | | Item/King |
| TX114 | Expert Report of N. Mattsson. | Mattsson 2 | | | 403 (cumulative)<br>801(c) and 802 | 403, no basis for exclusion<br>non-hearsay use (801) | | King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX115 | Memorandum from B. Nelligan to J. Olszewski, dated 02/17/2001. | | AST0044120 | AST0044122 | **Item:**<br>801(c) and 802<br>Lack of foundation<br><br>**King:**<br>801(c) and 802<br>Lack of foundation | **Item:**<br>803(6)<br>901(a)<br><br>**King:**<br>803(6)<br>901(a) | | Item/King |
| TX116 | Opie, Chapter 19: Mechanisms of Cardiac Contraction and Relaxation, in Braunwald's Heart Disease: A Textbook of Cardiovascular Medicine (2005). | | | | **Item:**<br>402<br>403 (cumulative)<br>801(c) and 802<br>Not previously produced<br><br>**King:**<br>402<br>403 (cumulative)<br>801(c) and 802<br>Not previously produced | **Item:**<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(18)<br><br>**King:**<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(18) | | Item/King |
| TX117 | Curriculum Vitae of P. Binkley. | | | | 403 (cumulative)<br>801(c) and 802 | 403, no basis for exclusion<br>non-hearsay use (801); 803(6); 803(5) | | Item |
| TX119 | Expert Statement of R. Klabunde, 07/20/2006. | | | | 403 (cumulative)<br>801(c) and 802 | 403, no basis for exclusion<br>non-hearsay use (801) | | Item |
| TX120 | Klabunde, Cardiovascular Physiology Concepts: Pulmonary Capillary Wedge Pressure; www.cvphysiology.com/Heart%20Failure/HF008.htm . | | | | 403 (confusion and cumulative)<br>801(c) and 802 | 403, no basis for exclusion<br><br>non-hearsay use (801); 803(18) | | Item |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX121 | Klabunde, Cardiovascular Pharmacology Concepts: The Phamacologic Treatment of Systemic Hypertension- Antihypertensive Drugs; cvpharmacology.com/antih ypertensive/antihypertensiv e.htm. | | | | 403 (confusion and cumulative) 801(c) and 802 | 403, no basis for exclusion non-hearsay use (801); 803(18) | | Item |
| TX122 | Klabunde, Cardiovascular Pharmacology Concepts: The Phamacologic Treatment of Cardiac Arrythmias; www.cvpharmacology.com/ clinical%20topics/arrhythmi as-2.htm. | | | | 403 (confusion and cumulative) 801(c) and 802 | 403, no basis for exclusion non-hearsay use (801); 803(18) | | Item |
| TX123 | Klabunde, Cardiovascular Pharmacology Concepts: The Pharmalogic Treatment of Hypotension; www.cvpharmacology.com/ clinical%20topics/hypotens ion.htm. | | | | 403 (confusion and cumulative) 801(c) and 802 | 403, no basis for exclusion non-hearsay use (801); 803(18) | | Item |
| TX124 | Klabunde, Cardiovascular Pharmacology Concepts; Nitrodilators; www.cvpharmacology.com/ vasodilator/nitro.htm. | | | | 403 (confusion and cumulative) 801(c) and 802 | 403, no basis for exclusion non-hearsay use (801); 803(18) | | Item |
| TX125 | Klabunde, Cardiovascular Physiology Concepts: Hypertension - Introduction; www.cvphysiology.com/Blo od%20Pressure/BP001.ht m. | | | | 403 (confusion and cumulative) 801(c) and 802 | 403, no basis for exclusion non-hearsay use (801); 803(18) | | Item |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX126 | Trams et al., A Proposal for the Role of Ecto-enzymes and Adenylates in Traumatic Shock, 87 J. Theor. Biol. 609 (1980). | | | | **Item:**<br>402<br>801(c) and 802<br>Not previously produced<br><br>**King:**<br>402<br>801(c) and 802<br>Not previously produced | **Item:**<br>402<br>non-hearsay use (801); 803(16); 803(18)<br><br>**King:**<br>402<br>non-hearsay use (801); 803(16); 803(18) | | Item/King |
| TX127 | Rubinfeld, Reference Guide on Multiple Regression. | | SIC012053 | SIC012105 | **Item:**<br>801(c) and 802<br><br>**King:**<br>801(c) and 802 | **Item:**<br>non-hearsay use (801); 803(18)<br><br>**King:**<br>non-hearsay use (801); 803(18) | | Item/King |
| TX128 | Johnston et al., Hemodynamic Responses and Adverse Effects Associated With Adenosine and Dipyridamole Pharmacologic Stress Testing: A Comparison in 2000 Patients, 70 Mayo Clinical Proc. 331 (1995). | | AST00044490 | AST00044495 | **Item:**<br>402<br>801(c) and 802<br><br>**King:**<br>801(c) and 802 | **Item:**<br>402<br>non-hearsay use (801); 803(18)<br><br>**King:**<br>non-hearsay use (801); 803(18) | | Item/King |
| TX129 | Taillefer et al., Thallium-201 Myocardial Imaging During Pharmacologic Coronary Vasodilation: Comparison of Oral and Intravenous Administration of Dipyridamole, 8 J. Am. Coll. Cardiol. 76 (1986). | | | | **Item:**<br>402<br>801(c) and 802<br><br>**King:**<br>801(c) and 802 | **Item:**<br>402<br>non-hearsay use (801); 803(16); 803(18)<br>**King:**<br>non-hearsay use (801); 803(16); 803(18) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX130 | Picano et al., Safety of Intravenous High-Dose Dipyridamole Echocardiography, 70 Am. J. Cardiol. 252 (1992). | | | | Item:<br>402<br>801(c) and 802<br><br>King:<br>801(c) and 802 | Item:<br>402<br>non-hearsay use (801); 803(18)<br><br>King:<br>non-hearsay use (801); 803(18) | | Item/King |
| TX131 | Silver, Regulation of Contractile Activity in Vascular Smooth Muscle by Protein Kinases, 5 Rev. Clinical Basic Pharmacol. 341 (1985). | | | | 402<br>801(c) and 802<br>Not previously produced | 402<br>non-hearsay use (801); 803(18); 803(16) | | Item |
| TX132 | Owall et al., Clinical Experience with Adenosine for Controlled Hypotension During Cerebral Aneurysm Surgery, 66 Anesthesia and Analgesia 229 (1987). | Wackers418 | | | Item:<br>402<br>801(c) and 802<br><br>King:<br>801(c) and 802 | Item:<br>402<br>non-hearsay use (801); 803(18)<br><br>King:<br>non-hearsay use (801); 803(18) | | Item/King |
| TX133 | Gould et al., Thallium-201 Myocardial Imaging During Coronary Vasodilation Induced by Oral Dipyridamole, 27 J. Nuclear Medicine 31 (1986). | | | | 801(c) and 802 | non-hearsay use (801); 803(18); 803(16) | | King |
| TX134 | Gould et al., Physiologic Basis for Assessing Critical Coronary Stenosis: Instantaneous Flow Response and Regional Distribution During Coronary Hyperemia as Measures of Coronary Flow Reserve, 33 Am. J. Cardiol. 87 (1974). | PDX198 | | | 801(c) and 802 | non-hearsay use (801); 803(18); 803(16) | | King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX135 | Zaret and Wackers, Established and Developing Nuclear Cardiology Techniques, Part 1, 60 Modern Concepts of Cardiovascular Disease 37 (1991). | | | | **Item:**<br>402<br>801(c) and 802<br><br>**King:**<br>801(c) and 802 | **Item:**<br>402<br>non-hearsay use (801); 803(18)<br><br>**King:**<br>non-hearsay use (801); 803(18) | | Item/King |
| TX136 | Ogilby et al., Effect of Intravenous Adenosine Infusion on Myocardial Perfusion and Function, 86 Circulation 887 (1992). | PDX209 | | | **Item:**<br>402<br>801(c) and 802<br><br>**King:**<br>801(c) and 802 | **Item:**<br>402<br>non-hearsay use (801); 803(18)<br><br>**King:**<br>non-hearsay use (801); 803(18) | | Item/King |
| TX137 | Wackers, Chapter 25: Myocardial Perfusion Imaging, in Diagnostic Nuclear Medicine (3d ed.) (1996). | | | | **Item:**<br>402<br>801(c) and 802<br>Illegible (at least in part)<br>Not previously produced<br><br>**King:**<br>801(c) and 802<br>Illegible (at least in part) | **Item:**<br>402<br>non-hearsay use (801); 803(18)<br><br><br>**King:**<br>non-hearsay use (801); 803(18) | | Item/King |
| TX138 | Wackers, Chapter 15: Myocardial Perfusion Imaging, in Diagnostic Nuclear Medicine (4th ed.) (2003). | | | | **Item:**<br>402<br>801(c) and 802<br>Illegible (at least in part)<br>Not previously produced<br><br>**King:**<br>801(c) and 802<br>Illegible (at least in part) | **Item:**<br>402<br>non-hearsay use (801); 803(18)<br><br><br>**King:**<br>non-hearsay use (801); 803(18) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX139 | Fujisawa Annual Report 2004. | | AST0213777 | AST0213838 | Item:<br>402<br>403 (cumulative)<br>801(c) and 802<br>1006 (voluminous document)<br>Illegible (at least in part)<br><br>King:<br>402<br>403 (cumulative)<br>801(c) and 802<br>1006 (voluminous document)<br>Illegible (at least in part) | Item:<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br>1006, no basis for exclusion<br><br><br>King:<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br>1006, no basis for exclusion | | Item/King |
| TX140 | Wackers et al., Detection of Silent Myocardial Ischemia in Asymptomatic Diabetic Subjects, 27 Diabetes Care 1954 (2004). | | | | Item:<br>402<br>801(c) and 802<br>Not previously produced<br><br>King:<br>402<br>801(c) and 802<br>Not previously produced | Item:<br>402<br>non-hearsay use (801); 803(18)<br><br>King:<br>402<br>non-hearsay use (801); 803(18) | | Item/King |
| TX141 | Dranove et al., Determinants of HMO Formulary Adoption Decisions (08/09/2003). | | | | Item:<br>402<br>801(c) and 802<br>Lack of foundation<br><br>King:<br>402<br>801(c) and 802<br>Lack of foundation | Item:<br>402<br>non-hearsay use (801); 803(18)<br>901(a)<br><br>King:<br>402<br>non-hearsay use (801); 803(18)<br>901(a) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX142 | General Method of Data Collection and Data Values and Definitions from http://www.ims-global.com/insight/world_in_brief/0010/data_values.htm (last viewed 07/19/2006). | | | | **Item:** 402 801(c) and 802 Not previously produced **King:** 402 801(c) and 802 Not previously produced | **Item:** 402 106; non-hearsay use (801); 803(18) **King:** 402 106; non-hearsay use (801); 803(18) | | Item/King |
| TX144 | Johnston, Chapter 8: Autocorrelation, in Econometric Methods (2d ed.) (1972). | | | | **Item:** 402 801(c) and 802 Not previously produced **King:** 402 801(c) and 802 Not previously produced | **Item:** 402 non-hearsay use (801); 803(18); 803(16) **King:** 402 non-hearsay use (801); 803(18); 803(16) | | Item/King |
| TX145 | Greene, Chapter 12: Serial Correlation, in Econometric Analysis (5th ed.) (2003). | | | | **Item:** 402 801(c) and 802 **King:** 402 801(c) and 802 | **Item:** 402 non-hearsay use (801); 803(18) **King:** 402 non-hearsay use (801); 803(18) | | Item/King |
| TX146 | Iverson, A personal view of APL, 30 IBM Systems Journal (1991) from http://elliscave.com/APL_J/IversonAPL.htm (last viewed 06/29/2006). | | | | **Item:** 402 801(c) and 802 Lack of foundation **King:** 402 801(c) and 802 Lack of foundation | **Item:** 402 non-hearsay use (801); 803(18) 901(a) **King:** 402 non-hearsay use (801); 803(18) 901(a) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX147 | Klabunde, Cardiovascular Physiology Concepts: Force-Velocity Relationship; www.cvphysiology.com/Cardiac%20Function/CF006.htm. | | | | 403 (cumulative) 801(c) and 802 | 403, no basis for exclusion non-hearsay use (801); 803(18) | | Item |
| TX148 | Klabunde, Cardiovascular Physiology Concepts: Ventricular Compliance; www.cvphysiology.com/Cardiac%20Function/CF014.htm. | | | | 403 (cumulative) 801(c) and 802 | 403, no basis for exclusion non-hearsay use (801); 803(18) | | Item |
| TX149 | Klabunde, Cardiovascular Physiology Concepts: Vascular Compliance; www.cvphysiology.com/Blood%20Pressure/BP004.htm. | | | | 403 (cumulative) 801(c) and 802 | 403, no basis for exclusion non-hearsay use (801); 803(18) | | Item |
| TX150 | Lehninger, Chapter 26: Biosythesis of Nucleotides, in Biochemistry (2d ed.) (1975). | | | | 403 (cumulative) 801(c) and 802 Not previously produced | 403, no basis for exclusion non-hearsay use (801); 803(16); 803(18) | | Item |
| TX151 | Burnstock, A Basis for Distinguishing Two Types of Purinergic Receptor, in Cell Membrane Receptors for Drugs and Hormones: A Multidisciplinary Approach (1978). | | | | 403 (cumulative) 801(c) and 802 Not previously produced | 403, no basis for exclusion non-hearsay use (801); 803(16); 803(18) | | Item |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX152 | Burnstock and Buckley, Chapter 11: The Classification of Receptors for Adenosine and Adenine Nucleotides, in Methods in Pharmacology, Vol. 6 (1985). | | | | 403 (cumulative) 801(c) and 802 Not previously produced | 403, no basis for exclusion non-hearsay use (801); 803(16); 803(18) | | Item |
| TX153 | Lehninger, Chapter 15: Bioenergetic Principles and the ATP Cycle, in Biochemistry (2d ed.) (1975). | | | | 403 (cumulative) 801(c) and 802 Hearsay as to handwriting Not previously produced | 403, no basis for exclusion non-hearsay use (801); 803(16); 803(18) | | Item |
| TX154 | Chart abstracted from The Myocardial Perfusion Study Monthly Monitor (2004). | | AST0185477 | AST0185482 | **Item:** 106 (incomplete) 403 (cumulative) 801(c) and 802 Illegible (at least in part) Improper compilation Lack of foundation  **King:** 106 (incomplete) 403 (cumulative) 801(c) and 802 Illegible (at least in part) Improper compilation Lack of foundation | **Item:** 106, no basis for exclusion 403, no basis for exclusion 803(6); 803(17)  1006, no basis for exclusion 901(a)  **King:** 106, no basis for exclusion 403, no basis for exclusion 803(6); 803(17)  1006, no basis for exclusion 901(a) | | Item/King |
| TX155 | Lette et al., Safety of dipyridamole testing in 73,806 patients: The Multicenter Dipyridamole Safety Study, 2 J. Nuclear Cardiol. 3 (1995). | | | | **Item:** 402 801(c) and 802 Not previously produced  **King:** 403 (cumulative) 801(c) and 802 Not previously produced | **Item:** 402 non-hearsay use (801); 803(18)  **King:** 403, no basis for exclusion non-hearsay use (801); 803(18) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX157 | Homma et al., Usefulness of Oral Dipyridamole Suspension for Stress Thallium Imaging Without Exercise in the Detection of Coronary Artery Disease, 57 Am. J. Cardiol. 503 (1986). | | | | **Item:**<br>402<br>801(c) and 802<br><br>**King:**<br>801(c) and 802 | **Item:**<br>402<br>non-hearsay use (801); 803(16); 803(18)<br><br>**King:**<br>non-hearsay use (801); 803(16); 803(18) | | Item/King |
| TX158 | Berndt et al., Information, Marketing, and Pricing in the U.S. Antiulcer Drug Market, 85 Am. Econ. Rev. 100 (1995). | | | | **Item:**<br>402<br>801(c) and 802<br>Not previously produced<br><br>**King:**<br>402<br>801(c) and 802<br>Not previously produced | **Item:**<br>402<br>non-hearsay use (801); 803(18)<br><br><br>**King:**<br>402<br>non-hearsay use (801); 803(18) | | Item/King |
| TX160 | Reekie, Price and Quality Competition in the United States Drug Industry, 26 J. Industr. Econ. 223 (1978) from http://www.jstor.org (last viewed 07/01/2006). | | | | **Item:**<br>402<br>801(c) and 802<br><br>Not previously produced<br>**King:**<br>402<br>801(c) and 802<br><br>Not previously produced | **Item:**<br>402<br>non-hearsay use (801); 803(16); 803(18)<br><br>**King:**<br>402<br>non-hearsay use (801); 803(16); 803(18) | | Item/King |
| TX161 | American Society of Hospital Pharmacists Guidelines on Formulary System Management, 49 Am J. Hosp. Pharm. 113 (1992). | | | | **Item:**<br>402<br>801(c) and 802<br>Not previously produced<br><br>**King:**<br>402<br>801(c) and 802<br>Not previously produced | **Item:**<br>402<br>non-hearsay use (801); 803(18)<br><br><br>**King:**<br>402<br>non-hearsay use (801); 803(18) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX162 | Lu and Comanor, Strategic Pricing of New Pharmaceuticals, 80 Rev. Econ. Stat. 108 (1998) from http://www.jstor.org (last viewed 06/14/2006). | | | | **Item:**<br>402<br>801(c) and 802<br>Not previously produced<br><br>**King:**<br>402<br>801(c) and 802<br>Not previously produced | **Item:**<br>402<br>non-hearsay use (801); 803(18)<br><br>**King:**<br>402<br>non-hearsay use (801); 803(18) | | Item/King |
| TX163 | Hurwitz and Caves, Persuasion or Information? Promotion and the Shares of Brand Name and Generic Pharmaceuticals, 31 J. Law Econ. 299 (1988), from http://www.jstor.org (last viewed 08/25/2005). | | SIC011904 | SIC011926 | **Item:**<br>801(c) and 802<br><br>**King:**<br>801(c) and 802 | **Item:**<br>non-hearsay use (801); 803(18)<br><br>**King:**<br>non-hearsay use (801); 803(18) | | Item/King |
| TX164 | Rardon et al., Adenosine and Prostacyclin Independent Electrophysiological Effects of Dipyridamole in Guinea-Pig Papillary Muscles and Canine Cardiac Purkinje Fibers, 231 J. Pharmacol. & Experimental Therapeutics 206 (1984). | | | | 402<br>801(c) and 802<br><br>Not previously produced | 402<br>non-hearsay use (801); 803(16); 803(18) | | Item |
| TX165 | Gordon, Review Article: Extracellular ATP: effects, sources and fate, 233 Biochem. J. 309 (1986). | | | | 801(c) and 802<br><br>Not previously produced | non-hearsay use (801); 803(16); 803(18) | | Item |
| TX166 | Su, Extracellular Functions of Nucleotides in Heart and Blood Vessels, 47 Ann. Rev. Physiol. 665 (1985). | | | | 801(c) and 802<br><br>Not previously produced | non-hearsay use (801); 803(16); 803(18) | | Item |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX167 | Wackers et al., Value and Limitations of Thallium-201 Scintigraphy in the Acute Phase of Myocardial Infarction, 295 N. Engl. J. Medicine 1 (1976). | | | | 801(c) and 802 Illegible (at least in part) Not previously produced | non-hearsay use (801); 803(16); 803(18) | | King |
| TX168 | Stratmann and Kennedy , Evaluation of coronary artery disease in the patient unable to excercise: Alternatives to excercise stress testing, 117 Am. Heart J. 1344 (1989). | | | | 402 801(c) and 802 Illegible (at least in part) | 402 non-hearsay use (801); 803(18) | | King |
| TX169 | Spiegler, Myocardial Uptake and Clearance of TI-201 in Healthy Subjects: Comparison of Adenosine-induced Hyperemia and Exercise Stress, 175 Radiology 877 (1990). | | | | **Item:** 402 801(c) and 802 Not previously produced **King:** 402 801(c) and 802 | **Item:** 402 non-hearsay use (801); 803(18) **King:** 402 non-hearsay use (801); 803(18) | | Item/King |
| TX170 | Wackers, Clinical Assessment of Myocardial Perfusion with Thallium-201, in Evaluation of Myocardial Perfusion in Man, 60-78 (1989). | | | | 402 801(c) and 802 Illegible (at least in part) | 402 non-hearsay use (801); 803(18) | | King |
| TX171 | Wackers, Chapter 21: Myocardial Perfusion Imaging, in 1 Diagnostic Nuclear Medicine (2d ed.) (1988). | | | | 403 (cumulative) 801(c) and 802 Illegible (at least in part) | 403, no basis for exclusion non-hearsay use (801); 803(18) | | King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX172 | Wackers et al., Current Status of Radionuclide Imaging in the Management and Evaluation of patients with cardiovascular Disease, 27 Adv. Cardiol. 40 (1980). | | | | 801(c) and 802 Illegible (at least in part) | non-hearsay use (801); 803(16); 803(18) | | King |
| TX173 | Boucher et al., Determination of Cadiac Risk By Dipyridamole-Thallium Imaging Before Peripheral Vascular Surgery, 312 N. Engl. J. Medicine 389 (1985). | | | | **Item:** 402 801(c) and 802  Illegible (at least in part) Not previously produced **King:** 801(c) and 802  Illegible (at least in part) | **Item:** 402 non-hearsay use (801); 803(16); 803(18)  **King:** non-hearsay use (801); 803(16); 803(18) | | Item/King |
| TX174 | Munoz et al., Cardiac Electro-Pharmacology and Therapeutic Use of Adenosine and Adenosine Triphosphate, in Basic and Clinical Aspects, 255-267 (1987). | | AST009535 | AST009541 | 403 (cumulative) 801(c) and 802 | 403, no basis for exclusion non-hearsay use (801); 803(18) | | King |
| TX176 | Somani, Coronary Vasodilator Properties of Ethyl Adenosine 5-Carboxylate Hydrochloride (Abbott-40557), in 7 Biochemistry and Pharmacology of Myocardial Hypertrophy, Hypoxia, and Infarction (1976). | PDX 194 | | | **Item:** 402 801(c) and 802 Not previously produced  **King:** 801(c) and 802 | **Item:** 402 non-hearsay use (801); 803(16); 803(18)  **King:** non-hearsay use (801); 803(16); 803(18) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX177 | Wackers and Zaret, Editorial: Risk Stratification Soon After Acute Infarction, 100 Circulation 2040 (1999). | | | | **Item:**<br>402<br>801(c) and 802<br>Not previously produced<br><br>**King:**<br>402<br>801(c) and 802<br>Not previously produced | **Item:**<br>402<br>non-hearsay use (801); 803(18)<br><br>**King:**<br>402<br>non-hearsay use (801); 803(18) | | Item/King |
| TX178 | Expert Report of B. Zaret, dated 06/09/2006. | | | | 403 (cumulative)<br>801(c) and 802 | 403, no basis for exclusion<br>non-hearsay use (801) | | Item |
| TX179 | Cabin, Chapter 1: The Heart and Circulation, in Yale University School of Medicine Heart Book (1992). | | | | 403 (cumulative)<br>801(c) and 802<br>Not previously produced | 403, no basis for exclusion<br>non-hearsay use (801); 803(18) | | Item |
| TX180 | Smith and Braunwald, Chapter 16: The Management of Heart Failure, in 1 Heart Disease: A Textbook of Cardiovascular Medicine (2d ed.) (1984). | | | | 403 (cumulative)<br>801(c) and 802<br>Not previously produced | 403, no basis for exclusion<br>non-hearsay use (801); 803(16); 803(18) | | Item |
| TX181 | Iskandrian et al., Effect of Exercise Level on Ability of Thallium-201 Tomographic Imaging in Detecting Coronary Artery Disease: Analysis of 461 Patients, 14 J. Am. Coll. Cardiol. 1477 (1989). | | | | **Item:**<br>402<br>801(c) and 802<br>Illegible (at least in part)<br>Not previously produced<br><br>**King:**<br>402<br>801(c) and 802<br>Illegible (at least in part)<br>Not previously produced | **Item:**<br>402<br>non-hearsay use (801); 803(18)<br><br>**King:**<br>402<br>non-hearsay use (801); 803(18) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX182 | Taillefer et al., Comparison between dipyridamole and adenosine as pharmacologic coronary vasodilators in detection of coronary artery disease with thallium 201 imaging, 3 J. Nuclear Cardiol. 204 (1996). | DDX303 | AST0084373 | AST0084380 | **Item:**<br>801(c) and 802<br>Illegible (at least in part)<br><br>**King:**<br>801(c) and 802<br>Illegible (at least in part) | **Item:**<br>non-hearsay use (801); 803(18)<br><br>**King:**<br>non-hearsay use (801); 803(18) | | Item/King |
| TX183 | Mahmarian, Thallium-201 Scintigraphy after Maximal Pharmacological Coronary Vasodilation with Adenosine, 30 J. Nuclear Medicine 760, No. 129 (1989). | | | | 402<br>801(c) and 802 | 402<br>non-hearsay use (801); 803(18) | | King |
| TX184 | Wackers and Zaret, Using thallium-201 imaging to find the cause of chest pain, 6 J. Cardiovascular Medicine 971 (1981). | | | | **Item:**<br>402<br>801(c) and 802<br><br>Illegible (at least in part)<br>Not previously produced<br>**King:**<br>801(c) and 802<br><br>Illegible (at least in part) | **Item:**<br>402<br>non-hearsay use (801); 803(16); 803(18)<br><br>**King:**<br>non-hearsay use (801); 803(16); 803(18) | | Item/King |
| TX185 | Staudacher, Adenosine Thallium-201 Scintigraphy: Feasibility, Safety and Initial Results in Man, 13 J. Am. Coll. Cardiol. 161A (1989). | | | | 402<br>801(c) and 802 | 402<br>non-hearsay use (801); 803(18) | | King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX186 | Wackers, Editorial: Pharmacologic Stress with Dipyridamole: How Lazy Can One Be? 31 J. Nuclear Medicine 1024 (1990). | | | | 402￼403 (cumulative)￼801(c) and 802 | 402￼403, no basis for exclusion￼non-hearsay use (801); 803(18) | | King |
| TX187 | Jezer et al., The Effect of Adenosine on Cardiac Irregularities in Man, 9 Am. Heart J. 252 (1933-1934). | | | | **Item:**￼801(c) and 802￼￼Illegible (at least in part)￼Not previously produced￼**King:**￼801(c) and 802￼￼Illegible (at least in part)￼Not previously produced | **Item:**￼non-hearsay use (801); 803(16); 803(18)￼￼**King:**￼non-hearsay use (801); 803(16); 803(18) | | Item/King |
| TX188 | Yamamoto et al., Complex Effects of Inhibitors on Cyclic GMP-stimulated Cyclic Nucleotide Phosphodiesterase, 258 J. Biol. Chem. 14173 (1983). | | | | 402￼801(c) and 802￼￼Not previously produced | 402￼non-hearsay use (801); 803(16); 803(18) | | Item |
| TX189 | Abbott and Wackers, The Role of Radionuclide Imaging in the Triage of Patients with Chest Pain in the Emergency Department,  19 Revista Portugue de Cardiologia: Recent Advances in Nuclear Cardiology I-53 (2000). | | | | 402￼801(c) and 802 | 402￼non-hearsay use (801); 803(18) | | King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX190 | Kern, Part VI Atherosclerotic Cardiovascular Disease, Chapter 44: Coronary Blood Flow and Myocardial Ischemia, in 2 Braunwald's Heart Disease: A Textbook of Cardiovascular Medicine (7th ed.) (2005). | | | | **Item:** 402 801(c) and 802 Not previously produced **King:** 402 801(c) and 802 Not previously produced | **Item:** 402 non-hearsay use (801); 803(18) **King:** 402 non-hearsay use (801); 803(18) | | Item/King |
| TX195 | Wackers, Editorial Comment: Adenosine or Dipyridamole: Which is Preferred for Myocardial Perfusion Imaging, 17 J. Am. Coll. Cardiol. 1295 (1991). | | | | 402 403 (cumulative) 801(c) and 802 | 402 403, no basis for exclusion non-hearsay use (801); 803(18) | | King |
| TX196 | Roth et al., A randomized comparison between the hemodynamic effects of hydralazine and nitroglycerin alone and in combination at rest and during isometric exercise in patients with chronic mitral regurgitation, 125 Am. Heart J. 155 (1993). | | | | **Item:** 402 801(c) and 802 **King:** 402 801(c) and 802 | **Item:** 402 non-hearsay use (801); 803(18) **King:** 402 non-hearsay use (801); 803(18) | | Item/King |
| TX197 | Moncada and Vane, The role of prostacyclin in vascular tissue, 38 Federation Proceedings 66 (1979). | | | | 402 801(c) and 802 | 402 non-hearsay use (801); 803(16); 803(18) | | Item |
| TX198 | Burnstock and Kennedy, Is there a Basis for Distinguishing Two Types of P2-Purinoreceptor, 16 Gen. Pharmac. 433 (1985). | | | | 402 801(c) and 802 | 402 non-hearsay use (801); 803(16); 803(18) | | Item |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX199 | Moir and Downs, Myocardial reactive hyperemia: comparative effects of adenosine, ATP, ADP, and AMP, 222 Am. J. Physiol. (1972). | PDX197 | | | **Item:**<br>801(c) and 802<br><br>**King:**<br>402<br>801(c) and 802<br>Not previously produced | **Item:**<br>non-hearsay use (801); 803(16); 803(18)<br><br>**King:**<br>402<br>non-hearsay use (801); 803(16); 803(18) | | Item/King |
| TX200 | Excerpt including graphics from Zaret et al., Yale University School of Medicine Heart Book (1992). | | | | No objection | | | Item/King |
| TX201 | Miller et al., Differential Systemic Arterial and Venous Actions and Consequent Cardiac Effects of Vasodilator Drugs, 24 Progress in Cardiovascular Diseases 353 (1982). | | | | 801(c) and 802<br>Not previously produced | non-hearsay use (801); 803(16); 803(18) | | Item |
| TX202 | Opie, Chapter 19: Mechanisms of Cardiac Contraction and Relaxation, in 1 Braunwald's Heart Disease: A Textbook of Cardiovascular Medicine (7th ed.) (2005). | | | | **Item:**<br>402<br>403 (cumulative)<br>801(c) and 802<br>Not previously produced<br><br>**King:**<br>402<br>403 (cumulative)<br>801(c) and 802<br>Not previously produced | **Item:**<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(18)<br><br>**King:**<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(18) | | Item/King |
| TX203 | Smith and Mills, Inhibition of Adenosine 3':5'- Cyclic Monphosphate Phosphodiesterase, 120 Biochem. J. 20P (1970). | | | | 403 (cumulative)<br>801(c) and 802<br>Not previously produced | 403, no basis for exclusion<br>non-hearsay use (801); 803(16); 803(18) | | Item |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX204 | Bristow et al., Chapter 23: Drugs in the Treatment of Heart Failure, in 1 Braunwald's Heart Disease:  A Textbook of Cardiovascular Medicine (7th ed.) (2005). | | | | **Item:**<br>402<br>403 (cumulative)<br>801(c) and 802<br>Not previously produced<br><br>**King:**<br>402<br>403 (cumulative)<br>801(c) and 802<br>Not previously produced | **Item:**<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(18)<br><br>**King:**<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(18) | | Item/King |
| TX205 | Kaplan, Chapter 27: Systemic Hypertension: Therapy, in 1 Heart Disease (2d ed.) (1984). | | | | 403 (cumulative)<br>801(c) and 802<br>Not previously produced | 403, no basis for exclusion<br>non-hearsay use (801); 803(16); 803(18) | | Item |
| TX206 | Zaret and Wackers, Medical Progress: Nuclear Cardiology (First of Two Parts), 329 N. Engl. J. Medicine 775 (1993). | | | | 402<br>801(c) and 802 | 402<br>non-hearsay use (801); 803(18) | | King |
| TX207 | Udelson et al., Chapter 13: Nuclear Cardiology, in 1 Braunwald's Heart Disease:  A Textbook of Cardiovascular Medicine (7th ed.) (2005). | | | | **Item:**<br>402<br>403 (cumulative)<br>801(c) and 802<br>Illegible (at least in part)<br>Not previously produced<br><br>**King:**<br>402<br>403 (cumulative)<br>801(c) and 802<br>Illegible (at least in part)<br>Not previously produced | **Item:**<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(18)<br><br>**King:**<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(18) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX208 | Grossman and Braunwald, Chapter 24: High-Cardiac Output States, in Heart Disease: A Textbook of Cardiovascular Medicine (2d ed.) (1984). | | | | 403 (cumulative) 801(c) and 802 Not previously produced | 403, no basis for exclusion non-hearsay use (801); 803(16); 803(18) | | Item |
| TX209 | Kaplan, Chapter 38: Systemic Hypertension Therapy, in 1 Braunwald's Heart Disease: A Textbook of Cardiovascular Medicine (7th ed.) (2005). | | | | **Item:** 402 403 (cumulative) 801(c) and 802 Not previously produced  **King:** 402 403 (cumulative) 801(c) and 802 Not previously produced | **Item:** 402 403, no basis for exclusion non-hearsay use (801); 803(18)  **King:** 402 403, no basis for exclusion non-hearsay use (801); 803(18) | | Item/King |
| TX211 | Vasodilators, excerpt from 1 Heart Disease: A Textbook of Cardiovascular Medicine (2d ed.) (1984). | | | | 402 801(c) and 802  Not previously produced | 402 non-hearsay use (801); 803(16); 803(18) | | Item |
| TX212 | Carroll and Hess, Chapter 20: Assessment of Normal and Abnormal Cardiac Function, in 1 Braunwald's Heart Disease: A Textbook of Cardiovascular Medicine (7th ed.) (2005). | | | | **Item:** 402 403 (cumulative) 801(c) and 802 Illegible (at least in part) Not previously produced  **King:** 402 403 (cumulative) 801(c) and 802 Illegible (at least in part) Not previously produced | **Item:** 402 403, no basis for exclusion non-hearsay use (801); 803(18)  **King:** 402 403, no basis for exclusion non-hearsay use (801); 803(18) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX213 | Klabunde, Cardiovascular Physiology Concepts: Frank-Starling Mechanism; www.cvphysiology.com/Cardiac%20Function/CF003.htm. | | | | **Item:** 403 (cumulative) 801(c) and 802  **King:** 402 801(c) and 802 Not previously produced | **Item:** 403, no basis for exclusion non-hearsay use (801); 803(18)  **King:** 402 non-hearsay use (801); 803(18) | | Item/King |
| TX214 | Maguire et al., 2-Alkylthioadenosines, Specific Coronary Vasodilators, 14 J. Medicinal Chem. 415 (1971). | PDX195 | | | **Item:** 403 (cumulative) 801(c) and 802 Not previously produced  **King:** 403 (cumulative) 801(c) and 802 Not previously produced | **Item:** 403, no basis for exclusion non-hearsay use (801); 803(16); 803(18)  **King:** 403, no basis for exclusion non-hearsay use (801); 803(16); 803(18) | | Item/King |
| TX215 | Marcus, Chapter 8: Humoral Control of the Coronay Circulation, in The Coronary Circulation in Health and Disease (1983). | | | | **Item:** 403 (cumulative) 801(c) and 802  Not previously produced **King:** 402 403 (cumulative) 801(c) and 802 | **Item:** 403, no basis for exclusion non-hearsay use (801); 803(16); 803(18)  **King:** 402 403, no basis for exclusion non-hearsay use (801); 803(16); 803(18) | | Item/King |
| TX216 | Study C-1: Item 11: Case Report Tabulations. | | AST0004317 | AST0004366 | 403 (cumulative) 403 (duplicative (TX72)) 801(c) and 802 Lack of foundation | 403, no basis for exclusion 403, no basis for exclusion non-hearsay use (801); 803(6) 901(a) | | King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX217 | Marcus, Chapter 22: Pharmacologic Agents, in The Coronary Circulation in Health and Disease (1983). | | | | Item:<br>402<br>403 (cumulative)<br>801(c) and 802<br><br>King:<br>801(c) and 802 | Item:<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(16); 803(18)<br>King:<br>non-hearsay use (801); 803(16); 803(18) | | Item/King |
| TX218 | Nussbacher et al., Mechanism of Adenosine-Induced Elevation of Pulmonary Capillary Wedge Pressure in Humans, 92 Circulation 371 (1995). | | | | 402<br>801(c) and 802 | 402<br>non-hearsay use (801); 803(18) | | Item |
| TX219 | Sollevi et al., Theophylline antagonizes cardiovascular responses to dipyridamole in man without affecting increases in plasma adenosine, 121 Acta Physiologica Scandinavica 165 (1984). | | | | 801(c) and 802<br>Illegible (at least in part) | non-hearsay use (801); 803(16); 803(18) | | King |
| TX220 | Conradson et al., Cardiovascular effects of infused adenosine in man: potentiation by dipyridamole, 129 Acta Physiologica Scandinavica 387 (1987). | PDX207 | | | 801(c) and 802<br><br>Illegible (at least in part) | non-hearsay use (801); 803(18) | | King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX221 | Wilde et al., Thallium Myocardial Imaging: Recent Experience Using a Coronary Vasodilator, 33 Clinical Radiology 43 (1982). | | | | **Item:** 402 801(c) and 802 **King:** 403 (cumulative) 801(c) and 802 | **Item:** 402 non-hearsay use (801); 803(16); 803(18) **King:** 403, no basis for exclusion non-hearsay use (801); 803(16); 803(18) | | Item/King |
| TX222 | Changing Perceptions: Women and CAD, Brochure for program at Hyatt Regency Miami at Miami Convention Center on May 26, 2004. | | AST0053045 | AST0053047 | **Item:** 403 (cumulative) 801(c) and 802 Illegible (at least in part) **King:** 403 (cumulative) 801(c) and 802 Illegible (at least in part) | **Item:** 403, no basis for exclusion non-hearsay use (801); 803(6) **King:** 403, no basis for exclusion non-hearsay use (801); 803(6) | | Item/King |
| TX223 | Assessing CAD in Women: Brochure for education programs. | | AST0052971 | AST0052972 | **Item:** 403 (cumulative) 801(c) and 802 Illegible (at least in part) **King:** 403 (cumulative) 801(c) and 802 Illegible (at least in part) | **Item:** 403, no basis for exclusion non-hearsay use (801); 803(6) **King:** 403, no basis for exclusion non-hearsay use (801); 803(6) | | Item/King |
| TX224 | Risk Stratification of Patients with Ischemic Heart Disease: The use of Myocardial Perfusion Imaging (Jan. 2001). | | AST0094010 | AST0094103 | **Item:** 403 (cumulative) 801(c) and 802 Illegible (at least in part) **King:** 403 (cumulative) 801(c) and 802 Illegible (at least in part) | **Item:** 403, no basis for exclusion non-hearsay use (801); 803(6) **King:** 403, no basis for exclusion non-hearsay use (801); 803(6) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX225 | Hill et al., Chater 16: Time-Series Analysis, in Undergraduate Econometrics (1997). | | | | **Item:** 403 (waste of time) 801(c) and 802  **King:** 403 (waste of time) 801(c) and 802 | **Item:** 403, no basis for exclusion non-hearsay use (801); 803(18)  **King:** 403, no basis for exclusion non-hearsay use (801); 803(18) | | Item/King |
| TX226 | Biaggioni et al., Cardiovascular and Respiratory Effects of Adenosine in Conscious Man: Evidence for Chemoreceptor Activation, 61 Circulation Research 779 (1987). | | | | 801(c) and 802 Illegible (at least in part) | non-hearsay use (801); 803(18) | | King |
| TX227 | Sanchez, Pharmacoeconomics and Formulary Decision Making, 9 PharmacoEconomics (Suppl. 1) 16 (1996). | | | | **Item:** 402 403 (waste of time) 801(c) and 802  **King:** 402 403 (waste of time) 801(c) and 802 | **Item:** 402 403, no basis for exclusion non-hearsay use (801); 803(18)  **King:** 402 403, no basis for exclusion non-hearsay use (801); 803(18) | | Item/King |
| TX228 | Berne, The Role of Adenosine in the Regulation of Coronary Blood Flow, 47 Circulation Research 807 (1980). | DDX380 PDX170 | | | **Item:** 801(c) and 802  **King:** 801(c) and 802 | **Item:** non-hearsay use (801); 803(16); 803(18) **King:** non-hearsay use (801); 803(16); 803(18) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX229 | Iskandrian et al., Curriculum in Cardiology: Dipyridamole cardiac imaging, 115 Am. Heart J. 432 (1988). | PDX196 | | | **Item:**<br>402<br>801(c) and 802<br>Illegible (at least in part)<br><br>**King:**<br>801(c) and 802<br>Illegible (at least in part) | **Item:**<br>402<br>non-hearsay use (801); 803(18)<br><br>**King:**<br>non-hearsay use (801); 803(18) | | Item/King |
| TX230 | Strauss and Pitt, Noninvasive Detection of Subcritical Coronary Arterial Narrowings With a Coronary Vasodilator and Myocardial Perfusion Imaging, 39 Am. J. Cardiol. 403 (1977). | PDX151 | | | **Item:**<br>402<br>801(c) and 802<br><br>**King:**<br>801(c) and 802 | **Item:**<br>402<br>non-hearsay use (801); 803(16); 803(18)<br>**King:**<br>non-hearsay use (801); 803(16); 803(18) | | Item/King |
| TX231 | Wackers, Adenosine-Thallium Imaging: Faster and Better?, 16 J. Am. Coll. Cardiol. 1384 (1990). | | | | 402<br>403 (cumulative)<br>801(c) and 802 | 402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(18) | | King |
| TX232 | Strauss and Pitt, Chapter 13: Clinical application of myocardial imaging with thallium, in Cardiovascular nuclear medicine (2d ed.) (1979). | PDX152 | SIC012110 | SIC012121 | **Item:**<br>402<br>801(c) and 802<br><br>**King:**<br>801(c) and 802 | **Item:**<br>402<br>non-hearsay use (801); 803(16); 803(18)<br>**King:**<br>non-hearsay use (801); 803(16); 803(18) | | Item/King |
| TX233 | Hamilton et al., Myocardial Imaging with Thallium-201: Effect of Cardiac Drugs on Myocardial Images and Absolute Tissue Distribution, 19 J. Nuclear Medicine 10 (1978). | | SIC011618 | SIC011624 | **Item:**<br>402<br>801(c) and 802<br><br>**King:**<br>801(c) and 802 | **Item:**<br>402<br>non-hearsay use (801); 803(16); 803(18)<br>**King:**<br>non-hearsay use (801); 803(16); 803(18) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX234 | Lebowitz et al., Thallium-201 for Medical Use. I, 16 J. Nuclear Medicine 151 (1975). | | SIC011612 | SIC011617 | **Item:**<br>402<br>801(c) and 802<br><br>**King:**<br>801(c) and 802 | **Item:**<br>402<br>non-hearsay use (801); 803(16); 803(18)<br>**King:**<br>non-hearsay use (801); 803(16); 803(18) | | Item/King |
| TX236 | Lagerkranser et al., Central and Splanchnic Hemodynamics in the Dog during Controlled Hypotension with Adenosine, 60 Anesthesiology 547 (1984). | | | | 801(c) and 802 | non-hearsay use (801); 803(16); 803(18) | | King |
| TX237 | Rosenthal et al., Demand Effects of Recent Changes in Prescription Drug Promotion, Kaiser Family Foundation (June 2003) | | SIC011967 | SIC012002 | **Item:**<br>801(c) and 802<br><br><br><br>**King:**<br>801(c) and 802 | **Item:**<br>non-hearsay use (801); 803(18)<br><br><br><br>**King:**<br>non-hearsay use (801); 803(18) | | Item/King |
| TX238 | Zaret et al., Noninvasive Regional Myocardial Perfusion with Radioactive Potassium, 288 N. Engl. J. Medicine 809 (1973). | | | | **Item:**<br>402<br>801(c) and 802<br><br>Illegible (at least in part)<br>**King:**<br>403 (cumulative)<br>801(c) and 802<br><br>Illegible (at least in part) | **Item:**<br>402<br>non-hearsay use (801); 803(16); 803(18)<br><br><br>**King:**<br>403, no basis for exclusion<br>non-hearsay use (801); 803(16); 803(18) | | Item/King |
| TX239 | Communication from Allied Attorneys Chemical AB to EPO, dated 06/04/1996. | PDX149 | SIC010937 | SIC010951 | 801(c) and 802 | non-hearsay use (801); 803(6) | | King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX240 | Verani and Mahmarian, Chapter 48: Myocardial Imaging During Adenosine Infusion, in Adenosine and Adenine Nucleotides: From Molecular Biology to Integrative Physiology (1995). | Wackers417 | | | **Item:**<br>402<br>801(c) and 802<br><br>**King:**<br>402<br>801(c) and 802 | **Item:**<br>402<br>non-hearsay use (801); 803(18)<br><br>**King:**<br>402<br>non-hearsay use (801); 803(18) | | Item/King |
| TX241 | Gould, Pharmacologic Intervention as an Alternative to Exercise Stress, 17 Seminars in Nuclear Medicine 121 (1987). | | AST0063942 | AST0063951 | 801(c) and 802 | non-hearsay use (801); 803(18) | | King |
| TX242 | Cerqueira, Pharmacologic stress versus maximal-exercise stress for perfusion imaging: Which, when, and why? 3 J. Nuclear Cardiol. 510 (1996). | | | | **Item:**<br>402<br>801(c) and 802<br><br>**King:**<br>402<br>801(c) and 802 | **Item:**<br>402<br>non-hearsay use (801); 803(18)<br><br>**King:**<br>402<br>non-hearsay use (801); 803(18) | | Item/King |
| TX244 | Rossen et al., Comparison of Coronary Vasodilation With Intravenous Dipyridamole And Adenosine, 18 J. Am. Coll. Cardiol. 485 (1991). | DDX310 | | | **Item:**<br>402<br>801(c) and 802<br><br>**King:**<br>402<br>801(c) and 802 | **Item:**<br>402<br>non-hearsay use (801); 803(18)<br><br>**King:**<br>402<br>non-hearsay use (801); 803(18) | | Item/King |
| TX245 | Leppo et al., Quantitave Thallium-201 Redistribution with a Fixed Coronay Stenosis in Dogs, 63 Circulation 632 (1981). | PDX199 | | | **Item:**<br>402<br>801(c) and 802<br><br>**King:**<br>801(c) and 802 | **Item:**<br>402<br>non-hearsay use (801); 803(16); 803(18)<br>**King:**<br>non-hearsay use (801); 803(16); 803(18) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX246 | Expert Report of H.W. Strauss. | PDX142 Wackers414 | | | **Item:**<br>403 (cumulative)<br>801(c) and 802<br>Rule 26<br><br>**King:**<br>403 (cumulative)<br>801(c) and 802 | **Item:**<br>403, no basis for exclusion non-hearsay use (801); 801(d)(2)<br><br>**King:**<br>403, no basis for exclusion non-hearsay use (801); 801(d)(2) | | Item/King |
| TX247 | Expert Statement of J. Hay. | | | | **Item:**<br>403 (cumulative)<br>801(c) and 802<br><br>**King:**<br>403 (cumulative)<br>801(c) and 802<br>Further objections reserved pending Court's consolidation of issue for trial | **Item:**<br>403, no basis for exclusion non-hearsay use (801)<br><br>**King:**<br>403, no basis for exclusion non-hearsay use (801)<br>Further bases reserved pending Court's consolidation of issue for trial | | Item/King |
| TX248 | Expert Statement of J. Hay. | Hay 4 | | | **Item:**<br>403 (cumulative)<br>801(c) and 802<br>Further objections reserved pending Court's consolidation of issue for trial<br><br>**King:**<br>403 (cumulative)<br>801(c) and 802 | **Item:**<br>403, no basis for exclusion non-hearsay use (801)<br>Further bases reserved pending Court's consolidation of issue for trial<br><br>**King:**<br>403, no basis for exclusion non-hearsay use (801) | | Item/King |
| TX249 | Expert Statement of F. Wackers. | Wackers413; Wackers415 | | | 403 (cumulative)<br>801(c) and 802<br>Rule 26 | 403, no basis for exclusion non-hearsay use (801) | | King |
| TX250 | Second Expert Statement of B. Zaret. | | | | 403 (cumulative)<br>801(c) and 802 | 403, no basis for exclusion non-hearsay use (801) | | Item |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX251 | Output from Stata program regarding IMS data. | | | | **Item:**<br>402<br>403 (confusion and waste of time)<br>801(c) and 802<br><br>**King:**<br>402<br>403 (confusion and waste of time)<br>801(c) and 802 | **Item:**<br>402<br>403, no basis for exclusion<br><br>non-hearsay use (801); 803(6); 803(17)<br><br>**King:**<br>402<br>403, no basis for exclusion<br><br>non-hearsay use (801); 803(6); 803(17) | | Item/King |
| TX252 | Ford et al., Age-related changes in adenosine and B-adrenocepter responsiveness of vascular smooth muscle in man, 33 Br. J. of Clinical Pharmacology 83 (1992). | Zaret03 | | | 402<br>801(c) and 802 | 402<br>non-hearsay use (801); 803(18) | | Item |
| TX253 | Carabello, Chapter 4: Abnormalities in Cardiac Contraction: Systolic Dysfunction, in Congestive Heart Failure: Pathophysiology, Diagnosis, and Comprehensive Approach to Management (2d ed.) (2000). | Zaret05 | | | 402<br>801(c) and 802 | 402<br>non-hearsay use (801); 803(18) | | Item |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX254 | Owall et al., Effects of Adenosine-Induced Hypotension on Myocardial Hemodynamics and Metabolism during Cerebral Aneurysm Surgery, 67 Anesth. Analg. 228 (1988). | | ID0001706 | ID0001710 | 402<br>801(c) and 802 | 402<br>non-hearsay use (801); 803(18) | | Item |
| TX255 | Masters et al., Platelet Anti-aggregating and Hemodynamic Effects of Adenosine and Prostaglandin E, 30 Thorac. Cardiovasc. Surgeon 14 (1982). | | ID0000626 | ID0000632 | 801(c) and 802 | non-hearsay use (801); 803(16); 803(18) | | Item |
| TX256 | The Best of 1987: One Man's Opinion, 32 Survey of Anesthesiology 385 (1988). | | ID0000609 | ID0000611 | 402<br>801(c) and 802 | 402<br>non-hearsay use (801); 803(18) | | Item |
| TX257 | Marcus et al., Methods of measurement of myocardial blood flow in patients: a critical review, 76 Circulation 245 (1987). | PDX214 | | | **Item:**<br>402<br>801(c) and 802<br>Not previously produced<br><br>**King:**<br>402<br>801(c) and 802 | **Item:**<br>402<br>non-hearsay use (801); 803(18)<br><br>**King:**<br>402<br>non-hearsay use (801); 803(18) | | Item/King |
| TX258 | Leppo et al., Serial Thallium-201 Myocardial Imaging After Dipyridamole Infusion: Diagnostic Utility in Detecting Coronary Stenoses and Relationship to Regional Wall Motion, 66 Circulation 649 (1982). | PDX200 | | | **Item:**<br>402<br>801(c) and 802<br>Not previously produced<br><br>**King:**<br>801(c) and 802 | **Item:**<br>402<br>non-hearsay use (801); 803(16); 803(18)<br><br>**King:**<br>non-hearsay use (801); 803(16); 803(18) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX259 | Irshad et al., Trials with an adenosine analogue as antianginal medication, 22 Clinical Pharmacology & Therapeutics 470 (1977). | PDX193 | | | **Item:**<br>801(c) and 802<br>Not previously produced<br><br>**King:**<br>801(c) and 802 | **Item:**<br>non-hearsay use (801); 803(16); 803(18)<br><br>**King:**<br>non-hearsay use (801); 803(16); 803(18) | | Item/King |
| TX260 | Mohiuddin et al., Clinical Utility of Adenosine in Radionuclide Myocardial Imaging. | | AST0009471 | AST0009490 | 106 (incomplete)<br>801(c) and 802<br>Improper compilation | 106, no basis for exclusion<br>803(6)<br>1006, no basis for exclusion | | King |
| TX261 | Stipulation of Sicor's Infringement of U.S. Patent No. 5,070,877, filed 05/16/2006, entered 05/17/2006. | | | | **Item:**<br>402<br>Argumentative<br><br>**King:**<br>No objection | **Item:**<br>402<br><br>**King:** | | Item/King |
| TX262 | Defendants' Second Supplemental Preliminary Non-Infringement Contentions Regarding U.S. Patent No. 5,731,296, dated March 31, 2006. | | | | **Item:**<br>402<br>Argumentative<br><br>**King:**<br>402<br>Argumentative | **Item:**<br>402<br><br>**King:**<br>402 | | Item/King |
| TX263 | Wechsler, Make Way for Managed Care, 12 Pharm. Exec. 16 (1992). | | | | **Item:**<br>402<br>801(c) and 802<br><br>**King:**<br>402<br>801(c) and 802 | **Item:**<br>402<br>non-hearsay use (801); 803(18)<br><br>**King:**<br>402<br>non-hearsay use (801); 803(18) | | Item/King |
| TX264 | Ranhosky et al., The Safety of Intravenous Dipyridamole Thallium Myocardial Perfusion Imaging, 81 Circulation 1205 (1990). | | | | **Item:**<br>402<br>801(c) and 802<br><br>**King:**<br>402<br>801(c) and 802 | **Item:**<br>402<br>non-hearsay use (801); 803(18)<br><br>**King:**<br>402<br>non-hearsay use (801); 803(18) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX265 | Letter from F. Robicsek to A. Sollevi, dated 01/02/1986. | | ID0002216 | ID0002216 | **Item:**<br>402<br>106 (incomplete)<br>403 (cumulative)<br>801(c) and 802<br><br>**King:**<br>402<br>106 (incomplete)<br>403 (cumulative)<br>801(c) and 802<br>Not previously produced | **Item:**<br>402<br>106, no basis for exclusion<br>403, no basis for exclusion<br>non-hearsay use (801); 803(16); 803(3);<br><br>**King:**<br>402<br>106, no basis for exclusion<br>403, no basis for exclusion<br>non-hearsay use (801); 803(16); 803(3); | | Item/King |
| TX266 | Sollevi, Cardiovascular Effects of Adenosine in Man; Possible Clinical Implications, 27 Progress in Neurobiology 319 (1986). | PDX210; Wackers419 | | | 106 (incomplete)<br>801(c) and 802 | 106, no basis for exclusion<br>non-hearsay use (801); 803(16); 803(18) | | King |
| TX267 | Heptinstall et al., Adenine nucleotide metabolism in human blood - important roles for leukocytes and erythrocytes, 3 J. Thrombosis and Haemostasis 2331 (2005). | | | | 402<br>801(c) and 802 | 402<br>non-hearsay use (801); 803(18) | | Item |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX268 | Astellas Pharma Inc. Annual Report 2005. | | AST0091618 | AST0091684 | **Item:** 402 403 (cumulative) 801(c) and 802 1006 (voluminous document) Illegible (at least in part) <br><br>**King:** 402 403 (cumulative) 801(c) and 802 1006 (voluminous document) Illegible (at least in part) | **Item:** 402 403, no basis for exclusion non-hearsay use (801); 803(6) 1006, no basis for exclusion <br><br>**King:** 402 403, no basis for exclusion non-hearsay use (801); 803(6) 1006, no basis for exclusion | | Item/King |
| TX269 | Berman et al., Adenosine Myocardial Perfusion Single-Photon Emission Computed Tomography in Women Compared With Men, 41 J. Am. Coll. Cardiol. 1125 (2003). | | AST0052865 | AST0052876 | **Item:** 402 801(c) and 802 <br><br>**King:** 402 801(c) and 802 | **Item:** 402 non-hearsay use (801); 803(18) <br><br>**King:** 402 non-hearsay use (801); 803(18) | | Item/King |
| TX270 | Letter from I. Martinez to V. Hill, dated 02/21/2005. | | AST0205989 | AST0205992 | **Item:** 801(c) and 802 Lack of foundation <br><br>**King:** 801(c) and 802 Lack of foundation | **Item:** non-hearsay use (801); 803(6) 901(a) <br><br>**King:** non-hearsay use (801); 803(6) 901(a) | | Item/King |
| TX271 | Stata Time-Series, Reference Manual, Release 9 (2005). | | | | **Item:** 402 106 (incomplete) 801(c) and 802 Not previously produced <br><br>**King:** 402 106 (incomplete) 801(c) and 802 Not previously produced | **Item:** 402 106, no basis for exclusion non-hearsay use (801); 803(18) <br><br>**King:** 402 106, no basis for exclusion non-hearsay use (801); 803(18) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX272 | Economic Analysis of Federal Regulations Under Executive Order 12866, dated 01/11/1996, from Office of Management and Budget Web site at http://www.whitehouse.gov/omb/inforeg/riaguide.html. | | | | **Item:** 402 403 (waste of time) 801(c) and 802 **King:** 402 403 (waste of time) 801(c) and 802 | **Item:** 402 403, no basis for exclusion 803(8) **King:** 402 403, no basis for exclusion 803(8) | | Item/King |
| TX274 | Pharmacy work order, dated 03/03/1983 (with Certified Translation). | | ID0002589 | ID0002591 | **Item:** 402 801(c) and 802 **King:** 402 801(c) and 802 | **Item:** 402 non-hearsay use (801); 803(6); 803(16) **King:** 402 non-hearsay use (801); 803(6); 803(16) | | Item/King |
| TX275 | Certified Copy of U.S. Patent No. 5,731,296, issued 03/24/1998. | | AST0055552 | AST0055566 | No objection | | | Item/King |
| TX276 | Excerpt of Application to Market a New Drug, Biologic, or an Antibiotic Drug for Human Use to the FDA. | | SIC001446 | SIC001465 | **Item:** 402 403 (cumulative) **King:** 402 403 (cumulative) | **Item:** 402 403, no basis for exclusion **King:** 402 403, no basis for exclusion | | Item/King |
| TX277 | Letter from B. Kong to D. Urani, dated 04/28/2005. | | AST0205959 | AST0205960 | **Item:** 801(c) and 802 Lack of foundation **King:** 801(c) and 802 Lack of foundation | **Item:** non-hearsay use (801); 803(1); 803(6) 901(a) **King:** non-hearsay use (801); 803(1); 803(6) 901(a) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX278 | Letter from D. Hilleman to W. Govier, dated 04/21/1988. | | AST0063880 | AST0063881 | 402<br>801(c) and 802 | 402<br>non-hearsay use (801); 803(6) | | King |
| TX279 | Chart abstracted from The Myocardial Perfusion Study Monthly Monitor. | | AST0185483 | AST0185487 | Item:<br>106 (incomplete)<br>403 (cumulative)<br>801(c) and 802<br>Illegible (at least in part)<br>Improper compilation<br>Lack of foundation<br><br>King:<br>106 (incomplete)<br>403 (cumulative)<br>801(c) and 802<br>Illegible (at least in part)<br>Improper compilation<br>Lack of foundation | Item:<br>106, no basis for exclusion<br>403, no basis for exclusion<br>non-hearsay use (801); 803(17)<br><br>1006, no basis for exclusion<br>901(a)<br><br>King:<br>106, no basis for exclusion<br>403, no basis for exclusion<br>non-hearsay use (801); 803(17)<br><br>1006, no basis for exclusion<br>901(a) | | Item/King |
| TX280 | Defendants' Final Invalidity Contentions Regarding U.S. Patent No. 5,070,877, dated 05/05/2006. | | | | Item:<br>402<br>403 (waste of time)<br>Argumentative<br><br>King:<br>402<br>403 (waste of time)<br>Argumentative | Item:<br>402<br>403, no basis for exclusion<br><br>King:<br>402<br>403, no basis for exclusion | | Item/King |
| TX281 | Defendants' Final Non-Infringement Contentions Regarding U.S. Patent No. 5,731,296, dated 05/05/2006. | | | | Item:<br>402<br>403 (waste of time)<br>Argumentative<br><br>King:<br>402<br>403 (waste of time)<br>Argumentative | Item:<br>402<br>403, no basis for exclusion<br><br>King:<br>402<br>403, no basis for exclusion | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX282 | Defendants' Final Invalidity Contentions Regarding U.S. Patent No. 5,731,296, dated 05/05/2006. | | | | **Item:**<br>402<br>403 (waste of time)<br>Argumentative<br><br>**King:**<br>402<br>403 (waste of time)<br>Argumentative | **Item:**<br>402<br>403, no basis for exclusion<br><br>**King:**<br>402<br>403, no basis for exclusion | | Item/King |
| TX283 | Defendants' Final Non-Infringement Contentions Regarding U.S. Patent No. 5,070,877, dated 05/05/2006. | | | | **Item:**<br>402<br>403 (waste of time)<br>Argumentative<br><br>**King:**<br>402<br>403 (waste of time)<br>Argumentative | **Item:**<br>402<br>403, no basis for exclusion<br><br>**King:**<br>402<br>403, no basis for exclusion | | Item/King |
| TX284 | Defendants' Statement Concerning Preliminary Non-Infringement Contentions Regarding U.S. Patent No. 5,070,877, dated 11/18/2005. | | | | **Item:**<br>402<br>403 (waste of time)<br>Argumentative<br><br>**King:**<br>402<br>403 (waste of time)<br>Argumentative | **Item:**<br>402<br>403, no basis for exclusion<br><br>**King:**<br>402<br>403, no basis for exclusion | | Item/King |
| TX285 | Defendants' Statement Concerning Preliminary Non-Infringement Contentions Regarding U.S. Patent No. 5,731,296, dated 11/18/2005. | | | | **Item:**<br>402<br>403 (waste of time)<br>Argumentative<br><br>**King:**<br>402<br>403 (waste of time)<br>Argumentative | **Item:**<br>402<br>403, no basis for exclusion<br><br>**King:**<br>402<br>403, no basis for exclusion | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX286 | Defendants' Supplemental Preliminary Non-Infringement Contentions Regarding U.S. Patent No. 5,731,296, dated 01/17/2006. | | | | Item:<br>402<br>403 (waste of time)<br>Argumentative<br><br>King:<br>402<br>403 (waste of time)<br>Argumentative | Item:<br>402<br>403, no basis for exclusion<br><br>King:<br>402<br>403, no basis for exclusion | | Item/King |
| TX287 | Defendants' Preliminary Invalidity Contentions Regarding U.S. Patent No. 5,731,296, dated 02/03/2006. | | | | Item:<br>402<br>403 (waste of time)<br>Argumentative<br><br>King:<br>402<br>403 (waste of time)<br>Argumentative | Item:<br>402<br>403, no basis for exclusion<br><br>King:<br>402<br>403, no basis for exclusion | | Item/King |
| TX288 | Defendants' Preliminary Invalidity Contentions Regarding U.S. Patent No. 5,070,877, dated 02/03/2006. | | | | Item:<br>402<br>403 (waste of time)<br>Argumentative<br><br>King:<br>402<br>403 (waste of time)<br>Argumentative | Item:<br>402<br>403, no basis for exclusion<br><br>King:<br>402<br>403, no basis for exclusion | | Item/King |
| TX289 | Klocke et al., ACC/AHA/ASNC Guidelines for the Clinical Use of Cardiac Radionuclide Imaging-Executive Summary, 108 Circulation 1404 (2003). | | AST0052944 | AST0052959 | Item:<br>402<br>801(c) and 802<br><br>King:<br>402<br>801(c) and 802 | Item:<br>402<br>non-hearsay use (801); 803(18)<br><br>King:<br>402<br>non-hearsay use (801); 803(18) | | Item/King |
| TX290 | Submission of Mohiuddin et al. abstract to Am. Coll. Cardiol. | | AST0063883 | AST0063883 | 402<br>403 (cumulative)<br>801(c) and 802 | 402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6) | | King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX291 | Gupta et al., Comparative efficacy of adenosine infusion and dipyridamole-TI-201 perfusion imaging, 30 J. Nuclear Medicine 730 (1989). | | AST0001168 | AST0001168 | 402<br>403 (cumulative)<br>801(c) and 802 | 402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(18) | | King |
| TX292 | Wackers, Chapter 23: The Heart, Section 1: Myocardial Perfusion Imaging, in Nuclear Medicine Diagnosis and Therapy (1996). | | | | 402<br>403 (cumulative)<br>801(c) and 802 | 402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(18) | | King |
| TX293 | Letter from A. Henze to A. Sollevi, dated 11/22/1985 (with Certified Translation)-same as ID000595 (TX50). | | ID0002215 | ID0002215 | 402<br>106 (incomplete)<br>801(c) and 802 | 402<br>106, no basis for exclusion<br>non-hearsay use (801); 803(16); 803(3) | | Item |
| TX294 | U.S. Patent No. 5,104,859, filed 12/19/1990, issued 04/14/1992. | | | | 402 | 402 | | Item |
| TX295 | Tabulations from Study C1A. | PDX038 | AST0004319 | AST0004348 | 403 (cumulative)<br>801(c) and 802<br>Illegible (at least in part) | 403, no basis for exclusion<br>non-hearsay use (801); 803(6) | | King |
| TX296 | Tabulations from Study C1B. | PDX039 | AST0004349 | AST0004366 | 403 (cumulative)<br>801(c) and 802<br>Illegible (at least in part) | 403, no basis for exclusion<br>non-hearsay use (801); 803(6) | | King |
| TX297 | Leppo et al., Effect of Adenosine on Transmural Flow Gradients in Normal Canine Myocardium, 6 J. Cardiovascular Pharmacol. 1115 (1984). | PDX201 | | | Item:<br>402<br>801(c) and 802<br><br>Not previously produced<br><br>King:<br>402<br>801(c) and 802 | Item:<br>402<br>non-hearsay use (801); 803(16); 803(18)<br><br><br><br>King:<br>402<br>non-hearsay use (801); 803(16); 803(18) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX298 | Bingham et al., Chapter 1: Cardiovascular Nuclear Medicine, in Clinical Nuclear Medicine (1983). | PDX204 | | | **Item:** 402 **King:** 801(c) and 802 | **Item:** 402 **King:** non-hearsay use (801); 803(16); 803(18) | | Item/King |
| TX299 | Barlai-Kovach et al., Chapter 14: The Cardiovascular System, in Nuclear Medicine Technology and Techniques (2d ed.) (1989). | PDX205 | | | **Item:** 402 **King:** 801(c) and 802 | **Item:** 402 **King:** non-hearsay use (801); 803(18) | | Item/King |
| TX300 | Verani, The Adenosine Saga: One More Piece of the Puzzle: But Does It Cause Wall Motion Abnormalities, 86 Circulation 1038 (1992). | PDX185 PDX211 | | | **Item:** 402 403 (cumulative) 801(c) and 802 **King:** 402 403 (cumulative) 801(c) and 802 | **Item:** 402 403, no basis for exclusion non-hearsay use (801); 803(18) **King:** 402 403, no basis for exclusion non-hearsay use (801); 803(18) | | Item/King |
| TX301 | Rumberger et al., Use of Ultrafast Computed Tomography to Quantitate Regional Myocardial Perfusion: A Preliminary Report, 9 J. Am. Coll. Cardiol. 59 (1987). | PDX212 | | | **Item:** 402 801(c) and 802 **King:** 801(c) and 802 | **Item:** 402 non-hearsay use (801); 803(18) **King:** non-hearsay use (801); 803(18) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX302 | Rumberger et al., Determination of Bypass Graft Flow Reserve by Ultrafast-CT, 76 Circulation (Supplement) IV-5 (1987). | PDX215 | | | Item:<br>402<br>801(c) and 802<br>Not previously produced<br><br>King:<br>402<br>801(c) and 802 | Item:<br>402<br>non-hearsay use (801); 803(18)<br><br>King:<br>402<br>non-hearsay use (801); 803(18) | | Item/King |
| TX303 | Her Heart Knows No Boundaries (2002). | | AST0094658 | AST0094658 | Item:<br>801(c) and 802<br><br>King:<br>801(c) and 802 | Item:<br>non-hearsay use (801); 803(6)<br><br>King:<br>non-hearsay use (801); 803(6) | | Item/King |
| TX304 | Excerpt from certified file wrapper and contents of Application No. 07/231,217, specifically Application No. 07/231,217, filing date 08/11/1988. | | AST0055430 | AST0055455 | No objection | | | King |
| TX305 | Excerpt from certified file wrapper and contents of U.S. Patent No. 5,104,859, specifically Application No. 07/138,306, filing date 12/28/1987. | | AST0056352 | AST0056413 | No objection | | | Item |
| TX306 | U.S. Patent Application No. 07/138,306, filing date 12/28/1987. | | AST0056354 | AST0056413 | 403 (cumulative)<br>801(c) and 802 | 403, no basis for exclusion<br>non-hearsay use (801); 803(6); 806(8) | | Item |
| TX307 | Excerpt from certified file wrapper and contents of U.S. Patent No. 5,070,877, specifically Application No. 07/330,156, filed 03/29/1989. | | AST0056731 | AST0056757 | No objection | | | King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX308 | U.S. Patent Application No. 779,516, filing date 09/24/1985. | | AST0058978 | AST0059021 | No objection | | | Item |
| TX309 | Excerpt from the certified file wrapper and contents of U.S. Patent Application No. 07/030,245, specifically Application No. 07/030,245, filing date 03/24/1987. | | AST0055839 | AST0055892 | No objection | | | Item |
| TX310 | Curriculum Vitae for C. N. Mattsson. | | | | 403 (cumulative) | 403, no basis for exclusion | | King |
| TX311 | International Application Published Under The Patent Cooperation Treaty (PCT), Application No. PCT/SE85/00423, International Publication No. WO 87/01593, International Publication Date  03/26/1987. | PDX147 | AST0212943 | AST0212977 | No objection | | | King |
| TX312 | Demonstrative regarding Albro article. | PDX156 | | | 402 403 (confusion) 801(c) and 802 Lack of foundation | 402 403, no basis for exclusion non-hearsay use (801) 901(a) | | King |
| TX313 | Demonstrative regarding Gould article. | PDX153 | | | 402 403 (confusion) 801(c) and 802 Lack of foundation | 402 403, no basis for exclusion non-hearsay use (801) 901(a) | | King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX314 | Abraham et al., Feasibility of Performing Low-Level Treadmill Exercise During Adenosine Infusion, 32 J. Nuclear Medicine 1031, No. 517 (1991). | PDX144 | | | **Item:**<br>402<br>403 (waste of time)<br>801(c) and 802<br>Not previously produced<br><br>**King:**<br>402<br>403 (waste of time)<br>801(c) and 802 | **Item:**<br>402<br>403, no basis for exclusion non-hearsay use (801); 803(18)<br><br>**King:**<br>402<br>403, no basis for exclusion non-hearsay use (801); 803(18) | | Item/King |
| TX315 | Abraham et al., Intravenous Dipyridamole Versus Intravenous Adenosine Thallium Myocardial Scintigraphy, 32 J. Nuclear Medicine 969, No. 256 (1991). | PDX143 | | | **Item:**<br>402<br>403 (waste of time)<br>801(c) and 802<br>Not previously produced<br><br>**King:**<br>402<br>403 (waste of time)<br>801(c) and 802 | **Item:**<br>402<br>403, no basis for exclusion non-hearsay use (801); 803(18)<br><br>**King:**<br>402<br>403, no basis for exclusion non-hearsay use (801); 803(18) | | Item/King |
| TX316 | Sicor Inc.'s Answer and Affirmative Defenses, dated 08/08/2005. | | | | **Item:**<br>402<br>Argumentative<br><br>**King:**<br>402<br>Argumentative | **Item:**<br>402<br><br>**King:**<br>402 | | Item/King |
| TX317 | Sicor Pharmaceuticals, Inc.'s Answer and Affirmative Defenses, dated 08/08/2005. | | | | **Item:**<br>402<br>Argumentative<br><br>**King:**<br>402<br>Argumentative | **Item:**<br>402<br><br>**King:**<br>402 | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX318 | Sicor Inc.'s Answer and Affirmative Defenses, dated 08/08/2005. | | | | Item:<br>402<br>Argumentative<br><br>King:<br>402<br>Argumentative | Item:<br>402<br><br>King:<br>402 | | Item/King |
| TX319 | Sicor Pharmaceuticals, Inc.'s Answer and Affirmative Defenses, dated 08/08/2005. | | | | Item:<br>402<br>Argumentative<br><br>King:<br>402<br>Argumentative | Item:<br>402<br><br>King:<br>402 | | Item/King |
| TX320 | Certified Copy of U.S. Patent 5,070,877, issued 12/10/1991. | | AST0055567 | AST0055577 | No objection | | | King |
| TX321 | Sicor's Responses to Astellas's Requests for Admission (NOS.1-9) and Interrogatories (NOS. 1-21), dated 04/28/2006. | | | | Item:<br>402<br>Argumentative<br><br>King:<br>402<br>Argumentative | Item:<br>402<br><br>King:<br>402 | | Item/King |
| TX322 | Sicor's Responses to Astellas's Interrogatories (NOS. 1-12), dated 04/28/2006. | | | | Item:<br>402<br>Argumentative<br><br>King:<br>402<br>Argumentative | Item:<br>402<br><br>King:<br>402 | | Item/King |
| TX323 | Sicor's Response to King's Requests For Admission (NOS.1-15) and Interrogatories (NOS.1-15), dated 04/28/2006. | | | | Item:<br>402<br>Argumentative<br><br>King:<br>402<br>Argumentative | Item:<br>402<br><br>King:<br>402 | | Item/King |

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX324 | Binkley et al., Hemodynamic-inotropic response to [beta] blocker with intrinsic sympathomimetic activity in patients with congestive cardiomyopathy, 74 Circulation 1390 (1986). | PDX163 | | | 402<br>801(c) and 802 | 402<br>non-hearsay use (801); 803(16); 803(18) | | Item |
| TX325 | Fujisawa Annual Report 1995. | | AST0213404 | AST0213451 | **Item:**<br>402<br>403 (cumulative)<br>801(c) and 802<br>1006 (voluminous document)<br>Illegible (at least in part)<br><br>**King:**<br>402<br>403 (cumulative)<br>801(c) and 802<br>1006 (voluminous document)<br>Illegible (at least in part) | **Item:**<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br>1006, no basis for exclusion<br><br>**King:**<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br>1006, no basis for exclusion | | Item/King |
| TX326 | Fujisawa Annual Report 1996. | | AST0213452 | AST0213494 | **Item:**<br>402<br>403 (cumulative)<br>801(c) and 802<br>1006 (voluminous document)<br>Illegible (at least in part)<br><br>**King:**<br>402<br>403 (cumulative)<br>801(c) and 802<br>1006 (voluminous document)<br>Illegible (at least in part) | **Item:**<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br>1006, no basis for exclusion<br><br>**King:**<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br>1006, no basis for exclusion | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX327 | Fujisawa Annual Report 1997. | | AST0213495 | AST0213536 | **Item:**<br>402<br>403 (cumulative)<br>801(c) and 802<br>1006 (voluminous document)<br>Illegible (at least in part)<br><br>**King:**<br>402<br>403 (cumulative)<br>801(c) and 802<br>1006 (voluminous document)<br>Illegible (at least in part) | **Item:**<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br>1006, no basis for exclusion<br><br><br>**King:**<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br>1006, no basis for exclusion | | Item/King |
| TX328 | Fujisawa Annual Report 1998. | | AST0213537 | AST0213578 | **Item:**<br>402<br>403 (cumulative)<br>801(c) and 802<br>1006 (voluminous document)<br>Illegible (at least in part)<br><br>**King:**<br>402<br>403 (cumulative)<br>801(c) and 802<br>1006 (voluminous document)<br>Illegible (at least in part) | **Item:**<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br>1006, no basis for exclusion<br><br><br>**King:**<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br>1006, no basis for exclusion | | Item/King |
| TX329 | Fujisawa Annual Report 1999. | | AST0213579 | AST0213622 | **Item:**<br>402<br>403 (cumulative)<br>801(c) and 802<br>1006 (voluminous document)<br>Illegible (at least in part)<br><br>**King:**<br>402<br>403 (cumulative)<br>801(c) and 802<br>1006 (voluminous document)<br>Illegible (at least in part) | **Item:**<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br>1006, no basis for exclusion<br><br><br>**King:**<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br>1006, no basis for exclusion | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX330 | Fujisawa Annual Report 2000. | | AST0213623 | AST0213666 | Item:<br>402<br>403 (cumulative)<br>801(c) and 802<br>1006 (voluminous document)<br>Illegible (at least in part)<br><br>King:<br>402<br>403 (cumulative)<br>801(c) and 802<br>1006 (voluminous document)<br>Illegible (at least in part) | Item:<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br>1006, no basis for exclusion<br><br>King:<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br>1006, no basis for exclusion | | Item/King |
| TX331 | Fujisawa Annual Report 2001. | | AST0213667 | AST0213720 | Item:<br>402<br>403 (cumulative)<br>801(c) and 802<br>1006 (voluminous document)<br>Illegible (at least in part)<br><br>King:<br>402<br>403 (cumulative)<br>801(c) and 802<br>1006 (voluminous document)<br>Illegible (at least in part) | Item:<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br>1006, no basis for exclusion<br><br>King:<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br>1006, no basis for exclusion | | Item/King |
| TX332 | Fujisawa Annual Report 2002. | | AST0213721 | AST0213776 | Item:<br>402<br>403 (cumulative)<br>801(c) and 802<br>1006 (voluminous document)<br>Illegible (at least in part)<br><br>King:<br>402<br>403 (cumulative)<br>801(c) and 802<br>1006 (voluminous document)<br>Illegible (at least in part) | Item:<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br>1006, no basis for exclusion<br><br>King:<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br>1006, no basis for exclusion | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX333 | Fujisawa Annual Report 2003. | | AST0112099 | AST0112160 | Item:<br>402<br>403 (cumulative)<br>801(c) and 802<br>1006 (voluminous document)<br>Illegible (at least in part)<br><br>King:<br>402<br>403 (cumulative)<br>801(c) and 802<br>1006 (voluminous document)<br>Illegible (at least in part) | Item:<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br>1006, no basis for exclusion<br><br><br>King:<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br>1006, no basis for exclusion | | Item/King |
| TX334 | Iskandrian et al., Pharmacologic stress testing: Mechanism of action, hemodynamic responses, and results in detection of coronary artery disease, 1 J. Nuclear Cardiol. 93 (1994). | | AST0038449 | AST0038466 | Item:<br>402<br>801(c) and 802<br><br>King:<br>402<br>801(c) and 802 | Item:<br>402<br>non-hearsay use (801); 803(18)<br><br>King:<br>402<br>non-hearsay use (801); 803(18) | | Item/King |
| TX335 | EPO Boards of Appeal Decision: for Case No. T0381/87 -3.3.1 regarding Application Number EP83900154, dated 11/10/1988. | | | | 402<br>Argumentative | 402 | | King |
| TX336 | Excerpt from Visser, Annotated European Patent Convention, Article 54(2), 65-70 (13th rev. ed.) (2006). | | | | 402<br>Argumentative | 402 | | King |
| TX337 | Excerpt from Visser, Annotated European Patent Convention, Article 115, 239-240 (13th rev. ed.) (2006). | | | | 402<br>Argumentative | 402 | | King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX338 | Zaret and Beller, Clinical Nuclear Cardiology: State of the Art and Future Directions, Mosby (3d ed.) (2005) . | | | | **Item:**<br>402<br>801(c) and 802<br>1006 (voluminous document)<br>Not previously produced<br><br>**King:**<br>402<br>801(c) and 802<br>1006 (voluminous document)<br>Not previously produced | **Item:**<br>402<br>non-hearsay use (801); 803(18)<br>1006, no basis for exclusion<br><br>**King:**<br>402<br>non-hearsay use (801); 803(18)<br>1006, no basis for exclusion | | Item/King |
| TX339 | Complaint for Patent Infringement, dated 05/26/2005. | | | | **Item:**<br>402<br>801(c) and 802<br><br>**King:**<br>402<br>801(c) and 802 | **Item:**<br>402<br>non-hearsay use (801)<br><br><br>**King:**<br>402<br>non-hearsay use (801) | | Item/King |
| TX340 | Complaint for Patent Infringement, dated 05/26/2005. | | | | **Item:**<br>402<br>801(c) and 802<br><br>**King:**<br>402<br>801(c) and 802 | **Item:**<br>402<br>non-hearsay use (801)<br><br><br>**King:**<br>402<br>non-hearsay use (801) | | Item/King |
| TX343 | Wackers et al., Chapter 9: Nuclear Cardiology, in 1 Heart Disease: A Textbook of Cardiovascular Medicne 273 (6th ed.) (2001). | | | | **Item:**<br>402<br>801(c) and 802<br>Not previously produced<br><br>**King:**<br>402<br>801(c) and 802 | **Item:**<br>402<br>non-hearsay use (801); 803(18)<br><br><br>**King:**<br>402<br>non-hearsay use (801); 803(18) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX346 | Wackers et al., Detection of Silent Myocardial Ischemia in Asymptomatic Diabetic Subjects, 27 Diabetes Care 1954 (2004). | | AST0087020 | AST0087028 | **Item:**<br>402<br>403 (duplicative (TX140))<br>801(c) and 802<br>Not previously produced<br><br>**King:**<br>402<br>403 (duplicative (TX140))<br>801(c) and 802<br>Not previously produced | **Item:**<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(18)<br><br>**King:**<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(18) | | Item/King |
| TX351 | First Notice of Deposition of Sicor, Inc. and Sicor Pharmaceuticals, Inc. Pursuant to Fed. R. Civ. P. Rule 30(b)(6). | PDX041B | | | 402<br>801(c) and 802 | 402<br>non-hearsay use (801) | | Item |
| TX352 | Second Notice of Deposition of Sicor, Inc. and Sicor Pharmaceuticals, Inc. Pursuant to Fed. R. Civ. P. Rule 30(b)(6). | PDX101 | | | 402<br>801(c) and 802 | 402<br>non-hearsay use (801) | | Item |
| TX353 | Third Notice of Deposition of Sicor, Inc. and Sicor Pharmaceuticals, Inc. Pursuant to Fed. R. Civ. P. Rule 30(b)(6). | PDX41D | | | 402<br>801(c) and 802 | 402<br>non-hearsay use (801) | | Item |
| TX354 | First Notice of Deposition of Sicor, Inc. and Sicor Pharmaceuticals, Inc. Pursuant to Fed. R. Civ. P. Rule 30(b)(6). | PDX41A | | | 402<br>801(c) and 802 | 402<br>non-hearsay use (801) | | King |
| TX355 | Second Notice of Deposition of Sicor, Inc. and Sicor Pharmaceuticals, Inc. Pursuant to Fed. R. Civ. P. Rule 30(b)(6). | PDX100 | | | 402<br>801(c) and 802 | 402<br>non-hearsay use (801) | | King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX356 | Third Notice of Deposition of Sicor, Inc. and Sicor Pharmaceuticals, Inc. Pursuant to Fed. R. Civ. P. Rule 30(b)(6). | PDX56A | | | 402<br>801(c) and 802 | 402<br>non-hearsay use (801) | | King |
| TX357 | Rozanski et al., Alternative Referent Standards for Cardiac Normality: Implications for Diagnostic Testing, 101 Annals of Internal Medicine 164 (1984). | | | | 402<br>801(c) and 802<br>Not previously produced | 402<br>non-hearsay use (801); 803(16); 803(18) | | Item |
| TX358 | The Adenoscan Handbook-Color version of document produced as AST0146192-AST0146243. | | | | **Item:**<br>402<br>403 (confusion and duplicative (TX 381))<br>801(c) and 802<br><br>**King:**<br>402<br>403 (confusion and duplicative (TX 381))<br>801(c) and 802 | **Item:**<br>402<br>403, no basis for exclusion<br><br>non-hearsay use (801); 803(6)<br><br>**King:**<br>402<br>403, no basis for exclusion<br><br>non-hearsay use (801); 803(6) | | Item/King |
| TX359 | Looking Inside Her Heart (2003)- Color version of document produced as AST0094568-AST0094572. | | | | **Item:**<br>403 (duplicative (TX 382))<br>801(c) and 802<br><br>**King:**<br>403 (duplicative (TX 382))<br>801(c) and 802 | **Item:**<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br><br>**King:**<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX360 | Cardiac Risk Assessment Prior to Vascular Surgery: Adenosine Myocardial Perfusion Scintigraphy as an Alternative to Coronary Angiography (1999)- Color version of document produced as AST0093510-AST0093516. | | | | Item:<br>402<br>403 (duplicative (TX 383))<br>801(c) and 802<br>Lack of foundation<br><br>King:<br>402<br>403 (duplicative (TX 383))<br>801(c) and 802<br>Lack of foundation | Item:<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br>901(a)<br><br>King:<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br>901(a) | | Item/King |
| TX361 | Her Heart 2004: A year of artwork reflecting a woman's heart (2003)- Color version of document produced as AST0052774-AST0052791. | | | | Item:<br>402<br>403 (duplicative (TX 384))<br>801(c) and 802<br><br>King:<br>402<br>403 (duplcative (TX 384))<br>801(c) and 802 | Item:<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br><br>King:<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6) | | Item/King |
| TX362 | Indigestion? or Infarction? She'll be glad you asked (2003)- Color version of document produced as AST0052770-AST0052773. | | | | Item:<br>403 (duplicative (TX 385))<br>801(c) and 802<br><br>King:<br>403 (duplicative (TX 385))<br>801(c) and 802 | Item:<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br><br>King:<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6) | | Item/King |
| TX363 | How Do I Know I Have Heart Disease: A Woman's Guide to Diagnosis and Testing- Color version of document produced as AST0053057-AST0053062. | | | | Item:<br>403 (duplicative (TX 386))<br>801(c) and 802<br><br>King:<br>403 (duplicative (TX 386))<br>801(c) and 802 | Item:<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br><br>King:<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX364 | Tech Tips: Preparing Patients for Stress Testing (2004)- Color version of document produced as AST0052997-AST0052998. | | | | **Item:**<br>403 (duplicative (TX 387))<br>801(c) and 802<br><br>**King:**<br>403 (duplicative (TX 387))<br>801(c) and 802 | **Item:**<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br><br>**King:**<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6) | | Item/King |
| TX365 | Focus on Women, A Perspective From the American Society of Nuclear Cardiology (2004)- Color version of document produced as AST0053037-AST0053044. | | | | **Item:**<br>402<br>403 (duplicative (TX 388))<br>801(c) and 802<br><br>**King:**<br>402<br>403 (duplicative (TX 388))<br>801(c) and 802 | **Item:**<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br><br>**King:**<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6) | | Item/King |
| TX366 | Chest Pain Evaluation in the Emergency Department with SPECT Myocardial Perfusion Imaging (2000)- Color version of document produced as AST0093856-AST0093863. | | | | **Item:**<br>402<br>403 (duplicative (TX 389))<br>801(c) and 802<br><br>**King:**<br>402<br>403 (duplicative (TX 389))<br>801(c) and 802 | **Item:**<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br><br>**King:**<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6) | | Item/King |
| TX367 | Improving Chest Pain Evaluation in the Emergency Department (2001)- Color version of document produced as AST0093823-AST0093835. | | | | **Item:**<br>402<br>403 (cumulative and duplicative (TX 390))<br>801(c) and 802<br><br>**King:**<br>402<br>403 (cumulative and duplicative (TX 390))<br>801(c) and 802 | **Item:**<br>402<br>403, no basis for exclusion<br><br>non-hearsay use (801); 803(6)<br><br>**King:**<br>402<br>403, no basis for exclusion<br><br>non-hearsay use (801); 803(6) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX368 | Klabunde, Cardiovascular Physiology Concepts (2005). | | | | 402<br>403 (cumulative)<br>801(c) and 802<br>Not previously produced | 402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(18) | | Item |
| TX370 | Leier et al., The Clinical Cardiovascular Pharmacology of Dopexamine in Patients with Low Output Congestive Heart Failure, 36 Clinical Research 542A (1988). | | | | 402<br>801(c) and 802<br>Not previously produced | 402<br>non-hearsay use (801); 803(18) | | Item |
| TX371 | Sullivan et al., A Comparison of the Technetium-Labeled Myocardial Agents DiArs and DMPE to 201Tl in Experimental Animals, 11 Int'l J. Nuclear Medicine & Biology 3 (1984). | | | | 402<br>801(c) and 802<br><br>Not previously produced | 402<br>non-hearsay use (801); 803(18); 803(16) | | King |
| TX372 | Leppo et al., Effect of hyperaemia on thallium-201 redistribution in normal canine myocardium, 19 Cardiovascular Research 679 (1985). | | | | 402<br>801(c) and 802 | 402<br>non-hearsay use (801); 803(18); 803(16) | | King |
| TX373 | Strauss and Boucher, Myocardial Perfusion Studies: Lessons from a Decade of Clinical Use, 160 Radiology 577 (1986). | | | | 402<br>801(c) and 802<br>Not previously produced | 402<br>non-hearsay use (801); 803(18); 803(16) | | King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX375 | Heller et al., Independent Prognostic Value of Intravenous Dipyridamole With Technetium-99m Sestamibi Tomographic Imaging in Predicting Cardiac Events and Cardiac-Related Hospital Admissions, 26 J. Am. Coll. Cardiol. 1202 (1995). | | | | **Item:**<br>402<br>801(c) and 802<br><br>**King:**<br>402<br>801(c) and 802 | **Item:**<br>402<br>non-hearsay use (801); 803(18)<br><br>**King:**<br>402<br>non-hearsay use (801); 803(18) | | Item/King |
| TX381 | The Adenoscan Handbook. | DDX319 | AST0146192 | AST0146243 | **Item:**<br>402<br>403 (cumulative)<br>801(c) and 802<br><br>**King:**<br>402<br>403 (cumulative)<br>801(c) and 802 | **Item:**<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6)<br><br>**King:**<br>402<br>403, no basis for exclusion<br>non-hearsay use (801); 803(6) | | Item/King |
| TX382 | Looking Inside Her Heart (2002). | | AST0094568 | AST0094572 | **Item:**<br>801(c) and 802<br><br>**King:**<br>801(c) and 802 | **Item:**<br>non-hearsay use (801); 803(6)<br><br>**King:**<br>non-hearsay use (801); 803(6) | | Item/King |
| TX383 | Cardiac Risk Assessment Prior to Vascular Surgery: Adenosine Myocardial Perfusion Scintigraphy as an Alternative to Coronary Angiography (1999). | | AST0093510 | AST0093516 | **Item:**<br>402<br>801(c) and 802<br>Lack of foundation<br>Illegible (at least in part)<br><br>**King:**<br>402<br>801(c) and 802<br>Lack of foundation<br>Illegible (at least in part) | **Item:**<br>402<br>non-hearsay use (801); 803(6)<br>901(a); 901(b)(1)<br><br>**King:**<br>402<br>non-hearsay use (801); 803(6)<br>901(a); 901(b)(1) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX384 | Her Heart 2004: A year of artwork reflecting a woman's heart (2003). | | AST0052774 | AST0052791 | **Item:** 801(c) and 802  **King:** 801(c) and 802 | **Item:** non-hearsay use (801); 803(6)  **King:** non-hearsay use (801); 803(6) | | Item/King |
| TX385 | Indigestion? or Infarction? She'll be glad you asked (2003). | | AST0052770 | AST0052773 | **Item:** 801(c) and 802  **King:** 801(c) and 802 | **Item:** non-hearsay use (801); 803(6)  **King:** non-hearsay use (801); 803(6) | | Item/King |
| TX386 | How Do I Know I Have Heart Disease: A Women's Guide to Diagnosis and Testing. | | AST0053057 | AST0053062 | **Item:** 801(c) and 802  **King:** 801(c) and 802 | **Item:** non-hearsay use (801); 803(6)  **King:** non-hearsay use (801); 803(6) | | Item/King |
| TX387 | Tech Tips: Preparing Patients for Stress Testing (2005). | | AST0052997 | AST0052998 | **Item:** 402 801(c) and 802 Illegible (at least in part)  **King:** 402 801(c) and 802 Illegible (at least in part) | **Item:** 402 non-hearsay use (801); 803(6)  **King:** 402 non-hearsay use (801); 803(6) | | Item/King |
| TX388 | Focus on Women, A Perspective From the American Society of Nuclear Cardiology (2004). | | AST0053037 | AST0053044 | **Item:** 801(c) and 802 Illegible (at least in part)  **King:** 801(c) and 802 Illegible (at least in part) | **Item:** non-hearsay use (801); 803(6)  **King:** non-hearsay use (801); 803(6) | | Item/King |
| TX389 | Chest Pain Evaluation in the Emergency Department with SPECT Myocardial Perfusion Imaging (2000). | | AST0093856 | AST0093863 | **Item:** 801(c) and 802 Illegible (at least in part)  **King:** 801(c) and 802 Illegible (at least in part) | **Item:** non-hearsay use (801); 803(6)  **King:** non-hearsay use (801); 803(6) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX390 | Improving Chest Pain Evaluation in the Emergency Department (2000). | | AST0093823 | AST0093835 | **Item:** 801(c) and 802 Illegible (at least in part) **King:** 801(c) and 802 Illegible (at least in part) | **Item:** non-hearsay use (801); 803(6) **King:** non-hearsay use (801); 803(6) | | Item/King |
| TX391 | Gould, Noninvasive Assessment of Coronary Stenoses By Myocardial Perfusion Imaging During Pharmacologic Coronary Vasodilatation. I. Physiologic Basis and Experimental Validation, 41 Am. J. Cardiol. 267 (1978). | | | | **Item:** 402 801(c) and 802 **King:** 801(c) and 802 | **Item:** 402 non-hearsay use (801); 803(16); 803(18) **King:** non-hearsay use (801); 803(16); 803(18) | | Item/King |
| TX393 | Excerpt from European Patent Convention, 72,128 (July 2002). | | | | **Item:** 402 Argumentative **King:** 402 Argumentative | **Item:** 402 **King:** 402 | | Item/King |
| TX394 | Output from Stata program regarding AMR data. | | | | **Item:** 402 403 (waste of time and confusion) 801(c) and 802 **King:** 402 403 (waste of time and confusion) 801(c) and 802 | **Item:** 402 403, no basis for exclusion non-hearsay (801) **King:** 402 403, no basis for exclusion non-hearsay (801) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX395 | Output from Stata program Regarding AMR data. | | | | Item:<br>402<br>403 (waste of time and confusion)<br>801(c) and 802<br><br>King:<br>402<br>403 (waste of time and confusion)<br>801(c) and 802 | Item:<br>402<br>403, no basis for exclusion<br><br>non-hearsay (801)<br><br><br>King:<br>402<br>403, no basis for exclusion<br><br>non-hearsay (801) | | Item/King |
| TX396 | Output from Stata program Regarding IMS data. | | | | Item:<br>402<br>403 (waste of time and confusion)<br>801(c) and 802<br><br>King:<br>402<br>403 (waste of time and confusion)<br>801(c) and 802 | Item:<br>402<br>403, no basis for exclusion<br><br>non-hearsay (801);<br><br><br>King:<br>402<br>403, no basis for exclusion<br><br>non-hearsay (801) | | Item/King |
| TX397 | Output from Stata program Regarding AMR data. | | | | Item:<br>402<br>403 (waste of time and confusion)<br>801(c) and 802<br><br>King:<br>402<br>403 (waste of time and confusion)<br>801(c) and 802 | Item:<br>402<br>403, no basis for exclusion<br><br>non-hearsay (801)<br><br><br>King:<br>402<br>403, no basis for exclusion<br><br>non-hearsay (801) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX398 | Output from Stata program Regarding IMS data. | | | | Item:<br>402<br>403 (waste of time and confusion)<br>801(c) and 802<br><br>King:<br>402<br>403 (waste of time and confusion)<br>801(c) and 802 | Item:<br>402<br>403, no basis for exclusion<br><br>non-hearsay (801)<br><br><br>King:<br>402<br>403, no basis for exclusion<br><br>non-hearsay (801) | | Item/King |
| TX399 | Output from Stata program Regarding AMR data. | | | | Item:<br>402<br>403 (waste of time and confusion)<br>801(c) and 802<br><br>King:<br>402<br>403 (waste of time and confusion)<br>801(c) and 802 | Item:<br>402<br>403, no basis for exclusion<br><br>non-hearsay (801)<br><br><br>King:<br>402<br>403, no basis for exclusion<br><br>non-hearsay (801) | | Item/King |
| TX400 | Output from Stata program analyzing AMR data. | | | | Item:<br>402<br>403 (waste of time and confusion)<br>801(c) and 802<br><br><br>King:<br>402<br>403 (waste of time and confusion)<br>801(c) and 802 | Item:<br>402<br>403, no basis for exclusion<br><br>non-hearsay (801)<br><br><br>King:<br>402<br>403, no basis for exclusion<br><br>non-hearsay (801) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX401 | Data spreadsheet (1) from Dr. Hay's economic analysis. | | | | **Item:** 402 403 (cumulative, confusion, and waste of time) 801(c) and 802 **King:** 402 403 (cumulative, confusion, and waste of time) 801(c) and 802 | **Item:** 402 403, no basis for exclusion non-hearsay (801) 1006 **King:** 402 403, no basis for exclusion non-hearsay (801) 1006 | | Item/King |
| TX402 | Data spreadsheet (2) from Dr. Hay's economic analysis. | | | | **Item:** 402 403 (cumulative, confusion, and waste of time) 801(c) and 802 **King:** 402 403 (cumulative, confusion, and waste of time) 801(c) and 802 | **Item:** 402 403, no basis for exclusion non-hearsay (801); 803(17) **King:** 402 403, no basis for exclusion non-hearsay (801); 803(17) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX403 | Data spreadsheet (3) from Dr. Hay's economic analysis. | | | | **Item:** 402 403 (cumulative, confusion, and waste of time) 801(c) and 802 **King:** 402 403 (cumulative, confusion, and waste of time) 801(c) and 802 | **Item:** 402 403, no basis for exclusion non-hearsay (801); 803(17) **King:** 402 403, no basis for exclusion non-hearsay (801); 803(17) | | Item/King |
| TX404 | Data spreadsheet (4) from Dr. Hay's economic analysis. | | | | **Item:** 402 403 (cumulative, confusion, and waste of time) 801(c) and 802 **King:** 402 403 (cumulative, confusion, and waste of time) 801(c) and 802 | **Item:** 402 403, no basis for exclusion non-hearsay (801); 803(17) **King:** 402 403, no basis for exclusion non-hearsay (801); 803(17) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX405 | Data spreadsheet from Dr. Hay's economic analysis, adjusting calculated prices by CPI. | | | | **Item:**<br>403 (cumulative, confusion and waste of time)<br>801(c) and 802<br><br>**King:**<br>403 (cumulative, confusion and waste of time)<br>801(c) and 802 | **Item:**<br>403, no basis for exclusion<br><br>non-hearsay (801); 803(8); 803(17)<br><br>**King:**<br>403, no basis for exclusion<br><br>non-hearsay (801); 803(8); 803(17) | | Item/King |
| TX406 | Print out of Dr. Hay's analysis of Dr. Leffler's excel workbook. | | | | **Item:**<br>403 (cumulative, confusion, and waste of time)<br>801(c) and 802<br><br>**King:**<br>403 (cumulative, confusion, and waste of time)<br>801(c) and 802 | **Item:**<br>403, no basis for exclusion<br>non-hearsay (801); 801(d)(2)<br><br><br><br>**King:**<br>403, no basis for exclusion<br><br>non-hearsay (801); 801(d)(2) | | Item/King |
| TX407 | IMS data Spreadsheet | | | | **Item:**<br>403 (cumulative, confusion and waste of time)<br>801(c) and 802<br><br>**King:**<br>403 (cumulative, confusion and waste of time)<br>801(c) and 802 | **Item:**<br>403, no basis for exclusion<br><br>non-hearsay (801); 803(17)<br><br>**King:**<br>403, no basis for exclusion<br><br>non-hearsay (801); 803(17) | | Item/King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX408 | Spreadsheet with Monthly Consumer Price Index | | | | **Item:**<br>403 (cumulative and waste of time)<br>801(c) and 802<br><br>**King:**<br>403 (cumulative and waste of time)<br>801(c) and 802 | **Item:**<br>403, no basis for exclusion<br><br>non-hearsay (801); 803(8); 803(17)<br><br>**King:**<br>403, no basis for exclusion<br><br>non-hearsay (801); 803(8); 803(17) | | Item/King |
| TX409 | Adenoscan® Sales Chart (1995 - 2005). | | | | No objection | | | Item/King |
| TX410 | Letter from F. Robicsek to A. Henze, dated 10/21/1985-same as ID0000594 (TX50). | | ID0002210 | ID0002210 | 402<br>106 (incomplete)<br>403 (confusion)<br>801(c) and 802<br><br>901(a)<br>Lack of foundation | 402<br>106, no basis for exclusion<br>403, no basis for exclusion<br>803(6); 803(16); non-hearsay use (801); 803(3)<br>901(a); 901(b)(8)<br>901(a); 901(b)(8) | | Item |
| TX411 | Letter from A. Henze to F. Robiscek, dated 11/22/1985. | | ID0002211 | ID0002211 | 402<br>403 (confusion)<br>801(c) and 802<br><br>901(a)<br>Lack of foundation | 402<br>403, no basis for exclusion<br>803(6); 803(16); non-hearsay use (801); 803(3)<br>901(a); 901(b)(8)<br>901(a); 901(b)(8) | | Item |
| TX412 | Translated letter from A. Henze to F. Robiscek, dated 12/19/1985 (with certified translation). | | ID0002212 | ID0002212 | 402<br>106 (incomplete)<br>403 (waste of time)<br>801(c) and 802<br><br>901(a)<br>Lack of foundation | 402<br>106, no basis for exclusion<br>403, no basis for exclusion<br>803(6); 803(16); non-hearsay use (801); 803(3)<br>901(a); 901(b)(8)<br>901(a); 901(b)(8) | | Item |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX413 | Letter from A. Sollevi to F. Robicsek, dated 12/11/1985-same as ID000596-ID000567 (TX50). | ID0002213 | ID0002214 | 402<br>403 (confusion)<br>801(c) and 802<br><br>901(a) | 402<br>403, no basis for exclusion<br>803(6); 803(16); non-hearsay use (801); 803(3)<br>901(a); 901(b)(8) | | Item |
| TX414 | Curriculum Vitae of M. Cerqueira. | | | | 403 (cumulative)<br>801(c) and 802 | 403, no basis for exclusion non-hearsay use (801); 803(5); 803(6) | | King |
| TX415 | Curriculum Vitae of J.Hay. | | | | Item:<br>403 (cumulative)<br>801(c) and 802<br><br>King:<br>403 (cumulative)<br>801(c) and 802 | Item:<br>403, no basis for exclusion non-hearsay use (801); 803(5); 803(6)<br><br>King:<br>403, no basis for exclusion non-hearsay use (801); 803(5); 803(6) | | Item/King |
| TX416 | Curriculum Vitae of R. Klabunde. | | | | 403 (cumulative)<br>801(c) and 802 | 403, no basis for exclusion non-hearsay use (801); 803(5); 803(6) | | Item |
| TX417 | Curriculum Vitae of F. Wackers. | | | | 403 (cumulative)<br>801(c) and 802 | 403, no basis for exclusion non-hearsay use (801); 803(5); 803(6) | | King |
| TX418 | Curriculum Vitae of B. Zaret. | | | | 403 (cumulative)<br>801(c) and 802 | 403, no basis for exclusion non-hearsay use (801); 803(5); 803(6) | | Item |
| TX419 | Notice Pursuant to 35 U.S.C. Sec. 282, filed 01/12/2007. | | | | 402<br>403 (cumulative) | 402<br>403, no basis for exclusion | | Item |
| TX420 | Notice Pursuant to 35 U.S.C. Sec. 282, filed 01/12/2007. | | | | 403 (cumulative) | 403, no basis for exclusion | | King |

Plaintiffs' Response to Sicor's Objections

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX421 | Expert Statement of M. Cerqueira, dated 07/20/2006. | | | | 403 (cumulative) 801(c) and 802 | 403, no basis for exclusion | | King |
| TX422 | Letter from FDA to Medco regarding IND 30,974. | | AST0009608 | AST0009609 | Illegible Lack of foundation | 901(a); 901(b)(7) | | King |
| TX423 | Sicor's Supplemental Schedule of Withheld Documents, dated 04/28/2006. | | | | 402 | 402 | | Item |
| TX424 | Sicor's Supplemental Schedule of Withheld Documents, dated 04/28/2006. | | | | 402 | 402 | | King |
| TX425 | Rozanski et al., The Declining Specificity of Exercise Radionuclide Ventriculography, 309 N. Engl. J. Medicine 518, 09/01/1983. | | | | 402 Rule 26 | 402 | | Item |
| TX426 | Printout of Dr. Leffler's workbook, received 06/23/2006. | | | | Item: Lack of foundation King: Lack of foundation | Item: 901(a) King: 901(a) | | Item/King |
| TX427 | Filing Receipt of Change of Corporate Name for Applicant King Pharmaceuticals; and certificate of Express Mailing to the Commissioner for Patents, dated May 22, 2001. | | K 01882 | K 01883 | No objection | | | King |
| TX428 | Color graphics of radionuclide images of the heart. | | | | No objection | | | King |

| Trial Exhibit # | Summary | Depo Exhibit # | Bates Begin | Bates End | FRE Bases of Objection | FRE Bases of Admission | Admit | Case |
|---|---|---|---|---|---|---|---|---|
| TX429 | Notification of Change of Corporate Name for Applicant; Secretary's Certificate; Certificate of Amendment; Recordation sheet for corporate name change; one check in the amount of $480.00; and certificate of Express Mailing. | | K 01884 | K 01893 | No objection | | | King |
| TX430 | Change of Corporate Name for Applicant; Secretary's Certificate; Certificate of Amendment; Recordation sheet for corporate name change; one check in the amount of $440.00; and certificate of Express Mailing. | | K 01894 | K 01901 | No objection | | | King |
| TX431 | Letter from Fujisawa to FDA, dated April 10, 1992. | | AST0034765 | ASt0034766 | **Item:** 402 **King:** 402 | **Item:** 402 **King:** 402 | | Item/King |
| TX432 | Maguire, et al., U.S. Patent 3,845,205, issued October 29, 1974. | | AST0056710 | AST0056712 | **Item:** 402 Rule 26 **King:** 402 Rule 26 | **Item:** 402 **King:** 402 | | Item/King |

# EXHIBIT  7

**EXHIBIT 7**
**Defendants' Trial Exhibit List**

| Trial Exhibit No. | Summary | Deposition Exhibit No. | Bates Begin | Bates End | FRE Bases for Objection | FRE Bases for Admission | Case |
|---|---|---|---|---|---|---|---|
| TX 1000 | U.S. Patent No. 5,731,296 | DX 47 | AST0055552 | AST0055566 | Dup | * | Item |
| TX 1006 | 1985 Yearbook of Anesthesia (Ronald D. Miller ed., Year Book Medical Publisher)(Aug. 1985) | PX 178 | AST0056211 | AST0056214 | Dup | * | Item |
| TX 1007 | A. Sollevi, et al. "Cardiovascular effects of adenosine during controlled hypotension in cerebral artery aneurysm surgery," Anesthesiology 59(3): A9 (Sept. 1983) | DX 54 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | | Item |
| TX 1008 | A. Sollevi, et al. "Cardiovascular effects of adenosine in man," Acta Physiol. Scand. 120(2): 11A (Feb. 1984) | DX 55 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | Item |
| TX 1009 | A. Sollevi, et al. "Controlled hypotension with adenosine in cerebral aneurysm surgery," Anesthesiology 61: 400-405 (Oct. 1984) | PX 177 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | Item |
| TX 1010 | A. Sollevi, et al. "Relationship between arterial and venous adenosine levels and vasodilation during ATP - and adenosine-infusion in dogs," Acta Physio. Scand. 120: 171-176  (Feb. 1984) | DX 135 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | Item |
| TX 1011 | A.F. Fukunaga, et al. "ATP-induced hypotensive anesthesia during surgery," Anesth. & Anesthesiology 57(3): A65 (Sept. 1982) | DX 134 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | Item |
| TX 1012 | A.F. Fukunaga, et al. "Dipyridamole potentiates the hypotensive effect of ATP," Anesthesiology 61(3a): A39 (Sept. 1984) | PX 192 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | Item |
| TX 1013 | A.F. Fukunaga, et al. "Hypotensive effects of adenosine and adenosine triphosphate compared with sodium nitroprusside," Anesth. & Analgesia 61(3): 273-278 (Mar. 1982) | DX 133 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | Item |
| TX 1014 | A.N. Drury, et al. "The physiological activity of adenine compounds with especial reference to their action upon the mammalian heart," J. Physiol. 68: 213-237 (1929) | PX 169 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | Item |
| TX 1015 | B.G. Brown, et al. "Intravenous dipyridamole combined with isometric handgrip for near maximal acute increase in coronary flow in patients with coronary artery disease," Am. J. Cardiol. (Dec. 1981) | | SIC011671 | SIC011679 | Dup | * | Item |
| TX 1016 | Facsimile from J. Scheibeler to Examiner Crane (10/24/97) | DX 386 | ID0020715 | ID0020720 | R | 402 | Item |
| TX 1019 | Excerpt from Goodman & Gilman, *The Pharmacological Basis of Therapeutics* (Macmillan Publishing Co.)(7th ed.)(1985) | PX 175 | SIC011640 | SIC011645 | Dup | * | Item |
| TX 1020 | I.O. Biaggioni, et al. "Humoral and hemodynamic effects of adenosine infusion in man," Clinical Res. 33(2): 280A (Apr. 1985) | PX 180 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | Item |

* Note: The parties have agreed to cooperate to remove duplicates from the exhibit list after the pretrial order is filed.

**EXHIBIT 7**
**Defendants' Trial Exhibit List**

| Trial Exhibit No. | Summary | Deposition Exhibit No. | Bates Begin | Bates End | FRE Bases for Objection | FRE Bases for Admission | Case |
|---|---|---|---|---|---|---|---|
| TX 1021 | J.P. DiMarco, et al. "Adenosine: electrophysiologic effects and therapeutic use for terminating paroxysmal supraventricular tachycardia," Circulation 68(6): 1254, 1263 (Dec. 1983) | PX 171 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | Item |
| TX 1022 | J.P. DiMarco, et al. "Diagnostic and therapeutic use of adenosine in patients with supraventricular tachycardias," J. Am. Coll. Cardiol. 6: 417-425 (Aug. 1985) | PX 186 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | Item |
| TX 1023 | K.L. Gould, et al. "Noninvasive assessment of coronary stenoses by myocardial imaging during pharmacologic coronary vasodilation. II. Clinical methodology and feasibility," Am. J. Cardiology 41: 279-287 (Feb. 1978) | PX 174 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | Item |
| TX 1024 | Karolinska Institute Request to the Ethics Committee of the Karolinska Institute, Sweden (12/28/87) | DX 79 | ID0001363 | ID0001384 | R, H, A | 402 703 803(6) | Item |
| TX 1025 | Letter from A. Sollevi to M. Shah (3/3/91) | DX 62 | ID0019464 | ID0019464 | R | 402 | Item |
| TX 1028 | Letter from G. Nyberg to R. Berne (8/7/89) | DX 78 | ID0004648 | ID0004649 | R, H, A | 402 803(6) | Item |
| TX 1029 | Series of letters between A. Sollevi and R. Kadatz | DX 77 | ID0002244 | ID0002246 | R, H, A, IL | 402 803(6) | Item |
| TX 1030 | M. Lagerkranser, et al. "Adenosine-induced hypotension in man: effects on cerebral circulation and metabolism," Anesthesiology 63:45A (Sept. 1985) | DX 56 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | Item |
| TX 1032 | N.F. Kassell, et al. "Cerebral and systemic circulatory effects of arterial hypotension induced by adenosine," J. Neurosurg. 58: 69-76 (Jan. 1983) | PX 176 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | Item |
| TX 1033 | P.C. Albro, et al. "Noninvasive assessment of coronary stenoses by myocardial imaging during pharmacologic coronary vasodilation. III. Clinical trial," Am. J. Cardiology 42: 751-760 (Nov. 1978) | | SIC011680 | SIC011689 | Dup | * | Item |
| TX 1036 | R.E. Klabunde & D.G. Altose, "Adenosine metabolism in dog whole blood: effects of dipyridamole," Life Sciences 28: 2631-2641 (June 1981) | | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | Item |
| TX 1037 | R.E. Klabunde, "Dipyridamole inhibition of adenosine metabolism in human blood," Eur. J. Pharmacol. 93: 21-26 (Sept. 1983) | DX 308 | AST0084721 | AST0084726 | Dup | * | Item |
| TX 1038 | R.F. Wilson, et al. "Effects of adenosine on human coronary arterial circulation," Circulation 82(5): 1595-1606 (Nov. 1990) | PX 187 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | Item |
| TX 1039 | R.M. Berne, "The Role of Adenosine in the Regulation of Coronary Blood Flow," Circulation Research 47(6): 807-813 (Dec. 1980) | PX 170 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | Item |

\* Note: The parties have agreed to cooperate to remove duplicates from the exhibit list after the pretrial order is filed.

**EXHIBIT 7**
**Defendants' Trial Exhibit List**

| Trial Exhibit No. | Summary | Deposition Exhibit No. | Bates Begin | Bates End | FRE Bases for Objection | FRE Bases for Admission | Case |
|---|---|---|---|---|---|---|---|
| TX 1040 | U.S. Patent No. 4,673,563 | PX 42 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | 35 U.S.C. § 282 | 106 | Item |
| TX 1041 | "Prescription Drugs and Mass Media Advertising, 2000" (10/01) | PX 139 | SIC011748 | SIC011764 | A, H, R | 402 703 | Item/King |
| TX 1042 | Adenoscan fiscal projections (undated) | DX 193 | AST0185476 | AST0185476 | | | Item/King |
| TX 1043 | Adenoscan sales revenue chart (undated) | | AST0185475 | AST0185475 | | | Item/King |
| TX 1044 | Adenoscan® pumps rebate agreement (4/04) | | AST0091530 | AST0091539 | R | 402 | Item/King |
| TX 1045 | Adenosine 1997 Marketing Plan (undated) | | AST0083204 | AST0083235 | R, H | 402 801(d)(2) 803(6) | Item/King |
| TX 1046 | C. King, "Marketing, Product Differentiation, and Competition in the Market for Antiulcer Drugs," Harvard Business School Working Paper 01-014 (Dec. 18, 2000) | | SIC011885 | SIC011885 | Dup, A, H, R | * 402 703 | Item/King |
| TX 1047 | Payment to Cardiac Center of Creighton University by Fujisawa Healthcare, Inc. (8/4/00) | DX 189 | AST0200625 | AST0200625 | R, 613 | 402 | Item/King |
| TX 1048 | Consulting agreement between Fujisawa USA, Inc. and D. Hilleman (2/23/96) | DX 176 | AST0197371 | AST0197374 | R, 613 | 402 | Item/King |
| TX 1049 | D. Hilleman, et al. "Cost-minimization analysis of intravenous adenosine and dipyridamole in thallous chloride T1 201 spect myocardial perfusion imaging," Ann. Pharmacother. 31: 974-979 (1997) | DX 28 | AST0081167 | AST0081172 | Dup | * | Item/King |
| TX 1050 | D.L. Rubinfeld, "Econometrics in the Courtroom," Columbia Law Review 85(5): 1065-1066 (June 1985) | | SIC012003 | SIC0120052 | Dup | * | Item/King |
| TX 1051 | D.L. Rubinfeld, "Reference Guide on Multiple Regression," Reference Manual on Scientific Evidence, Federal Judicial Center (1994) | | SIC012053 | SIC012105 | Dup | * | Item/King |
| TX 1052 | Data Files | | SIC011646 | SIC011659.2 | Dup, R, H, A | * 402 703 | Item/King |
| TX 1053 | "Top 200 drugs for 2004 by U.S. Sales" (website) | PX 138 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | R, H, A | 402 703 | Item/King |
| TX 1054 | E. Barry, "Psychiatrists Become Drug Firms' Targets," Boston Globe (5/28/02) | | SIC011927 | SIC011929 | R, H, A | 402 703 | Item/King |
| TX 1055 | E-mail from J. Olszewski to D. Gaddy & J. Kean (3/23/98) | DX 244 | AST0159534 | AST0159536 | H, R | 402 801(d)(2) 803(6) | Item/King |
| TX 1056 | E-mail from M. Lovelady to # Region 101 (2/27/96) | | AST0168423 | AST0168428 | H, R | 402 801(d)(2) 803(6) | Item/King |

\* Note: The parties have agreed to cooperate to remove duplicates from the exhibit list after the pretrial order is filed.

**EXHIBIT 7**
**Defendants' Trial Exhibit List**

| Trial Exhibit No. | Summary | Deposition Exhibit No. | Bates Begin | Bates End | FRE Bases for Objection | FRE Bases for Admission | Case |
|---|---|---|---|---|---|---|---|
| TX 1057 | F.F. Gonul, et al. "Promotion of Prescription Drugs and Its Impact on Physicians' Choice Behavior," J. Marketing 65: 79-90 (July 2001) | PX 137 | SIC011765 | SIC011776 | Dup, H, R | * 402 703 | Item/King |
| TX 1058 | Facsimile from J. Leppo to J. Olszewski (12/16/99) | DX 217 | AST0199236 | AST0199237 | H, R | 402 801(d)(2) 803(6) | Item/King |
| TX 1059 | Facsimile from J. Olszewski to ASNC  (1/9/98) | DX 205 | AST0194740 | AST0194741 | Dup, R | * 402 | Item/King |
| TX 1060 | Facsimile from J. Olszewski to ASNC (undated) | DX 207 | AST0194726 | AST0194726 | R | 402 | Item/King |
| TX 1061 | Facsimile from M. Shahaway to J. Olszewski (10/96) | DX 230 | AST0194529 | AST0194529 | H, R | 402 801(d)(2) 803(6) | Item/King |
| TX 1062 | Facsimile from M. Snyder to R. Blevins (1/3/96) | | K09531 | K09564 | A, H, R | 402 801(d)(2) 803(6) | Item/King |
| TX 1063 | Facsimile from State & Federal Association to J. Olszewski (12/2/95) | | AST0052149 | AST0052161 | H, R | 402 801(d)(2) 803(6) | Item/King |
| TX 1064 | Fujisawa/Boston Market Strategies check requisition, agreement, and receipts (12/5/95) | | AST0045607 | AST0045685 | H, R | 402 801(d)(2) 803(6) | Item/King |
| TX 1065 | Correspondence from Fujisawa (2002) | | AST0043120 | AST0043133 | R | 402 801(d)(2) 803(6) | Item/King |
| TX 1068 | Grants/Financial Assistance file from Fujisawa (1997) | | AST0045795 | AST0045824 | R | 402 | Item/King |
| TX 1069 | Fujisawa Case Discussion (12/00) | | AST0093848 | AST0093855 | R, IL | 402 | Item/King |
| TX 1070 | Fujisawa Case Discussion (12/00) | | AST0093856 | AST0093863 | Dup, R | * 402 | Item/King |
| TX 1071 | Fujisawa Case Study (10/00) | | AST0093819 | AST0093820 | R | 402 | Item/King |
| TX 1072 | Fujisawa Case Study (10/00) | | AST0093817 | AST0093818 | R | 402 | Item/King |
| TX 1073 | Fujisawa check requisition issued to Cardiac Center of Creighton University (8/2/00) | DX 188 | AST0200623 | AST0200623 | R, 613 | 402 | Item/King |
| TX 1074 | Promotional literature from Fujisawa | | AST0093864 | AST0093869 | R | 402 | Item/King |
| TX 1075 | Promotional literature from Fujisawa (10/00) | | AST0093823 | AST0093835 | Dup, R | * 402 | Item/King |
| TX 1076 | Memorandum from W. Erikson to G. Barnes, et al., enclosing 1993 Adenoscan® launch plan | | AST0212796 | AST0212849 | H, R | 402 801(d)(2) 803(6) | Item/King |
| TX 1077 | Memorandum from I. Martinez to J. Olszewski (3/12/01) | DX 245 | AST0043166 | AST0043167 | R | 402 | Item/King |
| TX 1078 | Memorandum from J. Olszewski, R. White to D. Vogt (9/21/95) | DX 190 | AST0066742 | AST0066744 | R | 402 | Item/King |

* Note: The parties have agreed to cooperate to remove duplicates from the exhibit list after the pretrial order is filed.

**EXHIBIT 7**
**Defendants' Trial Exhibit List**

| Trial Exhibit No. | Summary | Deposition Exhibit No. | Bates Begin | Bates End | FRE Bases for Objection | FRE Bases for Admission | Case |
|---|---|---|---|---|---|---|---|
| TX 1079 | Memorandum from W. Erickson to P. Schechter (8/3/92) | DX 223 | AST0047786 | AST0047789 | H, R | 402 801(d)(2) 803(6) | Item/King |
| TX 1080 | Fujisawa Strategic Plan 1991-1996 | | AST0101705 | AST0102070 | H, R | 402 801(d)(2) 803(6) | Item/King |
| TX 1081 | Fujisawa check requisition issued to D. Hilleman (10/2/95) | DX 173 | AST0202937 | AST0202937 | R, 613 | 402 801(d)(2) 803(6) | Item/King |
| TX 1082 | Fujisawa check requisition issued to D. Hilleman (10/1996) | DX 181 | AST0197488 | AST0197488 | R, 613 | 402 801(d)(2) 803(6) | Item/King |
| TX 1083 | Memorandum from D. Smith to W. Erikson, J. Olszewski, & C. Yost (3/27/92) | | AST0048036 | AST0048039 | R | 402 | Item/King |
| TX 1089 | Invoice from ASNC to J. Olszewski (12/1/97) | DX 206 | AST0194770 | AST0194770 | R | 402 | Item/King |
| TX 1090 | Invoice from ASNC to J. Olszewski (6/3/97) | DX 201 | AST0194845 | AST0194845 | R | 402 | Item/King |
| TX 1091 | Invoice from ASNC to J. Olszewski for grant (1/19/96) | DX 195 | AST0195040 | AST0195040 | R | 402 | Item/King |
| TX 1092 | Invoice from ASNC to J. Olszewski for grant (4/16/95) | DX 197 | AST0195090 | AST0195090 | R | 402 | Item/King |
| TX 1093 | Invoice from ASNC to J. Olszewski for sponsorship (7/25/95) | DX 192 | AST0195066 | AST0195066 | R | 402 | Item/King |
| TX 1094 | Invoice from ASNC to J. Olszewski for grant (6/21/96) | DX 198 | AST0194972 | AST0194972 | R | 402 | Item/King |
| TX 1095 | Invoice from ASNC to J. Olszewski for grant (7/6/98) | DX 210 | AST0194722 | AST0194722 | R | 402 | Item/King |
| TX 1096 | Invoice from ASNC to J. Olszewski for grant (2/17/99) | DX 214 | AST0199090 | AST0199090 | R | 402 | Item/King |
| TX 1097 | Invoice from ASNC to J. Olszewski for payment (3/30/00) | DX 215 | AST0200187 | AST0200187 | R | 402 | Item/King |
| TX 1098 | Invoice from ASNC to J. Olszewski for grant (5/11/99) | DX 216 | AST0199336 | AST0199336 | R | 402 | Item/King |
| TX 1099 | Invoice from ASNC to J. Olszewski for grant (2/8/99) | DX 213 | AST0199086 | AST0199086 | R | 402 | Item/King |
| TX 1100 | Invoice from ASNC to J. Olszewski for grant (3/28/00) | DX 219 | AST0200184 | AST0200184 | R | 402 | Item/King |
| TX 1101 | Invoice from ASNC to J. Olszewski for grant (12/1/97) | DX 204 | AST0194779 | AST0194779 | R | 402 | Item/King |
| TX 1102 | Invoice from ASNC to J. Olszewski for grant (4/21/98) | DX 208 | AST0194662 | AST0194662 | R | 402 | Item/King |
| TX 1103 | Invoice from ASNC to J. Olszewski for grant (9/16/96) | DX 200 | AST0194946 | AST0194946 | R | 402 | Item/King |
| TX 1104 | Invoice from ASNC to J. Olszewski for registration fee (3/28/00) | DX 218 | AST0200180 | AST0200180 | R | 402 | Item/King |
| TX 1105 | Invoice from ASNC to J. Olszewski for grant (9/19/00) | DX 220 | AST0200201 | AST0200201 | R | 402 | Item/King |
| TX 1106 | Invoice from ASNC to J. Olszewski for tutorial support (6/28/96) | DX 199 | AST0194967 | AST0194967 | R | 402 | Item/King |
| TX 1107 | Invoice from ASNC to J. Olszewski for grant (1/6/99) | DX 212 | AST0194782 | AST0194782 | R | 402 | Item/King |
| TX 1108 | Invoice from ASNC to J. Olszewski for reservation fee (4/29/98) | DX 209 | AST0194659 | AST0194659 | R | 402 | Item/King |
| TX 1109 | Invoice from ASNC to J. Olszewski for grant (10/2/97) | DX 202 | AST0194823 | AST0194823 | R | 402 | Item/King |
| TX 1110 | J.A. Rizzo, "Advertising and Competition in the Ethical Pharmaceutical Industry: The Case of Antihypertensive Drugs," J. Law and Economics (Apr. 1999) | | SIC011858 | SIC011873 | Dup | * | Item/King |

\* Note: The parties have agreed to cooperate to remove duplicates from the exhibit list after the pretrial order is filed.

**EXHIBIT 7**
**Defendants' Trial Exhibit List**

| Trial Exhibit No. | Summary | Deposition Exhibit No. | Bates Begin | Bates End | FRE Bases for Objection | FRE Bases for Admission | Case |
|---|---|---|---|---|---|---|---|
| TX 1111 | J.M. Vernon, "Concentration, Promotion, and Market Share Stability in the Pharmaceutical Industry," J. Industrial Economics, 246-267 (1971) | | SIC011874 | SIC011884 | Dup, R, H, A | *<br><br>402<br>703 | Item/King |
| TX 1112 | J.P. Shapiro and S. Schultz, "Prescriptions: How Your Doctor Makes the Choice," U.S. News and World Report (Feb. 19, 2001) | | SIC011777 | SIC011782 | Dup, R, H, A | *<br><br>402<br>703 | Item/King |
| TX 1113 | Journal Club Review (9/16/99) | | AST0109819 | AST0109821 | R, H, A | 402<br>801(d)(2)<br>803(6) | Item/King |
| TX 1114 | K.B. Leffler, "Persuasion or Information? The Economics of Prescription Drug Advertising," J. Law & Econ. 24(1): 45-74 (Apr. 1981) | PX 134 | SIC011827 | SIC011857 | Dup | * | Item/King |
| TX 1115 | Letter from A. Iskandrian to J. Olszewski (2/3/03) | DX 239 | AST0210248 | AST0210248 | R,H | 402<br>801(d)(2)<br>803(6) | Item/King |
| TX 1116 | Letter from A. Iskandrian to J. Olszewski (3/6/96) | DX 226 | AST0205388 | AST0205388 | H, R | 402<br>801(d)(2)<br>803(6) | Item/King |
| TX 1117 | Letter from A. Iskandrian to J. Olszewski (7/1/97) | DX 231 | AST0194833 | AST0194833 | H, R | 402<br>801(d)(2)<br>803(6) | Item/King |
| TX 1118 | Letter from A. Iskandrian to J. Olszewski (3/3/98) | DX 232 | AST0205365 | AST0205365 | H, R | 402<br>801(d)(2)<br>803(6) | Item/King |
| TX 1119 | Letter from A. Iskandrian to J. Olszewski (3/31/00) | DX 234 | AST0205351 | AST0205351 | H, R | 402<br>801(d)(2)<br>803(6) | Item/King |
| TX 1120 | Letter from D. Hilleman to J. Olszewski (4/16/97) | DX 184 | AST0197428 | AST0197428 | R, H, 613 | 402<br>801(d)(2)<br>803(6) | Item/King |
| TX 1121 | Letter from D. Hilleman to J. Olszewski (6/19/97) | DX 186 | AST0197410 | AST0197410 | R, H, 613 | 402<br>801(d)(2)<br>803(6) | Item/King |
| TX 1122 | Letter from D. Hilleman to J. Olszewski (1/23/97) | DX 182 | AST0197363 | AST0197363 | R, H, 613 | 402<br>801(d)(2)<br>803(6) | Item/King |
| TX 1123 | Letter from D. Hilleman to J. Olszewski (1/12/96) | DX 174 | AST0081121 | AST0081121 | R, H, 613 | 402<br>801(d)(2)<br>803(6) | Item/King |
| TX 1124 | Letter from D. Hilleman to R. White (10/31/95) | DX 168 | AST0202935 | AST0202936 | R, H, 613 | 402<br>801(d)(2)<br>803(6) | Item/King |

* Note: The parties have agreed to cooperate to remove duplicates from the exhibit list after the pretrial order is filed.

**EXHIBIT 7**
**Defendants' Trial Exhibit List**

| Trial Exhibit No. | Summary | Deposition Exhibit No. | Bates Begin | Bates End | FRE Bases for Objection | FRE Bases for Admission | Case |
|---|---|---|---|---|---|---|---|
| TX 1125 | Letter from D. LeMon to B. Carter (8/17/98) | | AST0186824 | AST0186824 | H, R, | 402<br>801(d)(2)<br>803(6) | Item/King |
| TX 1126 | Letter from G. Stefanov to D. Hilleman (6/9/97) | DX 185 | AST0197429 | AST0197429 | R, 613 | 402 | Item/King |
| TX 1127 | Letter from G. Stefanov to D. Hilleman (10/2/95) | DX 172 | AST0202942 | AST0202942 | R, 613 | 402 | Item/King |
| TX 1128 | Letter from J. Leppo to J. Olszewski (12/22/95) | DX 194 | AST0043954 | AST0043954 | H, R | 402<br>801(d)(2)<br>803(6) | Item/King |
| TX 1129 | Letter from J. Olszewski to A. Iskandrian (4/4/96) | DX 228 | AST0197482 | AST0197482 | R | 402 | Item/King |
| TX 1130 | Letter from J. Olszewski to A. Iskandrian (4/26/02) | DX 238 | AST0205336 | AST0205337 | R | 402 | Item/King |
| TX 1131 | Letter from J. Olszewski to A. Iskandrian (5/5/04) | DX 240 | AST0205406 | AST0205407 | R | 402 | Item/King |
| TX 1132 | Letter from J. Olszewski to A. Iskandrian (1/2/96) | DX 225 | AST0178169 | AST0178169 | R | 402 | Item/King |
| TX 1133 | Letter from J. Olszewski to A. Iskandrian (5/3/00) | DX 235 | AST0202183 | AST0202183 | R | 402 | Item/King |
| TX 1134 | Letter from J. Olszewski to A. Iskandrian (7/29/99) | DX 233 | AST0199850 | AST0199850 | R | 402 | Item/King |
| TX 1135 | Letter from J. Olszewski to D. Hilleman (10/7/96) | DX 180 | AST0197487 | AST0197487 | R, 613 | 402 | Item/King |
| TX 1136 | Letter from J. Olszewski to D. Hilleman (11/17/95) | DX 171 | AST0202932 | AST0202932 | R, 613 | 402 | Item/King |
| TX 1137 | Letter from J. Olszewski to D. Hilleman (3/27/97) | DX 183 | AST0197364 | AST0197364 | R, 613 | 402 | Item/King |
| TX 1138 | Letter from J. Olszewski to D. Hilleman (2/26/96) | DX 175 | AST0197365 | AST0197365 | R, 613 | 402 | Item/King |
| TX 1139 | Letter from J. Olszewski to M. Cerqueira (3/14/96) | DX 227 | AST0199495 | AST0199495 | R | 402 | Item/King |
| TX 1140 | Letter from J. Olszewski to M. Shahaway (12/9/96) | DX 229 | AST0194533 | AST0194533 | R | 402 | Item/King |
| TX 1141 | Letter from J. Olszewski to S. Mohiuddin (4/5/96) | DX 179 | AST0198466 | AST0198466 | R, 613 | 402 | Item/King |
| TX 1142 | Letter from M. Cerqueira to J. Olszewski (8/28/98) | DX 211 | AST0194715 | AST0194715 | R | 402 | Item/King |
| TX 1143 | Letter from S. Carter to J. Olszewski (4/22/01) | DX 222 | AST0200026 | AST0200027 | R | 402 | Item/King |
| TX 1144 | Letter from S. Mohiuddin to V. Lang (6/5/00) | DX 187 | AST0200626 | AST0200626 | R, 613 | 402 | Item/King |
| TX 1145 | M.A. Hurwitz & R.E.Caves, "Persuasion or Information? Promotion and the Shares of Brand Name and Generic Pharmaceuticals," J. Law and Economics 31(2): 299-320 (Oct. 1988) | | SIC011904 | SIC011926 | Dup | * | Item/King |
| TX 1146 | M.B. Rosenthal, et al. "Demand Effects of Recent Changes in Prescription Drug Promotion," The Henry Kaiser Family Foundation (June 2003) | | SIC011967 | SIC012002 | Dup, H, R, A | *<br>402<br>703 | Item/King |
| TX 1147 | M.J. Holmberg, et al. "Outcomes and costs of positron emission tomography: comparison of intravenous adenosine and intravenous dipyridamole," Clin. Therapeutics 19(3): 570-581 (May-June 1997) | DX 29 | ID0014134 | ID0014145 | H | 703 | Item/King |
| TX 1148 | Memorandum from B. Nelligan to J. Grossmann (10/30/97) | DX 203 | AST0043909 | AST0043909 | H, R, A | 402<br>801(d)(2)<br>803(6) | Item/King |
| TX 1149 | Memorandum from J. Olszewski to J. Leppo (2/13/96) | DX 196 | AST0198990 | AST0198990 | R | 402 | Item/King |
| TX 1150 | Memorandum from J. Olszewski to K. Lewis (7/7/97) | DX 243 | AST0079952 | AST0079953 | R | 402 | Item/King |
| TX 1151 | Memorandum to R. White from J. Olszewski (5/2/95) | DX 191 | AST0178184 | AST0178187 | R | 402 | Item/King |

* Note: The parties have agreed to cooperate to remove duplicates from the exhibit list after the pretrial order is filed.

**EXHIBIT 7**
**Defendants' Trial Exhibit List**

| Trial Exhibit No. | Summary | Deposition Exhibit No. | Bates Begin | Bates End | FRE Bases for Objection | FRE Bases for Admission | Case |
|---|---|---|---|---|---|---|---|
| TX 1152 | Memorandum from B. Nelligan to J. Olszewski (2/17/01) | DX 221 | AST0044120 | AST0044122 | H, R | 402 801(d)(2) 803(6) | Item/King |
| TX 1153 | Memorandum from J. Sage to D. Elsmore, et al. (10/16/01) | DX 246 | AST0110569 | AST0110571 | H, R | 402 801(d)(2) 803(6) | Item/King |
| TX 1154 | P. Manchanda and P.K. Chintagunta, "Responsiveness of Physician Prescription Behavior to Salesforce Effort: An Individual Level Analysis," Marketing Letters 15:2-3, 129-145 (2004) | | SIC011887 | SIC011903 | Dup, H, R | * 402 801(d)(2) 803(6) | Item/King |
| TX 1155 | Agreement between Fujisawa USA, Inc. and D. Hilleman (3/7/96) | DX 178 | AST0197560 | AST0197561 | R, 613 | 402 | Item/King |
| TX 1156 | Agreement between Fujisawa USA, Inc. and S. Mohiuddin (3/7/96) | DX 177 | AST0198464 | AST0198465 | R, 613 | 402 | Item/King |
| TX 1157 | S. Stern & M. Trajtenberg, "Empirical Implications of Physician Authority in Pharmaceutical Decisionmaking," NBER Working Paper (Dec. 1998) | | SIC011783 | SIC0117826 | Dup, R, H, A | * 402 703 | Item/King |
| TX 1158 | Memorandum from M. Snyder to R. Blevins, et al. (12/26/95) | | K09355 | K09367 | H, A | 801(d)(2) 803(6) | Item/King |
| TX 1160 | Memorandum from J. Olszewski to R. White (with attachments) (12/3/95) | DX 224 | AST0178189 | AST0178194 | R | 402 | Item/King |
| TX 1162 | U.S. Department of Justice and the Federal Trade Commission, "Horizontal Merger Guidelines," Section 1.41, accessible at http://www.usdoj.gov/atr/public/guidelines/hmg.htm#14 (last revised 4/8/97) | | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | R | 402 | Item/King |
| TX 1165 | USGAO, "Prescription Drugs: FDA Oversight of Direct-to-Consumer Advertising Has Limitations," GAO-03-177 (Oct. 2002) | | SIC011930 | SIC011966 | R | 402 | Item/King |
| TX 1167 | U.S. Patent No. 5,070,877 | DX 3 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | King |
| TX 1169 | A. Öwall, et al. "Clinical experience with adenosine for controlled hypotension during cerebral aneurysm surgery," Anesth. Analg. 66: 229-34 (Mar. 1987) | | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | King |
| TX 1170 | A. Sollevi, et al. "Cardiovascular effects of adenosine during controlled hypotension in cerebral artery aneurysm surgery," Anesthesiology 59(3): A9 (Sept. 1983) | | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | King |
| TX 1171 | A. Sollevi, et al. "Cardiovascular Effects of Adenosine in Man; Possible Clinical Implications," Progress in Neurobiology 27: 319- 349 (1986) | | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | King |

* Note: The parties have agreed to cooperate to remove duplicates from the exhibit list after the pretrial order is filed.

**EXHIBIT 7**
**Defendants' Trial Exhibit List**

| Trial Exhibit No. | Summary | Deposition Exhibit No. | Bates Begin | Bates End | FRE Bases for Objection | FRE Bases for Admission | Case |
|---|---|---|---|---|---|---|---|
| TX 1172 | A. Sollevi, et al. "Controlled hypotension with adenosine in cerebral aneurysm surgery," Anesthesiology 61: 400-405 (Oct. 1984) | DX 378 | AST0009542 | AST0009547 | Dup | * | King |
| TX 1173 | A. Sollevi, et al. "Theophylline antagonizes cardiovascular responses to dipyridamole in man without affecting increases in plasma adenosine," Acta Physiol. Scand. 121: 165-171 (June 1984) | | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | King |
| TX 1174 | A.S. Iskandrian, et al. "Dipyridamole cardiac imaging," Am. Heart J. 115(2): 432-443 (Feb. 1988) | | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | King |
| TX 1175 | Assignment of U.S. Patent Application No. 231,217 (4/7/89) | DX 14 | AST0068043 | AST0068044 | Dup | * | King |
| TX 1176 | Assignment U.S. Patent Application No. 231,217 (7/15/88) | DX 13 | K01870 | K01871 | Dup | * | King |
| TX 1177 | B.G. Brown, et al. "Intravenous dipyridamole combined with isometric handgrip for near maximal acute increase in coronary flow in patients with coronary artery disease," Am. J. Cardiology (Dec. 1981) | DX 256 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | King |
| TX 1178 | B.L. Zaret, et al. "Noninvasive regional myocardial perfusion with radioactive potassium: study of patients at rest, with exercise, and during angina pectoris," New Engl. J. Med. 288: 809-812 (Apr. 1973) | | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | | King |
| TX 1179 | U.S. Patent No. 5,731,296 | PX 148 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | King |
| TX 1180 | E. Lebowitz, et al. "Thallium-201 for medical use," J. Nucl. Med. 16: 151-155 (Feb. 1975) | | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | | | King |
| TX 1181 | G.W. Hamilton, et al. "Myocardial Imaging with Thallium 201: Effect of Cardiac Drugs on Myocardial Images and Absolute Tissue Distribution," J. Nucl. Med. 19:10-16 (1978) | | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | | | King |
| TX 1182 | Excerpt from Goodman & Gilman, The Pharmacological Basis of Therapeutics (Macmillan Publishing Co.)(7th ed.) (1985) | PX 206 | SIC011640 | SIC011645 | Dup | * | King |
| TX 1183 | H.W. Strauss & B. Pitt (eds.), Cardiovascular Nuclear Medicine, The C.V. Mosby Co. (2nd Ed.) 243-252 (1979) | PX 152 | SIC012110 | SIC012121 | Dup | * | King |
| TX 1184 | H.W. Strauss & B. Pitt, "Noninvasive detection of subcritical coronary arterial narrowings with a coronary vasodilator and myocardial perfusion imaging," Am. J. Cardiol. 30: 403-406 (Mar. 1977) | PX 151 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | King |

\* Note: The parties have agreed to cooperate to remove duplicates from the exhibit list after the pretrial order is filed.

**EXHIBIT 7**
**Defendants' Trial Exhibit List**

| Trial Exhibit No. | Summary | Deposition Exhibit No. | Bates Begin | Bates End | FRE Bases for Objection | FRE Bases for Admission | Case |
|---|---|---|---|---|---|---|---|
| TX 1185 | I.O. Biaggioni, et al., "Cardiovascular and respiratory effects of adenosine in conscious man: evidence for chemoreceptor activation, Circ. Research 61(6): 779-786 (Dec. 1987) | | AST0000520 | AST0000527 | Dup | * | King |
| TX 1186 | I.O. Biaggioni, et al., "Cardiovascular effects of adenosine infusion in man and their modulation by dipyridamole," Life Sciences 39: 2229-2236 (1986) | DX 420 | AST0009554 | AST0009561 | Dup | * | King |
| TX 1187 | I.O. Biaggioni, et al., "Humoral and hemodynamic effects of adenosine infusion in man," Clinical Res. 33(2): 280A (Apr. 1985) | DX 376 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | King |
| TX 1188 | J. Leppo, et al., "Quantitative thallium-201 redistribution with a fixed coronary stenosis in dogs," Circulation 63(3): 632-639 (Mar. 1981) | PX 199 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | King |
| TX 1189 | J.A. Rumberger, et al., "Use of ultrafast computed tomography to quantitate regional myocardial perfusion: A preliminary report," J. Am. Coll. Cardiol.  9(1): 59-69  (Jan. 1987) | PX 212 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | King |
| TX 1190 | K.L. Gould, "Pharmacologic Intervention as an Alternative to Exercise Stress," Seminars in Nucl. Med. XVII(2): 121-130 (Apr. 1987) | | AST0067990 | AST0067998 | Dup | * | King |
| TX 1191 | K.L. Gould, et al., "Noninvasive assessment of coronary stenoses by myocardial imaging during pharmacologic coronary vasodilation. II. Clinical methodology and feasibility," Am. J. Cardiology 41: 279-287 (Feb. 1978) | DX 254 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | King |
| TX 1192 | K.L. Gould, et al., "Thallium-201 myocardial imaging during coronary vasodilation induced by oral dipyridamole," J. Nucl. Med. 27:31-36 (Jan. 1986) | | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Multiple documents Biaggioni attached | Corrected exhibit provided | King |
| TX 1193 | Karolinska Institute Request to the Ethics Committee of the Karolinska Institute, Sweden (12/28/87) | | SIC010937 | SIC010951 | Dup | * | King |
| TX 1194 | Letter from D. Hilleman to G. Salzberg (9/15/87) | DX 33 | K05445 | K05445 | Dup | * | King |
| TX 1195 | Letter from R. Blevins to S. Mohiuddin (1/9/89) | DX 10 | K07049 | K07050 | | | King |
| TX 1197 | Letter from W. Govier to FDA (12/9/87) | DX 8 | AST0009417 | AST0009504 | Dup | * | King |
| TX 1198 | M. Josephson, et al. "Noninvasive detection and localization of coronary stenoses in patients: comparison of resting dipyridamole and exercise thallium-201 myocardial perfusion imaging," Am. Heart J. 103(6): 1008-1018 (1982) | DX 257 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | King |
| TX 1199 | M. Kawana, et al. "Use of 199Ti as a potassium analog in scanning," J. Nucl. Med. 11: 333 (June 1970) | | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | | | King |

* Note: The parties have agreed to cooperate to remove duplicates from the exhibit list after the pretrial order is filed.

**EXHIBIT 7**
**Defendants' Trial Exhibit List**

| Trial Exhibit No. | Summary | Deposition Exhibit No. | Bates Begin | Bates End | FRE Bases for Objection | FRE Bases for Admission | Case |
|---|---|---|---|---|---|---|---|
| TX 1200 | M. Lagerkranser, et al., "Central and splanchnic hemodynamics in the dog during controlled hypotension with adenosine," Anesth. 60: 547-552 (June 1984) | | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | King |
| TX 1201 | Document entitled "Clinical Utility of Adenosine in Radionuclide Myocardial Imaging" | DX 4 | AST0001042 | AST0001052 | Dup | * | King |
| TX 1202 | P.C. Albro, et al. "Noninvasive assessment of coronary stenoses by myocardial imaging during pharmacologic coronary vasodilation. III. Clinical trial," Am. J. Cardiology 42: 751-760 (1978) | DX 255 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | King |
| TX 1203 | P.J. Hurley, et al. "43KCl: A new radiopharmaceutical for imaging the heart," J. Nucl. Med. 12: 516-519 (1971) | | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | | | King |
| TX 1206 | R.M. Berne, "Nucleotides in hypoxia: possible role in regulation of coronary blood flow,"   Am. J. Physiology 317-322 (1963) | DX 381 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | King |
| TX 1207 | R.M. Berne, "The Role of Adenosine in the Regulation of Coronary Blood Flow," Circulation Research 47(6): 807-813 (Dec. 1980) | DX 380 | AST0008462 | AST0008468 | Dup | * | King |
| TX 1208 | R.W. Fuller, et al. "Circulatory and respiratory effects of infused adenosine in conscious man," Br. J. Clin. Pharma., 24: 309-317 (Sept. 1987) | DX 377 | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | King |
| TX 1209 | S. Homma, et al. "Usefulness of oral dipyridamole suspension for stress thallium imaging without exercise in the detection of coronary artery disease," Am. J. Cardiol. 57:503-508 (Mar. 1986) | | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | King |
| TX 1210 | T.B.G. Conradson, et al., "Cardiovascular effects of infused adenosine in man: potentiation by dipyridamole," Acta Physiol. Scand. 129:387-391 (Mar. 1987) | | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | Dup | * | King |
| TX 1211 | T.B.G. Conradson, et al., "Effects of adenosine on autonomic control of heart rate in man," Acta Physiol. Scand. 131:525-531 (Dec. 1987) | | Deposition exhibit not Bates stamped | Deposition exhibit not Bates stamped | | | King |

* Note: The parties have agreed to cooperate to remove duplicates from the exhibit list after the pretrial order is filed.

# EXHIBIT  8

## EXHIBIT 8A

### Plaintiffs' List of Witness to Be Called Live or By Deposition

1.      Plaintiffs Item Development AB, Astellas US LLC, and Astellas Pharma US, Inc.
(collectively "Item and Astellas") expect to call some or all of the witnesses identified below
either live or by deposition (transcript or video).

2.      Item and Astellas reserve the right to call substitute witnesses to the extent that a
witness's circumstances change, or a witness otherwise becomes unavailable for trial.  Item and
Astellas further reserve the right to call any witness for impeachment purposes.

3.      Item and Astellas reserve the right to call at trial any witness who appears on
Defendants' List of Witnesses to Be Called Live or By Deposition, attached hereto as Exhibit
9A.  If any of Defendants' witnesses fail to appear at trial, Item and Astellas reserve the right to
use their deposition testimony.

4.      Item and Astellas reserve the right to call one or more witnesses whose testimony
is necessary to establish the admissibility of a trial exhibit if the admissibility of the exhibit is
challenged by the defendants.

5.      The following is a list of witnesses whom Item and Astellas may call at trial,
either in person or by deposition:

| | |
|---|---|
| Allyn Becker (individually and/or 30(b)(6)) | Live or by deposition |
| Dr. Joel Hay | Live |
| Sonia Hernandez (30(b)(6)) | By deposition |
| Dr. Richard Klabunde | Live |
| Catherine Klose | Live |
| Craig Lea (individually and/or 30(b)(6)) | Live or by deposition |
| Leonard Rosenberg (individually and/or 30(b)(6)) | Live or by deposition |
| Dr. Alf Sollevi | Live |
| Richard White | Live |
| Dr. Barry L. Zaret | Live |
| Dr. H. William Strauss | Live or by deposition |

## EXHIBIT 8B

### Plaintiffs' List of Rebuttal Witness to Be Called
### Live or By Deposition

1.    Item and Astellas hereby identify the following fact witnesses and expert

witnesses who may be called to present fact testimony at trial either live or by deposition

(transcript or video):

1.    Any witness or category of witness previously identified by Item and Astellas in the Plaintiffs' List of Witnesses to Be Called Live or By Deposition, attached hereto as Exhibit 8A;

2.    One or more witnesses to provide foundational testimony should Defendants contest the authenticity or admissibility of any materials to be proffered at trial;

3.    Any witness or category of witnesses identified by Defendants in either Defendants' List of Witnesses to Be Called Live or By Deposition, attached hereto as Exhibit 9A, or Defendants' List of Rebuttal Witness to Be Called Live or By Deposition, attached hereto as Exhibit 9B, not excluded pursuant to Item's and Astellas' objections; and

4.    Substitute witnesses, to the extent that the employment of any witness changes or a witness otherwise becomes unavailable for trial.

2.    Item and Astellas further reserve the right to designate or counter-

designate portions of deposition transcripts in rebuttal and/or to render complete any

deposition designations made by Defendants.

**EXHIBIT 8C**

**Plaintiffs' Statement of the Qualifications of
Experts to Be Called as Witnesses at Trial**

**I.     Barry L. Zaret M.D.**

1.     Dr. Zaret is an expert in cardiology, nuclear cardiology, the cardiovascular system, vasodilators, and hemodynamics.

2.     Dr. Zaret has published over one hundred articles, reviewed numerous manuscripts, and instructed fellows in his area of expertise.

3.     He served on the board of the Certification Council of Nuclear Cardiology from 1995 to 2002 and on the subspecialty Board on Cardiovascular Disease of the American Board of Internal Medicine from 2002 to 2006.

4.     He was the founding Editor-in-Chief of the Journal of Nuclear Cardiology from 1993 to 2003 and the Chief of the Section of Cardiovascular Medicine at Yale from 1978 to 2004.

5.     Dr. Zaret currently is co-authoring the third edition of a major text in the field of nuclear cardiology and is serving or has served as an editor for many of the leading journals in the field of cardiology and nuclear cardiology, including: the Journal of the American College of Cardiology, Circulation, and the American Journal of Cardiology.

6.     Dr. Zaret is the Robert W. Berliner Professor of Medicine at the Yale University School of Medicine, a position he has held since 1984.

II.    **Richard E. Klabunde, Ph.D.**

1.    Dr. Klabunde is an expert in the regulation of cardiac and vascular function, hemodynamics, and the effects of adenosine and dipyridamole upon them.

2.    Dr. Klabunde has published 10 articles focused on adenosine metabolism, dipyridamole's effects on adenosine blood levels, and adenosine related regulation of blood flow.

3.    Dr. Klabunde has taught medical students and pharmacology students about these topics for 20 years and regularly reviews grants and manuscripts related to his area of expertise.

4.    Previously, he also conducted pharmacological research for Abbott Laboratories in their Cardiovascular Group.

5.    Dr. Klabunde is a tenured Associate Professor of Physiology in the Department of Biomedical Sciences at the Ohio University College of Osteopathic Medicine.

III.    **Joel Hay, Ph.D.**

1.    Dr. Hay is an expert in health economics and pharmaceutical economics. He has a comprehensive understanding of regression analysis and the economic theories related to pharmaceutical pricing and drug market analysis.

2.    Dr. Hay has instructed graduate students, published numerous peer reviewed articles, and advised many government agencies and charitable foundations on these subjects.

3.    Currently, Dr. Hay serves as an Associate Professor and the Founding Chair of the Department of Pharmaceutical Economics and Policy at the University of

Southern California School of Pharmacy, the largest and most prominent university

department focused primarily on pharmaceutical economics.

# EXHIBIT  9

**EXHIBIT 9A**

**Defendants' List of Witness to Be Called
Live or By Deposition**

1.     Defendants Sicor Inc. and Sicor Pharmaceuticals, Inc. (collectively

"Sicor") expect to call some or all of the witnesses identified below either live or by

deposition.

2.     Sicor reserves the right to call substitute witnesses to the extent that a

witness's circumstances change, or a witness otherwise becomes unavailable for trial.

Sicor further reserves the right to call any witness for impeachment purposes.

3.     Sicor reserves the right to call at trial any witness who appears on

Plaintiffs' List of Witnesses to Be Called Live or By Deposition, attached hereto as

Exhibit 8A.  If any of Plaintiffs' witnesses fail to appear at trial, Sicor reserves the right

to use their deposition testimony.

4.     The following is a list of witnesses whom Sicor may call at trial, either in

person or by deposition:

        Dr. Philip Binkley

        Keith B. Leffler, Ph.D.

        Richard Klabunde, Ph.D.

        Ms. Catherine Klose (individual and/or 30(b)(6))

        Mr. Gerald Olszewski (individual and/or 30(b)(6))

        John Scheibeler, Esq.

        Dr. Alf Sollevi

        Mr. Richard White (individual and/or 30(b)(6))

        Dr. Barry Zaret

## EXHIBIT 9B

## Defendants' List of Rebuttal Witness to Be Called
## Live or By Deposition

1.      Sicor refers to Defendants' List of Witnesses to Be Called Live or By

Deposition, attached hereto as Exhibit 9A, and states that Sicor does not expect to call

any additional witnesses.

2.      Sicor may call in rebuttal any of the witnesses that it has previously

disclosed.  Sicor further reserves the right to designate or counter-designate portions of

deposition transcripts in rebuttal and/or to render complete any deposition designations

made by Plaintiffs.

<u>EXHIBIT 9C</u>

**<u>Defendants' Statement of the Qualifications of
Experts to Be Called as Witnesses at Trial</u>**

**I.    <u>Dr. Philip Binkley</u>**

1.    Dr. Philip Binkley is a physician expert in the field of vasodilators.  He has been practicing medicine for over twenty-two years and is board-certified in the fields of cardiology and internal medicine.  He has treated approximately 5,000 cardiac patients over the course of his career, and administers various vasodilators to his patients on a daily basis.

2.    Dr. Binkley was awarded his Doctor of Medicine degree *cum laude* from The Ohio State University College of Medicine in 1979.  Following his graduation from medical school, Dr. Binkley completed a one-year medical internship in Internal Medicine and a two year medical residency in Internal Medicine at The OSU College of Medicine.  In addition, he completed a three-year fellowship in Cardiovascular Medicine in the Division of Cardiology at The OSU College of Medicine.

3.    Dr. Binkley is a member of the faculty of The OSU College of Medicine, where he is James Hay and Ruth Jansson Wilson Professor of Medicine in the Division of Cardiology.  In addition, he has been the Director of Cardiovascular Research in the Division of Cardiology since 1998.  He is also the Associate Director for Clinical Programs at the Dorothy M. Davis Heart and Lung Research Center.

4.    At The OSU College of Medicine, Dr. Binkley instructs students, residents, and fellows concerning the physical examination, diagnosis, and treatment of cardiovascular diseases in general, as well in the analysis of hemodynamic measurements obtained from patients.  He is also one of six specialists who teaches the

principles of the diagnosis and management of congestive heart failure. In addition, Dr. Binkley teaches students, residents, and junior faculty the principles of clinical and translational research, and he directs a training program for the National Institutes of Health that is specifically designed to teach these principles to medical students, nursing students, and dental students.

5.      Dr. Binkley is actively involved in clinical research in the field of vasodilators, and one focus of his research is the use of vasodilators in the treatment of congestive heart failure. He has authored over 140 published articles in the field of cardiology, and the majority of these articles concern vasodilators. In addition, he has received many honors and awards in connection with his work in the field of cardiology.

## II.      Dr. Keith Leffler

1.      Dr. Leffler is an expert in the field of economics. He received his Master's degree and Ph.D. from U.C.L.A. in 1974 and 1977, respectively. He has taught undergraduate and graduate level economics courses for over 30 years, and is presently an Associate Professor of Economics at the University of Washington.

2.      Dr. Leffler has extensive experience in the economics of the pharmaceutical industry, including economic analysis related to the impact on sales of various business practices in the pharmaceutical industry and how product characteristics and marketing interact to influence prescription drug sales. His experience includes funded research projects, consulting work on matters involving litigation of pharmaceutical patents, and work as a visiting research scholar at Pfizer Pharmaceuticals from 1977-78 on competition, research and development and marketing issues related to pharmaceuticals.

2

3.    Dr. Leffler has published numerous articles on the topics of advertising and the pharmaceutical industry, and served as Associate Editor on two economics journals.

# EXHIBIT   10

**EXHIBIT 10**

**Brief Statement of Proof at Trial**

The Plaintiffs may prove such matters as set forth in their final contentions, expert

reports, interrogatory responses and depositions and to respond as may be required to meet any

defense asserted by Defendants at trial.  By way of brief summary Plaintiffs will prove:

**The Asserted Claims**

1.      For purposes of determining infringement of the '296 patent by Defendants'

ANDA No. 77-425, plaintiffs will assert at trial only claims 1, 3, 7 and 9.  For purposes of

illustration, claim 3 reads:

> 3.  A method of selectively vasodilating the arteries of a human
> patient without inducing significant venous dilation and without
> pretreatment with dipyridamole, comprising continuously
> administering into the blood stream of said patient by intravenous
> administration about 0.05 milligrams to about 0.30 milligrams
> [about 50 micrograms to about 300 micrograms] of adenosine per
> kilogram body weight per minute.

TX-001 at col. 22, ll. 20-26.

**The Patented Invention**

2.      The invention covered by the asserted claims reflects the discovery by Dr. Alf

Sollevi of the first legitimate medical uses of continuous infusion of adenosine without

dipyridamole pretreatment in human patients and the dosing parameters for safe practice of those

methods.

3.      The use of Astellas' Adenoscan® for myocardial perfusion imaging and such use

of Sicor's generic copy of Adenoscan® meet the limitations and, therefore, infringe the asserted

claims.  The labeling for both products instructs the user to continuously infuse the adenosine

contained in the Adenoscan® (or Sicor generic) vial into patients in need of myocardial perfusion imaging but who are unable to exercise adequately. TX-003; TX-004 (4148-60). The adenosine is to be infused at a rate of 140 mcg/kg/min, which has been shown in such patients to result in selective arterial vasodilation without significant venous dilation. Nussbacher 1995 (TX-218).

### Safety Concerns in the Prior Art Taught Away From the Invention

4.     The invention of the asserted claims of the '296 patent went against the then prevailing weight of scientific opinion. The pervasive belief, based on 50 years of experience with adenosine, was that it was too short acting (half-life about 10 seconds) and had too many negative effects (blocking of heart beat) to be continuously infused alone into actual human patients. The literature is instead replete with suggestions to use other drugs that were thought to be longer acting or safer, or to administer adenosine in small, short-acting "bolus" doses, or to infuse it with other drugs, like "dipyridamole," to greatly reduce the doses needed.

5.     Concerns regarding the safety of adenosine were reflected in the scientific literature:

> Adenosine was first administered to human subjects in 1930 and 1933 to treat cardiac arrhythmias. The development of serious side effects with large boluses of the drug (temporary cardiac arrest) led the authors to conclude that adenosine was not "a useful therapeutic preparation for the treatment of heart disease," a view which discouraged further research.

*See* Biaggioni 1986 at 2229 (TX-048).

6.     In an effort to avoid the long-running concerns about adenosine, scientists worked to develop chemical analogs of adenosine that lacked its negative effects on the heart while extending the duration of its beneficial effects:

> The use of adenosine in cardiovascular therapy has been precluded both by the transitory nature of its vasodilator effects and by its toxic actions on the heart. It would seem feasible however that certain analogs of adenosine may be found which have the

> coronary vasodilatory activity of adenosine, but which have greater duration of action *in vivo* and which lack the cardiac depressant action of the parent compound.

*See* Maguire 1971 at 415 (TX-214).

7.     In the early 1980's, scientists at the University of Virginia, led by Dr. Robert Berne, discovered and published findings showing that, when administered in small, rapid, bolus doses, adenosine could be used to treat patients suffering from an abnormal heart rhythm known as PSVT (paroxysmal supraventricular tachycardia).  *See* DiMarco 1983 (TX-036); and DiMarco 1985 (TX-045).

8.     Bolus doses of adenosine appeared to interrupt electrical conduction sufficiently to "reset" the normal rhythm of the heart.  *See id.*  Thus, these clinicians discovered that, in this unique group of patients, the toxic effects of adenosine on the beating heart could be harnessed to beneficial effect.

9.     This clinical use specifically required a careful limitation of the adenosine dose:

> Overdosage might lead to prolonged asystole [cessation of heart beat], hypotension [low blood pressure], or other tachyarrhythmias [abnormal heart beats].  Even though the direct effects of adenosine are quite brief, their duration seems to be proportional to the dose in each patient and these side effects could be serious in certain patients.

DiMarco 1985 at 423 (TX-045).

10.     While adenosine infusions had been used prior to 1985 in experimental animals as a vasodilator in myocardial perfusion imaging tests, where safety was not a concern, a different drug, called "dipyridamole," was used when the procedure was conducted in humans.  Brown 1981 (TX-094).

11.     Dipyridamole was longer acting (half-life about 30 minutes) and acted indirectly by preventing breakdown of the body's own "endogenous" adenosine.  The effects of dipyridamole could be counteracted with an antidote called "aminophillyne."

12.     Similarly, adenosine had been used prior to 1985 as a vasodilator in animal studies to achieve significant blood pressure reductions.  *See* Kassell 1983 (TX-040).

13.     In animal experiments, it was observed that the adenosine dose needed to achieve the desired blood pressure reductions could be reduced by as much as 200 fold if the animals were pretreated with dipyridamole.  *Id*.  The actual dose reduction attainable with dipyridamole in animals was highly unpredictable.  Indeed, the half-life of adenosine in dogs was reported to be widely variable.  Klabunde 1981 (TX-44).

14.     A different chemical compound called "adenosine tri-phosphate" or "ATP," thought at the time to work in part due to conversion to adenosine, was reported in 1982 also to have been used to reduce blood pressure about 40% during surgery.  Fukunaga 1982 (TX-042).

15.     A subsequent report by the same investigator in 1984, however, urged pretreatment with dipyridamole to lower the ATP dose up to 30 fold and avoid production of potentially toxic metabolites, such as "uric acid."  Fukunaga 1984 (TX-052).

16.     ATP is not adenosine.  It has different physical properties and its own constellation of actions.  It is subject to a complicated series of metabolic processes that not only break down ATP into adenosine and other potentially toxic by-products but also reform ATP.

17.     When Dr. Sollevi first used adenosine to reduce blood pressure about 40% in human surgical patients, he pretreated the patients with dipyridamole in order to lower the needed adenosine dose for safety reasons.  Sollevi I (TX-082); Sollevi II (TX-037).  He achieved the needed blood pressure reduction in humans with an average dose of 140 mcg/kg/min. (TX-

037).  As of 1985, this was the only known human medical use for continuous adenosine infusions reported in the scientific literature.

18.    A 1985 abstract by Biagionni *et al.* (TX-110) had reported infusing adenosine alone into normal, healthy volunteers (not patients in need of medical treatment or evaluation) at doses up to 140 mcg/kg/min as part of a study of the biochemical mechanism by which adenosine operates.  No significant blood pressure reduction was reported even at 140 mcg/kg/min, suggesting that this dose was inadequate for the only reported medical use of adenosine infusions.  Higher doses were not tested due to intolerable side affects.  No human medical use of adenosine was proposed.  *Id*.

19.    Published animal tests suggested that, without dipyridamole pretreatment, an adenosine dose as much as 200 times higher than 140 mcg/kg/min might be required to achieve the needed blood pressure reduction in patients.  Kassell 1983 (TX-040).

20.    Published work with human blood reported that dipyridamole inhibited the breakdown of adenosine by more than 90%.  Klabunde 1983 (TX-101).

21.    The published work with ATP in humans, even if extrapolated to estimate effects of adenosine as the defendants propose, would have suggested that an adenosine dose up to 30 times higher than 140 mcg/kg/min might be required without dipyridamole.  Fukunaga 1984 (TX-051).

22.    Administration of such large doses of adenosine to actual human patients would have been unthinkable for fear of untoward side effects.

### The Invention is Based on an Unpredictable and Unexpected Result

23.    Dr. Sollevi tested adenosine without dipyridamole pretreatment in carefully controlled studies in actual human patients.  He unexpectedly discovered, inter alia, that

clinically useful blood pressure reductions could be achieved at much lower adenosine doses --

only about 50% higher than the dose needed with dipyridamole -- and that heart block and other

dangerous side effects did not appear in humans at those medically useful doses.  '296 patent

(TX-002); Owall 1987 (TX-132).  His work in this regard was publicly reported in 1984

(Sollevi III, TX-112), less than one year before filing of his patent application.

## The Invention Was Greeted With Surprise

24.    Dr. Sollevi's invention was greeted with admiration, skepticism, and surprise.

25.    Upon learning that adenosine could be administered as a continuous intravenous

infusion to cause selective arterial vasodilation without significant venodilation and without

serious side effects, Dr. Berne, a leading expert in the field, wrote to Dr. Sollevi in February

1985:

> I am really impressed with the studies you have done in humans
> and I hope that you will continue to pursue this because I think it is
> of considerable clinical importance.  One thing I don't understand
> is how you avoid atrioventricular heart block with doses of
> adenosine that are required to greatly lower arterial pressure.

ID0002234 (TX-049).

26.    Another prominent clinician-researcher, Dr. Francis Robicsek, a vascular surgeon

at the University of North Carolina, also expressed concern about the toxic effects of adenosine.

In response to one of Dr. Sollevi's publications, he reported that although he had carried out

studies on adenosine infusion in dogs, he had never attempted infusing adenosine in human

patients because of concerns that an adenosine metabolite, uric acid, would "create a significant

threat of renal impairment."  ID0000594 (TX-050).

## Use of Adenosine in Accordance With the Invention
## Has Been a Commercial Success

27.      Continuous infusion of adenosine to human patients within the useable dose range discovered by Dr. Sollevi has been hugely commercially successful in connection with myocardial perfusion imaging.

28.      "Myocardial perfusion imaging" or "myocardial perfusion scintigraphy" involves administering a radioactive "tracer" into the blood and using a sensitive "camera" to assess blood flow in the coronary arteries during stress and at rest.  Accurate diagnostic imaging by this method depends on achieving sufficient blood flow to the heart muscle.  While exercise was an effective form of stress in these tests, many patients were not capable of exercising to the degree required to obtain useful diagnostic results.  The subset of patients unable to exercise adequately for exercise myocardial scintigraphy includes patients with a variety of debilitating conditions that are at greater risk for coronary artery disease than the general population.

29.      By the late 1980's, physicians had attempted a variety of different techniques as substitutes for the effects of exercise on the heart, including use of pharmacological stress agents, primarily dipyridamole.

30.      Use of Adenoscan®, introduced by Astellas in 1995, involves continuous intravenous infusion of adenosine as a pharmacological stress agent for myocardial perfusion imaging.  Continuous infusion of adenosine has proven to be safer, faster, and more reliable than other products on the market.

31.      By the time this lawsuit was filed in 2005, physicians preferred Adenoscan® two to one over its nearest competitor, conducting nearly 500,000 Adenoscan® stress tests per quarter, compared to roughly 270,000 for dipyridamole.

32.     Sales of Adenoscan® account for more than 90% of the revenue generated in the market for pharmacologic stress agents.  Adenoscan® sales in fiscal 2004-2005 exceeded $300 million.  *See* TX-019.

33.     Physicians use Adenoscan® because it is faster, more reliable, and safer than dipyridamole even though generic dipyridamole is dose-for-dose considerably cheaper than Adenoscan®.

34.     While Astellas has engaged in advertising and promotional activity with respect to Adenoscan®, such activities are in accord with industry norms.  At most, such activities may encourage a physician to try Adenoscan®, but physicians would not continue to use it if it were not superior in performance to other available alternatives.

### Response to Defendants' Allegations

1.     In light of the foregoing, plaintiffs will prove at trial that:

### INFRINGEMENT

a.     The asserted claims of the '296 patent will be literally infringed by the use of defendants' Adenosine Injection USP in accordance with its labeling, and that defendants will induce and contribute to such infringement.

### VALIDITY

b.     The asserted claims of the '296 patent are not anticipated under 35 U.S.C. §102 by Sollevi I (TX-082), at least because this publication requires pretreatment with dipyridamole.

c.  The asserted claims of the '296 patent are not anticipated under 35 U.S.C. §102 by Sollevi II (TX-037), at least because this publication requires pretreatment with dipyridamole.

d.  The asserted claims of the '296 patent are not anticipated under 35 U.S.C. §102  by Fukunaga 1982 (TX-042), at least because this publication describes administration of ATP, not adenosine.

e.  The asserted claims of the '296 patent would not have been obvious under 35 U.S.C. §103 to one of ordinary skill in the relevant art over Sollevi I (TX-082) in combination with Sollevi II (TX-037), at least because the safety and efficacy of the claimed adenosine infusion rates without dipyridamole in actual human patients was in conflict with and could not have been predicted from the state of the art.

f.  The asserted claims of the '296 patent would not have been obvious under 35 U.S.C. §103 to one of ordinary skill in the relevant art over Fukunaga 1982 (TX-042) in combination with Biaggioni 1985 (TX-110), at least because the safety and efficacy of the claimed adenosine infusion rates without dipyridamole in actual human patients was in conflict with and could not have been predicted from the state of the art.

g.  The non-obviousness of the claimed invention is further supported by teaching away from use of continuous infusions of adenosine without dipyridamole pretreatment in the prior art, the skepticism in the art over the safety of such adenosine infusions, the unpredictability of the safety and efficacy of the

claimed methods in actual human patients, the unexpected results obtained

with the claimed invention, and the commercial success of the invention.

### Additional Issues

1.      Sicor has asserted that Biaggioni 1985 (TX-110) in combination with either

Sollevi I (TX-82) or Sollevi II (TX-37) would render the asserted claims obvious under 35

U.S.C. §103.  Plaintiffs object to these new theories that have not been previously discussed in

Sicor's contentions or expert reports.  Plaintiffs disagree with Sicor's assertions for at least the

reasons set forth above.

2.      Sicor asserts that the study by Nussbacher *et al.*, *Mechanism of Adenosine -*

*Induced Elevation of Pulmonary Capillary Wedge Pressure in Humans*, Circulation 92(3):371-

379 (Aug. 1995) ("Nussbacher") "supports a hypothesis, but does not prove, that adenosine does

not cause significant venous dilation."  See Exhibit 11, ¶10.  Plaintiff objects to Sicor contesting

the findings of the Nussbacher study, as it did not do so in its contentions and offered no expert

testimony on the issue.

# EXHIBIT   11

## EXHIBIT 11

### Defendants' List of Intended Trial Proofs

Defendants Sicor Inc. and Sicor Pharmaceuticals, Inc. (collectively "Sicor")

intend to prove the following facts at trial in support of their affirmative defenses of

non-infringement, anticipation and obviousness:

**I.     Adenosine**

1.      Adenosine is a naturally-occurring compound that contributes to a variety

of physiological processes in nearly every cell of the human body.

2.      Adenosine's potent vasodilator effects were recognized in the art as early

as 1929 and well documented in the art by at least 1980.

3.      Dipyridamole has long been known in the art as a vasodilator.

4.      Since at least the 1970s, it was known in the art that dipyridamole prevents

the metabolism of adenosine – and thus increases the concentration of adenosine in the

blood – by inhibiting adenosine deaminase.

5.      The administration of dipyridamole and the administration of adenosine

result in the same net effect:  an increase in the concentration of adenosine in the blood.

6.      Dipyridamole has a longer half life than the half life of adenosine, and the

duration of its effects is longer.

7.      In addition to its effects as a vasodilator, the administration of adenosine

may result in the interruption of atrio-ventricular conduction in the heart ("AV block").

This property of adenosine was known in the art and led to the use of adenosine as a bolus

injection for the treatment of arrhythmia.  At the relevant time, the occurrence of AV

block was associated with the administration of adenosine by bolus injection and at higher

doses.

## II.    <u>Non-Infringement</u>

8.    Plaintiffs have failed to demonstrate by a preponderance of the evidence that asserted claims 1, 3, 7, and 9 of U.S. Patent No. 5,731, 296 ("the '296 patent") are infringed by the injectable adenosine product that is the subject of Sicor's ANDA No. 77-425, either literally or under the doctrine of equivalents.

9.    Plaintiffs rely upon a single published study in support of their infringement claim:

> Nussbacher *et al.*, "Mechanism of Adenosine-Induced Elevation of Pulmonary Capillary Wedge Pressure in Humans," Circulation 92(3): 371-379 (Aug. 1995) ("Nussbacher").

10.    Nussbacher supports a hypothesis, but does not prove, that adenosine does not cause significant venous dilation.  Therefore, Nussbacher does not establish that the elements of claims 1, 3, 7, and 9 of the '296 patent are met by Sicor's adenosine product when adenosine is infused intravenously at a rate of 140 µg/kg/min.

11.    The description of adenosine in the product label for Sicor's adenosine product (*i.e.*, that adenosine is a potent vasodilator in most vascular beds) is not proof that adenosine does not cause significant venous dilation.

12.    The description of adenosine in the product label for Sicor's adenosine product (*i.e.*, that adenosine is a potent vasodilator in most vascular beds) is not proof that the elements of claims 1, 3, 7, and 9 of the '296 patent are met by Sicor's adenosine product when adenosine is infused intravenously at a rate of 140 µg/kg/min.

## III.    <u>Anticipation</u>

13.    The following references demonstrate by clear and convincing evidence that claims 1, 3, 7, and 9 of the '296 patent are invalid as anticipated:

A. Sollevi *et al.*, *Cardiovascular effects of adenosine during controlled hypotension in cerebral artery aneurysm surgery*, Anesthesiology (Circulation II) 59(3): A9 (Sept. 1983) ("Sollevi I");

A. Sollevi *et al.*, *Cardiovascular effects of adenosine in man*, Acta Physiol. Scan. 120(2): 11A (Feb. 1984) ("Sollevi II"); and

A.F. Fukunaga *et al.*, *ATP-induced hypotensive anesthesia during surgery,* Anesth. & Anesthesiology, 57(3): A65 (1982) ("Fukunaga").

**A.**     **Sollevi I**

14.     Sollevi I would teach a person of ordinary skill in the art at the relevant time that the intravenous administration of 140 µg/kg/min of adenosine alone would selectively dilate the arteries of a human patient without inducing significant venous dilation, as set forth in asserted claims 1, 3, 7, and 9, because Sollevi I discloses at least the following: (a) administration of a continuous intravenous infusion of adenosine at a mean dose of 140 µg/kg/min, following pretreatment with dipyridamole, to induce controlled hypotension in nine anesthetized patients undergoing surgery for cerebral aneurysms; (b) administration of dipyridamole 10 to 30 minutes prior to the administration of adenosine only to "to inhibit adenosine cellular uptake" and to reduce the total required dose of adenosine; (c) the observed hemodynamic effects of the administration of adenosine were a mean reduction in mean arterial blood pressure ("MABP") of 43%, a mean increase in heart rate of 9 beats/min, a mean decrease in systemic vascular resistance ("SVR") of 61%, an increase in cardiac output, and no change in peripheral vascular resistance ("PVR") and central venous pressure; (d) the conclusion that adenosine "in low molar concentrations rapidly induced a remarkably stable and easy reversible CH in man (see Fig 1), by a profound reduction in SVR concomitant with increased CO;" and (e) the conclusion that "the hemodynamic and metabolic properties of adenosine make it an

suitable agent for CH in man," without stating or describing any need for a dipyridamole pretreatment.

15.    A person of ordinary skill in the art in the mid 1980s would understand that the controlled hypotension observed in Sollevi I following the administration of adenosine was a well-understood and natural consequence of arterial vasodilation, and that arterial dilation had necessarily occurred because controlled hypotension had been achieved.

16.    A person of ordinary skill in the mid 1980s would understand, based on Sollevi I, that adenosine could be administered without dipyridamole to cause selective dilation of the arteries of a human patient without inducing significant venous dilation.

### B.    Sollevi II

17.    Sollevi II would teach a person of ordinary skill in the art at the relevant time that the intravenous administration of 140 µg/kg/min of adenosine alone would selectively dilate the arteries of a human patient without inducing significant venous dilation because Sollevi II discloses at least the following: (a) the same results from the same clinical study reported in Sollevi I, and further including data from a tenth patient and information on the observed levels of certain adenosine metabolites; (b) the administration of a continuous intravenous infusion of adenosine at a molar dose that is equivalent to 140 µg/kg/min, following pretreatment with dipyridamole, to induce controlled hypotension in ten anesthetized patients undergoing surgery for cerebral aneurysms; (c) that the "adenosine uptake inhibitor" dipyridamole was administered prior to the administration of adenosine; (d) that the observed hemodynamic effects of the administration of adenosine were a mean reduction in MABP of 43%, a mean increase in heart rate of 9 beats/min, and a mean decrease in SVR of 61%, no change in PVR, and an

4

increase in cardiac output of 40%; and (f) the conclusion that "these results indicate that adenosine may be used to achieve controlled hypotension in man since it acts as a rather pure arteriolar vasodilator with rapid onset, sustained action and rapid elimination," without stating or describing any need for a dipyridamole pretreatment.

18.     A person of ordinary skill in the art in the mid 1980s would understand that the controlled hypotension observed in Sollevi II following the administration of adenosine was a well-understood and natural consequence of arterial vasodilation, and that arterial dilation had necessarily occurred because controlled hypotension had been achieved.

19.     A person of ordinary skill in the 1980s would understand, based on the conclusion set forth Sollevi II, that adenosine could be administered without dipyridamole to cause selective dilation of the arteries of a human patient without inducing significant venous dilation.

C.     **Fukunaga Abstract**

20.     A person of ordinary skill in the art at the relevant time would conclude that the Fukunaga Abstract inherently discloses all elements of the asserted claims of the '296 patent, because Fukunaga discloses selective arteriole dilation without significant venous dilation following intravenous administration of ATP – which rapidly degrades in the body to adenosine – within the claimed dosage ranges and without pretreatment with dipyridamole in at least the following ways: (a) the Fukunaga Abstract discloses the administration of adenosine triphosphate ("ATP") to twenty-six patients at a dose of 200 to 600 µg/kg/min, without pretreatment with dipyridamole; (b) a person of ordinary skill in the art in the mid 1980s would have understood that ATP rapidly degrades to adenosine, and that adenosine is responsible for the arterial vasodilation effects associated with ATP;

(c) a person of ordinary skill would have understood that 200 to 600 µg/kg/min of ATP is equivalent to doses of between 97 and 290 µg/kg/min of adenosine, which range overlaps each of the ranges recited in the asserted claims of the '296 patent; and (d) MABP and SVR decreased significantly, while cardiac output was "well maintained," which would lead a person of ordinary skill to conclude that selective arterial dilation without significant venous dilation had occurred, as could be expected based upon the known vasodilatory effect of adenosine.

21.     The Fukunaga Abstract also does not report the occurrence of any serious side effects following administration of ATP.

22.     The Fukunaga Abstract reports responses indicative of selective arterial dilation without significant venous dilation, including a decrease in MABP and SVR, coupled with a "well maintained" cardiac output.  Fukunaga also concludes that "ATP should potentially be considered for use among the vasoactive hypotensive drugs" which would have also indicated to a person of ordinary skill that adenosine would be reasonably likely to succeed as a selective arterial vasodilator.

## IV.    Obviousness

23.     Asserted claims 1, 3, 7, and 9 of the '296 patent are invalid as obvious in view of the clear and convincing evidence provided by the following references and at least the following combinations of these references:

> A. Sollevi *et al.*, *Cardiovascular effects of adenosine during controlled hypotension in cerebral artery aneurysm surgery*, Anesthesiology (Circulation II) 59(3): A9 (Sept. 1983) ("Sollevi I");
>
> A. Sollevi *et al.*, *Cardiovascular effects of adenosine in man*, Acta Physiol. Scan. 120(2): 11A (Feb. 1984) ("Sollevi II");
>
> A.F. Fukunaga *et al.*, *ATP-induced hypotensive anesthesia during surgery*, Anesth. & Anesthesiology, 57(3): A65 (1982) ("Fukunaga Abstract"); and

6

I.O. Biaggioni *et al.*, *Humoral and Hemodynamic Effects of Adenosine Infusion In Man*, Clinical Res., 33(2): 280A (April 1985) ("Biaggioni Abstract").

### A.    Biaggioni Abstract

24.    The Biaggioni Abstract teaches the administration of continuous intravenous infusions of adenosine without dipyridamole pretreatment to five conscious volunteers at a rate of 10 µg/kg/min to 140 µg/kg/min, with no serious side effects reported.

25.    The Biaggioni Abstract would teach a person of ordinary skill in the art at the relevant time that adenosine could be administered intravenously to humans at the claimed dose of 140 µg/kg/min without dipyridamole pretreatment and without the occurrence of serious side effects.

26.    The observed "symptoms" reported by the Biaggioni Abstract at this dose did not include AV block, were not serious, and some of them (*e.g.*, flushing) are symptoms that persons of skill would recognize as indicating that arterial vasodilation occurred as a result of adenosine administration.

### B.    Sollevi I in Combination with the Biaggioni Abstract

27.    Sollevi I in combination with the Biaggioni Abstract would render obvious each and every limitation of the asserted claims of the '296 patent.

28.    A person of ordinary skill in the art in the relevant time period would be motivated to combine Sollevi I with the Biaggioni Abstract.  The conclusions set forth in Sollevi I suggest the use of adenosine alone (without dipyridamole pretreatment) in patients to cause selective arterial dilation without inducing significant venous dilation, and the Biaggioni Abstract showed that intravenous administration of adenosine alone at a dose 140 µg/kg/min without dipyridamole pretreatment was safe.

C.   **Sollevi II in Combination with the Biaggioni Abstract**

29.     Sollevi II in combination with the Biaggioni Abstract would render obvious each and every limitation of the asserted claims of the '296 patent.

30.     A person of ordinary skill in the art in the relevant time period would be motivated to combine Sollevi II with Biaggioni Abstract.  The conclusions set forth in Sollevi II suggest the use of adenosine alone (without dipyridamole pretreatment) in patients to cause selective arterial dilation without inducing significant venous dilation, and the Biaggioni Abstract showed that intravenous administration of adenosine alone at a dose 140 µg/kg/min without dipyridamole pretreatment was safe.

D.   **Fukunaga Abstract in Combination with the Biaggioni Abstract**

31.     The Fukunaga Abstract in combination with the Biaggioni Abstract would render obvious each and every limitation of the asserted claims of the '296 patent.

32.     A person of ordinary skill in the art in the relevant time period would be motivated to combine the Fukunaga Abstract with the Biaggioni Abstract.  The Fukunaga Abstract inherently showed the use of adenosine alone in patients to cause selective arterial dilation without significant venous dilation, and the Biaggioni Abstract showed that intravenous administration of adenosine alone at a dose 140 µg/kg/min without dipyridamole pretreatment was safe.

E.   **Additional Obviousness Combinations**

33.     Additional obviousness positions based upon combinations of Sollevi I, Sollevi II, the Fukunaga Abstract, and the Biaggioni Abstract render the '296 patent obvious.

F.    **State of the Art**

34.    A person of ordinary skill in the art in the relevant time period would understand that it is better, in general, to administer one drug rather than two, at least in order to reduce the possible risk of unfavorable or dangerous drug interactions.

35.    Dose titration of adenosine to determine the amount within the disclosed range to achieve arterial vasodilation without pretreatment with dipyridamole would have been a matter of routine experimentation to a person of ordinary skill in the art in the relevant time period, and the short half life of adenosine would have enabled a person of ordinary skill to titrate the dose of adenosine to be administered to a patient individually with routine medical monitoring.

V.    **Secondary Considerations of Non-Obviousness**

36.    Plaintiffs' proof concerning secondary considerations of non-obviousness does not rebut Defendant's *prima facie* case of obviousness.

A.    **Commercial Success**

37.    Plaintiffs have failed to demonstrate nexus between the subject matter of the asserted '296 patent claims and the alleged commercial success of their Adenoscan® product.

38.    The sales levels achieved by Adenoscan® provide no evidence of any superiority of Adenoscan®, as these sales levels have no demonstrated nexus to the subject matter of the asserted claims of the '296 patent.

39.    The commercial sales of Adenoscan® are a result of extensive marketing and promotional campaigns; an increase in demand for myocardial perfusion imaging employing pharmacological stress agents that occurred for reasons unrelated to the

asserted inventions; and the absence of marketing and promotion by the manufacturers of drugs that are competitive alternatives to Adenoscan®.

**B.    Skepticism of Experts**

40.    There is no evidence of skepticism of experts that demonstrates the nonobviousness of the asserted '296 patent claims.

41.    The personal disbelief of the authors of proffered correspondence that adenosine could be administered intravenously in the relevant ranges without encountering certain adverse events, including AV block, runs counter to the evidence in the prior art at the relevant time, including Sollevi I and Sollevi II.

42.    Correspondence between the inventor and other scientists in the field was not publicly available and would not have discouraged persons of skill in the art.

43.    Persons of skill in the art understood at the relevant time that AV block was not associated with the use of adenosine by the continuous intravenous infusion method in the prior art.  Instead, AV block was observed a bolus injection, a very different method of administration, and at higher doses.

44.    Sollevi I, Sollevi II, and Fukunaga do not disclose any evidence of AV block resulting from intravenous administration of adenosine.

45.    Persons of skill in the art understood that in humans pretreatment with dipyridamole before the administration of adenosine increased the risk of AV block, as compared to the risk of administration of adenosine alone, because administration of adenosine and dipyridamole together would result in a higher increase in adenosine concentration than if adenosine were administered alone.

46.    AV block, uric acid build-up, and excessive fluid load would not have discouraged a person of ordinary skill in the art from administering adenosine at the

recited dosages, because in the prior art, none of these side effects resulted from an intravenous infusion of adenosine to humans.

47.    A person of ordinary skill in the art would understand that any risk of AV block, uric acid build up and excessive fluid load would be greatly reduced – if not eliminated – by the administration of adenosine as a continuous intravenous infusion, instead of administration of the total adenosine dose as a single bolus injection.

48.    A person of ordinary skill in the art would require only a routine dose titration study to determine the specific amount of adenosine within the range in the prior art needed to reduce, if not eliminate, such risks.

### C.    Unexpected Results

49.    Plaintiffs have not demonstrated any unexpected results for the methods in the asserted claims.

50.    The lack of occurrence of AV block, uric acid build up, and excessive fluid load arising from the methods in the asserted claims were not unexpected based on the prior art.

### D.    Additional Secondary Considerations

51.    In their Statement of Issues of Law that Remain to Be Litigated, Plaintiffs refer to at least four additional secondary considerations:  long-felt need, teaching away, failure of others, and acclaim in the field.  Plaintiffs have not yet offered any competent evidence of any of these secondary considerations.

52.    Due to this failure of proof, Plaintiffs cannot be permitted to rely upon the secondary considerations of long-felt need, teaching away, failure of others, and acclaim in the field at trial.

**VI.**  **Exceptional Case**

53.    Plaintiffs have failed to prove by clear and convincing evidence that this case is exceptional pursuant to 35 U.S.C. § 285.

54.    Defendants maintain that it is improper, and a waste of the parties' and Court's time and resources, to address issues of exceptional case at this time, and that all such issues should be bifurcated until the Court has rendered a decision on the merits and determined that there is a "prevailing party" as required by 35 U.S.C. § 285.

# EXHIBIT 12

**EXHIBIT 12**

**ASTELLAS'S LIST OF MISCELLANEOUS ISSUES FOR
THE PRETRIAL CONFERENCE**

Astellas intends to raise the following issues at the Pretrial Conference:

1.      Whether Sicor may call Item's trial counsel, John Scheibeler, Esq., as a witness.
Sicor has named Mr. Scheibeler as witness they may call at trial, either in person or by
deposition.  Astellas contends that Mr. Scheibeler has no relevant information pertaining to the
present dispute.

2.      How the Court will handle documents that have been designated as highly
confidential.  Sicor's exhibit list includes more than 60 highly confidential post-patent-filing
internal documents and private communications (primarily relating to the activities of Astellas in
supporting research, supporting professional societies, retaining consultants, and marketing its
products) whose relevance to the patent-validity issues is tangential at best.  If Sicor is
determined to offer some or all such documents at trial, Plaintiffs request that they not be
disclosed on the public record.

3.      Whether Sicor may assert new theories of obviousness and noninfringement that
were never disclosed in its contentions or expert reports.  For example, Sicor is asserting
obviousness in view of the combinations of Biaggioni and Sollevi I and/or Biaggioni and
Sollevi II.  Yet neither combination was disclosed in its contentions or expert reports.  It is
further attempting to rebut Plaintiffs' evidence of infringement, specifically, the Nussbacher
article, despite having declined to comment on it in contentions or expert reports.

4.      Plaintiffs wish to make the Court aware that certain witnesses, such as
physician-experts who have patient responsibilities may need to be taken out of order due to
scheduling problems.

5.       Plaintiffs and Defendants disagree on the notice to be provided of exhibits that may be offered on redirect.  Plaintiffs believe it would be impractical and prejudicial to require identification of redirect exhibits before cross-examination since no identification of cross-examination exhibits is required.  Defendants disagree and seek to require identification of redirect exhibits two days before the witness testifies.

# EXHIBIT   13

## EXHIBIT 13

## Defendants' Statement of Miscellaneous Issues
## For the Pretrial Conference

Defendants intend to raise the following issues at the Pretrial Conference:

1.    How the hours of trial time will be allotted to each side at trial.

2.    Order of presentation.  (If infringement is an issue for trial, then plaintiffs should go first at trial on the issue of infringement; after responding to plaintiffs' evidence on infringement Sicor would present its *prima facie* case on '296 patent invalidity, to be followed by plaintiffs' case on '296 patent validity, including alleged secondary factors of non-obviousness, and then Sicor's rebuttal.  If infringement is not an issue for trial, then the order of presentation would begin with Sicor's presentation of its *prima facie* case on '296 patent invalidity.)

3.    Whether any issues other than commercial success of Adenoscan® will be consolidated for trial with C.A. 05-337-SLR.  (Sicor believes that no other issues have been identified that may properly be consolidated.)

4.    Whether plaintiffs should be precluded from relying at trial on secondary considerations of non-obviousness that have been raised for the first time in this case in Exhibit 4, Section II.D.

5.    Whether exceptional case issues will be bifurcated and deferred for trial pending the Court's ruling on the issues concerning the '296 patent and identification of a prevailing party.  (Sicor believes that exceptional case is not a proper issue for trial at this time.)

6.    The timing and requirements for exchange of demonstratives and exhibits to be used during examination of a witness being called by the party offering the exhibit(s).

7.    Whether a party may offer expert evidence in connection with this action when an expert witness and his opinions were disclosed pursuant to Federal Rule of Civil Procedure 26 only in connection with Civil Action No. 05-337 SLR.  Defendants maintain that if an expert was not disclosed in this action and the expert's report and deposition are not part of the record in this action, then it is not appropriate to offer his opinion, or any part thereof or reference thereto, in this action.